# EXHIBIT 1



Preserving the integrity of competition. Inspiring true sport. Protecting the rights of athletes.

***VIA ELECTRONIC MAIL and***
***VIA OVERNIGHT DELIVERY*** *(where full address is indicated)*

June 12, 2012

Mr. Johan Bruyneel
Team Manager
RadioShack Nissan Trek Cycling Team
1 rue Peternelchen
L-2370 Howald
Luxembourg

and to: bruyneel@radioshacknissantrek.com and johanbruyneel@johanbruyneel.com

Dr. Pedro Celaya
Team Doctor
RadioShack Nissan Trek Cycling Team
1 rue Peternelchen
L-2370 Howald
Luxembourg

and to: celaya@radioshacknissantrek.com

Dr. Luis Garcia del Moral
Instituto de Medicina del Deporte
Complejo Deportivo Cultural Petxina
Paseo de la Petxina 42
46008 Valencia
SPAIN

and to: luisg.moral@imedep.com

Dr. Michele Ferrari
Via Pomposa, 286
Ferrara
ITALY 44100

Mr. Pepe Marti
c/o UNION CYCLISTE INTERNATIONALE
Ch. de la Mêlée 12
1860 Aigle
Switzerland

United States Anti-Doping Agency
5555 Tech Center Drive, Suite 200, Colorado Springs, CO 80919-9918 ▪ Tel: 719.785.2000 ▪ Fax: 719.785.2001
usada@usada.org ▪ www.usada.org

Mr. Lance Armstrong
c/o Robert D. Luskin
Patton Boggs, LLP
2500 M Street, NW
Washington, D.C. 20037-1350
U.S.A.

and to: rluskin@pattonboggs.com

***Re: Anti-Doping Rules Violations***

Dear Mr. Bruyneel, Dr. Celaya, Dr. del Moral, Dr. Ferrari, Mr. Marti, and Mr. Armstrong:

This letter is to notify each of you (collectively referred to as the "Respondents") that the United States Anti-Doping Agency ("USADA") is hereby opening a formal action against each of you based on evidence that, as described below, you engaged in anti-doping rule violations under the Union Cycliste International ("UCI") Anti-Doping Rules from 1998 to present ("UCI ADR"), World Anti-Doping Code from inception to present (the "Code") and USADA Protocol for Olympic and Paralympic Movement Testing from inception to present (the "USADA Protocol") (collectively, the "Applicable Rules").[1]

This notice letter describes a portion of the evidence gathered by USADA in its investigation of potential doping on the United States Postal Service (USPS) (1996 – 2004), Discovery Channel (2005-2007), Astana (2009) and RadioShack (2010) cycling teams. The witnesses to the conduct described in this letter include more than ten (10) cyclists as well as cycling team employees.

An important aspect of USADA's investigation has been face to face meetings between USADA representatives and riders on the above referenced cycling teams. USADA sought to give the riders an opportunity to be a part of the solution in moving cycling forward by being truthful and honest regarding their past experiences with doping in cycling.

With the exception of Mr. Armstrong, every other U.S. rider contacted by USADA regarding doping in cycling agreed to meet with USADA and to truthfully and fully describe their involvement in doping and all doping by others of which they were aware. Mr. Armstrong was likewise contacted through his legal counsel and given the opportunity to meet with USADA to fully and truthfully disclose all knowledge of anti-doping rule

---

[1] Copies of the Applicable Rules are provided as Attachments A (versions of UCI ADR), B (versions of the World Anti-Doping Code), and C (the current version of the USADA Protocol).

violations committed in the sport of cycling. However, Mr. Armstrong declined USADA's offer.

Information set forth herein also comes from a number of other eyewitnesses to the conduct described. In every instance the conduct described in this letter has only been relied upon by USADA and described in this letter if the witness has confirmed to USADA that the information is based on his or her first hand knowledge.

**Prohibited Substances and Methods**

The evidence in the possession of USADA and relevant to violations of the Applicable Rules, by the Respondents reflects a pervasive pattern of doping involving the following prohibited substances and methods:

1. **Erythropoietin (EPO)**, also known as "E," "Po," "Edgar" or "Edgar Allen Poe," among other names. EPO is used by athletes to increase the number of red blood cells in their circulatory system which are available to carry oxygen. EPO use is prohibited under the Applicable Rules. Even after the EPO urine test was developed and implemented in sport in late 2000 EPO was difficult to detect and the Respondents implemented a number of means to avoid detection of EPO use, including: micro-dosing (i.e., using smaller amounts of EPO to reduce the clearance time of the drug), intravenous injections (i.e., injecting the drug directly into the vein rather than subcutaneously to reduce clearance time), saline, plasma or glycerol infusions (described below) and various efforts to avoid testing by drug testers at times that EPO might still be detectable in the riders' urine. Multiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007 have reported to USADA that Team Director Johan Bruyneel, Team Trainer Jose Pepe Marti and co-conspirator, Dr. Michele Ferrari, a consultant to the USPS and Discovery Channel teams and their riders, developed training plans dependent upon EPO use and instructed riders to use the drug. USADA has received eyewitness statements that EPO injections were administered by Dr. Luis Garcia del Moral, Dr. Pedro Celaya and Dr. Ferrari. Multiple riders with first hand knowledge will testify that between 1998 and 2005 Armstrong personally used EPO and on multiple occasions distributed EPO to other riders.

2. **Blood transfusions** (a/k/a "**blood doping**"). Blood transfusions generally involve the extraction of an athlete's own blood pre-competition and re-infusion of that blood shortly before or during competition (e.g., in the evening or on a rest day in a multi-stage race) to increase the athlete's oxygen carrying red blood cells. By increasing the number of circulating red blood cells transfusions increase the oxygen carrying capacity of the blood and enhance endurance and recovery. No effective anti-doping test has yet been implemented to detect autologous transfusions (i.e.,

transfusions of an athlete's own blood). Blood transfusions, however, carry substantial health risks and due to the need to transport the blood in appropriate conditions generally require support. Blood transfusions became more important to the conspiracy described herein after the urine EPO test was introduced in 2000. Multiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007 have reported to USADA that Team Director Johan Bruyneel, Team Trainer Jose Pepe Marti and co-conspirator, Dr. Michele Ferrari, a consultant to the USPS and Discovery Channel teams and their members, developed training plans dependent upon blood transfusions. Blood transfusions were facilitated by Johan Bruyneel, Pepe Marti, Dr. del Moral, Dr. Celaya, and Dr. Ferrari. Multiple riders will testify that during the period from 2000 – 2005 Armstrong used blood transfusions, was observed having blood re-infused, including during the Tour de France, and had blood doping equipment at his residence.

3. **Testosterone**. Also known on the USPS and Discovery Channel cycling teams as "oil." Testosterone is an anabolic agent and can increase muscle mass and strength. In smaller doses anabolic agents such as testosterone can promote muscle recovery from strenuous exercise and increase endurance. Andriol consists of testosterone undecanoate a steroid which can be mixed with oil and taken orally. Taken in this way the drug can be absorbed into the lymphatic system without being transported to the liver, making the drug more effective and reducing the prospect of liver damage. Multiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007 have reported that Dr. Ferrari developed a method of mixing testosterone (i.e., andriol) with olive oil for oral administration and that this testosterone-olive oil mixture was frequently administered to team members. Riders called this testosterone-olive oil mixture, the "oil." Numerous USPS and Discovery Channel riders have also reported the frequent use of testosterone patches by team members and that oral testosterone (pills or oil), testosterone injections or testosterone patches were provided by Johan Bruyneel, Pepe Marti and Drs. del Moral, Celaya and Ferrari. USADA has eyewitness statements from multiple sources that Lance Armstrong used testosterone and administered the testosterone-olive oil mixture to himself and other riders.

4. **Human Growth Hormone (hGH)**. Human growth hormone is improperly used in sport to increase strength and lean muscle mass, to assist in weight loss and to promote recovery. Multiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007 have reported to USADA that team director Johan Bruyneel, team trainer Jose Pepe Marti and team doctors Luis del Moral and Pedro Celaya provided human growth hormone to team members.

5. **Corticosteroids** (e.g., **cortisone**). These drugs reduce inflammation, assist in recovery and can provide a burst of energy and create a temporary feeling of increased energy and wellbeing. Throughout the relevant time period corticosteroids were improperly provided to cyclists by team doctors and trainers to increase energy and enhance performance. Although corticosteroids can be legally administered to treat a localized injury, numerous USPS and Discovery Channel team members and employees report that prescriptions for corticosteroids were regularly fabricated by Drs. Celaya and del Moral to cover the improper administration of corticosteroids to athletes without a legitimate medical need for the drugs and using techniques of administration barred by UCI anti-doping rules and that Johan Bruyneel and Pepe Marti encouraged the unauthorized use of corticosteroids for performance enhancement and gave these drugs to riders. USADA will also rely upon first hand testimony from witnesses who were aware of Armstrong's use of cortisone without medical authorization.

6. **Saline and plasma infusions**. Throughout much of the relevant period the UCI employed a blood monitoring program and would not permit riders to compete if the rider's hematocrit (i.e., percentage of mature red blood cells) exceeded 50%. To avoid exceeding the 50% hematocrit threshold and to prevent detection of the rider's EPO use and/or blood transfusions, Respondents used the prohibited technique of saline, plasma or glycerol infusions to mask their use of prohibited substances and/or methods. Multiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007 have reported to USADA that each rider's hematocrit level was always of primary interest to team director Johan Bruyneel and that team trainer Jose Pepe Marti and team doctors del Moral and Celaya administered saline and plasma infusions to team members. USADA will also present testimony concerning infusions given to numerous USPS riders, including Lance Armstrong.

**Rule Violations**

Numerous former riders and employees of the United States Postal Service, Discovery Channel, Astana, RadioShack, Phonak and/or ONCE cycling teams will testify that the below individuals committed anti-doping rule violations[2] as follows:

---

[2] As identified in this letter,

Rules applicable to **use** and/or **attempted use** of prohibited substances or methods include: UCI ADR 2 (1997-2000); UCI ADR 130 (2001-2004); UCI ADR 15.2 (2005-2008); UCI ADR 21.2 (2009-present); and Code Article 2.2 (2003-present);

By **Johan Bruyneel** (Team Director):

(1) **Possession** of prohibited substances and/or methods including EPO, blood transfusions and related equipment (such as needles, blood bags, storage containers and other transfusion equipment and blood parameters measuring devices), testosterone, hGH, corticosteroids, and masking agents, as described in more detail above.

(2) **Trafficking** of EPO, blood transfusions, testosterone, hGH, corticosteroids and masking agents as described in more detail above.

(3) **Administration** and/or **attempted administration** of EPO, blood transfusions, testosterone, hGH, corticosteroids, and masking agents as described in more detail above.

(4) **Assisting**, **encouraging**, **aiding**, **abetting**, **covering up** and **other complicity** involving one or more anti-doping rule violations and/or attempted anti-doping rule violations.

(5) **Aggravating circumstances** justifying a period of ineligibility greater than the standard sanction.

---

Rules applicable to the **possession** of prohibited substances and/or methods include: UCI ADR 135 (2001-2004); UCI ADR 15.6.1 (2005-2008); UCI ADR 21.6.1 (2009-present); and Code Article 2.6.1 (2003-present);

Rules applicable to **trafficking** include: UCI ADR 135 (2001-04); UCI ADR 15.7 (2005-2008); UCI ADR 21.7 (2009-present); and Code Article 2.7 (2003-present);

Rules applicable to **administration** and/or **attempted administration** include: UCI ADR 54, §1-2 (1997-2000); UCI ADR 133 (2001-2004); UCI ADR 15.8 (2005-2008); UCI ADR 21.8 (2009-present); and Code Article 2.8 (2003-present);

Rules applicable to **assisting**, **encouraging**, **aiding**, **abetting**, **covering up** and **other complicity** involving one or more anti-doping rule violations and/or attempted anti-doping rule violations include: each of the above listed provisions and UCI ADR 54, §1-2 (1997-2000); UCI ADR 133 (2001-2004); UCI ADR 15.8 (2005-2008); UCI ADR 21.8 (2009-present); Code Article 2.8 (2003-present); and

Rules applicable to **aggravating circumstances** include: UCI ADR 305 (2009-present) and Code Article 10.6 (2009-present).

Mr. Johan Bruyneel was a rider with the ONCE team in 1998. In 1999 Mr. Bruyneel became Team Director with the USPS Cycling Team, a position he held through 2007 (although the team name was changed to the Discovery Channel Cycling Team for the period 2005-2007). During 2008-2009 Mr. Bruyneel was Director of the Astana Cycling Team. Since 2010 he has been the Team Director or Team Manager for the RadioShack Team (now referred to as the RadioShack Nissan Trek Cycling Team).

With respect to Mr. Bruyneel, numerous riders will testify that Mr. Bruyneel gave to them and/or encouraged them to use doping products and/or prohibited methods, including EPO, blood transfusions, testosterone, hGH and cortisone during the period from 1999 through 2007. Riders and other witnesses will also testify that Bruyneel worked actively to conceal rule violations by himself and others throughout the period from 1999 through the present.

By **Dr. Pedro Celaya** (Team Doctor):

(1) **Possession** of prohibited substances and/or methods including EPO, blood transfusions and related equipment (such as needles, blood bags, storage containers and other transfusion equipment and blood parameters measuring devices), testosterone, hGH, corticosteroids, and masking agents, as described in more detail above.

(2) **Trafficking** of EPO, blood transfusions, testosterone, hGH, corticosteroids and masking agents as described in more detail above.

(3) **Administration** and/or **attempted administration** of EPO, blood transfusions, testosterone, hGH, corticosteroids, and masking agents as described in more detail above.

(4) **Assisting**, **encouraging**, **aiding**, **abetting**, **covering up** and **other complicity** involving one or more anti-doping rule violations and/or attempted anti-doping rule violations.

(5) **Aggravating circumstances** justifying a period of ineligibility greater than the standard sanction.

Dr. Pedro Celaya was a Team Doctor for the USPS Cycling Team from 1997 through 1998 and from 2004 through 2007, by which time the team had come to be known as the Discovery Channel Cycling Team. During all or part of the period from 1999 through 2003 Dr. Celaya was a team doctor for the ONCE cycling team. Dr. Celaya is currently a Team Doctor for the RadioShack Nissan Trek Cycling Team.

With respect to Dr. Celaya, numerous riders will testify that Dr. Celaya gave to them and/or encouraged them to use doping products and/or prohibited methods, including EPO, blood transfusions, testosterone, hGH, cortisone and infusions of saline, plasma and/or glycerol during the period from 1998 through 2007. Riders and other witnesses will also

testify that Celaya worked actively to conceal rule violations by himself and others throughout the period from 1998 through the present.

By **Dr. Luis del Moral** (Team Doctor):

(1) **Possession** of prohibited substances and/or methods including EPO, blood transfusions and related equipment (such as needles, blood bags, storage containers and other transfusion equipment and blood parameters measuring devices), testosterone, hGH, corticosteroids, and masking agents, as described in more detail above.

(2) **Trafficking** of EPO, blood transfusions, testosterone, hGH, corticosteroids and masking agents as described in more detail above.

(3) **Administration** and/or **attempted administration** of EPO, blood transfusions, testosterone, hGH, corticosteroids, and masking agents as described in more detail above.

(4) **Assisting**, **encouraging**, **aiding**, **abetting**, **covering up** and **other complicity** involving one or more anti-doping rule violations and/or attempted anti-doping rule violations.

(5) **Aggravating circumstances** justifying a period of ineligibility greater than the standard sanction.

Dr. Luis Garcia del Moral was the Team Doctor for the USPS Cycling Team for the period from 1999 through 2003. Subsequently, Dr. del Moral continued to serve as a physician for many cyclists. He currently works as a sports doctor in Valencia, Spain.

With respect to Dr. del Moral, numerous riders will testify that Dr. del Moral gave to them, encouraged them to use and/or assisted them in using doping products and/or prohibited methods, including EPO, blood transfusions, testosterone, hGH, cortisone and infusions of saline, plasma and/or glycerol during the period from 1999 through 2005. Riders and other witnesses will also testify that del Moral worked actively to conceal rule violations by himself and others throughout the period from 1999 through the present.

By **Dr. Michele Ferrari** (Consulting Doctor):

(1) **Possession** of prohibited substances and/or methods including EPO, blood transfusions and related equipment (such as needles, blood bags, storage containers and other transfusion equipment and blood parameters measuring devices), and testosterone as described in more detail above.

(2) **Trafficking** of EPO, blood transfusions, testosterone, and corticosteroids as described in more detail above.

(3) **Administration** and/or **attempted administration** of EPO, blood transfusions, testosterone, and corticosteroids as described in more detail above.

(4) **Assisting**, **encouraging**, **aiding**, **abetting**, **covering up** and **other complicity** involving one or more anti-doping rule violations and/or attempted anti-doping rule violations.

(5) **Aggravating circumstances** justifying a period of ineligibility greater than the standard sanction.

Dr. Michele Ferrari is a sports doctor who has worked with numerous cyclists and cycling teams. Dr. Ferrari served as a consultant and doctor to the USPS Cycling Team and many of its riders during the period from 1999 through 2007. Dr. Ferrari has developed, and is currently associated with, the website 53x12.com which is devoted to providing training information to road cyclists.

With respect to Dr. Ferrari, numerous riders will testify that Dr. Ferrari gave to them, encouraged them to use and/or assisted them in using doping products and/or prohibited methods, including EPO, blood transfusions, and testosterone during the period from 1999 through 2006. Riders and other witnesses will also testify that Ferrari taught them how to avoid detection of their drug use, actively working to conceal rule violations by himself and others throughout the period from 1999 through the present.

By **Jose Pepe Marti** (Team Trainer):

(1) **Possession** of prohibited substances and/or methods including EPO, blood transfusions and related equipment (such as needles, blood bags, storage containers and other transfusion equipment and blood parameters measuring devices), testosterone, hGH, corticosteroids, and masking agents, as described in more detail above.

(2) **Trafficking** of EPO, blood transfusions, testosterone, hGH, corticosteroids, and masking agents as described in more detail above.

(3) **Administration** and/or **attempted administration** of EPO, blood transfusions, testosterone, hGH, corticosteroids, and masking agents as described in more detail above.

(4) **Assisting**, **encouraging**, **aiding**, **abetting**, **covering up** and **other complicity** involving one or more anti-doping rule violations and/or attempted anti-doping rule violations.

(5) **Aggravating circumstances** justifying a period of ineligibility greater than the standard sanction.

Mr. Jose Pepe Marti was the Team Trainer for the USPS Cycling Team beginning in 1999 and continued in that position until 2007. Thereafter, Mr. Marti became a trainer with the Astana Cycling Team in 2008, and it is believed that he continued in this capacity through 2010 and was subsequently employed in cycling until sometime earlier this year.

With respect to Mr. Marti, numerous riders will testify that Mr. Marti gave to them and/or encouraged them to use doping products and/or prohibited methods, including EPO, blood transfusions, testosterone, hGH and cortisone during the period from 1999 through 2007. Riders and other witnesses will also testify that Marti worked actively to conceal rule violations by himself and others throughout the period from 1999 through the present.

By **Lance Armstrong** (Rider):

(1) **Use** and/or **attempted use** of prohibited substances and/or methods including EPO, blood transfusions, testosterone, corticosteroids and masking agents.

(2) **Possession** of prohibited substances and/or methods including EPO, blood transfusions and related equipment (such as needles, blood bags, storage containers and other transfusion equipment and blood parameters measuring devices), testosterone, corticosteroids and masking agents.

(3) **Trafficking** of EPO, testosterone, and corticosteroids as described in more detail above.

(4) **Administration** and/or **attempted administration** to others of EPO, testosterone, and cortisone.

(5) **Assisting**, **encouraging**, **aiding**, **abetting**, **covering up** and **other complicity** involving one or more anti-doping rule violations and/or attempted anti-doping rule violations.

(6) **Aggravating circumstances** justifying a period of ineligibility greater than the standard sanction.

Mr. Lance Armstrong was a cyclist with the USPS Cycling Team (and later the Discovery Channel team) during the period of 1998 through 2005. He rode on the Astana Cycling Team in 2009 and on the RadioShack Cycling Team during 2010 and early 2011.

With respect to Lance Armstrong, numerous riders, team personnel and others will testify based on personal knowledge acquired either through observing Armstrong dope or through Armstrong's admissions of doping to them that Lance Armstrong used EPO, blood

transfusions, testosterone and cortisone during the period from before 1998 through 2005, and that he had previously used EPO, testosterone and hGH through 1996.

Numerous riders will also testify that Lance Armstrong gave to them, encouraged them to use and/or assisted them in using doping products and/or methods, including EPO, blood transfusions, testosterone and cortisone during the period from 1999 through 2005.

Representatives of USADA have interviewed Dr. Martial Saugy, Director of the Lausanne Anti-Doping Laboratory which analyzed the urine samples from the 2001 Tour of Switzerland. Dr. Saugy stated that Lance Armstrong's urine sample results from the 2001 Tour of Switzerland were indicative of EPO use. Multiple witnesses have also told USADA that Lance Armstrong told them he had tested positive in 2001 and that the test result had been covered up.

Lance Armstrong's doping is further evidenced by the data from blood collections obtained by the UCI from Lance Armstrong in 2009 and 2010. This data is fully consistent with blood manipulation including EPO use and/or blood transfusions.

**USPS Conspiracy**

This action is being brought as a single consolidated action because for a significant part of the period from January 1, 1998, through the present, each of the Respondents has been part of a doping conspiracy involving team officials, employees, doctors, and elite cyclists of the United States Postal Service and Discovery Channel Cycling Teams who committed numerous violations of the Applicable Rules (the "USPS Conspiracy" or the "Conspiracy").

The purpose of the USPS Conspiracy was to engage in the use of doping substances and techniques, which were either undetectable or difficult to detect in routine drug testing in order to advance the athletic and sporting achievements, financial wellbeing and status of the teams and their riders, employees, members and investors and to engage in techniques to avoid detection of the athletes' use of banned performance enhancing drugs as well as to prevent the truth regarding doping on the teams and by the riders and their support personnel from being revealed. After December 31, 2007, the Conspiracy continued as various members of the Conspiracy continued to engage in conduct to cover up the doping and violations of the Applicable Rules.

Because of the nature of the USPS Conspiracy, the fact that each of the Respondents actively participated together in a long running doping conspiracy and due to the close integration of the evidence against each of the Respondents as described herein this proceeding is being brought as a consolidated case.

**Common Practices and Acts of the Conspiracy**

USADA anticipates testimony from one or more witnesses or other participants in the USPS Conspiracy who will testify to the following:

1. The acquisition of banned performance enhancing drugs by high ranking team officials and riders including Bruyneel, Celaya, del Moral, Ferrari, Marti and Armstrong.

2. The distribution of drugs by Bruyneel, Celaya, del Moral, Ferrari, Marti and Armstrong to elite cyclists included in the Conspiracy.

3. The use of secretive methods, including code names, and the use of masking agents to avoid detection of banned performance enhancing drugs and prohibited methods.

4. The expectation that elite athletes on the Tour de France team would use EPO and/or blood transfusions to improve their ability to help the team leader(s) perform in the general classification of the Tour de France.

5. The provision of drugs to elite athletes in preparation for, and during, other races important to the teams in an effort to enhance the performance of the riders and the team in those races.

6. The use of fear, intimidation and coercion to attempt to enforce a code of silence (or omerta) by team members and employees to prevent detection of the Conspiracy or the prosecution of co-conspirators for anti-doping rule violations.

**Cover-Up**

Beginning in 1999 and continuing through the present it has been an object of the Conspiracy to conceal and cover-up the doping conduct of the USPS Conspiracy. Numerous witnesses will testify that as part of this cover-up Johan Bruyneel, Pedro Celaya, Michele Ferrari, Lance Armstrong and other co-conspirators engaged in activities to conceal their conduct and mislead anti-doping authorities including false statements to the media, false statements and false testimony given under oath and in legal proceedings, and attempts to intimidate, discredit, silence and retaliate against witnesses.

**USADA's Results Management Authority**

Pursuant to the UCI ADR, USADA has results management authority, including authority to conduct hearings, for any anti-doping rule violations where no sample collection is involved and where USADA is the Anti-Doping Organization which discovered "elements that turn out to be evidence for facts that apparently constitute an anti-doping rule

violation." UCI ADR, art. 10; *see also* UCI ADR, art. 13. Also pursuant to the UCI ADR, the results management and hearing process in such cases is to be administered by and under the USADA Protocol. UCI ADR, art. 13. USADA's jurisdiction extends to both UCI and USA Cycling license-holders and also to:

a) Any *Person* who, without being a holder of a license, participates in a cycling *Event* in any capacity whatsoever, including, without limitation, as a rider, coach, trainer, manager, team director, team staff, agent, official, medical or para-medical personnel or parent and;

b) Any *Person* who, without being a holder of a license, participates, in the framework of a club, trade team, national federation or any other structure participating in *Races*, in the preparation or support of riders for sports competitions[.]

UCI ADR, art. 18.

**Review Board Process**

The USADA Protocol provides that USADA is to make a written submittal to the Anti-Doping Review Board (the "Review Board") setting forth information which USADA deems appropriate related to the anti-doping rule violation(s). USADA Protocol, clause 11(c)(ii). As noted in the USADA Protocol, the process before the Review Board is not the hearing stage and the Review Board may only consider "written submittals." *See* USADA Protocol, clause 11(c)(vi). The function of the Review Board is to review the written submittals to recommend whether "there is sufficient evidence of doping to proceed with the adjudication process." USADA Protocol, clause 11(c)(vii).

As in most so called "non-analytical cases" (i.e., cases that are not premised entirely upon positive laboratory test results) and as provided in the USADA Protocol, weighing the evidence, assessing the credibility of witnesses and resolving factual disputes is to be done exclusively by *the arbitration panel* that will ultimately hear the case. Assessing the weight of the evidence and addressing factual disputes, however, is not part of the process before the Review Board as only written submittals may be made to the Review Board.

USADA is required to redact the name of persons responding to alleged rule violations from the submittal made to the Review Board. *See* USADA Protocol, clause 11(c)(ii). Accordingly, USADA will redact the names of Mr. Bruyneel, Mr. Marti, Dr. Celaya, Dr. del Moral, Dr. Ferrari and Mr. Armstrong from this letter upon submission of the letter to the Review Board. Consistent with this aspect of the USADA Protocol, USADA has not set forth in this letter the names of its witnesses.

In this case anonymity of the witnesses at the Review Board stage is also important to shield them from the retaliation and attempted witness intimidation that cooperating witnesses have faced in other matters related to the USPS Conspiracy. As in every case

under the USADA Protocol, should this matter proceed to a hearing USADA will file a complete list of its witnesses at the appropriate time in advance of the arbitration hearing.

Finally, it may be noted that the conduct of the USPS Conspiracy and doping by its participants has spanned a period in excess of eight (8) years and there currently exists an eight year statute of limitations in the Code and UCI ADR. With respect to each of the Respondents there exists substantial evidence in the form of eyewitness testimony of doping that occurred within eight years of the date of this letter.

It is also the law that evidence of doping throughout the entire time period described is relevant and will be admissible in any eventual hearing for at least two reasons: (1) evidence of doping and evidence of conspiratorial acts outside any applicable limitations period can be used to corroborate evidence within the limitations period, and (2) as explained in *USADA v. Hellebuyck* (copy provided as Attachment D) results outside the limitations period can be disqualified where reliance on the statute of limitations has been waived through false statements, fraudulent concealment or other wrongful conduct.

**Commencement of Action for Anti-Doping Rule Violations**

Pursuant to the Applicable Rules and based on the evidence collected to date, including, but not limited to, the evidence described above, USADA is initiating the process set forth in the Protocol concerning your anti-doping rules violations.

At this time, we are forwarding this matter to a panel of the USADA Anti-Doping Review Board for its consideration and recommendation as set forth in the USADA Protocol. Pursuant to the Protocol, you have the right to make written submittals to the Review Board for its consideration. Any written submittals from you must be received by USADA for transmittal to the Review Board by **June 22, 2012**. You must provide USADA with four (4) copies of all submitted materials, so that a copy may be distributed to each member of the Review Board. If you wish to file your submission in advance of **June 22, 2012**, please indicate that your submission is complete. The documents submitted by USADA to the Review Board will have your name redacted. USADA will not redact any documents you submit to the Review Board.

If this case proceeds beyond the Anti-Doping Review Board, USADA will recommend a sanction under the Applicable Rules which may include up to a lifetime period of ineligibility from participation in sport. If you choose to contest the consequence recommended by USADA, you will have the right to request a hearing. If a hearing is held in the regular course, you should anticipate a hearing date before November, 2012.

If you or your representatives have any questions or need additional information, please feel free to contact William Bock, USADA's General Counsel at 719-785-2061 or Onye Ikwuakor, USADA's Legal Affairs Director at 719-785-2037.

You may also contact John Ruger, the USOC Athlete Ombudsman who is completely independent of USADA, at One Olympic Plaza, Colorado Springs, CO 80909, by telephone at (719) 866-5000, by fax at (719) 866-3000, by website at www.athleteombudsman.org or by e-mail at John.Ruger@usoc.org and you are encouraged to contact your own personal attorney. Where your counsel is known to USADA they have been served with this notice as a courtesy and in order to expedite notice to you and your counsel.

Except as provided in the USADA Protocol, USADA will not publicly disclose or comment on the specifics of your case until it has been resolved. By copy of this letter, USADA is notifying UCI, WTC, USA Cycling, USA Triathlon and the USOC of this matter and requests that these organizations not comment publicly concerning this information until disclosed as provided in the Protocol.

Because only Mr. Armstrong currently participates in the sport of triathlon, the letters provided to WTC and USA Triathlon have the names of Mr. Bruyneel, Dr. Celaya, Dr. del Moral, Dr. Ferrari and Mr. Marti redacted from them.

USADA reserves the right to amend this notice as needed or as additional information becomes available.

Sincerely,

Lisa McCumber
Testing Results Manager

Enclosures

cc (w/o encls.): Olivier Niggli, WADA Legal Director
Mario Zorzoli, UCI Chief Medical Officer
Francesca Rossi, UCI Anti-Doping Manager
Andrew Messick, CEO, WTC (names of certain Respondents redacted)
Rana Dershowitz, USOC General Counsel
Gary Johansen, USOC Associate General Counsel
John Ruger, USOC Athlete Ombudsman
Steve Johnson, USA Cycling CEO
Sean Petty, USA Cycling COO
Rob Urbach, USA Triathlon CEO(names of certain Respondents redacted)