# EXHIBIT 3

**PATTON BOGGS** LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 15, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA E-MAIL AND FAX**

William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO  80919

Dear Bill:

As a member of the legal team representing Lance Armstrong, I wrote to you on June 8th on behalf of our client.  In that letter, I asked (1) that you share the concerns and complaints the letter raises with the Chair of USADA's Audit & Ethics Committee for its consideration; (2) that we be afforded an opportunity to be heard by USADA's Audit & Ethics Committee; and (3) that you reconsider your earlier refusal and agree to meet with us regarding USADA's investigation. My June 8th letter is attached as Exhibit 1 to this letter.  You never responded to my letter or even acknowledged its receipt.  By its silence, we assume that USADA refuses to meet with us and has failed to follow its own internal ethics procedures.

I then wrote to you on June 13th to ask that you provide us with the evidence that is the basis of USADA's submission to the USADA Anti-Doping Review Board.  As I explained in that letter, we need that information in order to review and understand the alleged evidence and make a meaningful written submission to the Review Board in response, as allowed and contemplated under the procedures written by USADA and incorporated into the contract between the USOC and USADA.  We asked for notice of the accusations, the identity of the accusers, and the documents and evidence that support the charges so that we could protect important rights, reputation and the livelihood of our client and evaluate and refute the charges to the Review Board.  The evidence must also be provided to the Review Board, so it can assess the weakness or strength of the case and make an informed decision not to subject Lance to charges that should never be brought.  We again referenced our concerns about the process and USADA's conduct, our request that issues related to the conduct of USADA, including the conduct of its CEO and General Counsel, and the need for that conduct to be submitted to and reviewed by the USADA Audit and Ethics Committee under the applicable rules of USADA.  My June 13th

5243346



PATTON BOGGS LLP
ATTORNEYS AT LAW

William Bock, III
June 15, 2012
Page 2

letter is attached as Exhibit 2 to this letter. You never responded to that letter or even acknowledged its receipt. We construe USADA's silence as a categorical rejection of our request.

Since we have received no response to our requests, we are forwarding to you a letter, attached as Exhibit 3, for immediate submission to the USADA Review Board. We ask that you confirm to us that you have furnished the Board with our letter. As you well know, under USADA's Alice in Wonderland rules, you are familiar – but we are not – with the identity of the Board members. If we do not hear from you to confirm that the letter has been promptly delivered, we will again interpret USADA's intentional silence as a rejection of our request and will consider appropriate further steps.

Yours sincerely,

Robert D. Luskin

Attachments

5243346

# Exhibit 1

# PATTON BOGGS LLP

2550 M Street, NW

Washington, DC 20037-1350

202-457-6000

Facsimile 202-457-6315

www.pattonboggs.com

June 8, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA FAX**

William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Spring, CO  80919

Dear Bill:

I am writing on behalf of Tim Herman, John Keker, and myself to respond to your letter to Tim Herman of June 4, 2012, and our telephone conversation on Tuesday, June 5. You have offered what you describe as an "opportunity" for Lance to talk with you about drug use in cycling. Your letter and our call, however, leave no doubt that the "opportunity" is really a demand wrapped in a threat: Lance must appear no later than June 8 or you will launch disciplinary proceedings against him. You have made equally clear that you are not in fact interested in his testimony but in his confession; and that anything short of an admission of persistent drug use would not be deemed "truthful."

Despite our repeated requests, you were unwilling or unable to address three straightforward questions: First, although Lance is no longer actively involved in cycling, the allegations of drug use are at least eight years old and are not supported by any positive drug test or any physical evidence, and the US Attorney abandoned its investigation nearly five months ago, you refused to explain why Lance needed to meet with you on less than a week's notice, particularly, since you are well aware, Lance left the country shortly before you made your demand. Instead, you repeated platitudes about the need to "move forward to clean up cycling" and for Lance to "come clean." Neither of these considerations – even if they were apt – explains the bum's rush. Second, you refused to discuss our concern that your investigation has been advanced through the unlawful disclosure of grand jury information. You flatly denied that you have relied on grand jury information, but then professed not to be familiar with the fact that Travis Tygart participated in witness interviews with Jeff Novitzky, the principal case agent in the criminal investigation, and offered inducements to witnesses to furnish damaging testimony against Lance in the criminal case. Finally, you refused to explain or even to discuss your resistance to an open and open-minded inquiry; you were unwilling to consider anything short of a confession from

5241881


**PATTON BOGGS** llp
ATTORNEYS AT LAW

William Bock, III
June 8, 2012
Page 2

Lance to allegations from witnesses who have lied before about this very subject and whose contrary testimony USADA has recently procured through unlawful and unsanctioned promises of absolution.

We asked for the opportunity to meet with you to explore these and other issues. We sought nothing more or less than a constructive dialogue. You refused. We understand your position to be simply this: Without a confession from Lance, there is nothing to discuss.

Taking all of this into account – the obscene haste; your willful disregard for whether your investigation itself is the product of unlawful conduct; and your blind embrace of witnesses whom every other responsible person has found unworthy of belief – leads us to the inevitable conclusion that this is not, in fact, an investigation, as any fair-minded person would understand the term. It is a vendetta, which has nothing to do with learning the truth and everything to do with settling a score and garnering publicity at Lance's expense.

We will not to be a party to this charade. Lance has publicly and repeatedly made clear that he never doped; and his avowals – unlike the word of the witnesses whose testimony USADA has bought and paid for – are supported by an unblemished, decades-long record of more than 500 drug-free test results. Your refusal to appreciate that distinction says far more about USADA, its methods, and your sense of fair play than it does about Lance's guilt or innocence.

But neither will we be spectators to a lynching. USADA should understand that, if you persist in your effort to vilify Lance Armstrong, we will not hesitate to expose your motives and your methods and to hold you accountable for your conduct. At a minimum, we ask that the concerns that we have raised be shared with the Chair of USADA's Audit & Ethics Committee for its consideration; we ask the opportunity to be heard before that body.

This investigation is a disgrace; far from cleaning up cycling or discouraging the use of performance enhancing drugs, your conduct will undermine USADA's legitimacy and sabotage its mission.

We ask that you reconsider your position and agree to meet with us at your earliest convenience. We continue to seek a constructive dialogue, but otherwise categorically reject your demands, your methods, and your conclusions.

Yours sincerely,

Robert D. Luskin

5241881

# Exhibit 2

# PATTON BOGGS llp

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 13, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA FAX**

William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Spring, CO  80919

Dear Bill:

Yesterday evening, we received notice that USADA is asking its Review Board to authorize USADA to open a formal action against our client, Lance Armstrong, and others for alleged doping violations over a 14-year period from 1996-2010.  According to the notice, the allegations covered Mr. Armstrong's affiliation with the USPS, Discovery, Astana, and Radio Shack teams. The assertions in the letter are allegedly supported by the testimony of more than ten cyclists as well as team employees and are also allegedly corroborated by blood collections from Mr. Armstrong in 2009 and 2010.

We understand that, contemporaneously, you have shared copies of your allegations with the WTC and USA Triathlon.  As you well appreciate and obviously intended, by sharing these allegations, Mr. Armstrong has been suspended immediately from competing in triathlon events, even though the allegations have not yet even been preliminarily reviewed by the Anti-Doping Review Board (and the Review Board has not authorized USADA to pursue them), much less been tested through a genuine adversary process before an independent fact finder.

Finally, your letter notes that Mr. Armstrong declined to cooperate with your investigation, but fails to accurately characterize our conversation last week, our readiness to meet with you to discuss the scope of the investigation, the concerns we have expressed about the process and USADA's conduct, or our request that issues related to the conduct of USADA need to be submitted to and reviewed by the USADA Audit and Ethics Committee under the applicable rules of USADA.

I can't say that any of this – the ridiculous acceptance of allegations unsupported by evidence, your rush to punish first and adjudicate later, or your egregious mischaracterization of our interactions last week – surprises us.  Nor are we surprised that, although you allege what you

5242748


PATTON BOGGS LLP
ATTORNEYS AT LAW

William Bock, III
June 13, 2012
Page 2

repeatedly describe as a long-running and wide-ranging conspiracy involving four different teams, the only rider whom you charge is Mr. Armstrong. The others, we can only assume, have traded their testimony against Mr. Armstrong for promises of absolution and anonymity. USADA and WADA, in particular, Mr. Tygart, Mr. Pound, and Mr. Howman, have long demonstrated their zeal to crucify Mr. Armstrong and, in their relentless pursuit, have lost any semblance of independence, neutrality, or fair play. We have learned the hard way not to underestimate USADA's obsession with Mr. Armstrong, and you have not disappointed us.

We understand that this matter has been forwarded to the USADA Anti-Doping Review Board for its consideration and that we have ten days in which to make a written submission for the Board's consideration. For that process to be more than a fig leaf, there must be a meaningful opportunity to address USADA's charges. Contrary to the assertions in your letter, the purpose of the review process is to provide the Review Board evidence that it can review and at the same time provide that evidence to the athlete so the athlete can respond and the Review Board can exercise some meaningful oversight over USADA. The Review Board process was established with a positive test in mind – and even when there is a positive test the athlete is entitled to all of the evidence about the positive test, chain of custody, etc. so the Review Panel can assess the strength of the case and the athlete can identify reasons the charges should not be brought. In this case, where USADA cannot identify any positive test, the need for presentation of all the evidence on which USADA intends to rely is even more important, otherwise athletes with positive tests will be protected while athletes who have never tested positive will be completely unprotected – that cannot have been what was intended when the USOC authorized USADA to conduct results management for United States athletes.

In particular, we ask that you immediately provide us with the following: First, the charges reflect that the doping allegations are "evidenced by the data from blood collections obtained by the UCI from Lance Armstrong in 2009 and 2010." As you well know, Mr. Armstrong was never told contemporaneously that he had ever failed any test; to the contrary, he successfully passed every test administered to him during that period, as he has passed every test that was ever administered. Under USADA's protocols, you are required to furnish us with copies of any "laboratory documentation," and these should also be furnished to the Review Board. Particularly when these alleged results are entirely inconsistent with prior reports, your compliance with your obligations is essential to any meaningful review. Second, you state repeatedly that your allegations of doping are supported by the testimony of more than 10 riders, as well as other team employees. Amazingly, however, not one of these individuals is charged or even identified. The Board cannot conceivably conduct a meaningful review and we cannot protect Mr. Armstrong's rights without knowing who is saying what about events that allegedly occurred over the course of a decade and a half. Even at this preliminary stage, your reliance on secret witnesses making deliberately vague charges is unconscionable. Your insistence on keeping the identity of your accusers and the details of their accusations a secret forecloses any possibility of meaningful review, and it appears that was your purpose.

5242748


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

William Bock, III
June 13, 2012
Page 3

In addition, as you admit, most of the allegations concern 1998 to 2004, more than eight years ago, and outside the applicable statute of limitations period. You also make allegations about use of performance enhancing drugs before 1996, a period of time more than sixteen years ago. As the basis for this request that the Review Board authorize you to bring a case based primarily on events outside the limitations period, you do not identify any lies to a USADA or CAS panel or other specific evidence that supports a wholesale ignoring of the statute of limitations. Besides the fact that the Hellebuyck case is merely a single arbitration decision that was decided the way USADA would like and is not precedent for this action, this is not a case like Hellebuyck in which both Mr. Hellebuyck and USADA were in agreement that the athlete had admitted to doping before the statute of limitations period, so there was no issue about the unfairness of forcing an athlete to try to prove his innocence of allegations about events that transpired more than eight years ago (in this case, some allegations about what occurred more than sixteen years ago).

Although you have summarily prevented Mr. Armstrong from competing, he remains a competitor. He has never shrunk from a fair fight, particularly to defend his name and his accomplishments. But as things stand, you have orchestrated something that gives the appearance of justice without any of its basic attributes: meaningful notice of the accusations, the identity of the accusers, and the basic documents that support any charges. We ask that you immediately furnish that information to us and to the Review Board so that this process is something more than a review in name only.

Yours sincerely,

Robert D. Luskin

5242748

# Exhibit 3

# PATTON BOGGS LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 15, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA E-MAIL AND FAX**

USADA Anti-Doping Review Board
c/o William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO  80919

To the Members of the Anti-Doping Review Board:

We represent Lance Armstrong, one of six Respondents in the recently-initiated action by the United States Anti-Doping Agency ("USADA") described in the June 12, 2012 letter from Lisa McCumber ("June 12th Letter").[1]   We understand that a copy of the June 12th Letter has already been forwarded to you.  We write to request that the USADA Anti-Doping Review Board ("Review Board") immediately direct USADA to produce to us and the Review Board the categories of evidence and information requested below, which USADA claims to have but has refused to disclose.  We further ask that the Review Board suspend consideration of this matter until all such evidence has been produced and we have had a meaningful opportunity to review it and respond, as provided in the Protocol.  Disclosure of this material is expressly contemplated by the Protocol; it is also consistent with basic principles of fairness.

**Requested Documents**

USADA asserts in the June 12th Letter that, under the Protocol, "the Review Board may only consider 'written submittals.'"  June 12th Letter at 13 (emphasis added).  The Protocol says no such thing.  To the contrary, Section 11 of the Protocol expressly contemplates that the Review Board will have access to, and shall consider before rendering its recommendation, additional

---

[1] The USADA Protocol ("Protocol") provides that "[t]he Athlete's or other Person's name will not be provided to the Review Board by USADA and will be redacted from any documents submitted to the Review Board by USADA."  Protocol, § 11.c.ii.  We have identified Mr. Armstrong here as one of the Respondents because, within a matter of hours after our receipt of the June 12th Letter, the entire letter—including the names of all of the Respondents, not just Mr. Armstrong's—was posted publicly on the Wall Street Journal's website and ESPN's website, thus eliminating any possibility of preserving Mr. Armstrong's promised anonymity during this process.

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 2

documentation beyond the USADA's one-sided written submission and the Respondents' written response. See, e.g., Protocol, §§ 11.a. ("the Review Board shall review all Sample test results") (emphasis in original), 11.c.ii ("[t]he Review Board shall be provided the laboratory documentation"), 11.c.iii. (the respondent(s) "may submit to the Review Board, through USADA, any written materials for the Review Board's consideration") (emphasis added), 11.c.v. ("[t]he Review Board shall be entitled to request additional information from either the USADA or the Athlete or other Person") (emphasis added). Indeed, the principal duty of the Review Board is to determine "whether or not there is sufficient evidence of doping to proceed with an adjudicative process." Id., § 11.c.vii (emphasis added).

In this case, USADA alone possesses the evidence it claims supports its charges. See June 12th Letter, at 3 (acknowledging that the purported "evidence [is] in the possession of USADA"). Yet USADA has submitted absolutely no evidence to either the Review Board or the Respondents. It has simply made representations about what it claims the evidence will show if there is a hearing. But by that point, if the evidence does not, in fact, show what USADA now claims, it will be too late for any of the Respondents to have the protection afforded by the Review Board process. Accordingly, USADA must either submit the evidence it relies upon in the June 12th Letter or the Review Board should summarily recommend that there is not sufficient evidence of doping to proceed with the adjudication process. To allow USADA to claim it has sufficient evidence, but not to require the disclosure of that evidence to the Board for evaluation or to Armstrong for a response, would violate the Protocol and convert the Review Board process into nothing more than a meaningless rubber stamp. Indeed, the sole witness whom USADA has identified, Dr. Martial Saugy, has publicly repudiated the allegations attributed to him by USADA in the June 12th Letter. See Washington Post, "Lance Armstrong Faces Fresh Doping Charges from USADA" (June 13, 2012).

We request that the Review Board immediately instruct USADA to provide Respondents and the Review Board with copies of the following categories of documents, which are specifically referenced in, but not attached to, the June 12th letter:

1.  any documentation of purported statements by witnesses, in any form whatsoever (e.g. affidavits, declarations, interview memoranda, interview notes), with respect to the allegations contained in the June 12th letter;

2.  any documents which USADA contends support the allegations contained in the section of the June 12th Letter titled "Prohibited Substances and Methods," id. at 3–5;

3.  any documents which USADA contends support the allegations contained in the section of the June 12th Letter titled "Rule Violations," id. at 5–11;

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 3

4. any documents related to Mr. Armstrong's alleged positive test for EPO use in 2001, id. at 11;

5. any documents related to "the data from blood collections obtained by the UCI from Lance Armstrong in 2009 and 2010," which USADA alleges is "fully consistent with blood manipulation including EPO use and/or blood transfusions," id. at 11;

6. any documents on which USADA relies for its claim that "for a significant part of the period from January 1, 1998 through the present, each of the Respondents has been part of a doping conspiracy involving team offices, employees, doctors, and elite cyclists of the United States Postal Service and Discovery Channel Cycling Teams" (the so-called "USPS Conspiracy"), id. at 11, including the identity and statements of any experts upon whom USADA relies for those conclusions; and

7. any documentation on which USADA relies for its claim that the Respondents and unnamed co-conspirators engaged in a "cover-up," which allegedly included "false statements to the media, false statements and false testimony given under oath and in legal proceedings, and attempts to intimidate, discredit, silence and retaliate against witnesses," id. at 12.

**Requested Information**

Further, please instruct USADA to provide to the Respondents and the Review Board the following information referenced in the June 12th letter:

1. the identities, including last known address and contact information, of all the cyclists with whom USADA representatives had "face to face meetings" during the course of its investigation, see June 12th Letter, at 1, and the dates, locations, attendees and topics discussed during those meetings, regardless of whether or not USADA intends to present them as witnesses at any future hearing;

2. the identities, including last known address and contact information, of any other individuals contacted—whether interviewed or not—by USADA during the course of its investigation (e.g. the alleged "other eyewitnesses to the conduct", id. at 2), and the dates, locations, attendees and topics discussed during any such conversations, regardless of whether or not USADA intends to present them as witnesses at any future hearing;

3. the identities, including last known address and contact information, of the alleged sources of the "eyewitness statements that EPO injections were administered by Dr. Luis Garcia del Moral, Dr. Pedro Celaya and Dr. Ferrari," id. at 3;

5243436


**PATTON BOGGS**LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 15, 2012
Page 4

4.   the identities, including last known address and contact information, of the alleged
     "[m]ultiple riders with first hand [sic] knowledge who will testify that between 1998
     and 2005 Armstrong personally used EPO and on multiple occasions distributed
     EPO to other riders," id. at 3;

5.   the identities, including last known address and contact information, of the alleged
     "[m]ultiple riders [who] will testify that during the period from 2000–2005
     Armstrong used blood transfusions, was observed having blood re-infused, including
     during the Tour de France, and had blood doping equipment at his residence," id. at
     4;

6.   the identities, including last known address and contact information, of the alleged
     "[m]ultiple riders who competed on the USPS and Discovery Channel teams from
     1998 through 2007 [who] have reported that Dr. Ferrari developed a method of
     mixing testosterone (i.e. andriol) with olive oil for oral administration" that was
     "frequently administered to team members," as well as the identities of those team
     members who allegedly received this testosterone mix from Dr. Ferrari, id. at 4;

7.   the identities, including last known address and contact information, of the alleged
     "[n]umerous USPS and Discovery Channel riders [who] have also reported the
     frequent use of testosterone patches by team members and that oral testosterone
     (pills or oil), testosterone injections or testosterone patches were provided by John
     Bruyneel, Pepe Marti and Drs. Del Moral, Celaya and Ferrari," id. at 4;

8.   the identities, including last known address and contact information, of the alleged
     "eyewitnesses . . . that Lance Armstrong used testosterone and administered the
     testosterone-olive oil mixture to himself and other riders," id. at 4;

9.   the identities, including last known address and contact information, of the alleged
     "[m]ultiple riders who competed on the USPS and Discovery Channel teams from
     1998 through 2007" who claim "that team director Johan Bruynell, team trainer Jose
     Pepe Marti and team doctors Luis del Moral and Pedro Celaya provided human
     grown hormone to team members," id. at 4;

10.  the identities, including last known address and contact information, of the alleged
     "numerous USPS and Discovery Channel team members and employees [who]
     report that prescriptions for corticosteroids were regularly fabricated by Drs. Celeya
     and del Moral to cover improper administration of corticosteroids to athletes without
     a legitimate medical need for the drugs and using techniques of administration barred
     by UCI anti-doping rules and that Johan Bruyneel and Pepe Marti encouraged the

5243436


**PATTON BOGGS**llp
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 15, 2012
Page 5

unauthorized use of corticosteroids for performance enhancement and gave these drugs to riders," id. at 5;

11. the identities, including last known address and contact information, of the alleged "witnesses who were aware of Armstrong's use of cortisone without medical authorization," id. at 5;

12. the identities, including last known address and contact information, of the alleged "[m]ultiple riders who competed on the USPS and Discovery Channel terms from 1998 through 2007 [who] have reported to USADA that each rider's hematocrit level was always of primary interest to team doctor Johan Bruyneel and that team trainer Jose Pepe Marti and team doctors del Moral and Celaya administered saline and plasma infusions to team members," id. at 5;

13. the identities, including last known address and contact information, of the witnesses who USADA alleges will testify "concerning [saline, plasma or glycerol] infusions given to numerous USPS riders, including Lance Armstrong," id. at 5, and specifically when those infusions occurred, as the rules concerning such infusions have changed during the 14-year or perhaps more than 16-year time period addressed in the June 12th Letter;

14. the identities, including last known address and contact information, of the alleged "[n]umerous former riders and employees of the United States Postal Service, Discovery Channel, Astana, RadioShack, Phonak and/or ONCE cycling teams [who] will testify" that the following individuals "committed [the] anti-doping rule violations" set forth in the section of the June 12th Letter titled "Rule Violations," id. at 5–11:

   a.    Johan Bruyneel;

   b.    Dr. Pedro Celaya;

   c.    Dr. Luis del Moral;

   d.    Dr. Michele Ferrari;

   e.    Jose Pepe Marti; and

   f.    Lance Armstrong;

15. the identities, including last known address and contact information, of the alleged "[m]ultiple witnesses [who] have also told USADA that Lance Armstrong told them

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 6

he had tested positive [for EPO] in 2001 and that the test result had been covered up," id. at 11;

16. the dates, locations, attendees and topics discussed during USADA's interview(s) of Dr. Martial Saugy, Director of the Lausanne Anti-Doping Laboratory, id. at 11;

17. the identities, including last known address and contact information, of the alleged "[m]ultiple witnesses [who] have also told USADA that Lance Armstrong told them he had tested positive [for EPO] in 2001 and that the test result had been covered up," id. at 11;

18. the identities, including last known address and contact information, of any alleged witnesses who will testify to the existence of the so-called "USPS Conspiracy" involving Mr. Armstrong, id. at 11–12; and

19. the identities, including last known address and contact information, of the alleged "[n]umerous witnesses [who] will testify that as part of [a] cover-up Johan Bruyneel, Pedro Celaya, Michele Ferrari, Lance Armstrong and other co-conspirators engaged in activities to conceal their conduct and mislead anti-doping authorities including false statements to the media, false statements and false testimony given under oath and in legal proceedings, and attempts to intimidate, discredit, silence and retaliate against witnesses," id. at 12.

The Review Board is empowered to compel production of these documents and information from USADA. See Protocol, Sec. 11.c.v. ("The Review Board shall be entitled to request additional information from either USADA or the Athlete or other Person." (emphasis in original)).

The Review Board's charge is clear: to determine "whether or not there is sufficient evidence of doping to proceed with the adjudication process." See Protocol, § 11.c.vii. USADA has submitted no evidence to support its spurious allegations. USADA must either submit the evidence it relies upon in the June 12th letter or the Review Board should summarily recommend that this matter be dismissed for lack of sufficient evidence. To permit USADA to proceed without sharing its evidence would violate not only the clear language of the Protocol, but also our shared concepts of justice and fair play.

Yours sincerely,

Robert D. Luskin

5243436