# EXHIBIT 4

**PATTON BOGGS** LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 15, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA E-MAIL AND FAX**

USADA Anti-Doping Review Board
c/o William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO  80919

To the Members of the Anti-Doping Review Board:

We represent Lance Armstrong, one of six Respondents in the recently-initiated action by the United States Anti-Doping Agency ("USADA") described in the June 12, 2012 letter from Lisa McCumber ("June 12th Letter").[1]  We understand that a copy of the June 12th Letter has already been forwarded to you.  We write to request that the USADA Anti-Doping Review Board ("Review Board") immediately direct USADA to produce to us and the Review Board the categories of evidence and information requested below, which USADA claims to have but has refused to disclose.  We further ask that the Review Board suspend consideration of this matter until all such evidence has been produced and we have had a meaningful opportunity to review it and respond, as provided in the Protocol.  Disclosure of this material is expressly contemplated by the Protocol; it is also consistent with basic principles of fairness.

**Requested Documents**

USADA asserts in the June 12th Letter that, under the Protocol, "the Review Board may only consider 'written submittals.'"  June 12th Letter at 13 (emphasis added).  The Protocol says no such thing.  To the contrary, Section 11 of the Protocol expressly contemplates that the Review Board will have access to, and shall consider before rendering its recommendation, additional

---

[1] The USADA Protocol ("Protocol") provides that "[t]he Athlete's or other Person's name will not be provided to the Review Board by USADA and will be redacted from any documents submitted to the Review Board by USADA."  Protocol, § 11.c.ii.  We have identified Mr. Armstrong here as one of the Respondents because, within a matter of hours after our receipt of the June 12th Letter, the entire letter—including the names of all of the Respondents, not just Mr. Armstrong's—was posted publicly on the Wall Street Journal's website and ESPN's website, thus eliminating any possibility of preserving Mr. Armstrong's promised anonymity during this process.



USADA Anti-Doping Review Board
June 15, 2012
Page 2

documentation beyond the USADA's one-sided written submission and the Respondents' written response. See, e.g., Protocol, §§ 11.a. ("the Review Board shall review all Sample test results") (emphasis in original), 11.c.ii ("[t]he Review Board shall be provided the laboratory documentation"), 11.c.iii. (the respondent(s) "may submit to the Review Board, through USADA, any written materials for the Review Board's consideration") (emphasis added), 11.c.v. ("[t]he Review Board shall be entitled to request additional information from either the USADA or the Athlete or other Person") (emphasis added). Indeed, the principal duty of the Review Board is to determine "whether or not there is sufficient evidence of doping to proceed with an adjudicative process." Id., § 11.c.vii (emphasis added).

In this case, USADA alone possesses the evidence it claims supports its charges. See June 12th Letter, at 3 (acknowledging that the purported "evidence [is] in the possession of USADA"). Yet USADA has submitted absolutely no evidence to either the Review Board or the Respondents. It has simply made representations about what it claims the evidence will show if there is a hearing. But by that point, if the evidence does not, in fact, show what USADA now claims, it will be too late for any of the Respondents to have the protection afforded by the Review Board process. Accordingly, USADA must either submit the evidence it relies upon in the June 12th Letter or the Review Board should summarily recommend that there is not sufficient evidence of doping to proceed with the adjudication process. To allow USADA to claim it has sufficient evidence, but not to require the disclosure of that evidence to the Board for evaluation or to Armstrong for a response, would violate the Protocol and convert the Review Board process into nothing more than a meaningless rubber stamp. Indeed, the sole witness whom USADA has identified, Dr. Martial Saugy, has publicly repudiated the allegations attributed to him by USADA in the June 12th Letter. See Washington Post, "Lance Armstrong Faces Fresh Doping Charges from USADA" (June 13, 2012).

We request that the Review Board immediately instruct USADA to provide Respondents and the Review Board with copies of the following categories of documents, which are specifically referenced in, but not attached to, the June 12th letter:

1. any documentation of purported statements by witnesses, in any form whatsoever (e.g. affidavits, declarations, interview memoranda, interview notes), with respect to the allegations contained in the June 12th letter;

2. any documents which USADA contends support the allegations contained in the section of the June 12th Letter titled "Prohibited Substances and Methods," id. at 3–5;

3. any documents which USADA contends support the allegations contained in the section of the June 12th Letter titled "Rule Violations," id. at 5–11;

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 3

4. any documents related to Mr. Armstrong's alleged positive test for EPO use in 2001, id. at 11;

5. any documents related to "the data from blood collections obtained by the UCI from Lance Armstrong in 2009 and 2010," which USADA alleges is "fully consistent with blood manipulation including EPO use and/or blood transfusions," id. at 11;

6. any documents on which USADA relies for its claim that "for a significant part of the period from January 1, 1998 through the present, each of the Respondents has been part of a doping conspiracy involving team offices, employees, doctors, and elite cyclists of the United States Postal Service and Discovery Channel Cycling Teams" (the so-called "USPS Conspiracy"), id. at 11, including the identity and statements of any experts upon whom USADA relies for those conclusions; and

7. any documentation on which USADA relies for its claim that the Respondents and unnamed co-conspirators engaged in a "cover-up," which allegedly included "false statements to the media, false statements and false testimony given under oath and in legal proceedings, and attempts to intimidate, discredit, silence and retaliate against witnesses," id. at 12.

**Requested Information**

Further, please instruct USADA to provide to the Respondents and the Review Board the following information referenced in the June 12th letter:

1. the identities, including last known address and contact information, of all the cyclists with whom USADA representatives had "face to face meetings" during the course of its investigation, see June 12th Letter, at 1, and the dates, locations, attendees and topics discussed during those meetings, regardless of whether or not USADA intends to present them as witnesses at any future hearing;

2. the identities, including last known address and contact information, of any other individuals contacted—whether interviewed or not—by USADA during the course of its investigation (e.g. the alleged "other eyewitnesses to the conduct", id. at 2), and the dates, locations, attendees and topics discussed during any such conversations, regardless of whether or not USADA intends to present them as witnesses at any future hearing;

3. the identities, including last known address and contact information, of the alleged sources of the "eyewitness statements that EPO injections were administered by Dr. Luis Garcia del Moral, Dr. Pedro Celaya and Dr. Ferrari," id. at 3;

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 4

4. the identities, including last known address and contact information, of the alleged "[m]ultiple riders with first hand [sic] knowledge who will testify that between 1998 and 2005 Armstrong personally used EPO and on multiple occasions distributed EPO to other riders," id. at 3;

5. the identities, including last known address and contact information, of the alleged "[m]ultiple riders [who] will testify that during the period from 2000–2005 Armstrong used blood transfusions, was observed having blood re-infused, including during the Tour de France, and had blood doping equipment at his residence," id. at 4;

6. the identities, including last known address and contact information, of the alleged "[m]ultiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007 [who] have reported that Dr. Ferrari developed a method of mixing testosterone (i.e. andriol) with olive oil for oral administration" that was "frequently administered to team members," as well as the identities of those team members who allegedly received this testosterone mix from Dr. Ferrari, id. at 4;

7. the identities, including last known address and contact information, of the alleged "[n]umerous USPS and Discovery Channel riders [who] have also reported the frequent use of testosterone patches by team members and that oral testosterone (pills or oil), testosterone injections or testosterone patches were provided by John Bruyneel, Pepe Marti and Drs. Del Moral, Celaya and Ferrari," id. at 4;

8. the identities, including last known address and contact information, of the alleged "eyewitnesses . . . that Lance Armstrong used testosterone and administered the testosterone-olive oil mixture to himself and other riders," id. at 4;

9. the identities, including last known address and contact information, of the alleged "[m]ultiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007" who claim "that team director Johan Bruynell, team trainer Jose Pepe Marti and team doctors Luis del Moral and Pedro Celaya provided human grown hormone to team members," id. at 4;

10. the identities, including last known address and contact information, of the alleged "numerous USPS and Discovery Channel team members and employees [who] report that prescriptions for corticosteroids were regularly fabricated by Drs. Celeya and del Moral to cover improper administration of corticosteroids to athletes without a legitimate medical need for the drugs and using techniques of administration barred by UCI anti-doping rules and that Johan Bruyneel and Pepe Marti encouraged the

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 5

    unauthorized use of corticosteroids for performance enhancement and gave these drugs to riders," id. at 5;

11. the identities, including last known address and contact information, of the alleged "witnesses who were aware of Armstrong's use of cortisone without medical authorization," id. at 5;

12. the identities, including last known address and contact information, of the alleged "[m]ultiple riders who competed on the USPS and Discovery Channel terms from 1998 through 2007 [who] have reported to USADA that each rider's hematocrit level was always of primary interest to team doctor Johan Bruyneel and that team trainer Jose Pepe Marti and team doctors del Moral and Celaya administered saline and plasma infusions to team members," id. at 5;

13. the identities, including last known address and contact information, of the witnesses who USADA alleges will testify "concerning [saline, plasma or glycerol] infusions given to numerous USPS riders, including Lance Armstrong," id. at 5, and specifically when those infusions occurred, as the rules concerning such infusions have changed during the 14-year or perhaps more than 16-year time period addressed in the June 12th Letter;

14. the identities, including last known address and contact information, of the alleged "[n]umerous former riders and employees of the United States Postal Service, Discovery Channel, Astana, RadioShack, Phonak and/or ONCE cycling teams [who] will testify" that the following individuals "committed [the] anti-doping rule violations" set forth in the section of the June 12th Letter titled "Rule Violations," id. at 5–11:

    a.    Johan Bruyneel;

    b.    Dr. Pedro Celaya;

    c.    Dr. Luis del Moral;

    d.    Dr. Michele Ferrari;

    e.    Jose Pepe Marti; and

    f.    Lance Armstrong;

15. the identities, including last known address and contact information, of the alleged "[m]ultiple witnesses [who] have also told USADA that Lance Armstrong told them

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 6

      he had tested positive [for EPO] in 2001 and that the test result had been covered up," id. at 11;

16. the dates, locations, attendees and topics discussed during USADA's interview(s) of Dr. Martial Saugy, Director of the Lausanne Anti-Doping Laboratory, id. at 11;

17. the identities, including last known address and contact information, of the alleged "[m]ultiple witnesses [who] have also told USADA that Lance Armstrong told them he had tested positive [for EPO] in 2001 and that the test result had been covered up," id. at 11;

18. the identities, including last known address and contact information, of any alleged witnesses who will testify to the existence of the so-called "USPS Conspiracy" involving Mr. Armstrong, id. at 11–12; and

19. the identities, including last known address and contact information, of the alleged "[n]umerous witnesses [who] will testify that as part of [a] cover-up Johan Bruyneel, Pedro Celaya, Michele Ferrari, Lance Armstrong and other co-conspirators engaged in activities to conceal their conduct and mislead anti-doping authorities including false statements to the media, false statements and false testimony given under oath and in legal proceedings, and attempts to intimidate, discredit, silence and retaliate against witnesses," id. at 12.

The Review Board is empowered to compel production of these documents and information from USADA. See Protocol, Sec. 11.c.v. ("The Review Board shall be entitled to request additional information from either USADA or the Athlete or other Person." (emphasis in original)).

The Review Board's charge is clear: to determine "whether or not there is sufficient evidence of doping to proceed with the adjudication process." See Protocol, § 11.c.vii. USADA has submitted no evidence to support its spurious allegations. USADA must either submit the evidence it relies upon in the June 12th letter or the Review Board should summarily recommend that this matter be dismissed for lack of sufficient evidence. To permit USADA to proceed without sharing its evidence would violate not only the clear language of the Protocol, but also our shared concepts of justice and fair play.

Yours sincerely,

Robert D. Luskin

5243436