# EXHIBIT 8

**PATTON BOGGS** LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 22, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA E-MAIL AND FAX**

USADA Anti-Doping Review Board
c/o William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO  80919

To the Members of the Anti-Doping Review Board:

    We write on behalf of Lance Armstrong to urge the Review Board to prevent USADA from emasculating its own Protocol and the Review Board process.  In a 15-page charging document that is long on stale allegations disproved long ago and short on evidence, USADA claims that from 1998 to 2005 Mr. Armstrong participated in a conspiracy to traffic and administer performance-enhancing drugs.  Though USADA claims it has collected at least ten witnesses to these events, it refuses to name a single one or even to identify what they will say.  USADA also claims that Mr. Armstrong committed doping violations for years, but cannot produce a single positive test result to corroborate this claim.  Curiously, in the face of an alleged conspiracy involving four separate teams of cyclists over two decades, USADA has decided to charge only a single rider: Lance Armstrong.

    While offensive to any notions of due process and fair play, USADA's insistence on keeping its evidence a secret from Mr. Armstrong and the Board makes sense in only one respect: The two specific and recycled allegations that it identifies have been thoroughly and publicly discredited.  USADA claims that Dr. Martial Saugy will allege that Mr. Armstrong's test sample from the 2001 Tour of Switzerland—*an eleven-year old test*—indicated EPO use.  But Dr. Saugy has emphatically rejected the notion that he would validate that sample, telling *The Washington Post*: "It will never be sufficient to say, in fact, it was positive. . . .  I will never go in front of a court with that type of thing."  And after our repeated requests for the evidence upon which USADA relies, it produced nothing more than blood values from 2009 and 2010 that even USADA admits do **not** reflect a positive result and that UCI experts have already rejected as evidence of doping.  Indeed, it is the very same data that Mr. Armstrong himself contemporaneously posted on his website *Livestrong.com* to refute repeated and baseless allegations of doping.  Apart from providing

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 22, 2012
Page 2

Mr. Armstrong with data he already had and allegations that have already been disproved, USADA otherwise has refused to disclose anything else, such as an expert analysis substantiating its unsupported view of these blood values. Consequently, the only "evidence" that USADA puts before this Review Board is its mischaracterization of someone who undermines USADA's case, along with raw data, unaccompanied by expert analysis, that independent experts have rejected as evidencing a violation.

In light of the above, and as we explain in more detail below, the Review Board cannot possibly carry out its obligation to evaluate USADA's case if USADA refuses to disclose its evidence. This is, after all, a ***Review*** Board process, which at least implies that – to perform its function – it have something to review. Yet, although USADA's case remains a secret, its disregard for the Review Board does not: Its General Counsel already has advised us that USADA may ignore what the Review Board recommends and continue its obsessive pursuit of Mr. Armstrong, even if the Review Board finds no evidence upon which to proceed. USADA's overly expansive view of its own authority—not to mention its smug self-regard—undoubtedly explains its threadbare charging document, its arrogant and craven refusal to disclose its evidence, and its complacent expectation that the Review Board will not hold it accountable.

Just two months shy of the Olympic Games, the agency charged with monitoring Olympic athletes has chosen to devote its energies instead to fourteen-year-old charges against an athlete who is not involved in the upcoming games and who has never tested positive for the use of performance-enhancing drugs. Because USADA has given the Review Board no reason to believe that it can prove those charges—much less an excuse to subject Mr. Armstrong to burdensome litigation just to find that out—the Review Board should reject the charges. If the Review Board is not willing to do that, at a minimum, it should suspend consideration of this matter until all such evidence has been produced and Mr. Armstrong receives a reasonable opportunity to review it and respond.

I.      **Procedural Background**

On June 12, 2012, Mr. Armstrong received notice of a request sent by USADA to the Review Board, seeking authorization to open a formal action against Mr. Armstrong and five other Respondents, all from foreign countries, for alleged doping violations over a 14-year period from 1998 through the present. *See USADA Charges*, dated June 12, 2012. Although alleging a long-running and wide-ranging conspiracy involving four teams, USADA charged only one rider: Mr. Armstrong. USADA claims ten cyclists as well as team employees, and blood collections from Mr. Armstrong in 2009 and 2010, will support the charges. *Id.* USADA, however, failed to name any of the witnesses upon which it professes to rely or provide any evidence supporting its apparent interpretation of the blood values. Moreover, USADA has not provided any basis in the applicable rules for charging multiple individuals together and asserting conspiracy claims or for disregarding the governing statute of limitations.



USADA Anti-Doping Review Board
June 22, 2012
Page 3

Consistent with Mr. Armstrong's rights under Section 11 of the USADA Protocol, we requested from USADA the evidence that should have been included in USADA's submission to the Review Board. *See Letter from Robert D. Luskin to William Bock III*, dated June 13, 2012. Specifically, counsel sought: First, any "laboratory documentation" related to alleged 2009 and 2010 blood collections, as required by the Protocol; and second, the identities of the individuals whose testimony supposedly supports the charges and precisely what each individual says. *Id.* at 2-3. In addition, Mr. Armstrong asked for USADA to identify any lies that it believes Mr. Armstrong told to a USADA or CAS panel or other such evidence that would be necessary to justify USADA's otherwise completely unjustified attempt to allege conduct far outside the eight-year statute of limitations period. *Id.* at 3; *see Protocol*, Annex A, art. 17 ("No action may be commenced against an Athlete or other Person for an anti-doping rule violation contained in the Code unless such action is commenced within eight (8) years from the date the violation is asserted to have occurred.").

General Counsel Bock's response letter did little more than personally attack Mr. Armstrong, *see Letter from William Bock to Robert D. Luskin*, dated June 15, 2012, boasting that USADA has an "overwhelming" case, *id.* at 1; emphasizing that "there was no point in USADA meeting with [Mr. Armstrong] because he continues to insist that he has never doped," *id.* at 1-2; contending that Mr. Armstrong's request for witness identities is "a transparent attempt to further bully and intimidate them," *id.* at 2; likening Mr. Armstrong's attempts to defend himself to "omerta"—a tactic employed by La Cosa Nostra organized crime enterprises, *id.* at 2-3; decrying the alleged involvement of "high-priced public relations consultants" in the process, *id.* at 4; and, in an ironic final twist, asking for Mr. Armstrong to assist USADA in collecting evidence, while continuing to deny him access to USADA's information, *id.* at 3. General Counsel Bock also defiantly asserted his preeminence over the Review Board, dismissively claiming that USADA "is free to accept or reject" whatever conclusions the Review Board reaches. *Id.* at 2. General Counsel Bock also rejected Mr. Armstrong's requests for information, agreeing only to surrender some data regarding the 2009 and 2010 blood collections, but characterizing his belated disclosure only "as a courtesy," rather than a legal obligation, and not informing Mr. Armstrong whether Mr. Bock would send that data to the Review Board. *Id.* at 3. As discussed below, UCI experts have already stated that these values do not evidence a positive test.

In the course of subsequent correspondence between the parties, Mr. Bock also: (i) refused counsel's request to extend the ten-day response period despite USADA's belated disclosure of the blood collection data; (ii) refused counsel's request under the applicable bylaws to relay to USADA's Audit and Ethics Committee our written concerns about the unethical and illegal manner in which USADA CEO Travis Tygart and the General Counsel have pursued Mr. Armstrong; and (iii) refused counsel's request to share with the Review Board a detailed request

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 22, 2012
Page 4

for basic documents and information until counsel filed this letter. *See Letter of William Bock III to Robert D. Luskin*, dated June 18, 2012. Evidently, Mr. Bock was, by then, fresh out of "courtesy." The detailed request for the Review Board identified categories of documents and information, such as witness statements, evidence of positive tests, expert statements, and the identity of witnesses whom USADA contacted, witnesses who will testify and individuals whose statements supposedly serve as a basis for the charges. *See* Attach. A (*Letter of Robert D. Luskin to Review Board, c/o William Bock III*, dated June 15, 2012). We respectfully incorporate the substance of that letter into this response and continue to seek the Review Board's assistance in obtaining that information.

Despite counsel's best efforts, USADA alone—and not the USADA Review Board—possesses the evidence that the Review Board needs to fulfill its obligation to exercise meaningful review of the USADA charges. *See USADA Charges* at 3 (acknowledging that "evidence [is] in the possession of USADA"). With the exception of the false assertion about what Dr. Saugy will say regarding a test conducted eleven years ago, as to which there is no longer any record, and possibly the summary of limited blood collection data discussed above (but that may not have been submitted to the Review Board), USADA has submitted absolutely no evidence to either the Review Board or to Mr. Armstrong.

## II. USADA Has Abused Its Powers and this Process.

Given what little information Mr. Armstrong does have, numerous areas of concern wholly undermine the validity of USADA's charges. Quite simply, while there is no evidence of violations by Mr. Armstrong, USADA's conduct supplies ample evidence of its arrogant disregard for federal law and the WADA code. *First*, USADA has procured witness testimony by violating federal law and the WADA code. *Second*, USADA has acquired material in knowing violation of federal grand jury secrecy rules, *see* Fed. R. Crim. P. 6(e). *Third*, the few specific allegations contained in the charges can easily be disproven. *Fourth*, USADA acts outside the scope of its jurisdiction by asserting conspiracy claims and disregarding the governing statute of limitations. *Fifth*, USADA has concealed information that could be used to determine if the violations charged and sanctions sought are consistent with the applicable rules. These concerns must be explored as part of the Review Board's supervision of this matter. As the record currently stands, the Review Board must recommend that this case not move forward.

### A. USADA Has Denied Mr. Armstrong a Meaningful Opportunity to Respond to the Charges.

The purpose of the review process is to provide sufficient evidence to the Review Board and an accused athlete so that the Review Board, with the athlete's involvement, can exercise meaningful oversight over USADA. Although USADA brings this case without a single positive



USADA Anti-Doping Review Board
June 22, 2012
Page 5

test result, the Review Board process was established with a positive test in mind. When one exists, the athlete must receive from USADA all evidence of the test, chain of custody and other material information, including an analysis from a qualified expert who interprets the scientific data and explains the basis for his opinion that the test should be declared a positive. In this way, the Review Board can assess the strength of the case and the athlete can respond with evidence and identify reasons that USADA should either not bring charges or modify them to adjust the charge or the potential sanction.

The rights of accused athletes are embodied in Section 11 of the Protocol, which expressly contemplates that the Review Board will have access to, and shall consider, additional documentation beyond USADA's one-sided charging document and the Respondent's response. *See, e.g.*, Protocol, § 11.a. ("[T]he Review Board shall review all Sample test results . . . ."); § 11.c.ii. ("The Review Board shall be provided the laboratory documentation . . . ."); § 11.c.iii. ("The Athlete . . . may submit to the Review Board, through USADA, any written materials for the Review Board's consideration."); § 11.c.v. ("The Review Board shall be entitled to request additional information from either USADA or the Athlete or other Person."). Indeed, the principal duty of the Review Board is to determine "whether or not there is sufficient evidence of doping to proceed with an adjudicative process." Protocol, § 11.c.vii. In accordance with Section 11, USADA previously has furnished evidence and witness identities to accused athletes contemporaneously with its submission to the Review Board, even where USADA has based its charges on admissions or witness testimony and not on a positive test result. That it refuses to accord these same basic rights to Mr. Armstrong is a disgrace, and highly probative of USADA's readiness to employ unlawful tactics and questionable practices in its zeal to punish Mr. Armstrong at all costs.

Mr. Armstrong cannot, for example, respond to the allegation that ten witnesses will testify against him if he does not know who the witnesses are or what they plan to say. USADA's first response that it will not provide the witnesses' names because Mr. Armstrong may intimidate them is offensive and merits no response. USADA's second response—that it will not do so because the Review Board can consider only written materials—is nonsensical. Mr. Armstrong is not suggesting that the Review Board hear oral testimony; he is suggesting that USADA provide a written submission identifying the witnesses and the testimony that they will allegedly provide. Without knowing who will say what, how can the Review Board assess whether the ten so-called witnesses can provide any evidence sufficient to support a charge?

If, contrary to the Protocol, the Review Board issues a decision to move forward in the absence of USADA's alleged evidence, and that evidence does not show what USADA now claims, it will nonetheless be too late for Mr. Armstrong to have the protection that the Protocol requires an athlete to be afforded by the Review Board process.



USADA Anti-Doping Review Board
June 22, 2012
Page 6

### B. USADA Has Procured Witnesses By Violating Federal Law and the WADA Code.

We have reason to believe that most of USADA's charges derive support primarily from witnesses who have lied before about these very subjects, witnesses whose contrary testimony USADA has recently procured through unlawful and unsanctioned promises of absolution, and witnesses who have been coerced into giving false testimony by threats of criminal prosecution, lifetime bans from their profession, and other improper threats and promises. Far from seeking to abuse or intimidate these witnesses, we believe that the evidence will show that they are victims of USADA misconduct, just as Mr. Armstrong is. Specifically, USADA has unlawfully offered light treatment to former riders who have doped in exchange for their willingness to accuse Mr. Armstrong of misconduct. For instance, Floyd Landis has asserted that the leadership of USADA offered to reduce dramatically any possible penalty in his case if Mr. Landis would testify that he witnessed Mr. Armstrong using performance-enhancing drugs. As Mr. Landis explained in his 2007 book, Travis Tygart and USADA were not interested in any serious punishment for Mr. Landis – their only focus was on generating a doping case against Mr. Armstrong and they were willing to ignore all the applicable rules to do it:

> Howard Jacobs [Landis's attorney] was sitting in his Los Angeles law office when the telephone rang. It was Travis Tygart, the head lawyer for USADA. Howard had dealt with Tygart for years while representing other accused athletes, and now they were both working on my case. This phone call was unusual, though: Terry Madden, the CEO of USADA, was also on the line. Howard knew Madden, but rarely communicated with him. "From everything we've read about Floyd, he's a straightforward, no-BS guy," Tygart began. "We think he can help us clean up the sport and get to the bigger names in cycling."
>
> I had just won the Tour de France. Who was a bigger name in cycling than me? . . . The only person who would be bigger than me is someone who had won the race more times than I had – say, seven times. It was easy to figure out what he meant. USADA wanted me to give information that would show that Lance Armstrong used performance enhancing drugs during his racing career.
>
> "If he's willing to do that, we can make him a great deal," Tygart said. Howard asked what Madden and Tygart had in mind and they ended up offering a suspension of less than a year, so that I would be cleared and able to race the 2007 Tour de France. A suspension that short would be unprecedented. The only thing I had to do in order to end the mess relatively quickly and get my life back were to give them information on "bigger names" and to accept the suspension.



USADA Anti-Doping Review Board
June 22, 2012
Page 7

> "That's completely out of the question," I told Howard when he presented the deal to me. "In fact, I find everything about it offensive." . . . .
>
> But I didn't have any evidence to give them about Lance, anyway. If Lance had been doping, he sure didn't tell me about it. He would have been a fool to do so. Ever since his first Tour win in 1999, the press and all sorts of different authorities had suspected Lance of doping. The year I joined Postal, in 2002, the team was under doping investigation by French officials, though the case was dropped for lack of evidence. . . . All I know is I never saw anything to indicate that Lance used performance-enhancing drugs, that his blood and urine were tested more than anyone else's, and that he never returned a positive test.

Floyd Landis, *Positively False: The Real Story of How I Won the Tour de France* at pages 207-209 (Simon & Schuster c. 2007). No provision of the WADA Code in 2006 allowed USADA to offer Landis a reduced penalty in return for testimony against Mr. Armstrong. No provision of the WADA Code has authorized USADA to promise to let athletes compete in the highest profile, most financially important event in their sport and then be charged and sanctioned in the off-season so as not to inconvenience them. No provision of the WADA Code allows USADA to conceal admissions of doping violations by United States athletes as part of an effort that started at least six years ago to stalk a single athlete.

The USOC has contracted with USADA only to conduct drug testing and to pursue charges in arbitration against athletes who test positive, without authorizing promises of the type made to Mr. Landis. The WADA Code states that "[f]acts related to anti-doping rule violations may be established by any ***reliable*** means, including admissions," *see* World Anti-Doping Code art. 3.2 (2009); but it is generally accepted in every civilized legal system that the use of testimony secured by threats of punishment and promises of rewards is anything but a reliable means to establish the truth. The WADA Code correctly allows proof of a doping violation if there is, for example, reliable documentary evidence that an athlete purchased performance-enhancing drugs or sent correspondence discussing his or her use of such substances, but it does not authorize the use of unverified assertions by an athlete willing to say whatever is necessary to preserve his or her career. Furthermore, nothing in the WADA Code permits USADA to conceal admissions by athletes of their use of performance enhancing drugs, allowing them to compete until an agreed time when USADA will charge them. Indeed, it was the perception internationally that the United States was not properly enforcing anti-doping rules against its own athletes that was the impetus for the creation of USADA in the first place.

Apart from the WADA Code, USADA's inducements raise serious concerns about whether it can lawfully offer such valuable benefits in exchange for testimony against athletes

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 22, 2012
Page 8

over whom the USOC has jurisdiction. Offers such as the one provided to Mr. Landis violate federal law, namely, the federal bribery statute, which provides, in pertinent part:

> Whoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing or other proceeding, before any court, . . . or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony . . . shall be fined . . . or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2). The hearings in which these athletes will testify will occur before officers authorized by the laws of the United States to hear evidence. Consequently, if USADA generates testimony by providing inducements—particularly when unauthorized—to witnesses in violation of federal law, their conduct will violate federal criminal law, and equally important, any arbitration decision sought or issued on that basis would be subject to challenge as having been "procured by corruption, fraud or undue means." *See* 9 U.S.C. § 10.

Any meaningful review by the Review Board should include careful scrutiny of the conduct of USADA to determine whether its officials violated federal law and the WADA Code in securing testimony against Mr. Armstrong. It should decide whether that pattern of conduct reflects, as we submit that it does, a vendetta against Mr. Armstrong that elevates the end above the means. And it should consider, in deciding whether to recommend that these charges be pursued, whether USADA's conduct vitiates the possibility that any arbitration would be proper or upheld under the laws of the United States.

### C. USADA Has Acquired Material in Violation of Federal Rule of Criminal Procedure 6(e).

Although the federal government found nothing upon which to base a charge against Mr. Armstrong after its exhaustive investigation, government participants in the related grand jury proceedings regularly violated Federal Rule of Criminal Procedure 6(e) by leaking information relating to Mr. Armstrong. The leakers attempted to corrupt the process by transforming it into an effort to damage Mr. Armstrong's reputation. By revealing information known only to those inside the grand jury—including the identities of past and future witnesses, the alleged substance of the witnesses' testimony, the strategy and direction of the investigation, the potential charges considered by the government, the timing of a potential indictment, and the contents of documents—the leaks threatened not only the investigation itself, but also the integrity of the judicial process. As a result, the grand jury process, at least where it concerned Mr. Armstrong, failed to achieve its basic obligation to protect the reputation of uncharged parties. Those same leaks also have poisoned the pool of arbitrators who would hear this case against Mr. Armstrong.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 22, 2012
Page 9

Those arbitrators already are aware of criticisms within the Olympic movement of arbitrators who rule for athletes or issue dissenting opinions in favor of athletes in doping cases. The government, working in close cooperation with USADA, has created an environment in which any arbitrator knows he or she would suffer severe criticism if he were to reject doping charges against Mr. Armstrong, regardless of what the evidence shows.

Having been intimately involved in the government's investigation, USADA now rests upon the very same information that was leaked in violation of Rule 6(e). As is commonly known, Travis Tygart participated in witness interviews with Jeff Novitzky, the government's principal case agent and the person suspected of releasing grand jury materials. To the extent that USADA's current charges reveal anything, they demonstrate an effort to repackage the very same information that periodically emerged in violation of Rule 6(e). Accordingly, as with the testimony procured in violation of the federal bribery statute and the WADA Code, the Review Board should likewise refuse to authorize USADA's charges because they rely upon material gathered in violation of the federal grand jury secrecy rule.

### D. The Only Two Allegations that Contain Any Specificity Have No Merit.

In the two instances in which USADA describes the basis of an allegation, the record flatly contradicts the charging document. The clearest examples are the inaccurate references to the views of the Director of the Lausanne Anti-Doping Laboratory, Dr. Martial Saugy, about events in 2001, as well as USADA's misinterpretation of the 2009-2010 blood collection data. If USADA cannot convincingly establish the merits of these claims, it is virtually impossible to credit its remaining stale claims, all of which rely not on objective data, but instead upon individuals whom USADA will not name.

With respect to Dr. Saugy—the only witness whom USADA can confidently identify—the charging document alleges that USADA interviewed him about his laboratory's analysis of urine samples from the 2001 Tour of Switzerland. *USADA Charges* at 11. According to USADA, Dr. Saugy observed that Mr. Armstrong's test results from that race, which were taken a decade ago and no longer exist, indicated EPO use. *Id.* Included among those who would challenge this allegation, however, is Dr. Saugy himself. With respect to these very same samples, he made clear to *The Washington Post* that they could *not* be considered a positive result, explaining: "It will never be sufficient to say, in fact, it was positive. . . . I will never go in front of a court with that type of thing." Washington Post, *Lance Armstrong Faces Fresh Doping Charges from USADA*, dated June 13, 2012. In addition, USADA does not allege that proper testing of an "A" sample and a "B" sample was conducted by Dr. Saugy or his lab and does not provide any information from which we can determine what testing was done. We do not know whether Dr. Saugy is simply referring to a preliminary EPO screen test and on what basis Dr. Saugy believes that the test to which he is referring was on a sample from Lance Armstrong. As the Review Board is aware, when the laboratory conducted these tests, it would not have had any way to

identify which numbered samples were taken from which athletes or the International Standards for Laboratories would have been violated. Including an allegation based on an alleged statement by someone employed in a lab without any submission of chain of custody information or a signed statement by the laboratory employee or any documentary evidence to support it is a clear violation of the USADA Protocol and should not be tolerated. It demeans the testing process and undermines the very protocols that USADA and WADA have adopted to ensure fairness and reliability in test results.

Perhaps attempting to avoid the hazard of subjecting the relevant data to expert analysis, USADA then randomly points to "data from blood collections obtained by the UCI" in 2009 and 2010, but fails to explain how one could possibly conclude that the data proves blood manipulation. *USADA Charges* at 11. As a preliminary matter, it is worth noting that even USADA itself does not say that the data alone proves a violation; so even under its theory, the data cannot sustain a charge. As is clear from the three pages surrendered to Mr. Armstrong after the filing of charges (which apparently have not been shared with the Review Board), the documents are nothing more than a summary of certain measures from thirty-eight (38) blood samples taken by UCI, on various dates. USADA has flatly refused to explain what it believes the data points indicate with respect to doping or even during which part of the two-year period USADA believes the data points show blood manipulation. If the Review Board process means anything, then USADA, at a minimum, must explain, why the results show anything other than the normal fluctuation of blood values in a human being.

Though we asked, General Counsel Bock inexplicably would not even tell us if he delivered the blood collection data referenced in the USADA charges to the Review Board. If he did not, USADA's reference to it cannot be considered evidence to be evaluated by the Review Board. If he has submitted that data to the Review Board, the Board should consider that all of it concerns tests that did not reflect any positive results and data that was reviewed contemporaneously by a panel of UCI experts, who found no basis for concern. Notably, the UCI experts had additional data, including chain of custody, the Athlete Biological Passport profile and datasheets, reports from the people collecting the blood about the conditions of the collections, the calibration of the various machines used to evaluate the samples, the possibility of specific analytical testing by timely interpretation of blood values, and other information that USADA has not provided to Mr. Armstrong or to the Review Board. Indeed, when Mr. Armstrong received the data from UCI in 2009 and 2010, he posted it on his website, *Livestrong.com*, so it was available to the entire world anti-doping community and no doping charges were brought.

The data does not constitute evidence of doping. Alone, without plausible expert testimony about its alleged significance, without chain of custody information, and lacking a description of where and under what conditions the samples were taken, the data offers, at most, a description of what machines said about Mr. Armstrong's blood values several years ago. As



USADA Anti-Doping Review Board
June 22, 2012
Page 11

the Review Board is fully aware, raw data without expert analysis and opinion explaining the expert's opinion is not evidence that can be the basis for a finding of sufficient evidence of a violation. Nothing in the Protocol or fundamental notions of fair play and due process require Mr. Armstrong to prove a negative—providing evidence that the data is consistent with Mr. Armstrong's physiology without any blood manipulation over a two-year period—when USADA has not explained in what way the data and blood manipulation are consistent with EPO use or other manipulation or even during what time period within the two years.

### E.   USADA Is Acting Outside the Scope of Its Mandate and Jurisdiction.

Apart from the above defects, USADA's charging document suffers from another fundamental defect: USADA has acted wholly outside the scope of its mandate and jurisdiction. USADA has not asserted any basis in the applicable rules for charging multiple individuals together and asserting conspiracy claims. Furthermore, as even USADA admits, most of its allegations concern the years from 1998 to 2004, far outside of the applicable eight-year statute of limitations period. It even describes the alleged use of performance enhancing drugs before 1996, *more than sixteen years ago*. As the basis for its request that the Review Board authorize USADA to bring a case based primarily on events outside the limitations period, USADA does not identify any alleged lies to a USADA or CAS panel or other specific evidence that supports its wholesale disregard for the statute of limitations. Mr. Armstrong asked for any such evidence; USADA refused. Apart from the fact that the *Hellebuyck* case, upon which USADA relies, is merely a single arbitration decision decided the way USADA would like and is not precedent for this action, this is not a case like *Hellebuyck*. In that matter, unlike here, both Mr. Hellebuyck and USADA were in agreement that the athlete had admitted to doping before the statute of limitations period. Thus, unlike here, there was no issue over the unfairness of forcing an athlete to try to prove his innocence with respect to allegations about events that transpired more than eight years ago. That, unfortunately, is precisely the predicament in which USADA has sought to place Mr. Armstrong.

### III.   Conclusion

We respectfully request that the Review Board recommend that USADA not pursue the charges that were submitted because there is no evidence to support them. In the alternative, we request that the Review Board suspend consideration of this matter until USADA produces to us and to the Review Board all information and evidence requested by Mr. Armstrong so that he has a meaningful opportunity to review it and respond.

Yours sincerely,

Robert D. Luskin

# Attachment A

# PATTON BOGGS LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 15, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA E-MAIL AND FAX**

USADA Anti-Doping Review Board
c/o William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO 80919

To the Members of the Anti-Doping Review Board:

We represent Lance Armstrong, one of six Respondents in the recently-initiated action by the United States Anti-Doping Agency ("USADA") described in the June 12, 2012 letter from Lisa McCumber ("June 12th Letter").[1] We understand that a copy of the June 12th Letter has already been forwarded to you. We write to request that the USADA Anti-Doping Review Board ("Review Board") immediately direct USADA to produce to us and the Review Board the categories of evidence and information requested below, which USADA claims to have but has refused to disclose. We further ask that the Review Board suspend consideration of this matter until all such evidence has been produced and we have had a meaningful opportunity to review it and respond, as provided in the Protocol. Disclosure of this material is expressly contemplated by the Protocol; it is also consistent with basic principles of fairness.

**Requested Documents**

USADA asserts in the June 12th Letter that, under the Protocol, "the Review Board may only consider 'written submittals.'" June 12th Letter at 13 (emphasis added). The Protocol says no such thing. To the contrary, Section 11 of the Protocol expressly contemplates that the Review Board will have access to, and shall consider before rendering its recommendation, additional

---

[1] The USADA Protocol ("Protocol") provides that "[t]he Athlete's or other Person's name will not be provided to the Review Board by USADA and will be redacted from any documents submitted to the Review Board by USADA." Protocol, § 11.c.ii. We have identified Mr. Armstrong here as one of the Respondents because, within a matter of hours after our receipt of the June 12th Letter, the entire letter—including the names of all of the Respondents, not just Mr. Armstrong's—was posted publicly on the Wall Street Journal's website and ESPN's website, thus eliminating any possibility of preserving Mr. Armstrong's promised anonymity during this process.

Letter of Robert D. Luskin to USADA Review Board
June 22, 2012
Attachment A

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 2

documentation beyond the USADA's one-sided written submission and the Respondents' written response. See, e.g., Protocol, §§ 11.a. ("the Review Board shall review all Sample test results") (emphasis in original), 11.c.ii ("[t]he Review Board shall be provided the laboratory documentation"), 11.c.iii. (the respondent(s) "may submit to the Review Board, through USADA, any written materials for the Review Board's consideration") (emphasis added), 11.c.v. ("[t]he Review Board shall be entitled to request additional information from either the USADA or the Athlete or other Person") (emphasis added). Indeed, the principal duty of the Review Board is to determine "whether or not there is sufficient evidence of doping to proceed with an adjudicative process." Id., § 11.c.vii (emphasis added).

In this case, USADA alone possesses the evidence it claims supports its charges. See June 12th Letter, at 3 (acknowledging that the purported "evidence [is] in the possession of USADA"). Yet USADA has submitted absolutely no evidence to either the Review Board or the Respondents. It has simply made representations about what it claims the evidence will show if there is a hearing. But by that point, if the evidence does not, in fact, show what USADA now claims, it will be too late for any of the Respondents to have the protection afforded by the Review Board process. Accordingly, USADA must either submit the evidence it relies upon in the June 12th Letter or the Review Board should summarily recommend that there is not sufficient evidence of doping to proceed with the adjudication process. To allow USADA to claim it has sufficient evidence, but not to require the disclosure of that evidence to the Board for evaluation or to Armstrong for a response, would violate the Protocol and convert the Review Board process into nothing more than a meaningless rubber stamp. Indeed, the sole witness whom USADA has identified, Dr. Martial Saugy, has publicly repudiated the allegations attributed to him by USADA in the June 12th Letter. See Washington Post, "Lance Armstrong Faces Fresh Doping Charges from USADA" (June 13, 2012).

We request that the Review Board immediately instruct USADA to provide Respondents and the Review Board with copies of the following categories of documents, which are specifically referenced in, but not attached to, the June 12th letter:

1. any documentation of purported statements by witnesses, in any form whatsoever (e.g. affidavits, declarations, interview memoranda, interview notes), with respect to the allegations contained in the June 12th letter;

2. any documents which USADA contends support the allegations contained in the section of the June 12th Letter titled "Prohibited Substances and Methods," id. at 3–5;

3. any documents which USADA contends support the allegations contained in the section of the June 12th Letter titled "Rule Violations," id. at 5–11;

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 3

4. any documents related to Mr. Armstrong's alleged positive test for EPO use in 2001, id. at 11;

5. any documents related to "the data from blood collections obtained by the UCI from Lance Armstrong in 2009 and 2010," which USADA alleges is "fully consistent with blood manipulation including EPO use and/or blood transfusions," id. at 11;

6. any documents on which USADA relies for its claim that "for a significant part of the period from January 1, 1998 through the present, each of the Respondents has been part of a doping conspiracy involving team offices, employees, doctors, and elite cyclists of the United States Postal Service and Discovery Channel Cycling Teams" (the so-called "USPS Conspiracy"), id. at 11, including the identity and statements of any experts upon whom USADA relies for those conclusions; and

7. any documentation on which USADA relies for its claim that the Respondents and unnamed co-conspirators engaged in a "cover-up," which allegedly included "false statements to the media, false statements and false testimony given under oath and in legal proceedings, and attempts to intimidate, discredit, silence and retaliate against witnesses," id. at 12.

**Requested Information**

Further, please instruct USADA to provide to the Respondents and the Review Board the following information referenced in the June 12th letter:

1. the identities, including last known address and contact information, of all the cyclists with whom USADA representatives had "face to face meetings" during the course of its investigation, see June 12th Letter, at 1, and the dates, locations, attendees and topics discussed during those meetings, regardless of whether or not USADA intends to present them as witnesses at any future hearing;

2. the identities, including last known address and contact information, of any other individuals contacted—whether interviewed or not—by USADA during the course of its investigation (e.g. the alleged "other eyewitnesses to the conduct", id. at 2), and the dates, locations, attendees and topics discussed during any such conversations, regardless of whether or not USADA intends to present them as witnesses at any future hearing;

3. the identities, including last known address and contact information, of the alleged sources of the "eyewitness statements that EPO injections were administered by Dr. Luis Garcia del Moral, Dr. Pedro Celaya and Dr. Ferrari," id. at 3;

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 4

4. the identities, including last known address and contact information, of the alleged "[m]ultiple riders with first hand [sic] knowledge who will testify that between 1998 and 2005 Armstrong personally used EPO and on multiple occasions distributed EPO to other riders," id. at 3;

5. the identities, including last known address and contact information, of the alleged "[m]ultiple riders [who] will testify that during the period from 2000–2005 Armstrong used blood transfusions, was observed having blood re-infused, including during the Tour de France, and had blood doping equipment at his residence," id. at 4;

6. the identities, including last known address and contact information, of the alleged "[m]ultiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007 [who] have reported that Dr. Ferrari developed a method of mixing testosterone (i.e. andriol) with olive oil for oral administration" that was "frequently administered to team members," as well as the identities of those team members who allegedly received this testosterone mix from Dr. Ferrari, id. at 4;

7. the identities, including last known address and contact information, of the alleged "[n]umerous USPS and Discovery Channel riders [who] have also reported the frequent use of testosterone patches by team members and that oral testosterone (pills or oil), testosterone injections or testosterone patches were provided by John Bruyneel, Pepe Marti and Drs. Del Moral, Celaya and Ferrari," id. at 4;

8. the identities, including last known address and contact information, of the alleged "eyewitnesses . . . that Lance Armstrong used testosterone and administered the testosterone-olive oil mixture to himself and other riders," id. at 4;

9. the identities, including last known address and contact information, of the alleged "[m]ultiple riders who competed on the USPS and Discovery Channel teams from 1998 through 2007" who claim "that team director Johan Bruynell, team trainer Jose Pepe Marti and team doctors Luis del Moral and Pedro Celaya provided human grown hormone to team members," id. at 4;

10. the identities, including last known address and contact information, of the alleged "numerous USPS and Discovery Channel team members and employees [who] report that prescriptions for corticosteroids were regularly fabricated by Drs. Celeya and del Moral to cover improper administration of corticosteroids to athletes without a legitimate medical need for the drugs and using techniques of administration barred by UCI anti-doping rules and that Johan Bruyneel and Pepe Marti encouraged the

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 5

unauthorized use of corticosteroids for performance enhancement and gave these drugs to riders," id. at 5;

11. the identities, including last known address and contact information, of the alleged "witnesses who were aware of Armstrong's use of cortisone without medical authorization," id. at 5;

12. the identities, including last known address and contact information, of the alleged "[m]ultiple riders who competed on the USPS and Discovery Channel terms from 1998 through 2007 [who] have reported to USADA that each rider's hematocrit level was always of primary interest to team doctor Johan Bruyneel and that team trainer Jose Pepe Marti and team doctors del Moral and Celaya administered saline and plasma infusions to team members," id. at 5;

13. the identities, including last known address and contact information, of the witnesses who USADA alleges will testify "concerning [saline, plasma or glycerol] infusions given to numerous USPS riders, including Lance Armstrong," id. at 5, and specifically when those infusions occurred, as the rules concerning such infusions have changed during the 14-year or perhaps more than 16-year time period addressed in the June 12th Letter;

14. the identities, including last known address and contact information, of the alleged "[n]umerous former riders and employees of the United States Postal Service, Discovery Channel, Astana, RadioShack, Phonak and/or ONCE cycling teams [who] will testify" that the following individuals "committed [the] anti-doping rule violations" set forth in the section of the June 12th Letter titled "Rule Violations," id. at 5–11:

    a. Johan Bruyneel;

    b. Dr. Pedro Celaya;

    c. Dr. Luis del Moral;

    d. Dr. Michele Ferrari;

    e. Jose Pepe Marti; and

    f. Lance Armstrong;

15. the identities, including last known address and contact information, of the alleged "[m]ultiple witnesses [who] have also told USADA that Lance Armstrong told them

5243436



USADA Anti-Doping Review Board
June 15, 2012
Page 6

> he had tested positive [for EPO] in 2001 and that the test result had been covered up," id. at 11;
>
> 16. the dates, locations, attendees and topics discussed during USADA's interview(s) of Dr. Martial Saugy, Director of the Lausanne Anti-Doping Laboratory, id. at 11;
>
> 17. the identities, including last known address and contact information, of the alleged "[m]ultiple witnesses [who] have also told USADA that Lance Armstrong told them he had tested positive [for EPO] in 2001 and that the test result had been covered up," id. at 11;
>
> 18. the identities, including last known address and contact information, of any alleged witnesses who will testify to the existence of the so-called "USPS Conspiracy" involving Mr. Armstrong, id. at 11–12; and
>
> 19. the identities, including last known address and contact information, of the alleged "[n]umerous witnesses [who] will testify that as part of [a] cover-up Johan Bruyneel, Pedro Celaya, Michele Ferrari, Lance Armstrong and other co-conspirators engaged in activities to conceal their conduct and mislead anti-doping authorities including false statements to the media, false statements and false testimony given under oath and in legal proceedings, and attempts to intimidate, discredit, silence and retaliate against witnesses," id. at 12.

The Review Board is empowered to compel production of these documents and information from USADA. See Protocol, Sec. 11.c.v. ("The Review Board shall be entitled to request additional information from either USADA or the Athlete or other Person." (emphasis in original)).

The Review Board's charge is clear: to determine "whether or not there is sufficient evidence of doping to proceed with the adjudication process." See Protocol, § 11.c.vii. USADA has submitted no evidence to support its spurious allegations. USADA must either submit the evidence it relies upon in the June 12th letter or the Review Board should summarily recommend that this matter be dismissed for lack of sufficient evidence. To permit USADA to proceed without sharing its evidence would violate not only the clear language of the Protocol, but also our shared concepts of justice and fair play.

Yours sincerely,

Robert D. Luskin

5243436