# EXHIBIT 12

# PATTON BOGGS LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 27, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA E-MAIL AND FAX**

USADA Anti-Doping Review Board
c/o William Bock, III
General Counsel
-and-
c/o Lisa McCumber
Testing Results Manager
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO  80919

To the Members of the Anti-Doping Review Board:

     We write on behalf of Lance Armstrong in response to a communication that I received yesterday at 2:43 pm eastern time from Lisa McCumber, Testing Results Manager, USADA. In violation of the USADA Protocol, I was given only one day to respond to a new, belated submission by USADA to the Review Board. I wrote last night identifying this breach, requesting the full ten days the Protocol affords Mr. Armstrong to respond to USADA's belated submission and identifying other breaches of the USADA Protocol. I enclose that letter and incorporate it herein as part of Mr. Armstrong's submission. Mr. Bock informed me at a little after noon eastern today that any submission by Mr. Armstrong must nonetheless be made by 5 pm eastern. The very fact that Mr. Armstrong has not been given a meaningful period of time to respond to USADA's belated submission, when there would not be any prejudice to allow the additional time provided for in the Protocol, confirms that USADA has no regard for its own Protocol, fairness, or common notions of decency. The existence of improper, ex parte communications between USADA and the Review Board, as revealed yesterday by Ms. McCumber, further confirms the patent lack of due process here. We provide this initial response to USADA's submission in light of the unilateral imposition of the one-day deadline, but do not thereby waive any of our rights or arguments that the USADA Protocol has been repeatedly breached in this matter nor do we waive our right to raise any arguments that we might have made had we been given a reasonable time to respond. We continue to insist that we be given the full ten days to respond fully to USADA's submission.



USADA Anti-Doping Review Board
June 27, 2012
Page 2

As you are aware, USADA did not initially provide any evidence to this Review Board, claiming, for example, that it planned to rely on ten witnesses, but failing to name those individuals or even identify the nature of their planned testimony. At some point, presumably after Mr. Armstrong submitted his response highlighting this failure, USADA submitted for the first time documents that it asserts are evidence of alleged violations. We are informed that USADA submitted: (1) an email from Floyd Landis to Steve Johnson of USA Cycling dated May 1, 2010; and (2) the transcript of a 60 Minutes report from May 22, 2011.[1] For the reasons set forth below, neither of these documents can be considered by the Review Board. Indeed, the Landis email confirms that it is UCI, and not USADA, that has jurisdiction over this matter. Accordingly, the Review Board need not waste any further effort attempting to decipher whether USADA has sufficient evidence to proceed here because USADA has no authority to bring the present charges. Mr. Armstrong in no way concedes that USADA has jurisdiction over this matter. Mr. Armstrong reserves all rights to challenge USADA's jurisdiction, and the conduct of its investigation of Mr. Armstrong, in future proceedings if that should become necessary.

## I.      USADA Does Not Have Jurisdiction.

### A.   UCI Has Jurisdiction To Address "Evidence" Discovered By A License-Holder, a Member Federation, or UCI.

In its June 12th charging letter, USADA claims that, pursuant to the Union Cycliste Internationale's Anti-Doping Rules ("UCI ADR"), USADA has results management authority for any anti-doping rules violations where no sample collection is involved and where USADA discovered "elements that turn out to be evidence for facts that apparently constitute an anti-doping rule violation." June 12th charging letter at 12-13. USADA cites to Articles 10 and 13 of the UCI ADR for this proposition. But those articles explicitly confirm that UCI, and *not* USADA, has jurisdiction here. The Landis email of April 30, 2010 confirms that Mr. Landis (in 2010, "License-Holder") first "discovered" the alleged violation, after being informed by Mr. Landis.[2] Thereafter, UCI and USA Cycling (a "member Federation") also "discovered" the alleged violation when Mr. Landis sent the email to USA Cycling and it was then sent to UCI on May 1, 2010. Mr. Landis was apparently given a choice of to whom he wanted to submit his information and he specifically insisted that he was submitting it to USA Cycling, thereby again

---

[1] Though he has repeatedly made the request, Mr. Armstrong has never received confirmation that he has been provided, consistent with Protocol 11, all communications from USADA to the Review Board.

[2] By making this jurisdictional point, we assume solely for purposes of argument that an alleged violation was "discovered." Mr. Armstrong denies that he has committed any anti-doping violations and rejects in its entirety the validity of Mr. Landis's email and Mr. Hamilton's statements to 60 Minutes. Mr. Armstrong also reserves all rights concerning the authenticity and admissibility of Mr. Landis's email. It is clear, however, that the allegations that are the basis of USADA's June 12, 2012 letter come from Mr. Landis's email.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 27, 2012
Page 3

invoking the jurisdiction of UCI. According to the very provisions USADA relies upon, if a License-Holder, UCI or one of its member Federations discovers evidence constituting a no-sample anti-doping violation—even if USADA independently discovered it and has initiated disciplinary proceedings based on it—UCI, not USADA, has primary jurisdiction to determine whether to proceed with the case.

Article 10 of the UCI ADR provides:

> The UCI has jurisdiction for and these Anti-Doping Rules shall apply to any anti-doping violation committed by a *License-Holder* where no *Sample* collection is involved and that is discovered: (i) by the UCI, by one of its constituents or member Federations, by one of their officials, officers, staff members, members, *License-Holders*, or any other body or individual that is subject to the regulations of the UCI or one of its member Federations; or (ii) a body or individual that is not an *Anti-Doping Organization*.

UCI ADR, Article 10 (emphasis in original, indicating defined terms). "Discovery" under the rules "means the finding of elements that turn out to be evidence for facts that apparently constitute an anti-doping rule violation, regardless of the *Anti-Doping Organization* who qualifies that evidence as such." *Id.* In other words, if UCI, one of its member Federations, or a License-Holder discovers facts that apparently constitute an anti-doping rule violation, *UCI* has jurisdiction to pursue any violation. UCI ADR Article 202 confirms that "[t]he UCI shall conduct results management where the UCI has jurisdiction for *Testing* or otherwise under these Anti-Doping Rules." UCI ADR, Article 202.

These rules embody the common sense notion that where information emerges from UCI's own riders or federations, rather than a lab, UCI is the most appropriate organization to take charge because the information more likely falls within its field of expertise.

Not only does UCI take jurisdiction when its License-Holder or member Federation makes the discovery, UCI's jurisdiction may not be challenged even if another anti-doping organization, such as USADA, discovers the same evidence. According to Article 12, if evidence for the same anti-doping violation is discovered by both UCI and another Anti-Doping Organization (*e.g.* USADA)—even where "another *Anti-Doping Organization* having jurisdiction . . . opens [a] result management or hearing process based upon such evidence" before UCI discovers it—"UCI *may* decide to leave the case to the *Anti-Doping Organization*." (emphasis added). Consequently, USADA may take jurisdiction only where UCI voluntarily and explicitly surrenders jurisdiction to USADA. Absent that, UCI retains jurisdiction. Because UCI never delegated to any other body its authority to preside over all issues arising from the Landis information, UCI retains exclusive jurisdiction.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 27, 2012
Page 4

Indeed, UCI cannot delegate its authority until it determines for itself whether a doping violation has occurred. Article 229 of the UCI ADR—the first article of the section titled "Results management where no *Adverse Analytical Finding* is involved"—directs: "UCI shall examine concrete elements indicating that an anti-doping violation may have been committed, in particular any failure to comply with these Anti-Doping Rules . . . ." These UCI provisions clarify that UCI conducts that investigation. "National Federations shall be obliged to conduct investigations as the UCI may deem appropriate and inform UCI of the results." UCI ADR, Article 231. Importantly, "[i]f upon conclusion of the results management process, the UCI considers that no anti-doping rule violation or any other breach of these Anti-Doping rules has taken place, then the case *shall be taken no further*," UCI ADR, Art. 232 (emphasis added). Only if the "UCI makes an assertion that an anti-doping rule violation has taken place . . . shall [it] request the National Federation of the *License-Holder* to initiate disciplinary proceedings." *Id.*, Art. 234. Here, UCI has *not* asserted that an anti-doping rule violation has taken place, has *not* requested USA Cycling, or USADA, to initiate disciplinary proceedings, and has not itself (as we understand) determined whether a rule violation has taken place. Unless and until, UCI determines that a rule violation has taken place, and delegates to USADA the right to pursue the matter in hearing, USADA cannot proceed here.

In short, USADA does not have jurisdiction to pursue this matter. For this reason alone, the Review Board should determine that there is no basis on which USADA may proceed with its charges.

### B. Only UCI, Not USADA, Has Jurisdiction To Address Alleged Violations Occurring Prior to January 1, 2005.

Even apart from the jurisdiction defects discussed above in part I.A. regarding discovery of the alleged offense and the statute of limitations bar discussed below in part II, we understand from the documents provided to us in this matter and the charging letter that USADA has no jurisdiction for alleged conduct that occurred before 2005. Under the express terms of the 2009 USADA Protocol and the UCI Anti-Doping Rules, USADA lacks jurisdiction to prosecute any charges involving alleged doping violations that occurred prior to January 1, 2005. Instead, these claims are within the exclusive jurisdiction of United Cycliste Internationale ("UCI"), the international federation for cycling. Moreover, under the USADA Protocol, Mr. Armstrong cannot be charged for any anti-doping rule violation that allegedly occurred prior to July 2004, when UCI became a signatory to the WADA Protocol. Any alleged conduct prior to that time is, under the terms of the Protocol, not an anti-doping violation that can be charged by USADA or any other entity.

Under the UCI Anti-Doping Rules, UCI and its constituent bodies, not USADA, had results management jurisdiction prior to January 1, 2005. As of January 2005, the UCI Anti-


PATTON BOGGS LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 27, 2012
Page 5

Doping Rules were changed to provide that "[r]esults management under these Anti-Doping Rules . . . shall be conducted by UCI's Anti-Doping Commission." UCI Anti-Doping Rules (effective January 1, 2005), Article 182. Accordingly, USADA has no results management jurisdiction over alleged anti-doping rule violations in cycling prior to January 2005. As virtually all of the allegations against Mr. Armstrong in USADA's charging letter involve alleged conduct prior to 2005, and USADA has not identified any discrete alleged violation after January 2005, USADA has no jurisdiction over the charges it has asserted against Mr. Armstrong. For this reason alone, the Review Board should not permit USADA to pursue these charges.

USADA's lack of jurisdiction is further confirmed by Article 7.6 of the USADA Protocol. Article 7.6 provides, in relevant part, that "[i]f an *Athlete* or other *Person* retires before any results management process has begun, **the *Anti-Doping Organization* which would have had results management jurisdiction over the *Athlete* or other *Person* at the time the *Athlete* or other *Person* committed an anti-doping rule violation**, has jurisdiction to conduct results management." (Bold added; other emphasis in original, indicating defined terms).

Mr. Armstrong retired from competitive cycling in February 2011. The charging letter initiating the results management process here was sent on June 12, 2012. In that letter, USADA claims that Mr. Armstrong used prohibited practices or substances "during the period from before 1998 through 2005, and previously used EPO, testosterone and [HGH] through 1996." Letter at 10-11. Thus, "the time [in which Mr. Armstrong allegedly] committed an anti-doping rule violation" was from some time before 1996 through 2005.

USADA Protocol Article 7.6 requires an examination of which "Anti-Doping Organization . . . *would have had* results management jurisdiction" during the period between some unspecified time before 1996 and 2005. The definitions section of the USADA Protocol defines an "Anti-Doping Organization" as "[a] *Signatory* that is responsible for adopting rules for initiating, implementing or enforcing any part of the *Doping Control* process." 2009 USADA Protocol, Appendix 1 (defined terms italicized). "Signatory" is defined as "[t]hose entities signing the *Code* and agreeing to comply with the *Code*," and "Code" is defined as the WADA Code. *Id.* Thus, under the USADA Protocol, an Anti-Doping Organization is an organization that has signed the WADA Code. USADA did not sign the WADA Code until 2004 and it did not take effect until the August 2004 Olympic Games. Moreover, under the UCI Anti-Doping Rules referenced above, USADA had no results management jurisdiction over cyclists until January 2005. Accordingly, under Article 7.6 of the Protocol, USADA does not have jurisdiction over any allegation that Mr. Armstrong engaged in an anti-doping rule violation prior to January 2005.[3]

---

[3] Indeed, even under USADA's own Protocols, it had no authority of any kind over non-analytical positive doping cases prior to October 7, 2002. It has no jurisdiction over allegations that pre-date October 7, 2002 for this additional reason as well.



Finally, Mr. Armstrong's alleged conduct prior to July 2004 cannot, under the terms of the Protocol, constitute an alleged anti-doping rule violation at all. The comment to Article 7.6 states that "[c]onduct by an *Athlete* or other *Person* before the *Athlete* or other *Person* was subject to the jurisdiction of any *Anti-Doping Organization* would not constitute an anti-doping rule violation but could be a legitimate basis for denying the *Athlete* or other *Person* membership in a sports organization." As discussed above, *Anti-Doping Organization* is defined in the Protocol as a Signatory to the WADA Code. As the WADA Code did not exist until January 2004, and UCI (the relevant body prior to January 1, 2005) did not sign the WADA Code until July 2004, there is no *Anti-Doping Organization* as defined in the Protocol with jurisdiction over alleged violations prior to July 2004. Accordingly, under the Comment to Article 7.6 of the Protocol, any alleged violations prior to July 2004 are, by definition, not anti-doping rule violations under the Protocol, and Mr. Armstrong cannot be charged for such conduct by USADA or any other entity.

## II.    The Allegations In the New Submissions Fall Outside of the Statute of Limitations Period and Cannot Be Considered by this Review Board.

As discussed above, Mr. Armstrong's alleged conduct prior to July 2004 cannot constitute an alleged anti-doping violation under Article 76 of the Protocol. Allegations of alleged conduct prior to June 12, 2004 also are clearly time-barred under the Protocol.

The statute of limitations under the Protocol is eight years (assuming, *arguendo*, and solely for purposes of this argument, that the USADA Protocol applies). *See* Protocol Art. 17. Mr. Hamilton's allegations all concern events occurring in or before 2001 and, thus, unquestionably fall outside the statute of limitations.

Mr. Landis's allegations with respect to Mr. Armstrong all occur in or before 2003, with only one exception. Mr. Landis claims that sometime in 2004, he was on a bus in which certain individuals allegedly engaged in blood transfusions. Mr. Landis, however, does not identify during the tour where this occurred, or the date in which it occurred. If this allegation covers the period prior to June 12, 2004, then it is also barred by the statute of limitations. We note that Mr. Landis claims that he and Messrs. Armstrong and Hincapie were the only Americans on the team during the 2004 tour referenced in his email. Messrs. Armstrong, Hincapie and Landis also were the only Americans on the U.S. Postal team that raced in the 2004 Critérium du Dauphiné Libéré. If Mr. Landis is referring to an incident that occurred during that race, which took place from June 6 to 13, 2004, then the event plainly also falls outside of the statute of limitations.

Undoubtedly recognizing these problems with its case, USADA has attempted an end-run around the statute of limitations by contending that Mr. Armstrong's alleged "concealment" of the anti-doping violations somehow tolled the limitations period. As we discussed in our June



USADA Anti-Doping Review Board
June 27, 2012
Page 7

22, 2012 submission, this argument is specious for a number of reasons. To start, Article 17 of the USADA Protocol is categorical:

> ### ARTICLE 17: STATUTE OF LIMITATIONS
>
> No action may be commenced against an *Athlete* or other *Person* for an anti-doping rule violation contained in the *Code* unless such action is commenced within eight (8) years from the date the violation is asserted to have occurred.

There is no provision in Article 17 that, under any circumstances, permits USADA to extend this limitations period. To the extent that USADA contends otherwise, it runs afoul of Swiss law, which governs this issue. USADA has not presented any evidence that Swiss law permits an extension of the statute of limitations based on a theory of conspiracy or concealment. We have consulted Swiss counsel and have been informed that Swiss law does not permit the extension of a statute of limitations based on concealment, but given the time constraints have not been able to secure a legal opinion to that effect. However, the burden is on USADA to produce evidence of Swiss law that would permit such a charge, not on the respondent to produce evidence to the contrary. To the extent that USADA attempts to rely on the *Hellebuyck* case, that reliance must be rejected because: (1) it fails to apply Swiss law to interpret Article 17; (2) it is not precedent even under English law; (3) in that matter, unlike here, Mr. Hellebuyck had admitted to doping before the statute of limitations period; and (4) unlike here, there was no issue over the unfairness of forcing an athlete to prove his innocence with respect to allegations about events that transpired more than eight years ago. Indeed, USADA's theory swallows up Article 17 entirely because it would deny all athletes the protections of the statute in all cases in which the athlete did not admit to a violation, or otherwise held USADA to its burden to prove the truth of its accusations. Presumably everyone who uses performance enhancing drugs tries to keep others from witnessing that use—under USADA's theory that would constitute concealment and would mean the statute of limitations would never expire. That circular reasoning, which presumes the very guilt Article 17 protects athletes from having to disprove, must be rejected.

**III.   The Sole Allegation that Might Fall Within the Statute of Limitations Period Is Made by Mr. Landis, An Admitted Liar.**

If the 2004 event Mr. Landis refers to purportedly occurred after June 12, 2004, this would represent the sole allegation within the statute of limitations. Even if USADA had jurisdiction over the matter (which it does not), the Review Board cannot consider this allegation unless and until USADA confirms when it allegedly occurred, and only if it confirms it allegedly occurred after June 12, 2004.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 27, 2012
Page 8

Even assuming the incident is alleged to have occurred after June 12, 2004, on its face, this is not sufficient to charge Mr. Armstrong with anything, coming, as it does, from an individual who has repeatedly lied about these issues and has even previewed the very false accusation he would make. As Mr. Landis stated in his book, "Positively False": "The problem is that the way the UCI rules are set up, all it takes is a suspicion to halt a rider's career and put his reputation in doubt. What's to stop me from starting a rumor right now and wrecking someone else's life?" (p.280). This Review Board can stop him.

Mr. Landis is an admitted, proven liar. USADA should not be permitted to charge Mr. Armstrong on nothing more than a single, unsupported allegation by Mr. Landis. The man literally wrote the book on lying, falsely claiming in "Positively False," that he never used performance-enhancing drugs. Though he has now admitted to the use of performance-enhancing drugs, he took the opposite position in both an AAA and CAS arbitration, repeatedly denying that he ever did so both in public and under oath.

Mr. Landis is apparently currently under criminal investigation for fraud relating to the creation and fund-raising activities of the Floyd Fairness Fund. The Fund was established in late 2006 after Mr. Landis decided to dispute his positive test. In public appearances, including 13 "town hall" meetings to raise money for his defense, Mr. Landis maintained that he had not doped to win the 2006 Tour or at any time during his career. According to press reports, the Fund, set up as a trust for Mr. Landis' benefit rather than a non-profit corporation, raised $1 million. Between $300,000 and $400,000 came from small individual donations and merchandise sales and the balance from wealthy friends and patrons of the sport in the United States. Mr. Landis has now admitted that the statements he made during those public appearances to gain money were complete fabrications. Mr. Landis's willingness to lie to the public for money and attention confirms that he is not credible.

But you need not rely solely upon our word, or that of the AAA and CAS arbitrations that found him not credible, that Mr. Landis is a liar. Mr. Landis himself, USADA and UCI have each confirmed as much:

- Mr. Landis has publicly commented regarding his Fund scam, "I am acutely aware that accepting money on a false premise and then later returning it does not erase the lie, and I'll live with the fact that I lied to trusting people."[4] He has not, so far as we understand, returned the money.

---

[4] *See* http://www.utsandiego.com/news/2012/apr/27/tp-cyclist-landis-faces-fraud-probe/.

**PATTON BOGGS**LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 27, 2012
Page 9

- The President of UCI, Patrick McQuaid, stated in November 2010, after Mr. Landis's email was sent to UCI, "He [Landis] has already proven to be a liar and continues to be a liar."[5]

- The CEO of USDA, Travis Tygart, said after the CAS arbitration, "We are pleased that justice was served and that Mr. Landis was not able to escape the consequences of his doping or his effort to attack those who protect the rights of clean athletes."[6]

- Mr. Tygart continued: "The panel sent a pretty strong signal that while athletes are afforded the right to a vigorous defense, it must be a credible defense."[7]

USADA cannot with any degree of seriousness contend that, based on nothing more than a single, unsupported allegation made by an individual who admits to be a liar and whom USADA knows is a liar, is sufficient evidence to charge Mr. Armstrong. Notably, however, *unlike* Mr. Armstrong, Mr. Landis (and Mr. Hamilton) has tested positive for performance-enhancing drugs. To the extent that USADA seeks to pin charges spanning fourteen years against Mr. Armstrong on a single allegation made by an unmitigated liar, while ignoring more than 500 negative tests taken by Mr. Armstrong, that approach must be rejected for lack of evidence.

Even if the Review Board were willing to consider crediting the testimony of an admitted liar, the Review Board cannot consider this evidence without USADA providing Mr. Armstrong more information as to the exact date that this event allegedly occurred. If, for example, this event allegedly occurred during the 2004 *Tour de France*, we note that Mr. Armstrong did not typically ride the team bus during the *Tour*, but instead rode a separate team car so as to return to his hotel room as quickly as possible to begin the recovery process. Thus, if the Review Board plans to consider this allegation, USADA must identify when it occurred so that Mr. Armstrong can respond to it fully (and determine whether it falls outside the statute of limitations).

**IV.    Messrs. Landis's and Hamilton's Statements Concerning the 2001 Test Are Verifiably Wrong.**

In the charging letter, USADA states as follows:

---

[5] *See* http://www.velonation.com/News/ID/6553/Pat-MacQuaid-Floyd-Landis-has-already-proven-to-be-a-liar.aspx.

[6] *See* http://www.startribune.com/templates/Print_This_Story?sid=22713494.

[7] *See* http://www.nytimes.com/2008/07/01/sports/othersports/01cycling.html.



> Representatives of USADA have interviewed D. Martial Saugy, Director of the Lausanne Anti-Doping Laboratory which analyzed the urine samples from the 2001 Tour of Switzerland. Dr. Saugy stated that Lance Armstrong's urine sample results from the 2001 Tour of Switzerland were indicative of EPO use. Multiple witnesses have also told USADA that Lance Armstrong told them he had tested positive in 2001 and that the test result had been covered up.

*USADA Charges* at 11.

Based on the information that you provided to us last night, the source of this allegation appears to be the Floyd Landis email, which says:

> He later, while winning the Tour de Swiss, the month before the Tour de France, tested positive for EPO at which point he and Mr. Bruyneel flew to the UCI headquarters and made a financial agreement with Mr. Vrubrugen (sic) to keep the positive test hidden.

*E-Mail from Floyd Landis to Steve Johnson*, dated April 30, 2010. Tyler Hamilton repeats roughly the same allegation, but although he also claims to have heard it from Mr. Armstrong, we assume he actually learned it from reading Floyd Landis's email. As explained below, the problems with the allegation are many. First, it is alleged to have occurred eleven years ago. Second, it makes no sense. Third, it is contrary to what Dr. Saugy told USADA. Fourth, it is completely contrary to what Dr. Saugy told the Washington Post.

First, this allegation appears in the charging document, but it is not actually alleged as a violation of the doping rules. I find it hard to believe that USADA now claims that if a competitor claims that another competitor says he tested positive and the positive test was covered up that is sufficient to prove a doping violation, particularly when an investigation reveals no evidence of a positive test. The charging document does not allege that there was a positive test at all and it does not allege that it was covered up by anyone. We know USADA traveled to Switzerland and interviewed anyone who might have knowledge and thus reasonably assume that it found absolutely no evidence. Moreover, if Dr. Saugy had said he met with UCI or with Mr. Armstrong and was told to cover-up a positive test, that would undoubtedly have appeared in the charge as well. Above all, if Dr. Saugy genuinely had learned of a positive test, USADA would have filed charges with that as its centerpiece. It is, therefore, apparent that USADA found no evidence to support such an allegation and only relies on Mr. Landis's revised recollection and what others will say that Mr. Armstrong said. In sharp contrast to these constantly changing stories, Mr. Armstrong is clear: He never said such a thing and these vague allegations to the contrary are nonsense. But he cannot prove a negative; no document or piece

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 27, 2012
Page 11

of evidence could show that he did not say something nonsensical a decade ago. If, however, he had access to Dr. Saugy, Swiss laboratory employees, Mr. Verbruggen and Mr. Bruyneel, they would all tell the Review Board (as we believe they told USADA and its colleagues in federal law enforcement) that the allegation is absolutely false.

Second, the allegation makes no sense. As the experts on the Review Board are well aware, the analytical and technical process for testing urine for EPO involves (and in 2001 involved) urine integrity testing, urine screening testing, urine confirmation testing, and the EPO stability test. We have no way of knowing whether Dr. Saugy did the mandatory urine integrity testing. The urine screening testing, however, appears to be all that was done based on the little we know about what Dr. Saugy has said. He told the Washington Post a urine sample was "suspicious," which is precisely what the urine screening is supposed to determine. Samples that the preliminary screening test shows may have recombinant EPO (as opposed to endogenous EPO produced naturally by a person's body) are then tested pursuant to the mandatory urine confirmation testing procedures for accredited doping laboratories. At that point in time, however, there would be no way for Dr. Saugy to know who had given any of the urine samples that he tested. They would only have been identified with an anonymous sample control number. If Dr. Saugy had, in fact, identified a suspicious sample, he would have then conducted an "A" sample confirmation test. If Dr. Saugy had subsequently declared a positive result, he would have then told USADA, all of which USADA would have alleged in the charging document now before the Review Board. In addition, Dr. Saugy would have reported any positive test and the athlete would have been notified and offered the opportunity to witness a "B" sample test. The laboratory would also have conducted the EPO stability test in order to declare an Adverse Analytical Finding. None of that ever happened, USADA does not allege that happened, and therefore it is irresponsible and inappropriate and violative of athlete rights for there to be any further discussion this issue, much less have it a subject of disciplinary charges. To the contrary, if USADA wants the Review Board to consider a test for EPO taken eleven years ago, it needs to produce evidence from Dr. Saugy about precisely what he did, what it showed, and what evidence he has of those events. What Dr. Saugy recalls, the story that Mr. Landis tells in his email, and the version of events described by Tyler Hamilton on television are simply not consistent and do not constitute evidence sufficient to charge anyone with anything. There is no way for Mr. Armstrong to prove what did or did not happen in a Swiss laboratory to which he did not have access. In the final analysis, no one ever informed him that any of his urine samples from the Tour of Switzerland were positive—to the contrary, he was informed they were negative.

Third, the allegations of Landis and Hamilton and the comments that USADA attributes to Dr. Saugy are contrary to what Dr. Saugy himself told USADA. Dr. Saugy was identified by USADA in its June 12th letter. They had an obligation to disclose everything that Dr. Saugy said that supports any allegation about the 2001 Tour of Swiss urine tests. The charging document quotes Dr. Saugy as saying that "Lance Armstrong's urine sample results from the 2001 Tour of


**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 27, 2012
Page 12

Switzerland were indicative of EPO use." It is clear, however, that Dr. Saugy: (i) denied meeting with Mr. Armstrong, Johan Bruyneel or anyone from UCI; (ii) did not say he was paid to declare a test negative; and (iii) did not say that there was ever a positive test. Consequently, the portion of the June 12th letter related to Dr. Saugy entirely undermines what Landis and Hamilton said. In other words, were they telling the truth, the June 12th letter would have alleged there was a positive test after all procedures were followed, it would have charged Johan Bruyneel with involvement, and would have alleged that Mr. Armstrong knew he had a positive test. None of that is in the charging document because USADA knows it is false.

Fourth, as we explained in our letter to the Review Board, dated June 22, 2012, when the Washington Post interviewed Dr. Saugy, he emphatically rejected the notion that he would validate the above sample from the Tour of Switzerland, telling *The Washington Post*: "It will never be sufficient to say, in fact, it was positive. . . . I will never go in front of a court with that type of thing." USADA nevertheless misrepresented his views in the charging letter. It is our understanding that after Dr. Saugy spoke to the Washington Post, there was an effort made to intimidate him and to threaten him with adverse consequences if he did not support the effort to charge Lance Armstrong.

## V.   Conclusion.

USADA has no jurisdiction to bring the charges in its June 12 letter. For this reason alone, the Board should not allow USADA to proceed.

Even assuming *arguendo* that USADA had any jurisdiction here, it has not presented any credible evidence in support of its charges. According to Messrs. Landis and Hamilton, both gentlemen provided their testimony to the grand jury considering the federal criminal investigation against Mr. Armstrong. Thus, the Department of Justice had the very information that USADA now presents to this Review Board and determined not to bring any charges. Presumably, that is because the Department of Justice also had all of the *exculpatory* information that it uncovered during the course of its investigation. Mr. Armstrong has repeatedly requested that, to the extent USADA relies on information collected by the Department of Justice, Mr. Armstrong must be given access to all of the information that was collected. If the Review Board is to have any meaning as an independent check on USADA's ability to bring charges against athletes, then USADA cannot be permitted to engage in concerted action with the Government and then pick-and-choose what information it decides to provide from that investigation.

With respect, the fact that, in response to the Review Board, USADA was able to point to nothing more than a television interview including allegations from eleven years ago, and an allegation made by a person USADA claims to be liar, confirms that there is no basis to proceed here. USADA does not have jurisdiction to bring these charges. And, even if it did, there is,



USADA Anti-Doping Review Board
June 27, 2012
Page 13


simply put, no evidence before this Board sufficient for it to recommend charging Mr. Armstrong in this matter.

Yours sincerely,

Robert D. Luskin

Enclosure

cc:     John Ruger, USOC Athlete Ombudsman (via email)
        Patrick McQuaid, UCI President (via email)

# Attachment

**PATTON BOGGS**LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 26, 2012

Robert D. Luskin
202-457-6190
rluskin@pattonboggs.com

**VIA E-MAIL AND FAX**

USADA Anti-Doping Review Board
c/o William Bock, III
General Counsel
-and-
c/o Lisa McCumber
Testing Results Manager
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO  80919

To the Members of the Anti-Doping Review Board:

    We write on behalf of Lance Armstrong in response to a communication that I received today at 2:43 pm eastern from Lisa McCumber, Testing Results Manager, USADA.  Ms. McCumber informs us for the first time that USADA has made an additional submission to the Review Board—when, we do not know—and that Mr. Armstrong has essentially 24 hours to respond.  Ms. McCumber does not identify who imposed this deadline, or any basis for why Mr. Armstrong is only given this short period to respond.  This toxic combination of secrecy, arbitrariness, and grotesque manipulation of process is, unfortunately, just one of many violations of the USADA protocol reflected in this communication.  Mr. Armstrong intends to respond to USADA's additional submission, which in fact confirms that USADA has no evidence against Mr. Armstrong, but can only meaningfully do so if the Review Board process is respected.  He requests that the Review Board provide him that opportunity.

    First, and foremost, the USADA Protocol is unambiguous that an athlete is to be provided ten days to respond to a submission from USADA.  *See* USADA Protocol 11(c)(iii). Since today is the first that Mr. Armstrong has been provided with the new information upon which USADA relies, the plain terms of the Protocol dictate that he be afforded ten days from June 26, 2012, to respond.  The ten-day provision is an important one, as it affords the athlete the opportunity to respond meaningfully to USADA's submission.  It further prevents the very type of sand-bagging that USADA attempts here, *i.e.*, providing a complaint without any evidence and then, after an athlete has made his timely submission in response, giving the athlete only 24 hours

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 26, 2012
Page 2

to respond to the actual submission USADA asks the Review Board to consider. This is plainly improper and highly prejudicial.

Since Mr. Armstrong is currently banned from competing in WTC events as a result of USADA bringing its claim to the Review Board, there will be no prejudice to any entity from providing him until July 6, 2012 to respond. Moreover, failure to provide the time will be a substantial prejudice to Mr. Armstrong and a patent violation of the USADA Protocol. **Please let us know on or before 12:00 pm (noon) eastern June 27, 2012 that the Review Board will enforce the USADA Protocol and provide Mr. Armstrong until July 6, 2012 to respond to USADA's belated submission.**

Second, the purpose of the Review Board is to provide the athlete with an independent body of experts to review the adequacies of USADA's allegations. *See* Protocol 11(a). Ms. McCumber's communication raises serious question about whether USADA has compromised this independence. Her email confirms that USADA has engaged in *ex parte* communications with the Review Board. Mr. Armstrong was not contemporaneously aware that the Review Board had requested a further submission and is not aware even now of precisely what the Review Board communicated to USADA or of USADA's full response. We assume the Review Board informed USADA that it had not submitted any evidence to support its charges and then there were discussions or written communications between someone on behalf of the Review Board and someone on behalf of USADA about USADA providing an additional submission. Such *ex parte* communications compromise the independence of the Review Board, which is why Protocol 11(c)(ii) expressly contemplates that communicates from USADA to the Review Board must be copied to the athlete. Mr. Armstrong is entitled to an accounting of why this provision was breached, the extent of the breach, and all of the communications between USADA and the Review Board. Please provide this information as soon as possible per the Protocol so that Mr. Armstrong can consider it in his response. If oral communications between USADA representatives and the Review Board took place, we are entitled to and would request a written summary of those communications, including the time and participants.

I note that we raised this *ex parte* concern with USADA's General Counsel on Sunday, June 24, 2012, in light of statements Mr. Tygart had made to the press. *See* Letter from R. Luskin to W. Bock of June 24, 2012 (enclosed). I asked at that time that General Counsel Bock provide Mr. Armstrong with any information USADA had provided *ex parte* or to confirm that no such improper *ex parte* communications had occurred. Mr. Bock did not respond to my correspondence. We now know why: USADA had in fact engaged in *ex parte* communications, those communications were improper, and Mr. Bock did not want to provide Mr. Armstrong the opportunity (unless forced to do so by the Review Board) to respond to the new information. This is a plain violation of the USADA Protocol and any notion of fair play and due process.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 26, 2012
Page 3

Mr. Armstrong will be vindicated of these spurious allegations in any fair forum. Mr. Bock and USADA, however, appear determined to deny Mr. Armstrong that opportunity.

Third, we note that the communication from Ms. McCumber is as follows: "Is there any evidence consistent with USADA's allegations that is already in the public domain and would not subject any witness to a greater risk of intimidation or retaliation?" This confirms our view that, on the present record, the Review Board does not have evidence with which to recommend charges be brought. If it did, it would not request additional information. It also confirms our view that the Review Board cannot consider USADA's unnamed "witnesses" if those persons remain unidentified and Mr. Armstrong is not given a chance to understand what they allege and to respond to those allegations. We want to confirm that this is the position the Review Board will take. We also want to confirm that the Review Board did not intend by this statement to credit USADA's inflammatory, offensive, and wholly unsupported assertion that Mr. Armstrong would attempt to intimidate or retaliate against any witness.

Assuming that the Review Board will honor the Protocol and not consider evidence that Mr. Armstrong does not have the opportunity to rebut, Mr. Armstrong no longer understands what charges USADA is seeking to bring. USADA must conform its complaint to the information it has provided to the Review Board and Mr. Armstrong, *i.e.*, a complaint that does not rely on allegations made by undisclosed witnesses. While we will respond to the new submissions that USADA has made in due course, we note that, at a minimum, they do not support the wide-ranging allegations made in USADA's June 12, 2012 complaint. We therefore request that the Review Board instruct USADA to provide an updated complaint that makes reference only to allegations supported by the information it has provided to the Review Board and to which Mr. Armstrong can respond. That amended complaint must be stripped of any allegations that rely solely on the alleged, undisclosed testimony of unnamed individuals.

Fourth, the new submission by USADA indicates that it intends to rely on hearsay statements of Tyler Hamilton and Floyd Landis, two individuals who have made numerous contradictory statements concerning the events alleged in USADA's June 12, 2012 notice. We have previously requested that USADA provide to us, "any documentation of purported statements by witnesses, in any form whatsoever (e.g. affidavits, declarations, interview memorandum, interview notes), with respect to the allegations contained in the June 12th letter." Letter from R. Luskin to W. Bock of June 15, 2012. USADA has ignored that request. Common sense dictates, however, that USADA cannot pick and choose what statements from these individuals it chooses to submit to the Review Board. If USADA's contention is that it will rely on these individuals' statements, then it must provide all of their relevant statements, all evidence from USADA's investigation that disproves the allegations or shows they could not be confirmed and all other exculpatory information in USADA's possession or that USADA has had access to in its work with the FDA and federal prosecutors during the abandoned criminal

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

USADA Anti-Doping Review Board
June 26, 2012
Page 4

investigation, to the Review Board. We also demand to know what consideration or promises were made to these individuals in exchange for their testimony. Mr. Landis has previously, publicly confirmed that USADA inappropriately attempted to buy his testimony with the promise of a reduced penalty. *See* Floyd Landis, *Positively False: The Real Story of How I Won the Tour de France* at pages 207-209 (Simon & Schuster c. 2007) (Not surprisingly, USADA did not choose to forward this publicly available document to the Review Board). Mr. Armstrong is entitled to know what both of these individuals were ultimately offered and given, including, as examples, assistance with civil litigation, assistance in avoiding criminal prosecution, and, *inter alia*, reduced penalties.

Finally, we do not understand Ms. McCumber's role. She is employed by USADA, but appears to send a communication on behalf of the Review Board, which is required to be an entity independent from USADA. We want to ensure that we have received a legitimate communication from the Review Board and that our responses are being communicated to the Review Board, a simple step that Mr. Bock previously refused. Please provide that assurance from the Review Board itself, not from an employee of USADA.

Yours sincerely,

Robert D. Luskin

Enclosure

cc:    John Ruger, USOC Athlete Ombudsman (via e-mail)

**PATTON BOGGS** LLP

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 24, 2012

<u>**VIA EMAIL AND TELEFACSIMILE**</u>

William Bock, III
General Counsel
United States Anti-Doping Agency
5555 Tech Center Drive
Suite 200
Colorado Springs, CO  80919

Dear Bill:

> As you know, we have repeatedly requested that USADA share with us the evidence that allegedly supports the proposed charges against Lance Armstrong, and we have requested assurances that we have been provided with any information or evidence that USADA has shared with the Review Board. *See* Protocol § 11.c.ii (requiring information that USADA shares with the Review Board to be "provided simultaneously to the Athlete . . . and the Athlete . . . shall be entitled to file a response with the Review Board."). You have flatly refused to share any information underlying the proposed charges other than certain blood data from 2009-2010 (and, simultaneously, refused to provide us with any analysis or expert review that supports the insinuation that the data is consistent with improper conduct by Mr. Armstrong). However, you have been less than forthright in clarifying whether USADA has shared with us all information that it has provided to the Board. Any such *ex parte* submission would violate the Protocol, be grotesquely unfair, contravene accepted notions of due process, and sabotage any meaningful review by the Board.

> On June 23, 2012, Travis Tygart, USADA's CEO, was quoted in *Cycling News* as follows: "USADA's CEO Travis Tygart stated that information has been submitted for review to the Anti-Doping Review Board (ADRB), 'and the ADRB will consider all submissions in accordance with the rules.'" *Cycling News*, June 23, 2012 ("Armstrong Attorneys Respond to USADA Charges."). We are naturally skeptical that any news account accurately reflects USADA's intentions. However, bitter experience makes us even more skeptical of USADA's conduct.

> Accordingly, please confirm immediately whether or not USADA has provided the Anti-Doping Review Board with any information or evidence of any kind, whether orally or in writing, other than the proposed charges furnished to us on June 12, 2012. If so, we demand that this information be provided to us promptly and that we be given sufficient

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

William Bock, III
June 24, 2012
Page 2

time to address any such material before the Review Board deliberates.  In addition, because
USADA has chosen to describe its charges as a conspiracy and has named multiple
respondents, if any other respondent has provided the Review Board with any information
that USADA or the Review Board believe constitutes evidence relevant to the charges
against Lance Armstrong, we also demand that this information be provided to us promptly
and that we be given sufficient time to address any such material before the Review Board
deliberates.

Yours sincerely,

Robert D. Luskin