# EXHIBIT 18

**ORIGINAL: FRENCH**
INTERNATIONAL OLYMPIC COMMITTEE
**ETHICS COMMISSION**

**DECISION with recommendation
No. D/01/07**

CASE No. 03/2006

Mr Lance Armstrong
v/
Richard Pound, IOC member and WADA Chairman,
and the World Anti-Doping Agency (WADA)

REFERRAL:
On 3 July 2006, the Ethics Commission received a complaint from
Mr Mark S. Levinstein, an American lawyer, on behalf of Mr Lance Armstrong
jointly against Mr Richard Pound, IOC member and Chairman of the World Anti-
Doping Agency (WADA), and against WADA itself. Attached to this complaint was
a copy of the report on the "independent investigation – analysis samples from the
1999 Tour de France" by Mr Emile Vrijman, a lawyer in The Hague (NL), and the
appeal submitted by Mr Levinstein before the IOC Executive Board on 20 June
2006, based on the conclusions of this investigation.
After the validity of the brief which Mr Armstrong had given to his lawyer was
established, the parties concerned by the complaint, WADA and
Mr Richard Pound, were informed by mail on 7 July 2006 that they had the
possibility of submitting observations.

At the same time, the Ethics Commission was informed by the IOC President that
the IOC Executive Board had proposed to Mr Armstrong, WADA and its Chairman,
the French Laboratoire National de Dépistage du Dopage (LNDD) and the
International Cycling Union (UCI), that they make use of the mediation procedure
provided before the Court of Arbitration for Sport (CAS) to settle the dispute
between them following the publication of a press article in the French newspaper
L'Equipe on 23 August 2005.

The Ethics Commission members wished to allow the greatest possible scope for
mediation to resolve the dispute.

In a letter dated 13 July, WADA asserted that, as an international organisation, it
did not fall under the jurisdiction of the IOC Ethics Commission.
In a letter dated the same day, Mr Richard Pound asserted that, as he was
involved as the Chairman of WADA, the jurisdiction of the Ethics Commission did
not apply to him for the same reasons as those cited by WADA.

After being informed of the official decision regarding the impossibility of
implementing the mediation procedure before the CAS, the Ethics Commission
Chairman asked Mr Lance Armstrong to refer the case to the Commission once
more.

1

Mr Armstrong confirmed his complaint by return of fax on 25 October 2006 in exactly the same terms as in the complaint filed on 3 July 2006. At his request, Mr Levinstein was allowed a period of time in which to submit any relevant document. On 27 November 2006, it was noted that no new document had been sent. On 9 January 2007, Mr Levinstein sent a copy of a press article dated 7 January 2007.
Mr Richard Pound's observations on these various documents were requested. But the latter did not react.

Facts:
The following facts emerge from the documents sent:

After two editions of the Tour de France cycling race in 1998 and 1999, the leftover samples from those tested as part of the anti-doping controls were preserved, with the agreement of the athletes, for scientific research purposes. The LNDD performed two studies for research purposes on these samples to improve the precision and reliability of the test results, particularly as regards the detection of EPO. The results of the first study (on the samples from 1998) were published in 2000 in the scientific journal *Nature*, without producing any reaction from the media or the athletes. The results of the second study (on the samples from 1999) were made public, not by a scientific publication, but by a press article published in the French sports daily *L'Equipe* on 23 August 2005, under the title "le mensonge d'Armstrong" ("Armstrong's lie"), revealing that traces of EPO had been found six times in the urine of American cyclist Lance Armstrong, winner of the Tour in 1999.

After noting that the EPO detection tests carried out in December on the leftover samples were not intended to expose anyone cheating during the 1999 Tour, the author of the article explained that he had been able to compare the numbers of the samples taken from the rider Lance Armstrong, recorded on the doping control forms completed by the Tour doctor in 1999, and match these with the number of the samples tested as part of this scientific study, some of which the LNDD described as positive for EPO.

In the months which followed, the UCI tasked a Dutch lawyer, the former Director of the Dutch Anti-Doping Agency, with conducting an investigation. The report from this investigation did not succeed in proving how the journalist had been able to obtain the different information, even though it did wonder for what reason the additional information identifying the samples used had been included with the scientific report. It did however conclude that the research had been performed on a number of samples which had already been opened and analysed previously; that there had been no internal chain of storage; and that the identity and integrity of the samples was not guaranteed. As a result, the report recommended that the UCI take no disciplinary measures against the cyclists, and Mr Armstrong in particular, on the basis of the LNDD study results.

From all the press articles published after this affair, it appears that Mr Richard Pound made statements to the media which were likely to enable journalists to draw negative conclusions concerning the integrity of Mr Armstrong.

OPINION:

a) – Regarding the World Anti-Doping Agency (WADA)

The Ethics Commission notes that, because of the *International Convention Against Doping in Sport* signed under the auspices of UNESCO in Paris on 19 October 2005 by the IOC and various States, WADA is a body with its own status and organisation, which provides *inter alia* for equal representation of the Olympic Movement and governments of States which are party to it, as well as equal responsibility for the funding of it. Consequently, this organisation falls outside the sole sphere of the Olympic Charter.
The IOC Ethics Commission recalls that its mission is to be found exclusively within the framework of the Olympic Charter and finds that it is not able to intervene to evaluate the conduct of an institution which is not bound by the application of Rule 23 of the Olympic Charter.
As a result, the Ethics Commission decides, pursuant to point B.5 of its Regulations, to declare itself to have no jurisdiction with regard to the complaint against WADA.

b) – Regarding the personal activity of Mr Richard Pound, IOC member

With regard to Mr Richard Pound, IOC member, the Ethics Commission notes that he is an Olympic party as defined by the Code of Ethics and that, based on the application of the Code of Ethics by the IOC Session and Executive Board, IOC members in their personal activities must respect their obligations vis-à-vis the Olympic Charter and Code of Ethics at all times, including in their activities outside the IOC.

Mr Armstrong's complaint is founded essentially on the report of the "independent investigation – analysis samples from the 1999 Tour de France". From reading the conclusions of this report, it is clear that there is no personal reproach against Mr Richard Pound for his activity.

As a result, without having to assess the content of this report, the Ethics Commission may observe that its conclusions do not contain any incriminating element regarding the personal conduct of Mr Pound, IOC member.

However, from the press cuttings attached to the complaint, it appears that Mr Richard Pound made personal statements which could have been regarded as likely to impugn the probity of an athlete, given the high profile of the sports personalities in question.

The Ethics Commission, like all the Olympic family members, can only approve of and support the unceasing fight against the scourge of doping conducted by Mr Richard Pound, WADA Chairman and IOC member.

Nonetheless, it recalls that, in accordance with the principle set out under point 4 of the Fundamental Principles of Olympism in the Olympic Charter, "the Olympic spirit, which inspires the whole Olympic Movement, requires mutual understanding, a spirit of friendship, solidarity and fair play" within the Olympic

3

Family. In this regard, a degree of prudence is indispensable out of respect for the Olympic spirit.

As a result, the Ethics Commission recommends that the IOC Executive Board remind Mr Richard Pound of the obligation to exercise greater prudence consistent with the Olympic spirit when making public pronouncements that may affect the reputation of others.

DECISION:

After deliberating in accordance with its Statutes, the Ethics Commission decides:

1. to declare itself to have no jurisdiction regarding the complaint made against the World Anti-Doping Agency;

2. to recommend that the IOC Executive Board remind Mr Richard Pound, IOC member, of the obligation to exercise greater prudence consistent with the Olympic spirit when making public pronouncements that may affect the reputation of others.

Done in Lausanne, 2nd February 2007

For the Chairman,
Pâquerette Girard Zappelli
Special Representative