# EXHIBIT 39



# TABLE OF CONTENTS

1.......  **USADA Protocol**

17.......  **Annex A** – World Anti-Doping Code Articles

59.......  **Annex B** – A Laboratory Documentation Package

60.......  **Annex C** – B Laboratory Documentation Package

62.......  **Annex D** – American Arbitration Association Supplementary Procedures for the Arbitration Of Olympic Sport Doping Disputes

75.......  **Annex E** – Time Line. This timeline is for general guidance only and does not create any obligation, requirement or right under the USADA Protocol.

76.......  **Annex F** – Language to be set forth in USADA correspondence offering an athlete the opportunity to waive analysis of the athlete's B specimen

77.......  **Annex G** – Retirement Rules



# UNITED STATES ANTI-DOPING AGENCY
## PROTOCOL FOR OLYMPIC AND PARALYMPIC MOVEMENT TESTING

*(effective as revised January 1, 2009)*

**1. USADA's Relationship with the United States Olympic Committee**

The United States Anti-Doping Agency ("USADA") is an independent legal entity not subject to the control of the United States Olympic Committee ("USOC") and for purposes of the World Anti-Doping Code (the "Code") and various international standards, including the World Anti-Doping Agency ("WADA") International Standard for Testing (the "IST") is the National Anti-Doping Organization" ("NADO") for the United States of America. The USOC has contracted with USADA to conduct drug *Testing*, manage test results, investigate potential violations of anti-doping rules, and adjudicate disputes involving anti-doping rule violations for *Participants* in the Olympic and Paralympic movements within the United States and to provide educational information to those *Participants*. For purposes of transmittal of information by USADA, the USOC is USADA's client. However, the USOC has authorized USADA to transmit information simultaneously to the relevant National Governing Body ("NGB")[2], International Federation ("IF"), International Paralympic Committee ("IPC"), WADA and the involved *Athlete* or other *Person*.

**2. Athletes Subject to Testing by USADA**

The USOC, NGBs and the *Code* have authorized USADA to test the following *Athletes*:

a. Any *Athlete* who is a member or license holder of a NGB;

b. Any *Athlete* participating at an *Event or Competition* sanctioned by the USOC or a NGB or participating at an *Event or Competition* in the United States sanctioned by an IF;

c. Any foreign *Athlete* who is present in the United States;

d. Any other *Athlete* who has given his/her consent to *Testing* by USADA or who has submitted a *Whereabouts Filing* to USADA or an IF within the previous twelve months and has not given his or her NGB and USADA written notice of retirement;

e. Any *Athlete* who has been named by the USOC or an NGB to an international team or who is included in the *USADA Registered Testing Pool* ("USADA RTP") or is competing in a qualifying event to represent the USOC or NGB in international competition;

f. Any United States *Athlete* or foreign *Athlete* present in the United States who is serving a period of *Ineligibility* on account of an anti-doping rule violation and who has not given prior written notice of retirement from all sanctioned competition to the applicable foreign anti-doping agency or foreign sport association, or the applicable foreign anti-doping agency or foreign sport association; or

g. Any *Athlete* USADA is *Testing* under authorization from the USOC, an NGB, IF, any NADO, WADA, the International Olympic Committee ("IOC"), the International Paralympic Committee ("IPC") or the organizing committee of any *Event or Competition*.

USADA will not allow the *Testing* process to be used to harass any *Athlete*. In selecting *Athletes* for *Testing*, USADA will focus primarily on *Athletes* who are participating, or have the potential to participate, in international competition.

**3. Choice of Rules**

In conducting *Testing* and results management under this Protocol for Olympic and Paralympic Movement Testing (the "USADA Protocol" or "Protocol"), USADA will apply the following rules and principles:

a. Articles of the *Code* set forth in **Annex A** which is incorporated by reference into the USADA Protocol shall apply in all cases.

b. The selection and collection procedures set forth in paragraphs 4, 5 & 7 herein shall apply to all *Testing* conducted by USADA unless different procedures are agreed to between USADA and the party requesting the test for a particular *Event or Competition*.

c. USADA shall be responsible for results management of the following: (1) tests initiated by USADA, unless otherwise referred by USADA to a foreign sports organization having jurisdiction over the *Athlete* or other *Person*,(2) all other tests for which the applicable IF rules require the initial adjudication to be done by a domestic body (if responsibility for results management is accepted by USADA), and (3) other potential violations of **Annex A**, IF, the USOC National Anti-Doping Policies ("NADP"), or the USADA Protocol involving any *Athlete* described in paragraph 2, or *Athlete Support Personnel*, unless otherwise referred by USADA to a foreign sports organization having jurisdiction over the *Athlete* or other *Person*. Where, pursuant to an agreement, USADA executes tests initiated by an IF, regional or continental sports organization or other Olympic movement sporting body, other than the USOC or a NGB, then results management shall be governed by the USADA Protocol unless otherwise specified in the testing agreement.

d. Any IF or NGB procedural rule inconsistent with this Protocol shall be superceded by this Protocol.

e. The USOC has adopted the USOC NADP which will affect *Athletes'* or other *Persons'* eligibility for USOC teams and benefits.

---

[1] *Capitalized and italicized terms have the meaning set forth in the Definitions Section of the Code.*

[2] *The term "NGB" includes Pan American Sports Organizations recognized by the USOC.*



4. **Selection of Athletes to be Tested In-Competition**

USADA shall have the authority to determine which *Athletes* will be selected for *Testing* in all *Events* or *Competitions* tested by USADA. In making this determination, USADA may follow NGB or IF selection procedures when available and will include at a minimum the selection formulas or requests for target selection of particular *Athletes* which are proposed by the USOC or a particular NGB. Notwithstanding the foregoing sentence, USADA retains the right to test any *Athlete* subject to *Testing* as provided in paragraph 2 that it chooses, with or without cause or explanation.

5. **Selection of Athletes to be Tested Out-of-Competition**

USADA shall have the authority to determine which *Athletes* will be selected for *Out-of-Competition Testing* by USADA. In making this determination, USADA will carefully consider selection formulas or requests for target selection of particular *Athletes* which are proposed by the USOC or a particular NGB. USADA retains the right to test any *Athlete* subject to *Testing* as provided in paragraph 2 that it chooses, with or without cause or explanation. USADA will not allow the *Testing* process to be used to harass any *Athlete*.

6. **USADA Registered Testing Pool**

Unless otherwise agreed by USADA, at least quarterly each NGB will provide USADA with an updated list of *Athletes*, proposed by the NGB to be included in the USADA RTP. With respect to each *Athlete* on such list and such additional *Athletes* as may be designated by USADA for inclusion in the USADA RTP, the NGB will provide USADA with initial contact information which shall, at a minimum, include an accurate address, email address (if available) and phone number for each *Athlete* designated for inclusion in the USADA RTP. After USADA notifies the *Athlete* to inform him or her of the *Athlete's* inclusion in the USADA RTP it shall be the responsibility of each individual *Athlete* to forward to USADA his or her *Whereabouts Filing* and thereafter to provide USADA with updated information specifying his or her whereabouts.

Upon request by USADA, an *Athlete* shall within fourteen (14) days comply with the whereabouts requirements for members of the USADA RTP. It is the responsibility of each *Athlete* in the USADA RTP to provide updated *Whereabouts Filings* to USADA and to immediately submit an update to USADA in the event of any change in the information provided on a submitted *Whereabouts Filing*. The information provided on each *Whereabouts Filing* and/or change of plan form must comply with requirements set forth in the IST. Submission of each *Whereabouts Filing* shall be accomplished electronically via USADA's website or through an alternative means provided by USADA.

Within fourteen (14) days of notification of inclusion within the USADA RTP and thereafter prior to the submission of the *Whereabouts Filing* for the first quarter in each calendar year, each *Athlete* in the USADA RTP must successfully complete the USADA online education module or an alternative education program provided by USADA before completing their next required *Whereabouts Filing*.

Any *Athlete* who retires from sport while included in USADA's RTP must notify USADA, the USOC and the *Athlete's* NGB(s) in writing prior to returning to active participation in sport and must comply with all USADA whereabouts requirements for members of the USADA RTP for the period of time specified in the USOC NADP prior to returning to active participation in sport (as defined by the USOC NADP). USADA will include in the USADA RTP any such *Athlete* returning to active participation in sport for at least the minimum period required by the USOC NADP.

Any *Athlete* sanctioned by USADA for violation of any anti-doping rule who receives a period of *Ineligibility* of less than a lifetime period of *Ineligibility* shall automatically be a member of the USADA RTP from the date of the public announcement of such sanction for at least the period of the public announcement and shall comply with USADA's whereabouts requirements within fourteen (14) days of public announcement of the sanction.

Any *Athlete* who retires during a period of *Ineligibility* and is removed from the USADA RTP and later desires to seek reinstatement or return to active participation in sport must give USADA notice of their intent to come out of retirement and must comply with all USADA whereabouts requirements for members of the USADA RTP. The *Athlete* shall not be entitled to return to eligibility until the *Athlete* has been subject to *Out-of-Competition Testing* for a period of time equal to the period of *Ineligibility* remaining as of the date the *Athlete* retired or for the period of time specified in the USOC's Anti-Doping Policies for *Athletes* returning to active participation in sport, whichever period is longer.

USADA shall publish on its website, a list of all *Athletes* in the USADA RTP.

7. **Sample Collection**

*Sample* collection by USADA, and third parties authorized by USADA to collect *Samples* for USADA including other *Anti-Doping Organizations* pursuant to bilateral or multilateral agreements, will conform to the standards set forth in the IST.

8. **Laboratory Analysis**

*Samples* collected by USADA shall be analyzed in WADA accredited laboratories or as otherwise approved by WADA in order to establish an anti-doping rules violation involving the presence of a *Prohibited Substance* in accordance with Article 2.1 of the *Code*. In analyzing *Samples* for USADA, WADA accredited laboratories shall follow Article 6 of the *Code* set forth in **Annex A** and the established WADA International Standard for Laboratories ("ISL").

9. **Notification**

USADA will provide the following notification with respect to each *Specimen* collected or attempted to be collected by USADA:



a. Upon receipt of a negative laboratory report USADA will promptly forward that result to the USOC, the applicable NGB and the Athlete at the address on the *Whereabouts Filing* on file or if no form is on file to the Athlete on the Doping Control Official Record or other form signed by the Athlete at the time of notification for *doping control* and/or at the time of *Sample* collection and processing ("DCOR").

b. Upon receipt from the laboratory of an A *Sample Adverse Analytical Finding* USADA will promptly conduct a review to determine whether an applicable therapeutic use exemption ("TUE") has been granted or will be granted or there is any apparent departure from the IST or ISL that caused the *Adverse Analytical Finding*. If this review does not reveal an applicable TUE or departure, USADA will promptly notify the USOC, the applicable NGB, the applicable IF, WADA and the Athlete at the address on the *Whereabouts Filing* on file, or if no form is on file, at the address on the DCOR and shall advise the Athlete of the date on which the laboratory will conduct the B *Sample* analysis. The Athlete may attend the B *Sample* analysis accompanied by a representative, or may have a representative appear on his or her behalf, at the expense of the Athlete. Except as provided in in sections 12 and 13 of this Protocol, prior to the B *Sample* opening, USADA shall provide to the Athlete the A *Sample* laboratory documentation as set forth on **Annex B**, a copy of the Protocol and a copy of the Code. In any correspondence offering the Athlete the opportunity to waive *Testing* of the B *Sample*, USADA shall include the language set forth in **Annex F**.

c. Upon receipt of the laboratory's B report USADA shall promptly notify the Athlete, the USOC, the applicable NGB, IF and WADA. If the B *Sample* analysis confirms the A *Sample* analysis USADA shall then provide to the Athlete the B *Sample* documentation package set forth on **Annex C**. The laboratory shall not be required to produce any documentation in addition to **Annexes B and C** unless ordered to do so by an arbitrator(s) during adjudication.

d. Upon receipt from the laboratory of an *Atypical Finding*, USADA will promptly conduct a review to determine whether an applicable TUE has been granted or will be granted or there is any apparent departure from the IST or ISL that caused the *Atypical Finding*. Except as provided below, USADA is not required to provide notice of an *Atypical Finding* until after USADA has completed its investigation to determine whether the *Atypical Finding* will be brought forward as an *Adverse Analytical Finding*. Prior to a determination concerning whether the *Atypical Finding* will be brought forward as an *Adverse Analytical Finding* and of the current progress of any investigation pertaining to the *Atypical Finding* in the following situations:

   i. If USADA determines that the B *Sample* should be analyzed prior to the conclusion of USADA's investigation, USADA will provide notice to the Athlete, the NGB, the USOC, the IF and WADA and permit the same opportunity to attend the B *Sample* opening and analysis as if the A *Sample* finding had been an *Adverse Analytical Finding*.

   ii. If USADA receives a request from the USOC, a NGB, or another sport organization responsible for meeting an imminent deadline for selecting team members for a *International Event*, or from a *Major Event Organization* shortly before one of its *International Events* to disclose whether any Athlete identified on a list provided by the *Major Event Organization* or USOC, NGB or other sport organization responsible for meeting an imminent deadline for selecting team members has a pending *Atypical Finding* USADA may identify any such Athlete with an *Atypical Finding* after first providing notice of the *Atypical Finding* to the Athlete.

e. In circumstances where USADA is conducting *Testing* for an IF, regional or continental sports organization or other Olympic movement sporting body, other than the USOC or a NGB, the notification described in this section shall be made as provided herein unless specified otherwise in the *testing agreement*.

f. If USADA determines that an Athlete or other *Person* may have committed an anti-doping rule violation as described in **Annex A** other than a positive test or other violation of IF rules or the USOC NADP then at such time as USADA initiates the Anti-Doping Review Board ("Review Board") process under section 11 of the Protocol, seeks an involuntary *Provisional Suspension* pursuant to section 12 of the Protocol, or commences results management pursuant to section 13 or 14 of the Protocol, USADA shall provide notice of such potential violation to the Athlete or other *Person*, the USOC, the applicable NGB, IF and WADA.

g. In the event that USADA decides not to proceed upon any potential anti-doping rule violation submitted to the Review Board or decides not to bring forward any *Adverse Analytical Finding* or *Atypical Finding* as an anti-doping rules violation USADA shall so notify the Athlete, the USOC, the relevant NGB, IF and WADA.

h. Notice to an Athlete or other *Person*, for all purposes of this Protocol, shall be effective when delivered by overnight courier to the Athlete's or other *Person's* most recent mailing address on file with USADA. If USADA is not able to deliver the notice at such address, then USADA shall contact the NGB and send notice by overnight courier to the Athlete's or other *Person's* most recent address on file with the NGB if that is a different address than the most recent address on file with USADA. Actual notice may be accomplished by any other means including electronic mail and shall be deemed effective if USADA receives a return communication from the email address provided by the Athlete or other *Person* to USADA or his or her NGB indicating the notice was received or if USADA communicates with the Athlete or other *Person* by other means and the Athlete or other *Person* acknowledges receipt of the notice. If delivery cannot be achieved at the most recent mailing address on file with USADA and the NGB then notice shall be effective three (3) business days after delivery of the notice to the Athlete's or other *Person's* NGB.



## 10. *Results Management*

The results management process is designed to balance the interest of clean *Athletes* in not competing against another *Athlete* or *Athletes* facing an unresolved doping charge with the opportunity of *Athletes* and other *Persons* who have been charged with an anti-doping rule violation to have an opportunity for a hearing prior to being declared *Ineligible* to Participate in sport. Recognizing that athletic careers are short and the interest in the prompt resolution of anti-doping disputes is strong, the procedures in this Protocol are intended to facilitate the prompt and fair resolution of anti-doping matters.

As provided for in the *Code*, after an *Athlete* receives an *Adverse Analytical Finding* for a *Prohibited Substance* other than a *Specified Substance* on his or her *A Sample* a *Provisional Suspension* must be imposed promptly upon the *Athlete* after the opportunity for notice and a *Provisional Hearing*. Therefore, in the event an *Athlete* with an *Adverse Analytical Finding* for a *Prohibited Substance* other than a *Specified Substance* on his or her *A Sample* does not promptly and voluntarily accept a *Provisional Suspension* the results management process in this Protocol provides for a *Provisional Hearing* or an expedited hearing process or both.

Similarly, the interest of *Athletes*, other affected *Persons* and sports organizations in resolving pending anti-doping matters prior to a "Protected Competition" as defined in the Bylaws of the USOC is frequently strong. Therefore, the results management process in this Protocol includes an Expedited Track providing for the prompt handling of expedited cases and provides that USADA may shorten any time period set forth in this Protocol and require that any hearing be conducted or the results of any hearing be publicly announced on or before a certain date or time where doing so is reasonably necessary to resolve an *Athlete's* or other *Person's* eligibility before a *Protected Competition*.

## 11. *Results Management/ Anti-Doping Review Board Track*

Except as provided in sections 12 and 13 of this Protocol, when USADA receives a laboratory report confirming an *Adverse Analytical Finding* or concludes after investigation that an *Atypical Finding* was the result of the administration of a *Prohibited Substance* or *Use* of a *Prohibited Method*, or when USADA has otherwise determined that an anti-doping rule violation may have occurred, such as admitted doping, refusal to test, evasion of *doping control*, *trafficking*, a whereabouts failure or other violation of **Annex A**. If rules or the USOC NADP, then USADA shall address the case through the following results management procedures:

a. The Review Board shall be comprised of experts independent of USADA with medical, technical and legal knowledge of anti-doping matters. The Review Board members shall be appointed for two-year terms by the USADA Board of Directors. In accordance with section 11(c)(i) below, and except as provided for in sections 12, 13 and 14 of this Protocol, the Review Board shall review all *Sample* test

results reported by the laboratory as an *Adverse Analytical Finding* or as an *Atypical Finding* and as to which USADA determines that there exists no valid TUE, or other sufficient reason not to bring the case forward as a potential anti-doping rule violation. Such review shall be undertaken by between three and five Review Board members appointed in each case by USADA's Chief Executive Officer ("CEO") and, in cases involving a positive A and B *Sample*, composed of at least one technical, one medical and one legal expert.

b. Except as provided in sections 12, 13 and 14 of this Protocol, the Review Board shall also review all potential anti-doping rule violations, including violations of **Annex A**. If rules or the USOC NADP, not based on *Adverse Analytical Findings*, which are brought forward by USADA. Review of potential violations other than *Adverse Analytical Findings* shall be undertaken by three Review Board members appointed in each case by USADA's CEO.

c. Upon USADA's receipt of a laboratory B *Sample* report confirming an *Adverse Analytical Finding* (or immediately when analysis of the B *Sample* has been expressly waived by the *Athlete* or other *Person*), or when USADA determines that a potential violation of other applicable anti-doping rules has occurred, the following steps shall be taken:

i. USADA's CEO shall appoint a Review Board as provided in paragraphs 11(a) or 11(b) above.

ii. The Review Board shall be provided the laboratory documentation and any additional information which USADA deems appropriate. Copies of this information shall be provided simultaneously to the *Athlete* or other *Person* and the *Athlete* or other *Person* shall be entitled to file a response with the Review Board. The *Athlete's* or other *Person's* name will not be provided to the Review Board by USADA and will be redacted from any documents submitted to the Review Board by USADA.

iii. The *Athlete* or other *Person* shall be promptly notified that within ten (10) days of the date of notice he or she may submit to the Review Board, through USADA, any written materials for the Review Board's consideration.

iv. The *Athlete* or other *Person* shall also be provided the name, telephone number, email address and website URL of the USOC *Athlete* Ombudsman.

v. The Review Board shall be entitled to request additional information from either USADA or the *Athlete* or other *Person*.



vi. Notwithstanding the forgoing, the process before the Review Board shall not be considered a "hearing." The Review Board shall only consider written submittals. Submittals to the Review Board shall not be used in any further hearing or proceeding without the consent of the party making the submittal. No evidence concerning the proceeding before the Review Board, including but not limited to the composition of the Review Board, what evidence may or may have not been considered by it, its deliberative process or its recommendations shall be admissible in any further hearing or proceeding.

vii. The Review Board shall consider the written information submitted to it and shall, by majority vote, make a signed, written recommendation to USADA with a copy to the *Athlete* or other *Person* whether or not there is sufficient evidence of doping to proceed with the adjudication process.

viii. USADA shall also forward the Review Board's recommendation to the USOC, the applicable NGB, IF and WADA.

ix. The *Athlete* may elect to waive the Review Board process at any time and upon such an election USADA may waive the Review Board process if USADA concurs in the waiver. In such case USADA shall notify the USOC, the relevant NGB, IF, and WADA within ten (10) working days of whether USADA has decided to charge the *Athlete* with an anti-doping rule violation or has decided not to bring the case forward as a potential anti-doping rule violation.

d. Following receipt of the Review Board recommendation, USADA shall notify the *Athlete* or other *Person* in writing whether USADA considers the matter closed or alternatively what specific charges or alleged violations will be adjudicated and what sanction, consistent with **Annex A.** If rules, the USOC NADP, or the AAA Protocol, USADA is seeking to have imposed. The notice shall also include a copy of the Protocol and the American Arbitration Association ("AAA") Supplementary Procedures for Arbitration of Olympic Sport Doping Disputes (the "Supplementary Procedures") attached as **Annex D.**

e. Within ten (10) days following the date of such notice, the *Athlete* or other *Person* must notify USADA in writing if he or she desires a hearing to contest the sanction sought by USADA. The *Athlete* or other *Person* shall be entitled to a five (5) day extension if requested within such ten (10) day period. If the sanction is not contested in writing within such ten (10) or fifteen (15) day period, then the sanction shall be communicated by USADA to the *Athlete* or other *Person*, USOC, the applicable NGB, IF and WADA and thereafter imposed by the NGB. Such sanction shall not be reopened or be subject to appeal unless the *Athlete* or other *Person* can demonstrate by a preponderance of the evidence in a subsequent appeal to the Court of Arbitration for Sport ("CAS") that he or she did not receive either

actual or constructive notice of the opportunity to contest the sanction. The *Athlete* or other *Person* may also elect to avoid the necessity for a hearing by accepting the sanction proposed by USADA. If the sanction is contested by the *Athlete* or other *Person*, then a hearing shall be conducted pursuant to the procedures set forth below in sections 14 and 15.

## 12. *Provisional Suspension*

As required by Article 7.5.1 of the *Code*, in the event that the laboratory reports an *Adverse Analytical Finding* on an A *Sample* for a *Prohibited Substance* other than a "Specified Substance" within the meaning of Article 4.2.2 of the *Code* USADA will notify the *Athlete* or other *Person* that they have three (3) days in which to accept a *Provisional Suspension*. USADA may for good cause shorten the period for an acceptance of the *Provisional Suspension* by up to two (2) days or lengthen the period by up to an additional four (4) days. If the *Athlete* accepts a *Provisional Suspension* the *Athlete's* case will proceed on the Anti-Doping Review Board Track set forth in section 11 above. If the *Athlete* does not accept the *Provisional Suspension* proposed by USADA within the time period set forth in USADA's notice and if an Involuntary *Provisional Suspension* is not imposed as provided for below the *Athlete's* case will proceed on the Expedited Track set forth in section 13 below.

a. In the event that the laboratory reports an *Adverse Analytical Finding* on an A *Sample* for a *Prohibited Substance* other than a *Specified Substance* and USADA is unaware of a *Protected Competition*[3] in which the *Athlete* may participate within the next forty-five (45) days USADA may inform the *Athlete* of USADA's determination that a *Provisional Suspension* should be imposed and request, in writing with a copy to the *Athlete*, that the AAA form an arbitration panel as provided in this Protocol and schedule a *Provisional Hearing* to be held within ten (10) days of USADA's notice or within such shorter time as specified by USADA. *Provisional Hearings* shall be held via a conference call within the time frame requested by USADA and the sole issue to be determined by the panel at such a hearing will be whether USADA's decision that a *Provisional Suspension* should be imposed shall be upheld. USADA's decision to impose a *Provisional Suspension* shall be upheld if probable cause exists for USADA to proceed with a charge of an anti-doping rule violation against the *Athlete*. To establish probable cause it shall not be necessary for any B *Sample* analysis to have been completed. Prior to any *Provisional Hearing* USADA shall provide to the *Athlete* any and all laboratory documentation in the possession of USADA for the *Sample* in question. If probable cause is found the panel shall uphold USADA's decision to impose a *Provisional Suspension* against the *Athlete*. The *Provisional Suspension* shall make the *Athlete Ineligible* to Participate in any *Competition* or *Event* or from membership or inclusion upon any team organized or nominated by the USOC or any NGB and shall be in effect until the earlier final hearing has been held and an award issued by the panel or until the earlier

[3] The term "*Protected Competition*" shall have the meaning set forth in the USOC's Bylaws.



of one of the following events: USADA and the Athlete agree to a sanction, USADA withdraws its case against the Athlete, or the Athlete withdraws his or her request for arbitration or fails to prosecute his or her case resulting in imposition of a sanction.

b. If a *Provisional Suspension* is involuntarily imposed against an Athlete pursuant to the *Provisional Hearing* process set forth above, the Athlete shall be entitled to have his or her case heard pursuant to the Expedited Track set forth below if a written request for such expedited treatment is made to the panel within three (3) business days of the panel's decision to uphold USADA's decision to impose a *Provisional Suspension*.

c. In the event that USADA chooses not to request a *Provisional Hearing* or if USADA requests a *Provisional Hearing* and the *Athlete* or other *Person* presents credible evidence that the *Athlete* or other *Person* intends to participate in a Protected Competition within forty-five (45) days, the *Provisional Hearing* process shall be bypassed and the case shall proceed directly to an expedited hearing as provided for in section 13 of this Protocol.

d. Nothing in this rule shall preclude any Athlete or other *Person* from voluntarily accepting a *Provisional Suspension* proposed by USADA. Upon acceptance of a *Provisional Suspension* and agreement by USADA a case may be shifted to the appropriate stage of the Anti-Doping Review Board Track at any time.

### 13. Results Management / Expedited Track

When USADA receives a laboratory report of an *Adverse Analytical Finding* on an A *Sample* for a *Prohibited Substance* other than a Specified Substance and the *Athlete* or other *Person* believed to have committed the rule violation has not accepted a *Provisional Suspension* within the time period specified by USADA and is likely to Participate in a Protected Competition, then if USADA determines that the case might not be concluded prior to the Protected Competition if administered on the Anti-Doping Review Board Track USADA shall address the case through the following results management procedures:

a. The B *Sample* shall be analyzed by the laboratory at the earliest practicable time as scheduled by USADA. Notice of the date for the B *Sample* opening will be set forth in the notice to the *Athlete* informing of his or her opportunity to accept a *Provisional Suspension*.

b. Regardless of the status of any B *Sample* analysis, within three (3) business days of expiration of the period in which the *Athlete* or other *Person* must accept a *Provisional Suspension* in order to avoid handling of the *Athlete's* or other *Person's* case on the Expedited Track the *Athlete* or other *Person* shall be deemed to have requested arbitration of their case and USADA shall notify the AAA in writing of the initiation of an expedited proceeding by USADA against the *Athlete* or other *Person* by filing a request for arbitration with the AAA.

c. The AAA shall immediately form an arbitration panel under the AAA's expedited procedures.

d. The panel shall complete and close the hearing and issue its written award within the time period identified by USADA, as necessary to provide for orderly Participation in Protected Competition by the *Athlete* or other *Person*, if eligible, and/or by any other potentially affected *Athletes*, other *Persons* or team, or if no Protected Competition is more imminent, within twenty-one (21) days of formation of the panel.

### 14 Expedited Procedures

USADA may eliminate the Review Board process or shorten any time period set forth in this Protocol and require that any hearing be conducted or the results of any hearing be publicly announced on or before a certain date or time where doing so is reasonably necessary to resolve an Athlete's or other *Person's* eligibility before a Protected Competition. The shortened time periods shall continue to protect the right of the *Athlete* or other *Person* to a fair hearing and shall not prohibit the *Athlete's* or other *Person's* right to request three (3) arbitrators or choose a single arbitrator.

### 15. Hearings and Appeals

The following procedures apply to all hearings under this Protocol:

a. Any hearing will take place in the United States before the AAA using the Supplementary Procedures. The parties will be USADA and the *Athlete* or other *Person*. USADA shall also invite the applicable IF and *WADA* to participate either as a party or as an observer. The *Athlete* or other *Person* shall have the sole right to request that the hearing be open to the public, subject to such limitations as may be imposed by the arbitrator(s). For their information only, notice of the hearing date shall also be sent to the USOC, the USOC *Athlete* Ombudsman and the applicable NGB. If the *Athlete* or other *Person* requests, the USOC *Athlete* Ombudsman shall be invited as an observer.

b. The final award by the AAA/CAS arbitrator(s) may be appealed to the CAS within twenty-one (21) days of issuance of the final reasoned award or when the award is deemed final as set forth below. If the AAA/CAS arbitrators issue a partial, interim or non-final award or an award without reasons such award shall be deemed final for purposes of appeal to CAS on the earlier of (a) issuance of the final reasoned award by the AAA/CAS panel, or (b) thirty (30) days from issuance of the partial, interim or non-final award. The appeal procedure set forth in Article 13.2 of **Annex A** shall apply to all appeals not just appeals by *International-Level Athletes* or other *Persons*. A CAS appeal shall be filed with the CAS Administrator, the CAS hearing will automatically take place in the U.S. and CAS shall conduct a review of the matter on appeal which, among other things, shall include the power to increase, decrease or void the sanctions imposed by the previous AAA/ CAS Panel regardless of which party initiated the appeal. The regular CAS Appeal



14

Arbitration Procedures apply. The decision of CAS shall be final and binding on all parties and shall not be subject to further review or appeal.

c. In all hearings conducted pursuant to the USADA Protocol, subject to paragraphs 3(c) and 3(d) of this Protocol, the IF anti-doping rules, the USOC NADP and the USADA Protocol shall apply. If the foregoing rules are silent any applicable provisions of the *Code* shall be controlling.

d. All administrative costs of USADA relating to the *Testing* and management of *Athletes' Samples* prior to a determination of *Ineligibility* will be borne by USADA. Administrative costs of the USADA adjudication process (AAA filing fee, AAA administrative costs, AAA arbitrator fees and costs) will be borne by the USOC.

e. If the *Athlete* or other *Person* files an appeal with CAS, the CAS appeal fee will be paid by the *Athlete* or other *Person* and refunded to the *Athlete* by the USOC should the *Athlete* prevail on appeal.

f. The results of all hearings, including written decisions, shall be communicated by USADA to the *Athlete* or other *Person*, the USOC, the applicable NGB, IF and *WADA*. The NGB and/or USOC shall impose any sanction resulting from the adjudication process. The NGB and/or the USOC shall not impose any sanctions until after the *Athlete* or other *Person* has had the opportunity for a hearing.

### 16. *Confidentiality*

*Athletes* consent to USADA disclosing such information concerning the *Athlete* to sports organizations as may be required by the *Code*, IF rules, the USOC NADP, this Protocol, or the IST, including the whereabouts information described in Articles 14.3 and 14.5 of the *Code*. For any disclosure which USADA is entitled to make to the USOC, USADA may, in addition, make such disclosure to the appropriate NGB or other appropriate USOC member organization.

USADA shall maintain on its website a list which includes the identity of all *Athletes* tested by USADA and the number of times each *Athlete* has been tested by USADA.

USADA shall not *Publicly Disclose* or comment upon any *Athlete's Adverse Analytical Finding* or *Atypical Finding* or upon any information related to any alleged doping violation (including violations not involving an *Adverse Analytical Finding*) until after the *Athlete* or other *Person* (1) has been found to have committed an anti-doping rule violation in a hearing conducted under this Protocol, or (2) has failed to request a hearing within the time set forth in 10 (a), or (3) has agreed in writing to the sanction sought by USADA. However, USADA may provide notification to the USOC, NGB, IF, *WADA*, an event organizer or team selecting entity (or other sporting body ordering the test) as provided for in this Protocol. USADA does not control how information provided by USADA to the USOC, NGBS, IFs, *WADA* and other sports organizations is disseminated but will include statements to each organization

requesting that any organization receiving such information keep it confidential until disclosed by USADA. USADA may comment publicly at any time on any aspect of the results management/adjudication process or the applicable rules without making specific reference to any *Athlete* or other *Person* alleged to have committed an anti-doping rule violation. USADA may also release aggregate statistics of *Testing* and adjudication results. In the event an *Athlete* or the *Athlete's* representative(s) or others associated with the *Athlete* make(s) public comments about their case or the process involving the *Athlete* then USADA may respond publicly to such comments.

USADA shall *Publicly Report* the disposition of anti-doping matters no later than five (5) business days after: (1) it has been determined in a hearing in accordance with the Protocol that an anti-doping rule violation has occurred, (2) such hearing has been waived, (3) the assertion of an anti-doping rule violation has not been timely challenged, or (4) the *Athlete* or other *Person* has agreed in writing to the sanction sought by USADA. After an anti-doping rule violation has been established USADA may comment upon any aspect of the case. In all cases, the disposition shall be reported to the USOC, NGB, IF, *WADA* and, if applicable, the other sporting body referring the matter to USADA.

### 17. *Ineligibility*

Any *Athlete* who is declared *Ineligible* for an anti-doping rule violation by USADA, a NGB, an IF, another *Signatory* to the *Code* or by another body whose rules are consistent with the *Code* must comply with all requirements of the USADA RTP during the period of *Ineligibility* and must bear the costs associated with any *Out-of-Competition* tests or reinstatement tests conducted by USADA on him or her during the period of *Ineligibility* or thereafter.

Any *Athlete* who retires during a period of *Ineligibility* and is removed from the USADA RTP and later desires to seek reinstatement or return to active participation in sport must give USADA notice of the *Athlete's* intent to return from retirement and must comply with all USADA whereabouts requirements for members of the USADA RTP. Once the *Athlete* has provided all the whereabouts information required by USADA, USADA shall notify the *Athlete* of the date of the *Athlete's* re-inclusion in the USADA RTP. The *Athlete* shall not be eligible to recover eligibility until the *Athlete* has been in the USADA RTP and fully complied with all requirements for participation in the RTP, including the duty to provide whereabouts information, for a period of time equal to the period of *Ineligibility* remaining as of the date the *Athlete* retired or for the period of time specified in the USOC NADP for an *Athlete's* return to participation in sport following a retirement, whichever is longer. The *Athlete* must also comply with all applicable reinstatement requirements of the *Athlete's* NGB(s) and IF(s).



15

16

**18.** **Retirement**

Any Athlete enrolled in the USADA RTP who wishes to be removed from the USADA RTP on account of retirement must promptly notify USADA and his or her NGB in writing in order for retirement from the USADA RTP to be effective. In addition, Athletes are responsible to comply with the individual retirement policies for the IF(s) in each sport(s) in which he or she competes. The notice regarding retirement attached as **Annex G** shall be posted on the USADA website and included in the initial packet of information provided to Athletes in the USADA RTP. Such notice will automatically be included by USADA with any notice to an Athlete of a second missed test with USADA.

**19.** **Ownership and Use of Samples**

All Samples collected by USADA shall be the property of USADA, but shall only be used for purposes outlined in this Protocol and in accordance with Article 6 of the Code set forth in **Annex A.**

**20.** **Effective Date**

The revisions to this Protocol incorporated herein shall go into effect on January 1, 2009. Revisions to the Protocol as previously published shall not apply retrospectively to matters pending before January 1, 2009 except as provided in Article 25 of the Code.

---

# ANNEX A

### Articles from the World Anti-Doping Code that are Incorporated Verbatim into the USOC Anti-Doping Policies and the USADA Protocol for Olympic and Paralympic Movement Testing

### ARTICLE 1: DEFINITION OF DOPING

Doping is defined as the occurrence of one or more of the anti-doping rule violations set forth in Article 2.1 through Article 2.8 of the Code.

### ARTICLE 2: ANTI-DOPING RULE VIOLATIONS

Athletes or other Persons shall be responsible for knowing what constitutes an anti-doping rule violation and the substances and methods which have been included on the Prohibited List.

*[Comment "a" to Article 2: The purpose of Article 2 is to specify the circumstances and conduct which constitute anti-doping rule violations. Hearings in doping cases will proceed based on the assertion that one or more of these specific rules has been violated.]*

The following constitute anti-doping rule violations:

**2.1** **Presence of a Prohibited Substance or its Metabolites or Markers in an Athlete's Sample**

2.1.1  It is each Athlete's personal duty to ensure that no Prohibited Substance enters his or her body. Athletes are responsible for any Prohibited Substance or its Metabolites or Markers found to be present in their Samples. Accordingly, it is not necessary that intent, fault, negligence or knowing Use on the Athlete's part be demonstrated in order to establish an anti-doping violation under Article 2.1.

*[Comment to Article 2.1.1: For purposes of anti-doping rule violations involving the presence of a Prohibited Substance (or its Metabolites or Markers), the Code adopts the rule of strict liability which was found in the Olympic Movement Anti-Doping Code ("OMADC") and the vast majority of pre-Code anti-doping rules. Under the strict liability principle, an Athlete is responsible, and an anti-doping rule violation occurs, whenever a Prohibited Substance is found in an Athlete's Sample. The violation occurs whether or not the Athlete intentionally or unintentionally Used a Prohibited Substance or was negligent or otherwise at fault. If the positive Sample came from an In-Competition test, then the results of that Competition are automatically invalidated (Article 9 (Automatic Disqualification of Individual Results)). However,*



17

the Athlete then has the possibility to avoid or reduce sanctions if the Athlete can demonstrate that he or she was not at fault or significant fault (Article 10.5 (Elimination or Reduction of Period of Ineligibility Based on Exceptional Circumstances) or in certain circumstances did not intend to enhance his or her sport performance (Article 10.4 (Elimination or Reduction of the Period of Ineligibility for Specified Substances under Specific Circumstances)).

The strict liability rule for the finding of a Prohibited Substance in an Athlete's Sample, with a possibility that sanctions may be modified based on specified criteria, provides a reasonable balance between effective anti-doping enforcement for the benefit of all "clean" Athletes and fairness in the exceptional circumstance where a Prohibited Substance entered an Athlete's system through No Fault or Negligence or No Significant Fault or Negligence on the Athlete's part. It is important to emphasize that while the determination of whether the anti-doping rule violation has occurred is based on strict liability, the imposition of a fixed period of Ineligibility is not automatic. The strict liability principle set forth in the Code has been consistently upheld in the decisions of CAS.]

2.1.2   Sufficient proof of an anti-doping rule violation under Article 2.1 is established by either of the following: presence of a Prohibited Substance or its Metabolites or Markers in the Athlete's A Sample where the Athlete waives analysis of the B Sample and the B Sample is not analyzed; or, where the Athlete's B Sample is analyzed and the analysis of the Athlete's B Sample confirms the presence of the Prohibited Substance or its Metabolites or Markers found in the Athlete's A Sample.

[Comment to Article 2.1.2: The Anti-Doping Organization with results management responsibility may in its discretion choose to have the B Sample analyzed even if the Athlete does not request the analysis of the B Sample.]

2.1.3   Excepting those substances for which a quantitative threshold is specifically identified in the Prohibited List, the presence of any quantity of a Prohibited Substance or its Metabolites or Markers in an Athlete's Sample shall constitute an anti-doping rule violation.

2.1.4   As an exception to the general rule of Article 2.1, the Prohibited List or International Standards may establish special criteria for the evaluation of Prohibited Substances that can also be produced endogenously.

**2.2**   **Use or Attempted Use by an Athlete of a Prohibited Substance or a Prohibited Method**

[Comment to Article 2.2: It has always been the case that Use or Attempted Use of a Prohibited Substance or Prohibited Method may be established

by any reliable means. As noted in the Comment to Article 3.2 (Methods of Establishing Facts and Presumptions), unlike the proof required to establish an anti-doping rule violation under Article 2.1, Use or Attempted Use may also be established by other reliable means such as admissions by the Athlete, witness statements, documentary evidence, conclusions drawn from longitudinal profiling, or other analytical information which does not otherwise satisfy all the requirements to establish "Presence" of a Prohibited Substance under Article 2.1. For example, Use may be established based upon reliable analytical data from the analysis of an A Sample (without confirmation from an analysis of a B Sample) or from the analysis of a B Sample alone where the Anti-Doping Organization provides a satisfactory explanation for the lack of confirmation in the other Sample.]

2.2.1   It is each Athlete's personal duty to ensure that no Prohibited Substance enters his or her body. Accordingly, it is not necessary that intent, fault, negligence or knowing Use on the Athlete's part be demonstrated in order to establish an anti-doping rule violation for Use of a Prohibited Substance or a Prohibited Method.

2.2.2   The success or failure of the Use or Attempted Use of a Prohibited Substance or Prohibited Method is not material. It is sufficient that the Prohibited Substance or Prohibited Method was Used or Attempted to be Used for an anti-doping rule violation to be committed.

[Comment to Article 2.2.2: Demonstrating the "Attempted Use" of a Prohibited Substance requires proof of intent on the Athlete's part. The fact that intent may be required to prove this particular anti-doping rule violation does not undermine the strict liability principle established for violations of Article 2.1 and violations of Article 2.2 in respect of Use of a Prohibited Substance or Prohibited Method. An Athlete's Use of a Prohibited Substance constitutes an anti-doping rule violation unless such substance is not prohibited Out-of-Competition and the Athlete's Use takes place Out-of-Competition. (However, the presence of a Prohibited Substance or its Metabolites or Markers in a Sample collected In-Competition is a violation of Article 2.1 (Presence of a Prohibited Substance or its Metabolites or Markers) regardless of when that substance might have been administered.)]

**2.3**   **Refusing or failing without compelling justification to submit to Sample collection after notification as authorized in applicable anti-doping rules, or otherwise evading Sample collection**

[Comment to Article 2.3: Failure or refusal to submit to Sample collection after notification was prohibited in almost all pre-Code anti-doping rules. This Article expands the typical pre-Code rule to include "otherwise evading



Sample collection" as prohibited conduct. Thus, for example, it would be an anti-doping rule violation if it were established that an Athlete was hiding from a Doping Control official to evade notification or Testing. A violation of "refusing or failing to submit to Sample collection" may be based on either intentional or negligent conduct of the Athlete, while "evading" Sample col-lection contemplates intentional conduct by the Athlete.]

**2.4** **Violation of applicable requirements regarding Athlete availability for Out-of-Competition Testing, including failure to file required whereabouts information and missed tests which are declared based on rules which comply with the International Standard for Testing. Any combination of three missed tests and/or filing failures within an eighteen-month period as determined by Anti-Doping Organizations with jurisdiction over the Athlete shall constitute an anti-doping rule violation.**

[Comment to Article 2.4: Separate whereabouts filing failures and missed tests declared under the rules of the Athlete's International Federation or any other Anti-Doping Organization with authority to declare whereabouts filing failures and missed tests in accordance with the International Standard for Testing shall be combined in applying this Article. In appropriate circum-stances, missed tests or filing failures may also constitute an anti-doping rule violation under Article 2.3 or Article 2.5.]

**2.5** **Tampering or Attempted Tampering with any part of Doping Control**

[Comment to Article 2.5: This Article prohibits conduct which subverts the Doping Control process but which would not otherwise be included in the definition of Prohibited Methods. For example, altering identification numbers on a Doping Control form during Testing, breaking the B Bottle at the time of B Sample analysis or providing fraudulent information to an Anti-Doping Organization.]

**2.6** **Possession of Prohibited Substances and Prohibited Methods**

**2.6.1** Possession by an Athlete In-Competition of any Prohibited Method or any Prohibited Substance, or Possession by an Athlete Out-of-Competition of any Prohibited Method or any Prohibited Substance which is prohibited Out-of-Competition unless the Athlete establishes that the Possession is pursuant to a therapeutic use exemption granted in accordance with Article 4.4 (Therapeutic Use) or other acceptable justification.

**2.6.2** Possession by an Athlete Support Personnel In-Competition of any Pro-hibited Method or any Prohibited Substance, or Possession by an Athlete Support Personnel Out-of-Competition of any Prohibited Method or any

Prohibited Substance which is prohibited Out-of-Competition in connection with an Athlete, Competi-tion or training, unless the Athlete Support Personnel establishes that the Possession is pursuant to a therapeutic use exemption granted to an Athlete in accordance with Article 4.4 (Therapeutic Use) or other acceptable justifi-cation.

[Comment to Article 2.6.1 and 2.6.2: Acceptable justification would not in-clude, for example, buying or Possessing a Prohibited Substance for purposes of giving it to a friend or relative, except under justifiable medical circum-stances where that Person had a physician's prescription, e.g., buying Insulin for a diabetic child.]

[Comment "b" to Article 2.6.2: Acceptable justification would include, for ex-ample, a team doctor carrying Prohibited Substances for dealing with acute and emergency situations.]

**2.7** **Trafficking or Attempted Trafficking in any Prohibited Substance or Prohibited Method**

**2.8** **Administration or Attempted administration to any Athlete In-Competition of any Prohibited Method or Prohibited Substance, or administration or Attempted administration to any Athlete Out-of-Competition of any Prohibited Method or any Prohibited Substance that is prohibited Out-of-Competition, or assisting, encouraging, aiding, abetting, covering up or any other type of complicity involving an anti-doping rule violation or any Attempted anti-doping rule violation**

## ARTICLE 3: PROOF OF DOPING

**3.1** **Burdens and Standards of Proof**

The Anti-Doping Organization shall have the burden of establishing that an anti-doping rule violation has occurred. The standard of proof shall be whether the Anti-Doping Organization has established an anti-doping rule violation to the comfortable satisfaction of the hearing panel bearing in mind the seriousness of the allegation which is made. This standard of proof in all cases is greater than a mere balance of probability but less than proof be-yond a reasonable doubt. Where the Code places the burden of proof upon the Athlete or other Person alleged to have committed an anti-doping rule



violation to rebut a presumption or establish specified facts or circumstances, the standard of proof shall be by a balance of probability, except as provided in Articles 10.4 and 10.6 where the *Athlete* must satisfy a higher burden of proof.

*[Comment to Article 3.1: This standard of proof required to be met by the Anti-Doping Organization is comparable to the standard which is applied in most countries to cases involving professional misconduct.*

*It has also been widely applied by courts and hearing panels in doping cases. See, for example, the CAS decision in N., J., Y., W. v. FINA, CAS 98/208, 22 December 1998.]*

## 3.2 Methods of Establishing Facts and Presumptions

Facts related to anti-doping rule violations may be established by any reliable means, including admissions. The following rules of proof shall be applicable in doping cases:

*[Comment to Article 3.2: For example, an Anti-Doping Organization may establish an anti-doping rule violation under Article 2.2 (Use or Attempted Use of a Prohibited Substance or Prohibited Method) based on the Athlete's admissions, the credible testimony of third Persons, reliable documentary evidence, reliable analytical data from either an A or B Sample as provided in the Comments to Article 2.2, or conclusions drawn from the profile of a series of the Athlete's blood or urine Samples.]*

3.2.1 WADA-accredited laboratories are presumed to have conducted *Sample* analysis and custodial procedures in accordance with the *International Standard for Laboratories.* The *Athlete* or other *Person* may rebut this presumption by establishing that a departure from the *International Standard for Laboratories* occurred which could reasonably have caused the *Adverse Analytical Finding.*

If the *Athlete* or other *Person* rebuts the preceding presumption by showing that a departure from the *International Standard for Laboratories* occurred which could reasonably have caused the *Adverse Analytical Finding,* then the *Anti-Doping Organization* shall have the burden to establish that such departure did not cause the *Adverse Analytical Finding.*

*[Comment to Article 3.2.1: The burden is on the Athlete or other Person to establish, by a balance of probability, a departure from the International Standard for Laboratories that could reasonably have caused the Adverse Analytical Finding. If the Athlete or other Person does so, the burden shifts to the Anti-Doping Organization to prove to the comfortable satisfaction of the hearing panel that the departure did not cause the Adverse Analytical Finding.]*

3.2.2 Departures from any other *International Standard* or other anti-doping rule or policy which did not cause an *Adverse Analytical Finding* or other anti-doping rule violation shall not invalidate such results. If the *Athlete* or other *Person* establishes such a departure from another *International Standard* or other anti-doping rule or policy which could reasonably have caused the *Adverse Analytical Finding* or other anti-doping rule violation occurred, then the *Anti-Doping Organization* shall have the burden to establish that such departure did not cause the *Adverse Analytical Finding* or the factual basis for the anti-doping rule violation.

3.2.3 The facts established by a decision of a court or professional disciplinary tribunal of competent jurisdiction which is not the subject of a pending appeal shall be irrebuttable evidence against the *Athlete* or other *Person* to whom the decision pertained of those facts unless the *Athlete* or other *Person* establishes that the decision violated principles of natural justice.

3.2.4 The facts established by a hearing on an anti-doping rule violation may draw an inference adverse to the *Athlete* or other *Person* who is asserted to have committed an anti-doping rule violation based on the *Athlete's* or other *Person's* refusal, after a request made in a reasonable time in advance of the hearing, to appear at the hearing (either in person or telephonically as directed by the hearing panel) and to answer questions from the hearing panel or the *Anti-Doping Organization* asserting the anti-doping rule violation.

*[Comment to Article 3.2.4: Drawing an adverse inference under these circumstances has been recognized in numerous CAS decisions.]*

## ARTICLE 4.  THE PROHIBITED LIST

### 4.2 Prohibited Substances and Prohibited Methods Identified on the Prohibited List

4.2.2 Specified Substances

For purposes of the application of Article 10 (Sanctions on Individuals), all *Prohibited Substances* shall be "Specified Substances" except substances in the classes of anabolic agents and hormones and those stimulants and hormone antagonists and modulators so identified on the *Prohibited List.* *Prohibited Methods* shall not be *Specified Substances.*

*[Comment to Article 4.2.2: In drafting the Code there was considerable debate among stakeholders over the appropriate balance between inflexible sanctions which promote harmonization in the application of the rules and more flexible sanctions which better take into consideration the circumstances*



24

of each individual case. This balance continued to be discussed in various CAS decisions interpreting the Code. After three years experience with the Code, the strong consensus of stakeholders is that while the occurrence of an anti-doping rule violation under Articles 2.1 (Presence of a Prohibited Substance or its Metabolites or Markers) and 2.2 (Use of a Prohibited Substance or Prohibited Method) should still be based on the principle of strict liability, the Code sanctions should be made more flexible where the Athlete or other Person can clearly demonstrate that he or she did not intend to enhance sport performance. The change to Article 4.2 and related changes to Article 10 provide this additional flexibility for violations involving many Prohibited Substances. The rules set forth in Article 10.5 (Elimination or Reduction of Period of Ineligibility Based on Exceptional Circumstances) would remain the only basis for eliminating or reducing a sanction involving anabolic steroids and hormones, as well as the stimulants and the hormone antagonists and modulators so identified on the Prohibited List, or Prohibited Methods.]

**4.3  Criteria for Including Substances and Methods on the Prohibited List**

4.3.3  WADA's determination of the Prohibited Substances and Prohibited Methods that will be included on the Prohibited List and the classification of substances into categories on the Prohibited List is final and shall not be subject to challenge by an Athlete or other Person based on an argument that the substance or method was not a masking agent or did not have the potential to enhance performance, represent a health risk or violate the spirit of sport.

**ARTICLE 6:  ANALYSIS OF SAMPLES**

Samples shall be analyzed in accordance with the following principles:

**6.1  Use of Approved Laboratories**
For purposes of Article 2.1 (Presence of a Prohibited Substance or its Metabolites or Markers), Samples shall be analyzed only in WADA-accredited laboratories or as otherwise approved by WADA. The choice of the WADA-accredited laboratory (or other laboratory or method approved by WADA) used for the Sample analysis shall be determined exclusively by the Anti-Doping Organization responsible for results management.

[Comment to Article 6.1: Violations of Article 2.1 (Presence of a Prohibited Substance or its Metabolites or Markers) may be established only by Sample analysis performed by a WADA-approved laboratory or another laboratory specifically authorized by WADA. Violations of other Articles may be established using analytical results from other laboratories so long as the results are reliable.]

**6.2  Purpose of Collection and Analysis of Samples**
Samples shall be analyzed to detect Prohibited Substances and Prohibited Methods identified on the Prohibited List and other substances as may be directed by WADA pursuant to Article 4.5 (Monitoring Program), or to assist an Anti-Doping Organization in profiling relevant parameters in an Athlete's urine, blood or other matrix, including DNA or genomic profiling, for anti-doping purposes.

[Comment to Article 6.2: For example, relevant profile information could be used to direct Target Testing or to support an anti-doping rule violation proceeding under Article 2.2 (Use or Attempted Use of a Prohibited Substance), or both.]

**6.3  Research on Samples**
No Sample may be used for any purpose other than as described in Article 6.2 without the Athlete's written consent. Samples used for purposes other than Article 6.2 shall have any means of identification removed such that they cannot be traced back to a particular Athlete.

**6.4  Standards for Sample Analysis and Reporting**
Laboratories shall analyze Samples and report results in conformity with the International Standard for Laboratories.

**6.5  Retesting Samples**
A Sample may be reanalyzed for the purpose of Article 6.2 at any time exclusively at the direction of the Anti-Doping Organization that collected the Sample or WADA. The circumstances and conditions for retesting Samples shall conform with the requirements of the International Standard for Laboratories.

[Comment to Article 6.5: Although this Article is new, Anti-Doping Organizations have always had the authority to reanalyze Samples. The International Standard for Laboratories or a new technical document which is made a part of the International Standard will harmonize the protocol for such retesting.]

**ARTICLE 7:  RESULTS MANAGEMENT**

**7.6  Retirement from Sport**
If an Athlete or other Person retires while a results management process is underway, the Anti-Doping Organization conducting the results management process retains jurisdiction to complete its results management process. If an Athlete or other Person retires before any results management process has begun, the Anti-Doping Organization which would have had results management jurisdiction over the Athlete or other Person at the time the

25

Athlete or other Person committed an anti-doping rule violation, has jurisdiction to conduct results management.]

## ARTICLE 9: AUTOMATIC DISQUALIFICATION OF INDIVIDUAL RESULTS

An anti-doping rule violation in Individual Sports in connection with an In-Competition test automatically leads to Disqualification of the result obtained in that Competition with all resulting Consequences, including forfeiture of any medals, points and prizes.

*[Comment to Article 9: When an Athlete wins a gold medal with a Prohibited Substance in his or her system, that is unfair to the other Athletes in that Competition regardless of whether the gold medalist was at fault in any way. Only a "clean" Athlete should be allowed to benefit from his or her competitive results.*

*For Team Sports, see Article 11 (Consequences to Teams). In sports which are not Team Sports but where awards are given to teams, Disqualification or other disciplinary action against the team when one or more team members have committed an anti-doping rule violation shall be as provided in the applicable rules of the International Federation.]*

## ARTICLE 10: SANCTIONS ON INDIVIDUALS

### 10.1 Disqualification of Results in the Event During which an Anti-Doping Rule Violation Occurs

An anti-doping rule violation occurring during or in connection with an Event may, upon the decision of the ruling body of the Event, lead to Disqualification of all of the Athlete's individual results obtained in that Event with all Consequences, including forfeiture of all medals, points and prizes, except as provided in Article 10.1.1.

*[Comment to Article 10.1: Whereas Article 9 (Automatic Disqualification of Individual Results) Disqualifies the result in a single Competition in which the Athlete tested positive (e.g., the 100 meter backstroke), this Article may lead to Disqualification of all results in all races during the Event (e.g., the FINA World Championships). Factors to be included in considering whether to Disqualify other results in an Event might include, for example, the severity of the Athlete's anti-doping rule violation and whether the Athlete tested negative in the other Competitions.]*

**10.1.1** If the Athlete establishes that he or she bears No Fault or Negligence for the violation, the Athlete's individual results in the other Competitions shall not be Disqualified unless the Athlete's results in Competitions other than the Competition in which the anti-doping rule violation occurred were likely to have been affected by the Athlete's anti-doping rule violation.

### 10.2 Ineligibility for Presence, Use or Attempted Use, or Possession of Prohibited Substances and Prohibited Methods

The period of Ineligibility imposed for a violation of Article 2.1 (Presence of Prohibited Substance or its Metabolites or Markers), Article 2.2 (Use or Attempted Use of Prohibited Substance or Prohibited Method) or Article 2.6 (Possession of Prohibited Substances and Prohibited Methods) shall be as follows, unless the conditions for eliminating or reducing the period of Ineligibility, as provided in Articles 10.4 and 10.5, or the conditions for increasing the period of Ineligibility, as provided in Article 10.6, are met.

**First violation:** Two (2) years Ineligibility.

*[Comment to Article 10.2: Harmonization of sanctions has been one of the most discussed and debated areas of anti-doping. Harmonization means that the same rules and criteria are applied to assess the unique facts of each case. Arguments against requiring harmonization of sanctions are based on differences between sports including, for example, the following: in some sports the Athletes are professionals making a sizable income from the sport and in others the Athletes are true amateurs; in those sports where an Athlete's career is short (e.g., artistic gymnastics) a two-year Disqualification has a much more significant effect on the Athlete than in sports where careers are traditionally much longer (e.g., equestrian and shooting); in Individual Sports, the Athlete is better able to maintain competitive skills through solitary practice during Disqualification than in other sports where practice as part of a team is more important. A primary argument in favor of harmonization is that it is simply not right that two Athletes from the same country who test positive for the same Prohibited Substance under similar circumstances should receive different sanctions only because they participate in different sports. In addition, flexibility in sanctioning has often been viewed as an unacceptable opportunity for some sporting organizations to be more lenient with dopers. The lack of harmonization of sanctions has also frequently been the source of jurisdictional conflicts between International Federations and National Anti-Doping Organizations.]*

### 10.3 Ineligibility for Other Anti-Doping Rule Violations

The period of Ineligibility for anti-doping rule violations other than as provided in Article 10.2 shall be as follows:



10.3.1   For violations of Article 2.3 (Refusing or Failing to Submit to Sample Collection) or Article 2.5 (Tampering with Doping Control), the Ineligibility period shall be two (2) years unless the conditions provided in Article 10.6, or the conditions provided in Article 10.5, are met.

10.3.2   For violations of Articles 2.7 (Trafficking or Attempted Trafficking) or 2.8 (Administration or Attempted Administration of Prohibited Substance or Prohibited Method), the period of Ineligibility imposed shall be a minimum of four (4) years up to lifetime Ineligibility unless the conditions provided in Article 10.5 are met. An anti-doping rule violation involving a Minor shall be considered a particularly serious violation and, if committed by Athlete Support Personnel for violations other than Specified Substances referenced in Article 4.2.2, shall result in lifetime Ineligibility for Athlete Support Personnel. In addition, significant violations of Articles 2.7 or 2.8 which may also violate non-sporting laws and regulations, shall be reported to the competent administrative, professional or judicial authorities.

[Comment to Article 10.3.2: Those who are involved in doping Athletes or covering up doping should be subject to sanctions which are more severe than the Athletes who test positive. Since the authority of sport organizations is generally limited to Ineligibility for credentials, membership and other sport benefits, reporting Athlete Support Personnel to competent authorities is an important step in the deterrence of doping.]

10.3.3   For violations of Article 2.4 (Whereabouts Filing Failures and/or Missed Tests), the period of Ineligibility shall be at a minimum one (1) year and at a maximum two (2) years based on the Athlete's degree of fault.

[Comment to Article 10.3.3: The sanction under Article 10.3.3 shall be two years where all three filing failures or missed tests are inexcusable. Otherwise, the sanction shall be assessed in the range of two years to one year, based on the circumstances of the case.]

10.4   **Elimination or Reduction of the Period of Ineligibility for Specified Substances under Specific Circumstances**

Where an Athlete or other Person can establish how a Specified Substance entered his or her body or came into his or her Possession and that such Specified Substance was not intended to enhance the Athlete's sport performance or mask the Use of a performance-enhancing substance, the period of Ineligibility found in Article 10.2 shall be replaced with the following:

[Comment to Article 10.4: Specified Substances are not necessarily less serious agents for purposes of sports doping than other Prohibited Substances (for example, a stimulant that is listed as a Specified Substance could be very effective to an Athlete in competition); for that reason, an Athlete who does not meet the criteria under this Article would receive a two-year period of Ineligibility and could receive up to a four-year period of Ineligibility under Article 10.6. However, there is a greater likelihood that Specified Substances, as opposed to other Prohibited Substances, could be susceptible to a credible, non-doping explanation. This Article applies only in those cases where the hearing panel is comfortably satisfied by the objective circumstances of the case that the Athlete in taking or Possessing a Prohibited Substance did not intend to enhance his or her sport performance. Examples of the type of objective circumstances which in combination might lead a hearing panel to be comfortably satisfied of no performance-enhancing intent would include: the fact that the nature of the Specified Substance or the timing of its ingestion would not have been beneficial to the Athlete; the Athlete's open Use or disclosure of his or her Use of the Specified Substance; and a contemporaneous medical records file substantiating the non sport-related prescription for the Specified Substance. Generally, the greater the potential performance-enhancing benefit, the higher the burden on the Athlete to prove lack of intent to enhance sport performance.

While the absence of intent to enhance sport performance must be established to the comfortable satisfaction of the hearing panel, the Athlete may establish how the Specified Substance entered the body by a balance of probability.

In assessing the Athlete's or other Person's degree of fault, the circumstances considered must be specific and relevant to explain the Athlete's or other Person's departure from the expected standard of behavior. Thus, for example, the fact that an Athlete would lose the opportunity to earn large sums of money during a period of Ineligibility or the fact that the Athlete only has a short time left in his or her career or the timing of the sporting calendar would not be relevant factors to be considered in reducing the period of Ineligibility under this Article. It is anticipated that the period of Ineligibility will be eliminated entirely in only the most exceptional cases.]

**First violation:** At a minimum, a reprimand and no period of Ineligibility from future Events, and at a maximum, two (2) years of Ineligibility.

To justify any elimination or reduction, the Athlete or other Person must produce corroborating evidence in addition to his or her word which establishes to the comfortable satisfaction of the hearing panel the absence of intent to enhance sport performance or mask the Use of a performance-enhancing substance. The Athlete's or other Person's degree of fault shall be the criterion considered in assessing any reduction of the period of Ineligibility.



10.5 **Elimination or Reduction of Period of Ineligibility Based on Exceptional Circumstances**

10.5.1 *No Fault or Negligence*

If an Athlete establishes in an individual case that he or she bears No Fault or Negligence, the otherwise applicable period of Ineligibility shall be eliminated. When a Prohibited Substance or its Markers or Metabolites is detected in an Athlete's Sample in violation of Article 2.1 (Presence of Prohibited Substance), the Athlete must also establish how the Prohibited Substance entered his or her system in order to have the period of Ineligibility eliminated. In the event this Article is applied and the period of Ineligibility otherwise applicable is eliminated, the anti-doping rule violation shall not be considered a violation for the limited purpose of determining the period of Ineligibility for multiple violations under Article 10.7.

10.5.2 *No Significant Fault or Negligence*

If an Athlete or other Person establishes in an individual case that he or she bears No Significant Fault or Negligence, then the otherwise applicable period of Ineligibility may be reduced, but the reduced period of Ineligibility may not be less than one-half of the period of Ineligibility otherwise applicable. If the otherwise applicable period of Ineligibility is a lifetime, the reduced period under this Article may be no less than eight (8) years. When a Prohibited Substance or its Markers or Metabolites is detected in an Athlete's Sample in violation of Article 2.1 (Presence of a Prohibited Substance or its Metabolites or Markers), the Athlete must also establish how the Prohibited Substance entered his or her system in order to have the period of Ineligibility reduced.

[Comment to Articles 10.5.1 and 10.5.2: The Code provides for the possible reduction or elimination of the period of Ineligibility in the unique circumstance where the Athlete can establish that he or she had No Fault or Negligence, or No Significant Fault or Negligence, in connection with the violation. This approach is consistent with basic principles of human rights and provides a balance between those Anti-Doping Organizations that argue for a much narrower exception, or none at all, and those that would reduce a two-year suspension based on a range of other factors even when the Athlete was admittedly at fault. These Articles apply only to the imposition of sanctions; they are not applicable to the determination of whether an anti-doping rule violation has occurred. Article 10.5.2 may be applied to any anti-doping rule violation even though it will be especially difficult to meet the criteria for a reduction for those anti-doping rule violations where knowledge is an element of the violation.

Articles 10.5.1 and 10.5.2 are meant to have an impact only in cases where the circumstances are truly exceptional and not in the vast majority of cases.

To illustrate the operation of Article 10.5.1, an example where No Fault or Negligence would result in the total elimination of a sanction is where an Athlete could prove that, despite all due care, he or she was sabotaged by a competitor. Conversely, a sanction could not be completely eliminated on the basis of No Fault or Negligence in the following circumstances: (a) a positive test resulting from a mislabeled or contaminated vitamin or nutritional supplement (Athletes are responsible for what they ingest (Article 2.1.1) and have been warned against the possibility of supplement contamination); (b) the administration of a Prohibited Substance by the Athlete's personal physician or trainer without disclosure to the Athlete (Athletes are responsible for their choice of medical personnel and for advising medical personnel that they cannot be given any Prohibited Substance); and (c) sabotage of the Athlete's food or drink by a spouse, coach or other Person within the Athlete's circle of associates (Athletes are responsible for what they ingest and for the conduct of those Persons to whom they entrust access to their food and drink). However, depending on the unique facts of a particular case, any of the referenced illustrations could result in a reduced sanction based on No Significant Fault or Negligence. (For example, reduction may well be appropriate in illustration (a) if the Athlete clearly establishes that the cause of the positive test was contamination in a common multiple vitamin purchased from a source with no connection to Prohibited Substances and the Athlete exercised care in not taking other nutritional supplements.) For purposes of assessing the Athlete's or other Person's fault under Articles 10.5.1 and 10.5.2, the evidence considered must be specific and relevant to explain the Athlete's departure from the expected standard of behavior. Thus, for example, the fact that an Athlete would lose the opportunity to earn large sums of money during a period of Ineligibility or the fact that the Athlete only has a short time left in his or her career or the timing of the sporting calendar would not be relevant factors to be considered in reducing the period of Ineligibility under this Article.

While Minors are not given special treatment per se in determining the applicable sanction, certainly youth and lack of experience are relevant factors to be assessed in determining the Athlete's or other Person's fault under Article 10.5.2, as well as Articles 10.3.3, 10.4 and 10.5.1. Article 10.5.2 should not be applied in cases where Articles 10.3.3 or 10.4 apply, as those Articles already take into consideration the Athlete's or other Person's degree of fault for purposes of establishing the applicable period of Ineligibility.]



**10.5.3 Substantial Assistance in Discovering or Establishing Anti-Doping Rule Violations**

An Anti-Doping Organization with results management responsibility for an anti-doping rule violation may, prior to a final appellate decision under Article 13 or the expiration of the time to appeal, suspend a part of the period of Ineligibility imposed in an individual case where the Athlete or other Person has provided Substantial Assistance to an Anti-Doping Organization, criminal authority or professional disciplinary body which results in the Anti-Doping Organization discovering or establishing an anti-doping rule violation by another Person or which results in a criminal or disciplinary body discovering or establishing a criminal offense or the breach of professional rules by another Person. After a final appellate decision under Article 13 or the expiration of time to appeal, an Anti-Doping Organization may only suspend a part of the otherwise applicable period of Ineligibility with the approval of WADA and the applicable International Federation. The extent to which the otherwise applicable period of Ineligibility may be suspended shall be based on the seriousness of the anti-doping rule violation committed by the Athlete or other Person and the significance of the Substantial Assistance provided by the Athlete or other Person to the effort to eliminate doping in sport. No more than three-quarters of the otherwise applicable period of Ineligibility may be suspended. If the otherwise applicable period of Ineligibility is a lifetime, the non-suspended period under this section must be no less than eight (8) years. If the Anti-Doping Organization suspends any part of the otherwise applicable period of Ineligibility under this Article, the Anti-Doping Organization shall promptly provide a written justification for its decision to each Anti-Doping Organization having a right to appeal the decision. If the Anti-Doping Organization subsequently reinstates any part of the suspended period of Ineligibility because the Athlete or other Person has failed to provide the Substantial Assistance which was anticipated, the Athlete or other Person may appeal the reinstatement pursuant to Article 13.2.

*[Comment to Article 10.5.3: The cooperation of Athletes, Athlete Support Personnel and other Persons who acknowledge their mistakes and are willing to bring other anti-doping rule violations to light is important to clean sport.*

*Factors to be considered in assessing the importance of the Substantial Assistance would include, for example, the number of individuals implicated, the status of those individuals in the sport, whether a scheme involving Trafficking under Article 2.7 or administration Article 2.8 is involved and whether the violation involved a substance or method which is not readily detectable in Testing. The maximum suspension of the Ineligibility period shall only be applied in very exceptional cases. An additional factor to be considered in connection with the seriousness of the anti-doping rule violation is any performance-enhancing benefit which the Person providing Substantial Assistance may be likely to still enjoy. As a general matter, the earlier in the results management process the Substantial Assistance is provided, the greater*

*the percentage of the otherwise applicable period of Ineligibility may be suspended.]*

*If the Athlete or other Person who is asserted to have committed an anti-doping rule violation claims entitlement to a suspended period of Ineligibility under this Article in connection with the Athlete's or other Person's waiver of a hearing under Article 8.3 (Waiver of Hearing), the Anti-Doping Organization shall determine whether a suspension of a portion of the period of Ineligibility is appropriate under this Article. If the Athlete or other Person claims entitlement to a suspended period of Ineligibility before the conclusion of a hearing under Article 8 on the anti-doping rule violation, the hearing panel shall determine whether a suspension of a portion of the otherwise applicable period of Ineligibility is appropriate under this Article at the same time the hearing panel decides whether the Athlete or other Person has committed an anti-doping rule violation. If a portion of the period of Ineligibility is suspended, the decision shall explain the basis for concluding the information provided was credible and was important to discovering or proving the anti-doping rule violation or other offense. If the Athlete or other Person claims entitlement to a suspended period of Ineligibility after a final decision finding an anti-doping rule violation has been rendered and is not subject to appeal under Article 13, but the Athlete or other Person is still serving the period of Ineligibility, the Athlete or other Person may apply to the Anti-Doping Organization which had results management responsibility for the anti-doping rule violation to consider a suspension in the period of Ineligibility under this Article. Any such suspension of the otherwise applicable period of Ineligibility shall require the approval of WADA and the applicable International Federation. If any condition upon which the suspension of a period of Ineligibility is based is not fulfilled, the Anti-Doping Organization with results management authority shall reinstate the period of Ineligibility which would otherwise be applicable. Decisions rendered by Anti-Doping Organizations under this Article may be appealed pursuant to Article 13.2.*

*This is the only circumstance under the Code where the suspension of an otherwise applicable period of Ineligibility is authorized.]*

**10.5.4 Admission of an Anti-Doping Rule Violation in the Absence of Other Evidence**

Where an Athlete or other Person voluntarily admits the commission of an anti-doping rule violation before having received notice of a Sample collection which could establish an anti-doping rule violation (or, in the case of an anti-doping rule violation other than Article 2.1, before receiving first notice of the admitted violation pursuant to Article 7) and that admission is the only reliable evidence of the violation at the time of admission, then the period of Ineligibility may be reduced, but not below one-half of the period of Ineligibility otherwise applicable.



34

[Comment to Article 10.5.4: This Article is intended to apply when an Athlete or other Person comes forward and admits to an anti-doping rule violation in circumstances where no Anti-Doping Organization is aware that an anti-doping rule violation might have been committed. It is not intended to apply to circumstances where the admission occurs after the Athlete or other Person believes he or she is about to be caught.]

10.5.5 Where an Athlete or Other Person Establishes Entitlement to Reduction in Sanction Under More than One Provision of this Article

Before applying any reduction or suspension under Articles 10.5.2, 10.5.3 or 10.5.4, the otherwise applicable period of Ineligibility shall be determined in accordance with Articles 10.2, 10.3, 10.4 and 10.6. If the Athlete or other Person establishes entitlement to a reduction or suspension of the period of Ineligibility under two or more of Articles 10.5.2, 10.5.3 or 10.5.4, then the period of Ineligibility may be reduced or suspended, but not below one-fourth of the otherwise applicable period of Ineligibility.

[Comment to Article 10.5.5: The appropriate sanction is determined in a sequence of four steps. First, the hearing panel determines which of the basic sanctions (Article 10.2, Article 10.3, Article 10.4 or Article 10.6) applies to the particular anti-doping rule violation. In a second step, the hearing panel establishes whether there is a basis for suspension, elimination or reduction of the sanction (Articles 10.5.1 through 10.5.4). Note, however, not all grounds for suspension, elimination or reduction may be combined with the provisions on basic sanctions. For example, Article 10.5.2 does not apply in cases involving Articles 10.3.3 or 10.4, since the hearing panel, under Articles 10.3.3 and 10.4, will already have determined the period of Ineligibility based on the Athlete's degree of fault. In a third step, the hearing panel determines under Article 10.5.5 whether the Athlete or other Person is entitled to elimination, reduction or suspension under more than one provision of Article 10.5. Finally, the hearing panel decides on the commencement of the period of Ineligibility under Article 10.9.

The following four examples demonstrate the proper sequence of analysis:

**Example 1:**

Facts: An Adverse Analytical Finding involves the presence of an anabolic steroid; the Athlete promptly admits the anti-doping rule violation as asserted; the Athlete establishes No Significant Fault (Article 10.5.2); and the Athlete provides Substantial Assistance (Article 10.5.3).

**Application of Article 10:**

1. The basic sanction would be two years under Article 10.2. (Aggravating Circumstances (Article 10.6) would not be considered because the Athlete promptly admitted the violation. Article 10.4 would not apply because a steroid is not a Specified Substance.)

2. Based on No Significant Fault alone, the sanction could be reduced up to one-half of the two years. Based on Substantial Assistance alone, the sanction could be reduced up to three quarters of the two years.

3. Under Article 10.5.5, in considering the possible reduction for No Significant Fault and Substantial Assistance together, the most the sanction could be reduced is up to three-quarters of the two years. Thus, the minimum sanction would be a six-month period of Ineligibility.

4. Under Article 10.9.2, because the Athlete promptly admitted the anti-doping rule violation, the period of Ineligibility could start as early as the date of Sample collection, but in any event the Athlete would have to serve at least one-half of the Ineligibility period (minimum three months) after the date of the hearing decision.

**Example 2:**

Facts: An Adverse Analytical Finding involves the presence of an anabolic steroid; aggravating circumstances exist and the Athlete is unable to establish that he did not knowingly commit the anti-doping rule violation; the Athlete does not promptly admit the anti-doping rule violation as alleged; but the Athlete does provide Substantial Assistance (Article 10.5.3).

**Application of Article 10:**

1. The basic sanction would be between two and four years Ineligibility as provided in Article 10.6.

2. Based on Substantial Assistance, the sanction could be reduced up to three-quarters of the maximum four years.

3. Article 10.5.5 does not apply.

4. Under Article 10.9.2, the period of Ineligibility would start on the date of the hearing decision.

**Example 3:**

Facts: An Adverse Analytical Finding involves the presence of a Specified Substance; the Athlete establishes how the Specified Substance entered his body, and that he had no intent to enhance his sport performance; the Athlete



35

establishes that he had very little fault, and the Athlete provides Substantial Assistance (Article 10.5.3).

**Application of Article 10:**

1. Because the Adverse Analytical Finding involved a Specified Substance and the Athlete has satisfied the other conditions of Article 10.4, the basic sanction would fall in the range between a reprimand and two years Ineligibility. The hearing panel would assess the Athlete's fault in imposing a sanction within that range. (Assume for illustration in this example that the panel would otherwise impose a period of Ineligibility of eight months.)

2. Based on Substantial Assistance, the sanction could be reduced up to three-quarters of the eight months. (No less than two months.) No Significant Fault (Article 10.2) would not be applicable because the Athlete's degree of fault was already taken into consideration in establishing the eight-month period of Ineligibility in step 1.

3. Article 10.5.5 does not apply.

4. Under Article 10.9.2, because the Athlete promptly admitted the anti-doping rule violation, the period of Ineligibility could start as early as the date of Sample collection, but in any event, the Athlete would have to serve at least half of the Ineligibility period after the date of the hearing decision. (Minimum one month.)

**Example 4:**

Facts: An Athlete who has never had an Adverse Analytical Finding or been confronted with an anti-doping rule violation spontaneously admits that he intentionally used multiple Prohibited Substances to enhance his performance. The Athlete also provides Substantial Assistance (Article 10.5.3).

**Application of Article 10:**

1. While the intentional Use of multiple Prohibited Substances to enhance performance would normally warrant consideration of aggravating circumstances (Article 10.6), the Athlete's spontaneous admission means that Article 10.6 would not apply. The fact that the Athlete's Use of Prohibited Substances was intended to enhance performance would also eliminate the application of Article 10.4 regardless of whether the Prohibited Substances Used were Specified Substances. Thus, Article 10.2 would be applicable and the basic period of Ineligibility imposed would be two years.

2. Based on the Athlete's spontaneous admissions (Article 10.5.4) alone, the period of Ineligibility could be reduced up to one-half of the two years. Based on the Athlete's Substantial Assistance (Article 10.5.3) alone, the period of Ineligibility could be reduced up to three-quarters of the two years.

3. Under Article 10.5.5, in considering the spontaneous admission and Substantial Assistance together, the most the sanction could be reduced would be up to three-quarters of the two years. (The minimum period of Ineligibility would be six months.)

4. If Article 10.5.4 was considered by the hearing panel in arriving at the minimum six-month period of Ineligibility at step 3, the period of Ineligibility would start on the date the hearing panel imposed the sanction. If, however, the hearing panel did not consider the application of Article 10.5.4 in reducing the period of Ineligibility in step 3, then under Article 10.9.2, the commencement of the period of Ineligibility could be started as early as the date the anti-doping rule violation was committed, provided that at least half of that period (minimum of three months) would have to be served after the date of the hearing decision.]

**10.6 Aggravating Circumstances Which May Increase the Period of Ineligibility**

If the Anti-Doping Organization establishes in an individual case involving an anti-doping rule violation other than violations under Articles 2.7 (Trafficking or Attempted Trafficking) and 2.8 (Administration or Attempted Administration) that aggravating circumstances are present which justify the imposition of a period of Ineligibility greater than the standard sanction, then the period of Ineligibility otherwise applicable shall be increased up to a maximum of four (4) years unless the Athlete or other Person can prove to the comfortable satisfaction of the hearing panel that he or she did not knowingly commit the anti-doping rule violation.

An Athlete or other Person can avoid the application of this Article by admitting the anti-doping rule violation as asserted promptly after being confronted with the anti-doping rule violation by an Anti-Doping Organization.

[Comment to Article 10.6. Examples of aggravating circumstances which may justify the imposition of a period of Ineligibility greater than the standard sanction are: the Athlete or other Person committed the anti-doping rule violation as part of a doping plan or scheme, either individually or involving a conspiracy or common enterprise to commit anti-doping rule violations; the Athlete or other Person Used or Possessed multiple Prohibited Substances or Prohibited Methods or Used or Possessed a Prohibited Substance or Prohibited Method on multiple occasions, a normal individual would be likely to

enjoy the performance-enhancing effects of the anti-doping rule violation(s) beyond the otherwise applicable period of Ineligibility; the Athlete or Person engaged in deceptive or obstructing conduct to avoid the detection or adjudication of an anti-doping rule violation.

For the avoidance of doubt, the examples of aggravating circumstances described in this Comment to Article 10.6 are not exclusive and other aggravating factors may also justify the imposition of a longer period of Ineligibility. Violations under Articles 2.7 (Trafficking or Attempted Trafficking) and 2.8 (Administration or Attempted Administration) are not included in the application of Article 10.6 because the sanctions for these violations (from four years to lifetime Ineligibility) already build in sufficient discretion to allow consideration of any aggravating circumstance.]

## 10.7    Multiple Violations

10.7.1   Second Anti-Doping Rule Violation

For an Athlete's or other Person's first anti-doping rule violation, the period of Ineligibility is set forth in Articles 10.2 and 10.3 (subject to elimination, reduction or suspension under Articles 10.4 or 10.5, or to an increase under Article 10.6.) For a second anti-doping rule violation the period of Ineligibility shall be within the range set forth in the table below.

| Second Violation / First Violation | RS | FFMT | NSF | St | AS | TRA |
|---|---|---|---|---|---|---|
| RS | 1-4 | 2-4 | 2-4 | 4-6 | 8-10 | 10-Life |
| FFMT | 1-4 | 4-8 | 4-8 | 6-8 | 10-Life | Life |
| NSF | 1-4 | 4-8 | 4-8 | 6-8 | 10-Life | Life |
| St | 2-4 | 6-8 | 6-8 | 8-Life | Life | Life |
| AS | 4-5 | 10-Life | 10-Life | Life | Life | Life |
| TRA | 8-Life | Life | Life | Life | Life | Life |

[Comment to Article 10.7.1: The table is applied by locating the Athlete's or other Person's first anti-doping rule violation in the left-hand column and then moving across the table to the right to the column representing the second violation. By way of example, assume an Athlete receives the standard period of Ineligibility for a first violation under Article 10.2 and then commits a second violation for which he receives a reduced sanction for a Specified Substance under Article 10.4. The table is used to determine the period of Ineligibility for the second violation. The table is applied to this example by starting in the left-hand column and going down to the fourth row which is "St" for standard sanction, then moving across the table to the first column which is "RS" for reduced sanction, thus resulting in a 2-4 year range for the period for a Specified Substance.]

of Ineligibility for the second violation. The Athlete's or other Person's degree of fault shall be the criterion considered in assessing a period of Ineligibility within the applicable range.]

Definitions for purposes of the second anti-doping rule violation table:

RS (Reduced sanction for Specified Substance under Article 10.4): The anti-doping rule violation was or should be sanctioned by a reduced sanction under Article 10.4 because it involved a Specified Substance and the other conditions under Article 10.4 were met.

FFMT (Filing Failures and/or Missed Tests): The anti-doping rule violation was or should be sanctioned under Article 10.3.3 (Filing Failures and/or Missed Tests).

NSF (Reduced sanction for No Significant Fault or Negligence): The anti-doping rule violation was or should be sanctioned by a reduced sanction under Article 10.5.2 because No Significant Fault or Negligence under Article 10.5.2 was proved by the Athlete.

St (Standard sanction under Articles 10.2 or 10.3.1): The anti-doping rule violation was or should be sanctioned by the standard sanction of two (2) years under Articles 10.2 or 10.3.1.

AS (Aggravated sanction): The anti-doping rule violation was or should be sanctioned by an aggravated sanction under Article 10.6 because the Anti-Doping Organization established the conditions set forth under Article 10.6.

TRA (Trafficking or Attempted Trafficking and administration or Attempted administration): The anti-doping rule violation was or should be sanctioned by a sanction under Article 10.3.2.

[Comment to Article 10.7.1 RS Definition: See Article 25.4 with respect to application of Article 10.7.1 to pre-Code anti-doping rule violations.]

10.7.2   Application of Articles 10.5.3 and 10.5.4 to Second Anti-Doping Rule Violation

Where an Athlete or other Person who commits a second anti-doping rule violation establishes entitlement to suspension or reduction of a portion of the period of Ineligibility under Article 10.5.3 or Article 10.5.4, the hearing panel shall first determine the otherwise applicable period of Ineligibility within the range established in the table in Article 10.7.1, and then apply the appropriate suspension or reduction of the period of Ineligibility. The remaining period of Ineligibility, after applying any suspension or reduction under Articles 10.5.3 and 10.5.4, must be at least one-fourth of the otherwise applicable period of Ineligibility.

**10.7.3   Third Anti-Doping Rule Violation**

A third anti-doping rule violation will always result in a lifetime period of Ineligibility, except if the third violation fulfills the condition for elimination or reduction of the period of Ineligibility under Article 10.4 or involves a violation of Article 2.4 (Filing Failures and/or Missed Tests). In these particular cases, the period of Ineligibility shall be from eight (8) years to life ban.

**10.7.4   Additional Rules for Certain Potential Multiple Violations**

i.  For purposes of imposing sanctions under Article 10.7, an anti-doping rule violation will only be considered a second violation if the Anti-Doping Organization can establish that the Athlete or other Person committed the second anti-doping rule violation after the Athlete or other Person received notice pursuant to Article 7 (Results Management), or after the Anti-Doping Organization made reasonable efforts to give notice, of the first anti-doping rule violation; if the Anti-Doping Organization cannot establish this, the violations shall be considered together as one single first violation, and the sanction imposed shall be based on the violation that carries the more severe sanction; however, the occurrence of multiple violations may be considered as a factor in determining aggravating circumstances (Article 10.6).

ii.  If, after the resolution of a first anti-doping rule violation, an Anti-Doping Organization discovers facts involving an anti-doping rule violation by the Athlete or other Person which occurred prior to notification regarding the first violation, then the Anti-Doping Organization shall impose an additional sanction based on the sanction that could have been imposed if the two violations would have been adjudicated at the same time. Results in all Competitions dating back to the earlier anti-doping rule violation will be Disqualified as provided in Article 10.8. To avoid the possibility of a finding of aggravating circumstances (Article 10.6) on account of the earlier-in-time but later-discovered violation, the Athlete or other Person must voluntarily admit the earlier anti-doping rule violation on a timely basis after notice of the violation for which he or she is first charged. The same rule shall also apply when the Anti-Doping Organization discovers facts involving another prior violation after the resolution of a second anti-doping rule violation.

[Comment to Article 10.7.4: In a hypothetical situation, an Athlete commits an anti-doping rule violation on January 1, 2008, which the Anti-Doping Organization does not discover until December 1, 2008. In the meantime, the Athlete commits another anti-doping rule violation on March 1, 2008, and the Athlete is notified of this violation by the Anti-Doping Organization on March 30, 2008, and a hearing panel rules on June 30, 2008 that the Athlete committed the March 1, 2008 anti-doping rule violation. The later-discovered violation which occurred on January 1, 2008 will provide the basis for aggravating

circumstances because the Athlete did not voluntarily admit the violation in a timely basis after the Athlete received notification of the later violation on March 30, 2008.]

**10.7.5   Multiple Anti-Doping Rule Violations During an Eight-Year Period**

For purposes of Article 10.7, each anti-doping rule violation must take place within the same eight-year period in order to be considered multiple violations.

**10.8   Disqualification of Results in Competitions Subsequent to Sample Collection or Commission of an Anti-Doping Rule Violation**

In addition to the automatic Disqualification of the results in the Competition which produced the positive Sample under Article 9 (Automatic Disqualification of Individual Results), all other competitive results obtained from the date a positive Sample was collected (whether In-Competition or Out-of-Competition), or other anti-doping rule violation occurred, through the commencement of any Provisional Suspension or Ineligibility period, shall, unless fairness requires otherwise, be Disqualified with all of the resulting Consequences including forfeiture of any medals, points and prizes.

10.8.1   As a condition of regaining eligibility after being found to have committed an anti-doping rule violation, the Athlete must first repay all prize money forfeited under this Article.

10.8.2   Allocation of Forfeited Prize Money

Unless the rules of the International Federation provide that forfeited prize money shall be reallocated to other Athletes, it shall be allocated first to reimburse the collection expenses of the Anti-Doping Organization that performed the necessary steps to collect the prize money back, then to reimburse the expenses of the Anti-Doping Organization that conducted results management in the case, with the balance, if any, allocated in accordance with the International Federation's rules.

[Comment to Article 10.8.2: Nothing in the Code precludes clean Athletes or other Persons who have been damaged by the actions of a Person who has committed an anti-doping rule violation from pursuing any right which they would otherwise have to seek damages from such Person.]

**10.9   Commencement of Ineligibility Period**

Except as provided below, the period of Ineligibility shall start on the date of the hearing decision providing for Ineligibility or, if the hearing is waived, on the date Ineligibility is accepted or otherwise imposed. Any period of Provisional Suspension (whether imposed or voluntarily accepted) shall be credited against the total period of Ineligibility imposed.



[Comment to Article 10.9: The text of Article 10.9 has been revised to make clear that delays not attributable to the Athlete, timely admission by the Athlete and Provisional Suspension are the only justifications for starting the period of Ineligibility earlier than the date of the hearing decision. This amendment corrects inconsistent interpretation and application of the previous text.]

10.9.1 Delays Not Attributable to the Athlete or other Person
Where there have been substantial delays in the hearing process or other aspects of Doping Control not attributable to the Athlete or other Person, the body imposing the sanction may start the period of Ineligibility at an earlier date commencing as early as the date of Sample collection or the date on which another anti-doping rule violation last occurred.

10.9.2 Timely Admission
Where the Athlete or other Person promptly (which, in all events, for an Athlete means before the Athlete competes again) admits the anti-doping rule violation after being confronted with the anti-doping rule violation by the Anti-Doping Organization, the period of Ineligibility may start as early as the date of Sample collection or the date on which another anti-doping rule violation last occurred. In each case, however, where this Article is applied, the Athlete or other Person shall serve at least one-half of the period of Ineligibility going forward from the date the Athlete or other Person accepted the imposition of a sanction, the date of a hearing decision imposing a sanction, or the date the sanction is otherwise imposed.

[Comment to Article 10.9.2: This Article shall not apply where the period of Ineligibility already has been reduced under Article 10.5.4 (Admission of an Anti-Doping Rule Violation in the Absence of Other Evidence).]

10.9.3 If a Provisional Suspension is imposed and respected by the Athlete, then the Athlete shall receive a credit for such period of Provisional Suspension against any period of Ineligibility which may ultimately be imposed.

10.9.4 If an Athlete voluntarily accepts a Provisional Suspension in writing from an Anti-Doping Organization with results management authority and thereafter refrains from competing, the Athlete shall receive a credit for such period of voluntary Provisional Suspension against any period of Ineligibility which may ultimately be imposed. A copy of the Athlete's voluntary acceptance of a Provisional Suspension shall be provided promptly to each party entitled to receive notice of a potential anti-doping rule violation under Article 14.1.

[Comment to Article 10.9.4: An Athlete's voluntary acceptance of a Provisional Suspension is not an admission by the Athlete and shall not be used in any way as to draw an adverse inference against the Athlete.]

10.9.5 No credit against a period of Ineligibility shall be given for any time period before the effective date of the Provisional Suspension or voluntary Provisional Suspension regardless of whether the Athlete elected not to compete or was suspended by his or her team.

10.10 Status During Ineligibility

10.10.1 Prohibition Against Participation During Ineligibility
No Athlete or other Person who has been declared Ineligible may, during the period of Ineligibility, participate in any capacity in a Competition or activity (other than authorized anti-doping education or rehabilitation programs) authorized or organized by any Signatory, Signatory's member organization, or a club or other member organization of a Signatory's member organization, or in Competitions authorized or organized by any professional league or any international- or national-level Event organization.

An Athlete or other Person subject to a period of Ineligibility longer than four (4) years may, after completing four (4) years of the period of Ineligibility, participate in local sport events in a sport other than the sport in which the Athlete or other Person committed the anti-doping rule violation, but only so long as the local sport events is not at a level that could otherwise qualify such Athlete or other Person directly or indirectly to compete in (or accumulate points toward) a national championship or International Event.

An Athlete or other Person subject to a period of Ineligibility shall remain subject to Testing.

[Comment to Article 10.10.1: For example, an ineligible Athlete cannot participate in a training camp, exhibition or practice organized by his or her National Federation or a club which is a member of that National Federation. Further, an ineligible Athlete may not compete in a non-Signatory professional league (e.g., the National Hockey League, the National Basketball Association, etc.), Events organized by a non-Signatory International Event organization or a non-Signatory national-level event organization without triggering the consequences set forth in Article 10.10.2. Sanctions in one sport will also be recognized by other sports (see Article 15.4 Mutual Recognition).]

10.10.2 Violation of the Prohibition of Participation During Ineligibility
Where an Athlete or other Person who has been declared Ineligible violates the prohibition against participation during Ineligibility described in Article 10.10.1, the results of such participation shall be Disqualified and the period of Ineligibility which was originally imposed shall start over again as of the date of the violation. The new period of Ineligibility may be reduced under Article 10.5.2 if the Athlete or other Person establishes he or she bears No



Significant Fault or Negligence for violating the prohibition against participation. The determination of whether an Athlete or other Person has violated the prohibition against participation, and whether a reduction under Article 10.5.2 is appropriate, shall be made by the Anti-Doping Organization whose results management led to the imposition of the initial period of Ineligibility.

*[Comment to Article 10.10.2: If an Athlete or other Person is alleged to have violated the prohibition against participation during a period of Ineligibility, the Anti-Doping Organization with jurisdiction over the results management for the anti-doping rule violation which resulted in the period of Ineligibility shall determine whether the Athlete or other Person violated the prohibition and, if so, whether the Athlete or other Person has established grounds for a reduction in the restarted period of Ineligibility under Article 10.5.2. Decisions rendered by Anti-Doping Organizations under this Article may be appealed pursuant to Article 13.2.*

*Where an Athlete Support Personnel or other Person substantially assists an Athlete in violating the prohibition against participation during Ineligibility, an Anti-Doping Organization with jurisdiction over such Athlete Support Personnel or other Person may appropriately impose sanctions under its own disciplinary rules for such assistance.]*

**10.10.3** Withholding of Financial Support during Ineligibility. In addition, for any anti-doping rule violation not involving a reduced sanction for Specified Substances as described in Article 10.4, some or all sport-related financial support or other sport-related benefits received by such Person will be withheld by Signatories, Signatories' member organizations and governments.

**10.11    Reinstatement Testing**
As a condition to regaining eligibility at the end of a specified period of Ineligibility, an Athlete must, during any period of Provisional Suspension or Ineligibility, make him or herself available for Out-of-Competition Testing by any Anti-Doping Organization having Testing jurisdiction, and must, if requested, provide current and accurate whereabouts information. If an Athlete subject to a period of Ineligibility retires from sport and is removed from Out-of-Competition Testing pools and later seeks reinstatement, the Athlete shall not be eligible for reinstatement until the Athlete has notified relevant Anti-Doping Organizations and has been subject to Out-of-Competition Testing for a period of time equal to the period of Ineligibility remaining as of the date the Athlete had retired.

**10.12    Imposition of Financial Sanctions**
Anti-Doping Organizations may, in their own rules, provide for financial sanctions on account of anti-doping rule violations. However, no financial

---

sanction may be considered a basis for reducing the period of Ineligibility or other sanction which would otherwise be applicable under the Code.

*[Comment to Article 10.12: For example, if a hearing panel were to find in a case that the cumulative effect of the sanction applicable under the Code and a financial sanction provided in the rules of an Anti-Doping Organization would result in too harsh a consequence, then the Anti-Doping Organization's financial sanction, not the other Code sanctions (e.g., Ineligibility and loss of results), would give way.]*

**ARTICLE 11: CONSEQUENCES TO TEAMS**

**11.1    Testing of Team Sports**
Where more than one member of a team in a Team Sport has been notified of an anti-doping rule violation under Article 7 in connection with an Event, the ruling body for the Event shall conduct appropriate Target Testing of the team during the Event Period.

**11.2    Consequences for Team Sports**
If more than two members of a team in a Team Sport are found to have committed an anti-doping rule violation during an Event Period, the ruling body of the Event shall impose an appropriate sanction on the team (e.g., loss of points, Disqualification from a Competition or Event, or other sanction) in addition to any Consequences imposed upon the individual Athletes committing the anti-doping rule violation.

**11.3    Event Ruling Body May Establish Stricter Consequences for Team Sports**
The ruling body for an Event may elect to establish rules for the Event which impose Consequences for Team Sports stricter than those in Article 11.2 for purposes of the Event.

*[Comment to Article 11.3: For example, the International Olympic Committee could establish rules which would require Disqualification of a team from the Games of the Olympiad based on a lesser number of anti-doping rule violations during the period of the Games of the Olympiad.]*

**ARTICLE 13: APPEALS**

**13.1    Decisions Subject to Appeal**
Decisions made under the Code or rules adopted pursuant to the Code may be appealed as set forth below in Articles 13.2 through 13.4 or as otherwise provided in the Code. Such decisions shall remain in effect while under



appeal unless the appellate body orders otherwise. Before an appeal is commenced, any post-decision review provided in the Anti-Doping Organization's rules must be exhausted, provided that such review respects the principles set forth in Article 13.2.2 below (except as provided in Article 13.1.1).

13.1.1 WADA Not Required to Exhaust Internal Remedies

Where WADA has a right to appeal under Article 13 and no other party has appealed a final decision within the Anti-Doping Organization's process, WADA may appeal such decision directly to CAS without having to exhaust other remedies in the Anti-Doping Organization process.

*[Comment to Article 13.1.1: Where a decision has been rendered before the final stage of an Anti-Doping Organization's process (e.g., a first hearing) and no party elects to appeal that decision to the next level of the Anti-Doping Organization's process (e.g., the Managing Board), then WADA may bypass the remaining steps in the Anti-Doping Organization's internal process and appeal directly to CAS.]*

**13.2 Appeals from Decisions Regarding Anti-Doping Rule Violations, Consequences, and Provisional Suspensions**

A decision that an anti-doping rule violation was committed, a decision imposing Consequences for an anti-doping rule violation, or a decision that no anti-doping rule violation was committed; a decision that an anti-doping rule violation proceeding cannot go forward for procedural reasons (including, for example, prescription); a decision under Article 10.12.2 (Violation of the Prohibition of Participation during Ineligibility); a decision that an Anti-Doping Organization lacks jurisdiction to rule on an alleged anti-doping rule violation or its Consequences; a decision by an Anti-Doping Organization not to bring forward an Adverse Analytical Finding or an Atypical Finding as an anti-doping rule violation, or a decision not to go forward with an anti-doping rule violation after an investigation under Article 7.4, and decision to impose a Provisional Suspension as a result of a Provisional Hearing or in violation of Article 7.5, may be appealed exclusively as provided in this Article 13.2.

13.2.1 Appeals Involving *International-Level Athletes*

In cases arising from participation in an *International Event* or in cases involving *International-Level Athletes*, the decision may be appealed exclusively to CAS in accordance with the provisions applicable before such court.

*[Comment to Article 13.2.1: CAS decisions are final and binding except for any review required by law applicable to the annulment or enforcement of arbitral awards.]*

13.2.3 Persons Entitled to Appeal

In cases under Article 13.2.1, the following parties shall have the right to appeal to CAS: (a) the *Athlete* or other *Person* who is the subject of the deci-

sion being appealed; (b) the other party to the case in which the decision was rendered; (c) the relevant International Federation; (d) the National Anti-Doping Organization of the *Person's* country of residence or countries where the *Person* is a national or license holder; (e) the International Olympic Committee or International Paralympic Committee, as applicable, where the decision may have an effect in relation to the Olympic Games or Paralympic Games, including decisions affecting eligibility for the Olympic Games or Paralympic Games; and (f) WADA.

In cases under Article 13.2.2, the parties having the right to appeal to the national-level reviewing body shall be as provided in the National Anti-Doping Organization's rules but, at a minimum, shall include the following parties: (a) the Athlete or other Person who is the subject of the decision being appealed; (b) the other party to the case in which the decision was rendered; (c) the relevant International Federation; (d) the National Anti-Doping Organization of the Person's country of residence; and (e) WADA. For cases under Article 13.2.2, WADA and the International Federation shall also have the right to appeal to CAS with respect to the decision of the national-level reviewing body. Any party filing an appeal shall be entitled to assistance from CAS to obtain all relevant information from the Anti-Doping Organization whose decision is being appealed and the information shall be provided if CAS so directs.

The filing deadline for an appeal or intervention filed by WADA shall be the later of:

(a) Twenty-one (21) days after the last day on which any other party in the case could have appealed, or

(b) Twenty-one (21) days after WADA's receipt of the complete file relating to the decision.

Notwithstanding any other provision herein, the only *Person* who may appeal from a *Provisional Suspension* is the *Athlete* or other *Person* upon whom the *Provisional Suspension* is imposed.

**13.3 Failure to Render a Timely Decision by an Anti-Doping Organization**

Where, in a particular case, an *Anti-Doping Organization* fails to render a decision with respect to whether an anti-doping rule violation was committed within a reasonable deadline set by WADA, WADA may elect to appeal directly to CAS as if the *Anti-Doping Organization* had rendered a decision finding no anti-doping rule violation. If the *CAS* hearing panel determines that an anti-doping rule violation was committed and that WADA acted reasonably in electing to appeal directly to CAS, then WADA's costs and attorneys fees in prosecuting the appeal shall be reimbursed to WADA by the *Anti-Doping Organization*.



**13.4 Appeals from Decisions Granting or Denying a Therapeutic Use Exemption**

Decisions by WADA reversing the grant or denial of a therapeutic use exemption may be appealed exclusively to CAS by the Athlete or the Anti-Doping Organization whose decision was reversed. Decisions by Anti-Doping Organizations other than WADA denying therapeutic use exemptions, which are not reversed by WADA, may be appealed by International-Level Athletes to CAS and by other Athletes to the national-level reviewing body described in Article 13.2.2. If the national-level reviewing body reverses the decision to deny a therapeutic use exemption, that decision may be appealed to CAS by WADA.

When an Anti-Doping Organization fails to take action on a properly submitted therapeutic use exemption application within a reasonable time, the Anti-Doping Organization's failure to decide may be considered a denial for purposes of the appeal rights provided in this Article.

**13.6 Appeals from Decisions Suspending or Revoking Laboratory Accreditation**

Decisions by WADA to suspend or revoke a laboratory's WADA accreditation may be appealed only by that laboratory with the appeal being exclusively to CAS.

**ARTICLE 15:  CLARIFICATION OF DOPING CONTROL RESPONSIBILITIES**

**15.4 Mutual Recognition**

15.4.1  Subject to the right to appeal provided in Article 13, Testing, therapeutic use exemptions and hearing results or other final adjudications of any Signatory which are consistent with the Code and are within that Signatory's authority, shall be recognized and respected by all other Signatories.

*[Comment to Article 15.4.1:  There has in the past been some confusion in the interpretation of this Article with regard to the therapeutic use exemp-*

*[Comment to Article 13.3:  Given the different circumstances of each anti-doping rule violation investigation and results management process, it is not feasible to establish a fixed time period for an Anti-Doping Organization to render a decision before WADA may intervene by appealing directly to CAS. Before taking such action, however, WADA will consult with the Anti-Doping Organization and give the Anti-Doping Organization an opportunity to explain why it has not yet rendered a decision. Nothing in this Article prohibits an International Federation from also having rules which authorize it to assume jurisdiction for matters in which the results management performed by one of its National Federations has been inappropriately delayed.]*

---

*tions. Unless provided otherwise by the rules of an International Federation or an agreement with an International Federation, National Anti-Doping Organizations do not have "authority" to grant therapeutic use exemptions to International-level Athletes.]*

15.4.2  Signatories shall recognize the same actions of other bodies which have not accepted the Code if the rules of those bodies are otherwise consistent with the Code.

*[Comment to Article 15.4.2: Where the decision of a body that has not accepted the Code is in some respects Code compliant and in other respects not Code compliant, Signatories should attempt to apply the decision in harmony with the principles of the Code. For example, if in a process consistent with the principles of the Code, a non-Signatory has found an Athlete to have committed an anti-doping rule violation on account of the presence of a Prohibited Substance in his body but the period of Ineligibility applied is shorter than the period provided for in the Code, then all Signatories should recognize the finding of an anti-doping rule violation and the Athlete's National Anti-Doping Organization should conduct a hearing consistent with Article 8 to determine whether the longer period of Ineligibility provided in the Code should be imposed.]*

**ARTICLE 17:  STATUTE OF LIMITATIONS**

No action may be commenced against an Athlete or other Person for an anti-doping rule violation contained in the Code unless such action is commenced within eight (8) years from the date the violation is asserted to have occurred.

**ARTICLE 24:  INTERPRETATION OF THE CODE**

24.1  The official text of the Code shall be maintained by WADA and shall be published in English and French. In the event of any conflict between the English and French versions, the English version shall prevail.

24.2  The comments annotating various provisions of the Code shall be used to interpret the Code.

24.3  The Code shall be interpreted as an independent and autonomous text and not by reference to the existing law or statutes of the Signatories or governments.

24.4  The headings used for the various Parts and Articles of the Code are for convenience only and shall not be deemed part of the substance of the Code or to affect in any way the language of the provisions to which they refer.



24.5    The *Code* shall not apply retrospectively to matters pending before the the date the *Code* is accepted by a *Signatory* and implemented in its rules. However, pre-*Code* anti-doping rule violations would continue to count as "First violations" or "Second violations" for purposes of determining sanctions under Article 10 for subsequent post-*Code* violations.

24.6    The *Purpose, Scope and Organization of the World Anti-Doping Program* and the *Code* and APPENDIX 1 - DEFINITIONS shall be considered integral parts of the *Code*.

**ARTICLE 25: TRANSITIONAL PROVISIONS**

25.1    *General Application of the 2009 Code*

The *2009 Code* shall apply in full after January 1, 2009 (the "Effective Date").

25.2    *Non-Retroactive Unless Principle of "Lex Mitior" Applies*

With respect to any anti-doping rule violation case which is pending as of the Effective Date and any anti-doping rule violation case brought after the Effective Date based on an anti-doping rule violation which occurred prior to the Effective Date, the case shall be governed by the substantive anti-doping rules in effect at the time the alleged anti-doping rule violation occurred unless the panel hearing the case determines the principle of "lex mitior" appropriately applies under the circumstances of the case.

25.3    *Application to Decisions Rendered Prior to the 2009 Code*

With respect to cases where a final decision finding an anti-doping rule violation has been rendered prior to the Effective Date, but the *Athlete* or other *Person* is still serving the period of *Ineligibility* as of the Effective Date, the *Athlete* or other *Person* may apply to the *Anti-Doping Organization* which had results management responsibility for the anti-doping rule violation to consider a reduction in the period of *Ineligibility* in light of the *2009 Code*. Such application must be made before the period of *Ineligibility* has expired. The decision rendered by the *Anti-Doping Organization* may be appealed pursuant to Article 13.2. The *2009 Code* shall have no application to any anti-doping rule violation case where a final decision finding an anti-doping rule violation has been rendered and the period of *Ineligibility* has expired.

25.4    *Application to Specific Pre-Code Violations*

For purposes of applying Article 10.7.1, a pre-*Code* anti-doping rule violation where the violation involved a substance which is categorized as a *Specified Substance* under the *2009 Code* and the period of *Ineligibility* imposed was less than two (2) years, the pre-*Code* violation shall be considered a Reduced Sanction (RS).

25.5    *Additional Code Amendments*

Any additional *Code* Amendments shall go into effect as provided in Article 23.6.

[Comment to Article 25.4: Other than the situation described in Article 25.3, where a final decision finding an anti-doping rule violation has been rendered prior to the *Code* or under the *Code* before the *2009 Code* and the period of *Ineligibility* imposed has been completely served, the *2009 Code* may not be used to re-characterize the prior violation.]



# APPENDIX 1: DEFINITIONS

**ADAMS:** The Anti-Doping Administration and Management System is a Web-based database management tool for data entry, storage, sharing, and reporting designed to assist stakeholders and WADA in their anti-doping operations in conjunction with data protection legislation.

**Adverse Analytical Finding:** A report from a laboratory or other WADA-approved entity that, consistent with the International Standard for Laboratories and related Technical Documents, identifies in a *Sample* the presence of a *Prohibited Substance* or its *Metabolites* or *Markers* (including elevated quantities of endogenous substances) or evidence of the *Use* of a *Prohibited Method*.

**Anti-Doping Organization:** A *Signatory* that is responsible for adopting rules for initiating, implementing or enforcing any part of the *Doping Control* process. This includes, for example, the International Olympic Committee, the International Paralympic Committee, other *Major Event Organizations* that conduct *Testing* at their *Events*, WADA, International Federations, and National *Anti-Doping Organizations*.

**Athlete:** Any *Person* who participates in sport at the international level (as defined by each International Federation), the national level (as defined by each *National Anti-Doping Organization*, including but not limited to those *Persons* in its *Registered Testing Pool*), and any other competitor in sport who is otherwise subject to the jurisdiction of any *Signatory* or other sports organization accepting the *Code*. All provisions of the *Code*, including, for example, *Testing* and therapeutic use exemptions, must be applied to international- and national-level competitors. Some National *Anti-Doping Organizations* may elect to test and apply anti-doping rules to recreational-level or masters competitors who are not current or potential national caliber competitors. National *Anti-Doping Organizations* are not required, however, to apply all aspects of the *Code* to such *Persons*. Specific national rules may be established for *Doping Control* for non-international-level or non-national-level competitors without being in conflict with the *Code*. Thus, a country could elect to test recreational-level competitors but not require therapeutic use exemptions or whereabouts information. In the same manner, a *Major Event Organization* holding an *Event* only for masters-level competitors could elect to test the competitors but not require advance therapeutic use exemptions or whereabouts information. For purposes of Article 2.8 (Administration or *Attempted* Administration) and for purposes of anti-doping information and education, any *Person* who participates in sport under the authority of any *Signatory*, government, or other sports organization accepting the *Code* is an *Athlete*.

*[Comment to Athlete: This definition makes it clear that all international and national-caliber athletes are subject to the anti-doping rules of the Code, with the precise definitions of international- and national-level sport to be set forth in the anti-doping rules of the International Federations and National Anti-Doping Organizations, respectively. At the national level, anti-doping rules adopted pursuant to the Code shall apply, at a mini-*

*mum, to all persons on national teams and all persons qualified to compete in any national championship in any sport. That does not mean, however, that all such Athletes must be included in a National Anti-Doping Organization's Registered Testing Pool. The definition also allows each National Anti-Doping Organization, if it chooses to do so, to expand its anti-doping program beyond national-caliber athletes to competitors at lower levels of competition. Competitors at all levels of competition should receive the benefit of anti-doping information and education.]*

**Athlete Support Personnel:** Any coach, trainer, manager, agent, team staff, official, medical, paramedical personnel, parent or any other *Person* working with, treating or assisting an *Athlete* participating in or preparing for sports *Competition*.

**Attempt:** Purposely engaging in conduct that constitutes a substantial step in a course of conduct planned to culminate in the commission of an anti-doping rule violation. Provided, however, there shall be no anti-doping rule violation based solely on an *Attempt* to commit a violation if the *Person* renounces the *Attempt* prior to it being discovered by a third party not involved in the *Attempt*.

**Atypical Finding:** A report from a laboratory or other WADA-approved entity which requires further investigation as provided by the International Standard for Laboratories or related Technical Documents prior to the determination of an *Adverse Analytical Finding*.

**CAS:** The Court of Arbitration for Sport.

**Code:** The World Anti-Doping Code.

**Competition:** A single race, match, game or singular athletic contest. For example, a basketball game or the finals of the Olympic 100-meter race in athletics. For stage races and other athletic contests where prizes are awarded on a daily or other interim basis the distinction between a *Competition* and an *Event* will be as provided in the rules of the applicable International Federation.

**Consequences of Anti-Doping Rules Violations:** An *Athlete's* or other *Person's* violation of an anti-doping rule may result in one or more of the following: (a) *Disqualification* means the *Athlete's* results in a particular *Competition* or *Event* are invalidated, with all resulting *Consequences* including forfeiture of any medals, points and prizes; (b) *Ineligibility* means the *Athlete* or other *Person* is barred for a specified period of time from participating in any *Competition* or other activity or funding as provided in Article 10.9; and (c) *Provisional Suspension* means the *Athlete* or other *Person* is barred temporarily from participating in any *Competition* prior to the final decision at a hearing conducted under Article 8 (Right to a Fair Hearing).

**Disqualification:** See Consequences of Anti-Doping Rules Violations above.



**Doping Control:** All steps and processes from test distribution planning through to ultimate disposition of any appeal including all steps and processes in between such as provision of whereabouts information, Sample collection and handling, laboratory analysis, therapeutic use exemptions, results management and hearings.

**Event:** A series of individual Competitions conducted together under one ruling body (e.g., the Olympic Games, FINA World Championships, or Pan American Games).

**Event Period:** The time between the beginning and end of an Event, as established by the ruling body of the Event.

**In-Competition:** Unless provided otherwise in the rules of an International Federation or other relevant Anti-Doping Organization, "In-Competition" means the period commencing twelve hours before a Competition in which the Athlete is scheduled to participate through the end of such Competition and the Sample collection process related to such Competition.

**Independent Observer Program:** A team of observers, under the supervision of WADA, who observe and may provide guidance on the Doping Control process at certain Events and report on their observations.

**Individual Sport:** Any sport that is not a Team Sport.

**Ineligibility:** See Consequences of Anti-Doping Rules Violations, above.

**International-Level Athlete:** Athletes designated by one or more International Federations as being within the Registered Testing Pool for an International Federation.

**International Event:** An Event where the International Olympic Committee, the International Paralympic Committee, an International Federation, a Major Event Organization, or another international sport organization is the ruling body for the Event or appoints the technical officials for the Event.

**International Standard:** A standard adopted by WADA in support of the Code. Compliance with an International Standard (as opposed to another alternative standard, practice or procedure) shall be sufficient to conclude that the procedures addressed by the International Standard were performed properly. International Standards shall include any Technical Documents issued pursuant to the International Standard.

**Major Event Organizations:** The continental associations of National Olympic Committees and other international multi-sport organizations that function as the ruling body for any continental, regional or other International Event.

**Marker:** A compound, group of compounds or biological parameter(s) that indicates the Use of a Prohibited Substance or Prohibited Method.

**Metabolite:** Any substance produced by a biotransformation process.

**Minor:** A natural Person who has not reached the age of majority as established by the applicable laws of his or her country of residence.

**National Anti-Doping Organization:** The entity(ies) designated by each country as possessing the primary authority and responsibility to adopt and implement anti-doping rules, direct the collection of Samples, the management of test results, and the conduct of hearings, all at the national level. This includes an entity which may be designated by multiple countries to serve as regional Anti-Doping Organization for such countries. If this designation has not been made by the competent public authority(ies), the entity shall be the country's National Olympic Committee or its designee.

**National Event:** A sport Event involving international- or national-level Athletes that is not an International Event.

**National Olympic Committee:** The organization recognized by the International Olympic Committee. The term National Olympic Committee shall also include the National Sport Confederation in those countries where the National Sport Confederation assumes typical National Olympic Committee responsibilities in the anti-doping area.

**No Advance Notice:** A Doping Control which takes place with no advance warning to the Athlete and where the Athlete is continuously chaperoned from the moment of notification through Sample provision.

**No Fault or Negligence:** The Athlete's establishing that he or she did not know or suspect, and could not reasonably have known or suspected even with the exercise of utmost caution, that he or she had Used or been administered the Prohibited Substance or Prohibited Method.

**No Significant Fault or Negligence:** The Athlete's establishing that his or her fault or negligence, when viewed in the totality of the circumstances and taking into account the criteria for No Fault or Negligence, was not significant in relationship to the anti-doping rule violation.

**Out-of-Competition:** Any Doping Control which is not In-Competition.

**Participant:** Any Athlete or Athlete Support Personnel.

**Person:** A natural Person or an organization or other entity.

**Possession:** The actual, physical Possession, or the constructive Possession (which shall be found only if the Person has exclusive control over the Prohibited Substance or Prohibited Method or the premises in which a Prohibited Substance or Prohibited Method





exists); provided, however, that if the *Person* does not have exclusive control over the *Prohibited Substance or Prohibited Method* or the premises in which a *Prohibited Substance or Prohibited Method* exists, constructive *Possession* shall only be found if the *Person* knew about the presence of the *Prohibited Substance or Prohibited Method* and intended to exercise control over it. Provided, however, there shall be no anti-doping rule violation based solely on *Possession* if, prior to receiving notification of any kind that the *Person* has committed an anti-doping rule violation, the *Person* has taken concrete action demonstrating that the *Person* never intended to have *Possession* and has renounced *Possession* by explicitly declaring it to an *Anti-Doping Organization*. Notwithstanding anything to the contrary in this definition, the purchase (including by any electronic or other means) of a *Prohibited Substance or Prohibited Method* constitutes *Possession* by the *Person* who makes the purchase.

*[Comment to Possession: Under this definition, steroids found in an Athlete's car would constitute a violation unless the Athlete establishes that someone else used the car; in that event, the Anti-Doping Organization must establish that, even though the Athlete did not have exclusive control over the car, the Athlete knew about the steroids and intended to have control over the steroids. Similarly, in the example of steroids found in a home medicine cabinet under the joint control of an Athlete and spouse, the Anti-Doping Organization must establish that the Athlete knew the steroids were in the cabinet and that the Athlete intended to exercise control over the steroids.]*

**Prohibited List:** The list identifying the *Prohibited Substances and Prohibited Methods.*

**Prohibited Method:** Any method so described on the *Prohibited List.*

**Prohibited Substance:** Any substance so described on the *Prohibited List.*

**Provisional Hearing:** For purposes of Article 7.5, an expedited abbreviated hearing occurring prior to a hearing under Article 8 (Right to a Fair Hearing) that provides the *Athlete* with notice and an opportunity to be heard in either written or oral form.

**Provisional Suspension:** See *Consequences of Anti-Doping Rules Violations* above.

**Publicly Disclose or Publicly Report:** To disseminate or distribute information to the general public or *Persons* beyond those *Persons* entitled to earlier notification in accordance with Article 14.

**Registered Testing Pool:** The pool of top-level *Athletes* established separately by each *International Federation* and *National Anti-Doping Organization* who are subject to both *In-Competition* and *Out-of-Competition Testing* as part of that *International Federation's* or *National Anti-Doping Organization's* test distribution plan. Each *International Federation* shall publish a list which identifies those *Athletes* included in its *Registered Testing Pool* either by name or by clearly defined, specific criteria.

**Sample or Specimen:** Any biological material collected for the purposes of *Doping Control.*

*[Comment to Sample or Specimen: It has sometimes been claimed that the collection of blood Samples violates the tenets of certain religious or cultural groups. It has been determined that there is no basis for any such claim.]*

**Signatories:** Those entities signing the *Code* and agreeing to comply with the *Code,* including the International Olympic Committee, International Federations, International Paralympic Committee, National Olympic Committees, National Paralympic Committees, *Major Event Organizations, National Anti-Doping Organizations,* and *WADA.*

**Substantial Assistance:** For purposes of Article 10.5.3, a *Person* providing *Substantial Assistance* must: (1) fully disclose in a signed written statement all information he or she possesses in relation to anti-doping rule violations, and (2) fully cooperate with the investigation and adjudication of any case related to that information, including, for example, presenting testimony at a hearing if requested to do so by an *Anti-Doping Organization* or hearing panel. Further, the information provided must be credible and must comprise an important part of any case which is initiated, or, if no case is initiated, must have provided a sufficient basis on which a case could have been brought.

**Tampering:** Altering for an improper purpose or in an improper way; bringing improper influence to bear; interfering improperly; obstructing, misleading or engaging in any fraudulent conduct to alter results or prevent normal procedures from occurring; or providing fraudulent information to an *Anti-Doping Organization.*

**Target Testing:** Selection of *Athletes* for *Testing* where specific *Athletes* or groups of *Athletes* are selected on a non-random basis for *Testing* at a specified time.

**Team Sport:** A sport in which the substitution of players is permitted during a *Competition.*

**Testing:** The parts of the *Doping Control* process involving test distribution planning, *Sample* collection, *Sample* handling, and *Sample* transport to the laboratory.

**Trafficking:** Selling, giving, transporting, sending, delivering or distributing a *Prohibited Substance or Prohibited Method* (either physically or by any electronic or other means) by an *Athlete, Athlete Support Personnel* or any other *Person* subject to the jurisdiction of an *Anti-Doping Organization* to any third party; provided, however, this definition shall not include the actions of "bona fide" medical personnel involving a *Prohibited Substance* used for genuine and legal therapeutic purposes or other acceptable justification, and shall not include actions involving *Prohibited Substances* which are not prohibited in *Out-of-Competition Testing* unless the circumstances as a whole demonstrate such *Prohibited Substances* are not intended for genuine and legal therapeutic purposes.

58

**UNESCO Convention:** The International Convention against Doping in Sport adopted by the 33rd session of the UNESCO General Conference on October 19, 2005 including any and all amendments adopted by the States Parties to the Convention and the Conference of Parties to the International Convention against Doping in Sport.

**Use:** The utilization, application, ingestion, injection or consumption by any means whatsoever of any *Prohibited Substance or Prohibited Method.*

**WADA:** The World Anti-Doping Agency.

# ANNEX B

The following documents will accompany the initial notification to the *Athlete* or other *Person* of a positive "A" *sample* analysis:

1. A standard notice setting forth the review procedures, *Athlete's* or other *Person's* rights, and contact information for the USOC *Athlete* Ombudsman (including name, telephone number, e-mail address and website URL).

2. Notification of the *prohibited substance* at issue which could result in a doping violation. In those cases where an administrative threshold concentration is employed, that threshold will be noted. When possible, the degree to which the *Athlete's* or other *Person's sample* exceeds the threshold will be reported.

3. An abbreviated analytical report to the "A" confirmation analysis. The abbreviated data should include applicable analytical confirmation technique (e.g., gas chromatography/mass spectrometric) graphical data for negative control urine, a positive control urine (including quantitative data where relevant), and the *Athlete's* or other *Person's sample.* The purpose of this data is to allow the *Athlete* or other *Person* or their representative to determine a course of action. It is understood that due to time constraints involved, there is typically less time to review and organize this data prior to transmittal than with the documentation package to accompany the "B" *sample* which will also address documents related to the "A" analysis.

4. For EPO cases, provide the Basic Area Percentage (BAP) of r-EPO, stated as a percentage term.

5. A cover page summarizing, in plain English, the following data contained in the laboratory documentation package: (i) the test collection date; (ii) the name of the substance reported positive or elevated; and (iii) quantification information as follows: (a) for substances where *WADA* has established a reporting threshold, an estimate of the concentration relative to the threshold; (b) for T/E ratios, the approximate screen concentrations of T and E [note that T/E ratios are reported based on a comparison of the relative signals of T and E not a comparison of absolute quantities of T and E]; (c) for non-threshold substances, a statement whether the concentration is relatively "high," "medium" or "low" with a reference range provided for the positive or elevated substance in question. Note that for non-threshold substances the presence of any quantity of the *prohibited substance* is an anti-doping rule violation.



59

# ANNEX C

The following documentation will be supplied as the standard documentation package:

## Table of contents

List of laboratory staff involved in the test, including signatures and/or initials and position (title/s)

Sample identification information

Organization requesting the test

Date of sample collection and site identification

USADA sample identification number

Laboratory sample identification number

Urine integrity test results (if completed)

Chain of custody documentation for sample container

Doping Control Notification form (Laboratory copy)

Transportation chain of custody (e.g., courier documentation, laboratory receipt of container)

"A" sample container chain(s) of custody

Documentation of any deviations from the written screening procedures, if any

"A" Sample Screening Results

Relevant aliquot chain(s) of custody

Screening procedure data, including chromatograms (or other relevant data), for Negative control urine

Positive control urine (with concentration indicated, if relevant)

Sample urine aliquot(s)

Analytical run instrument validation data (e.g.; tune data)

Documentation of any deviations from the written screening procedures, if any

"A" Sample Confirmation Results

Summary of the analytical principles of the confirmation method

Aliquot chain of custody

Sequence verification data

Confirmation procedure data, including chromatograms (or other relevant data), for Negative control urine

Positive control urine (with concentration indicated, if relevant)

Standard(s)/calibrator(s) (if relevant)

Sample urine aliquot(s)

Analytical run instrument validation data (e.g.; tune data)

"A" sample report (including numerical data for threshold substances*)

 pH, Specific Gravity, and other urine integrity test results (if applicable, including abnormal appearance of sample) performed in laboratory.

Documentation of any deviations from the written screening procedures, if any

"B" Sample Confirmation Results

"B" sample container chain(s) of custody

Summary of the analytical principles of the confirmation method (if different than "A")

Aliquot chain of custody

Sequence verification data

Confirmation procedure data, including chromatograms (or other relevant data), for Negative control urine

Positive control urine (with concentration indicated, if relevant)

Standard(s)/calibrator(s) (if relevant)

Sample urine aliquot(s)

Analytical run instrument validation data (e.g.; tune data)

"B" sample report (including numerical data for threshold substances*)

Documentation of any deviations from the written screening procedures, if any

Reports and Correspondence

All facsimiles or letters related to analysis and reporting of sample results

*For threshold substances, an estimate of the ratio or concentration or an estimate of the concentration relative to the threshold (i.e. 20 times the threshold concentration) is deemed acceptable.



# ANNEX D

American Arbitration Association Supplementary Procedures for the
Arbitration of Olympic Sport Doping Disputes

## Table of Contents

R-1.    Applicability
R-2.    AAA and Delegation of Duties
R-3.    National Pool of Arbitrators
R-4.    Initiation by USADA
R-5.    Changes of Claim
R-6.    Applicable Procedures
R-7.    Jurisdiction
R-8.    Administrative Conference
R-9.    Fixing of Locale
R-10.   Qualifications of an Arbitrator
R-11.   Appointment of the Arbitration Panel
R-12.   Number of Arbitrators
R-13.   Notice to Arbitrator of Appointment
R-14.   Disclosure and Challenge Procedure
R-15.   Communication with Arbitrator
R-16.   Vacancies
R-17.   Preliminary Hearing
R-18.   Exchange of Information
R-19.   Date, Time, and Place of Hearing
R-20.   Attendance at Hearings
R-21.   Representation
R-22.   Oaths
R-23.   Stenographic Record
R-24.   Interpreters
R-25.   Postponements
R-26.   Arbitration in the Absence of a Party or Representative
R-27.   Conduct of Proceedings
R-28.   Evidence
R-29.   Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence
R-30.   Inspection or Investigation
R-31.   Interim Measures
R-32.   Closing of Hearing
R-33.   Reopening of Hearing
R-34.   Waiver of Rules
R-35.   Extensions of Time
R-36.   Serving of Notice
R-37.   Majority Decision
R-38.   Time of Award
R-39.   Form of Award
R-40.   Scope of Award
R-41.   Award upon Settlement
R-42.   Delivery of Award to Parties
R-43.   Modification of Award
R-44.   Release of Documents for Judicial Proceedings
R-45.   Appeal Rights
R-46.   Applications to Court and Exclusion of Liability
R-47.   Administrative Fees
R-48.   Expenses
R-49.   Arbitrator's Compensation
R-50.   Payment of Fees, Expenses and Compensation for Citizens of a Country Other than USA
R-51.   Interpretation and Application of Rules

## R-1. Applicability

The Commercial Arbitration Rules of the American Arbitration Association (AAA), as modified by these Supplementary Procedures for the Arbitration of Anti-Doping Rule Violations (Supplementary Procedures) shall apply to arbitrations, which arise out of the United States Anti-Doping Agency (USADA) Protocol. To the extent that there is any variance between the Commercial Arbitration Rules and the Supplementary Procedures, the Supplementary Procedures shall control.

## R-2. AAA and Delegation of Duties

Anti-doping rule violation cases shall be administered by the AAA through the AAA Vice President then serving as the Secretary for the North American/Central American/Caribbean Islands Decentralized Office of The Court of Arbitration for Sport or his/her designee (Administrator).

## R-3. National Pool of Arbitrators

The Pool of AAA Arbitrators for anti-doping rule violation cases shall consist of the Court of Arbitration for Sport (CAS) Arbitrators who are citizens of the USA, (the Arbitrator Pool). Any reference to arbitrator in these rules shall also refer to an arbitration panel consisting of three arbitrators, if applicable. All arbitrators in the Arbitrator Pool shall have received training by the AAA.

## R-4. Initiation by USADA

Arbitration proceedings shall be initiated by USADA by sending a notice to the athlete or other person charged with an anti-doping rule violation and the Administrator. The notice shall set forth (i) the offense and (ii) the sanction, consistent with the applicable International Federation rules, the mandatory Articles from the World Anti-Doping Code (Annex A of the USADA Protocol) and the United States Olympic Committee ("USOC") National Anti-Doping Policies, which USADA is seeking to have imposed and other possible sanctions, which could be imposed under the applicable International Federation rules, the mandatory Articles from the World Anti-Doping Code (Annex A of the USADA



Protocol) and the USOC National Anti-Doping Policies. The notice shall also advise the athlete of the name, telephone number, e-mail address and website of the Athlete Ombudsman and shall include a copy of the USADA Protocol and these Supplemental Procedures. The parties to the proceeding shall be USADA and the athlete or other person charged with an anti-doping rule violation. The applicable International Federation and World Anti-Doping Association shall also be invited to join in the proceeding as a party or as an observer. The USOC shall be invited to join in the proceeding as an observer. The athlete or other person charged with an anti-doping rule violation shall have the right to invite the Athlete Ombudsman as an observer, but under no circumstances may any party or arbitrator compel the Athlete Ombudsman to testify as a witness. If the parties agree or the athlete or other person charged with an anti-doping rule violation requests and the arbitrator agrees, the hearing shall be open to the public.

### R-5. Changes of Claim

After filing of a claim, if any party desires to make any new or different claim, it shall be made in writing and filed with the AAA. The party asserting such a claim shall provide a copy of the new or different claim to the other party or parties. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

### R-6. Applicable Procedures

All cases shall be administered in accordance with Sections R-1 through R-51 of these rules. At the request of any party, any time period set forth in these procedures may be shortened by the arbitrator(s) where doing so is reasonably necessary to resolve any athlete's eligibility before a protected competition, while continuing to protect the right of an athlete or other person charged with an anti-doping rule violation to a fair hearing. The shortened time periods shall not prohibit the athlete's or other person's right to request three (3) arbitrators.

If a request to expedite the adjudication process is made prior to the arbitration panel being appointed, the AAA shall randomly select one (1) arbitrator from the Arbitrator Pool, who shall determine whether the adjudication process shall be expedited and the schedule pursuant to which the process shall proceed. This randomly selected arbitrator shall not sit on the panel.

If a request to expedite the adjudication process is made after the arbitration panel is appointed, the arbitration panel shall determine whether the adjudication process shall be expedited and the schedule pursuant to which the process shall proceed. The AAA shall immediately notify the Athlete Ombudsman and the USOC General Counsel's office of any arbitration that may be or has been initiated under these expedited procedures.

### R-7. Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

### R-8. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings and any other administrative matter.

### R-9. Fixing of Locale

The locale of the arbitration shall be in the United States at a location determined by the Administrator using criteria established by the AAA but making every effort to give preference to the choice of the athlete or other person charged with an anti-doping rule violation.

### R-10. Qualifications of an Arbitrator

a. Any arbitrator appointed pursuant to Section R-11, or selected by mutual choice of the parties or their appointees, shall be subject to disqualification for the reasons specified in Section R-14. If the parties specifically so agree in writing, the arbitrator shall not be subject to disqualification for those reasons.

b. Party-appointed arbitrators are expected to be neutral and may be disqualified for the reasons set forth in R-14.

### R-11. Appointment of the Arbitration Panel

The arbitrator(s) shall be appointed in the following manner:

a. Immediately after the initiation of a proceeding by USADA (as set forth in R-4), the AAA shall send simultaneously to each party to the dispute an identical list of all names of persons in the Arbitrator Pool.

b. The proceeding shall be heard by one (1) arbitrator from the list of persons in the Arbitrator Pool (as set forth in R-3), unless within five (5) days following the initiation of the proceeding by USADA, a party elects instead to have the matter heard by a panel of three (3) arbitrators from the Arbitrator Pool (Arbitration Panel). Such election shall be in writing and served on the Administrator and the other parties to the proceeding.

c. If the proceeding is to be heard by one (1) arbitrator, that arbitrator shall be appointed as follows:

i. Within ten (10) days following receipt of the Arbitrator Pool list provided by the Administrator under R-11a, the parties shall notify the Administrator of the name

of the person who is mutually agreeable to the parties to serve as the arbitrator.

ii. If the parties are unable to agree upon an arbitrator by the time set forth in paragraph c.i of this Rule, each party to the dispute shall have five (5) additional days in which to strike up to one third of the list of the Arbitrator Pool, rank the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

d. If the proceeding is to be heard by a panel of three (3) arbitrators, those arbitrators shall be appointed as follows:

i. Within five (5) days following receipt of the Arbitrator Pool list provided by the Administrator under R-11a or from receipt of the request to have a three (3) arbitrator panel, whichever is later, USADA, or USADA and the International Federation, if a party, shall designate one (1) arbitrator from the Arbitrator Pool. The athlete or other person charged with an anti-doping rule violation shall have an additional five (5) days following receipt of the arbitrator choice from USADA, or from USADA and the International Federation, if a party, to designate one (1) arbitrator from the Arbitrator Pool.

ii. The two (2) arbitrators chosen by the parties shall choose the third arbitrator from among the remaining members of the Arbitrator Pool. The AAA shall furnish to the party-appointed arbitrators the Arbitrator Pool list. If the two (2) arbitrators chosen by the parties are unable, within seven (7) days following their selection, to choose the third arbitrator, then the party-appointed arbitrators shall so notify the AAA which shall notify the parties. Within five (5) days of receipt of notice from the AAA that the party-selected arbitrators are unable to reach or have not reached agreement, the parties shall then each strike up to one third of the Arbitrator Pool and rank the remaining members in order of preference. From among the persons who have not been stricken by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of one (1) arbitrator to serve. The third arbitrator shall serve as Chair of the Arbitration Panel.

## R-12. Number of Arbitrators

The number of arbitrators shall be one (1) unless any party requests three (3).

## R-13. Notice to Arbitrator of Appointment

Notice of the appointment of the arbitrator, whether appointed mutually by the parties or by the AAA, shall be sent to the arbitrator by the AAA, together with a copy of these rules. The signed acceptance of the arbitrator shall be filed with the AAA prior to the opening of the first hearing.

## R-14. Disclosure and Challenge Procedure

a. Any person appointed as an arbitrator shall disclose to the AAA any circumstance likely to affect impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives.

b. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

c. Upon objection of a party to the continued service of an arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.

## R-15. Communication with Arbitrator

a. No party and no one acting on behalf of any party shall communicate unilaterally concerning the arbitration with an arbitrator or a candidate for an arbitrator. Unless the parties agree otherwise or the arbitrator so directs, any communication from the parties to an arbitrator shall be sent to the AAA for transmittal to the arbitrator. No party and no one acting on behalf of any party shall communicate with any arbitrator concerning the selection of the third arbitrator.

b. Once the panel has been constituted, no party and no one acting on behalf of any party shall communicate unilaterally concerning the arbitration with any arbitrator.

## R-16. Vacancies

a. If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

b. In the event of a vacancy in a panel of arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

c. In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-17. Preliminary Hearing

a. At the request of any party or at the discretion of the arbitrator or the AAA, the arbitrator may schedule as soon as practicable a preliminary hearing with the parties and/or their representatives. The preliminary hearing may be conducted by telephone at the arbitrator's discretion. There is no administrative fee for the first preliminary hearing.

b. During the preliminary hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

## R-18. Exchange of Information

a. At the request of any party or at the discretion of the arbitrator, consistent with the ex-



68

pedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

b. Unless otherwise agreed by the parties or ordered by the arbitrator, at least five (5) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

c. The arbitrator is authorized to resolve any disputes concerning the exchange of information.

### R-19. Date, Time, and Place of Hearing

Except as may be mutually agreed by the parties or upon the request of a single party for good cause as may be determined by the arbitrator, the hearing, including any briefing ordered by the arbitrator, shall be completed within three (3) months of the appointment of the arbitrator. On good cause shown by any party, the hearing process shall be expedited as may be necessary in order the resolve the determination of an athlete's eligibility prior to any protected competition or team selection for a protected competition.

### R-20. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the hearing is open to the public as prescribed in R-4 (the athlete or other person charged with an anti-doping rule violation have the right to invite the Athlete Ombudsman as an observer regardless). Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person other than (i) a party and its representatives and (ii) those entities identified in R-4, which may attend the hearing as observers. If the parties agree, or the athlete or other person charged with a doping offense requests and the arbitrator agrees, hearings or any portion thereof may also be conducted telephonically.

### R-21. Representation

Any party may be represented by counsel or other authorized representative. A party intending to be so represented shall notify the other party and the AAA of the name and address of the representative at least three (3) days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

### R-22. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

### R-23. Stenographic Record

Any party desiring a stenographic record of all or a portion of the hearing shall make arrangements directly with a stenographer and shall notify the other parties of these

arrangements at least three (3) days in advance of the start of the hearing or as required by the arbitrator. The requesting party or parties shall pay the cost of the transcript they request, whether full or partial. If a party seeks a copy of a transcript, full or partial, requested by another party, then the other party shall pay half the costs of the transcript to the requesting party. If the entire transcript is requested by the parties jointly, or if all or a portion of the transcript is determined by the arbitrator to be the official record of the proceeding or necessary to the arbitrator's decision, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator with the costs of the transcription divided equally between the parties. The arbitrator may award the costs of transcription for a transcript requested by the arbitrator as expenses of the arbitration pursuant to R-48.

### R-24. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

### R-25. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative. A party or parties causing a postponement of a hearing will be charged a postponement fee, as set forth in the administrative fee schedule.

### R-26. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

### R-27. Conduct of Proceedings

a. USADA shall present evidence to support its claim. The athlete or other person charged with an anti-doping rule violation shall then present evidence to support his/her defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

b. The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

c. The parties may agree to waive oral hearings in any case.

### R-28. Evidence

a. The parties may offer such evidence as is relevant and material to the dispute and shall



69

70

produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

b. The arbitrator may only retain an expert or seek independent evidence if agreed to by the parties and (i) the parties agree to pay for the cost of such expert or independent evidence or (ii) the USOC agrees to pay for the cost of such expert or independent evidence. The parties shall have the right to examine any expert retained by the arbitrator and shall have the right to respond to any independent evidence obtained by the arbitrator.

c. The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

d. The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

e. An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

f. Hearings conducted pursuant to these rules shall incorporate mandatory Articles from the World Anti-Doping Code (Annex A of the USADA Protocol). If the World Anti-Doping Code is silent on an issue, then the USADA Protocol, the USOC National Anti- Doping Policies, and the International Federation's anti-doping rules shall apply as determined by the arbitrator.

### R-29. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence

a. The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

b. If the parties agree, if any party requests and the arbitrator agrees, or if the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator within 30 days of the conclusion of the hearing. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

### R-30. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

### R-31. Interim Measures

The arbitrator may take whatever interim measures he or she deems necessary.

### R-32. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. The arbitrator shall declare the hearing closed unless a party demonstrates that the record is incomplete and that such additional proof or witness(es) are pertinent and material to the controversy.

If briefs are to be filed or a transcript of the hearing produced, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs, or receipt of the transcript. If documents are to be filed as provided in R-29, and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be set for the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

### R-33. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time required by R-38, the matter may not be reopened unless the parties agree on an extension of time.

### R-34. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

### R-35. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

### R-36. Serving of Notice

a. Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address of the party by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

b. The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (email), or other methods of communication.

c. Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.



71

### R-37. Majority Decision

When the panel consists of more than one arbitrator, a majority of the arbitrators must make all decisions.

### R-38. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than thirty (30) days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

### R-39. Form of Award

Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law. In all cases, the arbitrator shall render a reasoned award.

### R-40. Scope of Award

a. The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the World Anti-Doping Code, International Federation Rules, the USADA Protocol or the USOC Anti-Doping Policies.

b. In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards.

### R-41. Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award."

### R-42. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

The AAA shall also provide a copy of the award (preferably in electronic form) to the appropriate National Governing Body, the USOC General Counsel's office and the Athlete Ombudsman.

The award is public and shall not be considered confidential.

### R-43. Modification of Award

Within five (5) days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given five (5) days to respond to the request. The arbitrator shall dispose of the request within five (5) days after transmittal by the AAA to the arbitrator of the request and any response thereto.

### R-44. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration. If the matter is appealed to CAS, the AAA shall furnish copies of documents required in connection with that proceeding.

### R-45. Appeal Rights

The arbitration award may be appealed to CAS as provided in Annex A of the USADA Protocol, which incorporates the mandatory Articles on Appeals from the World Anti-Doping Code. Notice of appeal shall be filed with the Administrator within the time period provided in the CAS appellate rules. Appeals to CAS filed under these rules shall be heard in the United States. The decisions of CAS shall be final and binding on all parties and shall not be subject to any further review or appeal except as permitted by the Swiss Federal Judicial Organization Act on Private International Law.

### R-46. Applications to Court and Exclusion of Liability

a. No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

b. Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary party in judicial proceedings relating to the arbitration.

c. Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

d. Neither the AAA nor any arbitrator shall be liable to any party for any act or omission in connection with any arbitration conducted under these rules.

### R-47. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees and service charges to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee and any other administrative fee or charge shall be paid by the USOC.

### R-48. Expenses

The expenses of witnesses for any party shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other reasonable and customary expenses of the arbitrator shall be paid by the USOC. The expenses associated with an expert retained by an arbitrator or independent evidence sought by an arbitrator shall be paid for as provided in R-28b.

### R-49. Arbitrator's Compensation

a. Arbitrators shall be compensated at a rate consistent with the current CAS rates.

b. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties and the USOC.



c. Any arrangement for the compensation of an arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

d. Arbitrator fees shall be paid by the USOC.

## R-50. Payment of Fees, Expenses and Compensation for Citizens of a Country Other than USA

Notwithstanding R-47, R-48 and R-49, if the athlete or other person charged with an anti-doping rule violation is a citizen of a country other than the USA, then the authority requesting that USADA prosecute the anti-doping rule violation shall pay for the arbitration fees, expenses and arbitrator's compensation associated with the arbitration. The AAA may require such authority to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee. If such payments are not made, the AAA may order the suspension or termination of the proceeding.

## R-51. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

# ANNEX E

## TIME LINE

**Approximate Timelines and Notices Under USADA Protocol**
**(this timeline is for general guidance only and does not create any obligation, requirement or right under the USADA Protocol)**

| STEP IN PROCESS | | NOTICE GOES TO |
|---|---|---|
| Urine provided by Athlete | | |
| - 2 weeks - | | |
| Negative A laboratory report | | |
| Adverse Analytical Finding A lab report[4] | → | Athlete , NGB, IF, WADA & USOC |
| - 2 weeks - | | |
| B lab report | → | Athlete, NGB, IF, WADA & USOC |
| - 3 weeks - | | |
| Review Panel Recommendation | → | Athlete, NGB, USOC, IF & WADA |
| - 10 days - | | |
| Notice that the athlete has accepted sanction proposed by USADA | → | Athlete, NGB, USOC, IF & WADA - Public announcement of sanction |
| Notice of hearing | → | Athlete, IF (NGB, USOC & WADA, but not as parties) |
| - 3 months - | | |
| AAA/CAS Decision | → | Athlete, IF, NGB, USOC & WADA - Public announcement of sanction |
| - 20 days - | | |
| Appeal by Athlete, USADA, WADA or IF of AAA decision to CAS | → | Athlete, IF, NGB, USOC & WADA |
| - 3 months - | | |
| Decision by CAS on appeal | → | CAS decision is a public document |

[4] Notice from USADA will include the date and location of the Sample collection, the Athlete's Sample number and name and the laboratory test result. WADA accredited laboratories are required to give notice to WADA and the relevant IF directly any time there is a Adverse Analytical Finding on an A or B test. The Code requires USADA to provide this laboratory information and the Athlete's name to the relevant IF and WADA.



## ANNEX F

**Language to be set forth in USADA correspondence offering an athlete the opportunity to waive analysis of the athlete's B specimen**

- The *prohibited substance* (or method) **[identify substance or method]** was reported by the laboratory as being present in the A *specimen* of your *sample*.

- The World Anti-Doping *Code* requires that unless the *Athlete* waives the B *sample* analysis, for an *anti-doping rules violation* involving the presence of a *prohibited substance* to be found, the *prohibited substance* or method must be found by the laboratory in both the A *specimen* and B *specimen* of the *Athlete's sample*.

- You and/or your representative have the right to be present, at your expense, to observe the B *specimen* opening and analysis.

- By waiving the testing of the B *specimen*, you accept the laboratory results, including the finding of **[the substance or method identified]** in your *sample*. Under applicable *anti-doping* rules, the finding of a *prohibited substance* or method in an *Athlete's sample* constitutes a *doping violation*.

- The sanctions which may be imposed on you if a *doping violation* is found include **[describe potential sanctions]**.

- You may wish to contact John Ruger, the USOC *Athlete* Ombudsman, who is completely independent of USADA, or your own personal attorney, for assistance or further information. Mr. Ruger may be reached at One Olympic Plaza, Colorado Springs, CO 80909, by telephone at (888)-ATHLETE; by fax at (303) 444-6626; or by email at john.ruger@usoc.org.

- A copy of the USADA Protocol with attachments is enclosed with this letter.

## ANNEX G

**Retirement Rules**

In accordance with the USOC *NADP*, any *Athlete* or other *Person* enrolled in the USADA Registered Testing Pool ("USADA RTP") who wishes to be removed from the program on account of retirement, must promptly notify in writing, USADA **and** the applicable National Governing Body ("*NGB*"). **Additionally, it is important for you to check with your particular International Federation ("IF") to ensure compliance with any required IF retirement procedures or policies.**

- If you retire, you will be removed immediately from the USADA RTP. In accordance with the USOC *NADP*, if you ever want to come out of retirement and return to eligible status, you must enroll in the USADA RTP for at least six (6) months in advance of regaining eligible status. Furthermore, pursuant to the USOC policies, all *Athletes* or other *Persons* who are candidates for membership on the U.S. Olympic or Paralympic teams **must be enrolled** in the USADA RTP for a period up to twelve (12) months before the commencement of the *Competition*. Additionally, it is important for you to confirm whether your particular IF has additional requirements in order for you to regain eligibility after retirement.



78

United States Anti-Doping Agency
1330 Quail Lake Loop, Suite 260
Colorado Springs, CO 80906

1-719-785-2000 (phone)
1-719-785-2001 (fax)
1-866-601-2632 (toll-free phone)
E-mail: usada@usada.org
Web site: www.usada.org

USADA Drug Reference Line
1-800-233-0393 (within the U.S.)
1-719-785-2020 (outside the U.S.)
E-mail: drugreference@usada.org

