# EXHIBIT 41

**UCI** CYCLING REGULATIONS

(version on 1.02.12)

# PART 14 ANTI-DOPING

## INTRODUCTION

**1.** Pursuant to amendments adopted by the 115th session of the International Olympic Committee in July 2003, the Olympic Charter stipulates that in order to be recognized by the IOC, an International Federation must adopt and implement the World Anti-Doping Code (Rules 26 and 44).

To be eligible for a participation in the Olympic Games, a competitor, coach, trainer or official must respect and comply in all aspects with the World Anti-Doping Code (Rule 41).

As a consequence, at its meeting of 22-23 July 2004, the UCI Management Committee decided to accept the World Anti-Doping Code and to incorporate the Code in UCI's Regulations, as was done in the first version of these Anti-Doping Rules which entered into force on 13 August 2004.

Revisions to the World Anti-Doping Code were approved by the World Anti-Doping Agency Foundation Board on November 2007. The revised World Anti-Doping Code is effective as of January 1, 2009.

The following version of UCI's Anti-Doping Rules incorporates the 2007 revisions to the World Anti-Doping Code.

**2.** Anti-Doping Rules are part of the competition rules, i.e. sports rules governing the conditions under which sport is played. Riders and other Persons accept these rules as a condition of participation and shall be bound by them. The rules and procedures provided for by these Anti-Doping Rules are sport-specific and intended to apply autonomously and not by reference to existing law or statutes. They are based upon the World Anti-Doping Code which represents the consensus of a broad spectrum of sports organizations and anti-doping organizations around the world with an interest in fair sport.

\* \* \*

*Terms in italics are defined in appendix 1.*

**UCI** CYCLING REGULATIONS

# ANTI-DOPING

## SUMMARY

### SECTION I     ANTI-DOPING RULES OF THE UCI

|              |                                                     | Page |
|--------------|-----------------------------------------------------|------|
| **Chapter I**     | **SCOPE**                                      | 1    |
| **Chapter II**    | **DOPING**                                     | 6    |
| **Chapter III**   | **THE *PROHIBITED LIST***                      | 10   |
| **Chapter IV**    | **THERAPEUTIC USE EXEMPTION (TUE)**            | 12   |
| **Chapter V**     | **WHEREABOUTS INFORMATION**                    | 19   |
| **Chapter VI**    | **TESTING**                                    | 27   |
| **Chapter VII**   | **RESULTS MANAGEMENT**                         | 38   |
| **Chapter VIII**  | ***PROVISIONAL SUSPENSION* AND PROVISIONAL MEASURES** | 43   |
| **Chapter IX**    | **RIGHT TO A FAIR HEARING**                    | 46   |
| **Chapter X**     | **SANCTIONS AND CONSEQUENCES**                 | 52   |
| **Chapter XI**    | **APPEAL TO THE CAS**                          | 64   |
| **Chapter XII**   | **CONFIDENTIALITY AND PUBLIC DISCLOSURE**      | 68   |
| **Chapter XIII**  | **FINAL PROVISIONS**                           | 69   |

**UCI** CYCLING REGULATIONS

**UCI** CYCLING REGULATIONS

**SECTION II**   **EDUCATION**   **73**

**Appendix 1:**   **DEFINITIONS**   **74**
**Appendix 2:**   **CODE OF SPORTS-RELATED ARBITRATION (CAS)**   **81**

**SECTION I    ANTI-DOPING RULES OF THE UCI**

# Chapter  SCOPE

**1.**  These Anti-Doping Rules shall apply to all *License-Holders*.

They shall also apply to other *Persons* as provided in article 18.

*Comment: a license is required to participate in the sport of cycling governed by the rules of the UCI and the National Federations (article 1.1.010 of UCI's Cycling Regulations). However if a Person participates in the sport of cycling governed by the UCI without being holder of a license as required, he will not escape application of the regulations, including these Anti-Doping Rules. Application of these Anti-Doping Rules to Persons other than License-Holders is dealt with in article 18.*

### *In-Competition Testing*

**2.**  *Riders* participating in *International Events* shall be subject to *In-Competition Testing* under these Anti-Doping Rules.

**3.**  *Riders* participating in *National Events* shall be subject to *In-Competition Testing* initiated and directed by the National *Anti-Doping Organization* of the country or any other organization or person so authorized by that *National Anti-Doping Organization. Doping Control* shall be governed by the Anti-Doping Rules of the *National Anti-Doping Organization.*

*Comment: As results from this article, these Anti-Doping Rules do not apply to Doping Control at National Events.*

**4.**  *In-Competition Testing* at *International Events* may be initiated and directed by the UCI or by an organization or person so authorized by the UCI.

The National Federation of the country is authorized to initiate and conduct *In-Competition Testing* at an *International Event* where no testing is conducted by or at the request of the UCI.

Doping *Control* shall be governed by these Anti-Doping Rules exclusively.

**5.**  If an *Anti-Doping Organization* other than the UCI wishes to conduct testing in an *International Event* and no agreement is found with the UCI, that Organization may be authorized by WADA to conduct such *Testing* under the conditions of article 15.1.1 of the *Code.*

In such case, *Doping Control* shall be conducted by that *Anti-Doping Organization* and according to its rules.

*Comment: Riders must comply with any request for Testing by such Anti-Doping Organization. A failure to comply may result in an anti-doping rule violation.*

**6.**  *Riders* shall be subject to *In-Competition Testing* at the Olympic Games, the Paralympic Games and events of *Major Event Organizations.*

*Doping Control* shall be governed by the rules of the International Olympic Committee, the International Paralympic Committee and the *Major Event Organizations* respectively. However, results management and the conduct of hearings shall be referred to the UCI as far as sanctions beyond *Disqualification* from the Olympic Games or Paralympic Games or one or more of their *Events* or the results of such *Events.*

### *Out-of-Competition Testing*

**7.**  *Riders* shall be subject to *Out-of-Competition Testing* including when serving a period of *Ineligibility* or a *Provisional Suspension* and during the period preceding return to *competition* as stipulated in articles 84 and 325.

**8.**  *Out-of-Competition Testing* may be initiated and conducted by the UCI or by an organization or person so authorized by the UCI.

Each National Federation is authorized to conduct *Out-of-Competition Testing* on *Riders* that hold a licence from that Federation or have the nationality of its country.

*Doping Control* shall be governed by these Anti-Doping Rules exclusively.

**9.**  *Riders* shall also be subject to *Out-of-Competition Testing* initiated and conducted by any *other Anti-Doping Organization* that is so authorized under the *Code*:
1. WADA;
2. The International Olympic Committee or the International Paralympic Committee in connection with the Olympic Games or Paralympic Games;
3. The *National Anti-Doping Organization* of the country of the National Federation from which the *Rider* holds his licence;
4. The *National Anti-Doping Organization* of the country of which the Rider is a national;
5. The *National Anti-Doping Organization* of the country of which the Rider is a resident;
6. The *National Anti-Doping Organization* of the country of the sports organisation of which the *Rider* is a member;
7. The *National Anti-Doping Organization* of any country where the *Rider* is present.

*Doping Control* shall be conducted by the *Anti-Doping Organization* concerned and according to its rules.

However, results management and the conduct of hearings from a test by the International Olympic Committee or the International Paralympic Committee shall be referred to the UCI as far as sanctions beyond *Disqualification* from the Olympic Games or Paralympic Games.

Comment: 1) As is expressed in the above article, any Rider may be tested Out-of-Competition by any of the above mentioned Anti-Doping Organizations, according to the rules of the Organization conducting the test. Riders must comply with any request for Testing by such Anti-Doping Organization. A failure to comply may result in an anti-doping rule violation.

2) National Federations may not initiate and conduct Out-of-Competition testing, including on their national level Riders, unless as authorized by the UCI or another Anti-Doping Organization having authority to test the Rider concerned.

3) The sports organization referred to in paragraph 6 of article 9 is the sports club or association to which the Rider is affiliated. It is not the Rider's UCI-registered team (although in some cases the Rider's club or association might have a team registered with the UCI).

### Anti-doping violations where no *Sample* collection is involved

**10.** The UCI has jurisdiction for and these Anti-Doping Rules shall apply to any anti-doping violation committed by a *License-Holder* where no *Sample* collection is involved and that is discovered:

(i) by the UCI, by one of its constituents or member Federations, by one of their officials, officers, staff members, members, *License-Holders*, or any other body or individual that is subject to the regulations of the UCI or one of its member Federations; or

(ii) by a body or individual that is not an *Anti-Doping Organization*.

Discovery means the finding of elements that turn out to be evidence for facts that apparently constitute an anti-doping rule violation, regardless of the *Anti-Doping Organization* who qualifies that evidence as such.

**11.** If an anti-doping violation where no *Sample* collection is involved is discovered by *another Anti-Doping Organization*, the anti-doping rules of that *Anti-Doping Organization* shall apply.

However, if the violation is discovered by the International Olympic Committee or the International Paralympic Committee, results management and the conduct of hearings shall be referred to the UCI as far as sanctions beyond *Disqualification* from the event or the results of the event.

**12.** Where apparent evidence for the same anti-doping violation is found by persons or bodies referred to both in article 10 and article 11 or when such evidence is found by persons or bodies referred to in article 10 whereas another *Anti-Doping Organization* having jurisdiction over the *Person* concerned under the *Code* opens results management or hearing process based upon such evidence, UCI may decide to leave the case to the *Anti-Doping Organization* concerned.

### Results management concerning foreign or non-resident *License-Holders*

**13.** Results management and the conduct of hearings for an anti-doping rule violation arising from a test by, or discovered by, a *National Anti-Doping Organization* involving a *License-Holder* who is not a national, resident, license-holder or member of a sports organization of that country shall be administered by and under the rules of that *National Anti-Doping Organization*.

### Unauthorized *Testing*

**14.** If a *Rider* refuses a test by an *Anti-Doping Organization* that has no authority to test under these Anti-Doping Rules or under the *Code*, such refusal shall not constitute an anti-doping violation under these Anti-Doping Rules.

**15.** If a *Rider* has been tested by an *Anti-Doping Organization* that has no authority to test under these Anti-Doping Rules or under the *Code* and the test results in an *Atypical Finding* or *Adverse Analytical Finding*, the UCI shall have jurisdiction and these Anti-Doping Rules shall apply.

### Retirement from Sport

**16.** If a *License-Holder* retires from cycling while a results management process is underway, the *Anti-Doping Organization* conducting the results management process or hearing process retains jurisdiction to complete its results management and/or hearing process. If a *License-Holder* retires before any results management process has begun the *Anti-Doping Organization* which would have had results management jurisdiction over the *License-Holder* at the time the *License-Holder* committed an antidoping rule violation, has jurisdiction to conduct results management, without prejudice to the default jurisdiction of the UCI under article 17.

### Default jurisdiction of the UCI

**17.** Where a National *Anti-Doping Organization* having initiated and directed *Sample collection* or which has discovered an anti-doping rule violation where no *Sample* collection is involved does not have the authority to conduct results management under any applicable rule, then results management shall default to UCI and hearings will be conducted as stipulated in these Anti-Doping Rules.

### Non-*License-Holders*

**18.** 1. a) Any *Person* who, without being a holder of a license, participates in a cycling *Event* in any capacity whatsoever, including, without limitation, as a rider, coach, trainer, manager, team director, team staff, agent, official, medical or para-medical personnel or parent and;

b) Any *Person* who, without being a holder of a license, participates, in the framework of a club, trade team, national federation or any other structure participating in *Races*, in the preparation or support of riders for sports *competitions*;

shall be subject to these Anti-Doping Rules and these Anti-Doping Rules shall apply to each such *Person* as they apply to a *License-Holder*.

2. Where a National Federation has disciplinary jurisdiction over such *Person* on whichever basis, the *Person* shall be treated as a *License-Holder* of that Federation for the purpose of these Anti-Doping Rules.

3. Where no National Federation has disciplinary jurisdiction over such *Person* and if a breach of these Anti-Doping Rules is apparently committed by the *Person*, the UCI and/or any National Federation involved shall take whatever steps are necessary to take proceedings against him before the competent bodies.

4. Right to a fair hearing having granted, the UCI may ban this *Person* from attending a cycling *Event*. It may also ban any National Federation, club or trade team from making use of services offered by this *Person*, with breaches of such a ban being subject to a fine of between CHF 1,000 and CHF 10,000 as determined by the Disciplinary Commission. These measures and sanctions may be taken independently of the procedure noted under paragraph 3.

*General comment to Chapter I:* 1) *Under the Code, National Federations have by themselves no jurisdiction in Doping Control.*
*The involvement of National Federations in doping control at the international level is laid down in these Anti-Doping Rules. However, Anti-Doping Organizations having jurisdiction under the Code, may delegate jurisdiction to National Federations. National Federations and their respective National Anti-Doping Organization may agree on the Federation's involvement in Doping Control at the national level.*
2) *In addition to the obligations to submit to Testing pursuant to these Anti-Doping Rules and the Code, Riders may also be obliged to submit to Testing and be sanctioned for antidoping violations pursuant to local anti-doping legislation. Such legislation may define additional or different antidoping violations than the anti-doping rule violations defined in article 21 of the present Anti-Doping Rules.*



**Chapter DOPING**

**Definition of doping**

**19.** Doping is defined as the occurrence of one or more of the anti-doping rule violations set forth in article 21.

**20.** *License-Holders* shall be responsible for knowing what constitutes and anti-doping rule violation and the substances and methods which have been included on the *Prohibited List*.

**Anti-doping rule violations**

**21.** The following constitute anti-doping rule violations:
1. The presence of a *Prohibited Substance* or its *Metabolites* or *Markers* in a *Rider's* bodily *Specimen*.
   1.1 It is each *Rider's* personal duty to ensure that no *Prohibited Substance* enters his body. *Riders* are responsible for any *Prohibited Substance* or its *Metabolites* or *Markers* found to be present in their bodily *Specimens*. Accordingly, it is not necessary that intent, fault, negligence or knowing *Use* on the *Rider's* part be demonstrated in order to establish an antidoping violation under article 21.1.

   *Warning:*
   1) *Riders must refrain from using any substance, foodstuff, food supplement or drink of which they do not know the composition. It must be emphasized that the composition indicated on a product is not always complete. The product may contain Prohibited Substances not listed in the composition.*
   2) *Medical treatment is no excuse for using Prohibited Substances or Prohibited Methods, except where the rules governing Therapeutic Use Exemptions are complied with.*

   1.2 Sufficient proof of an anti-doping rule violation under article 21.1 is established by either of the following: presence of a *Prohibited Substance* or its *Metabolites* or *Markers* in the *Rider's* A *Sample* where the *Rider* waives analysis of the B *Sample* and the B *Sample* is not analyzed; or, where the *Rider's* B *Sample* is analyzed and the analysis of the *Rider's* B *Sample* confirms the presence of the *Prohibited Substance* or its *Metabolites* or *Markers* found in the Rider's A *Sample*.
   1.3 Excepting those substances for which a quantitative threshold is specifically identified in the *Prohibited List*, the presence of any quantity of a *Prohibited Substance* or its *Metabolites* or *Markers* in a *Rider's Sample* shall constitute an anti-doping rule violation.
   1.4 As an exception to the general rule of article 21.1, the *Prohibited List* or *International Standards* may establish special criteria for the evaluation of *Prohibited Substances* that can also be produced endogenously.
   1.5. The presence of a *Prohibited Substance* or its *Metabolites* or *Markers* consistent with the provisions of an applicable Therapeutic Use Exemption issued in accordance with the present Anti-Doping Rules shall not be considered an anti-doping rule violation.

*Comment: see Chapter IV on Therapeutic Use Exemptions.*

2. *Use* or *Attempted Use* by a *Rider* of a *Prohibited Substance* or a *Prohibited Method.*
   2.1 It is each *Rider's* personal duty to ensure that no *Prohibited Substance* enters his or her body and that he does not *Use* any *Prohibited Method.* Accordingly, it is not necessary that intent, fault, negligence or knowing *Use* on the *Rider's* part be demonstrated in order to establish an anti-doping rule violation for *Use* of a *Prohibited Substance* or a *Prohibited Method.*
   2.2 The success or failure of the *Use* of a *Prohibited Substance* or *Prohibited Method* is not material. It is sufficient that the *Prohibited Substance* or *Prohibited Method* was *Used* or *Attempted* to be *Used* for an anti-doping rule violation to be committed.
   2.3 The *Use* or *Attempted Use* of a *Prohibited Substance* or *Prohibited Method* consistent with the provisions of an applicable Therapeutic Use Exemption issued in accordance with the present Anti-Doping Rules shall not be considered an anti-doping rule violation.

   *Comment: see Chapter IV on Therapeutic Use Exemptions.*

3. Evading *Sample* collection or, after notification as authorized under these Anti-Doping Rules, refusing, or failing without compelling justification, to submit to *Sample* collection.

4. Violation of applicable requirements regarding *Rider* availability for *Out-of-Competition Testing.* Any combination of three Missed Tests and/or Filing Failures (as defined in chapter V) committed within an eighteen-month period, as declared by UCI or any other *Anti-Doping Organization* with jurisdiction over the *Rider,* shall constitute an anti-doping rule violation.

5. *Tampering* or *Attempted Tampering* with any part of *Doping Control.*

6. *Possession* of a *Prohibited Substance* or *Method.*
   6.1 *Possession* by a *Rider In-Competition* of any *Prohibited Method* or any *Prohibited Substance,* or *Possession* by a *Rider Out-of-Competition* of any *Prohibited Method* or any *Prohibited Substance* which is prohibited in *Out-of-Competition Testing* unless the *Rider* establishes that the *Possession* is pursuant to a Therapeutic Use Exemption granted in accordance with these Anti-Doping Rules or other acceptable justification.
   6.2 *Possession* by *Rider Support Personnel In-Competition* of any *Prohibited Method* or any *Prohibited Substance,* or *Possession* by *Rider Support Personnel Out-of-Competition* of any *Prohibited Method* or any *Prohibited Substance* which is prohibited *Out-of-Competition,* in connection with a *Rider, Competition* or training, unless the *Rider Support Personnel* establishes that the *Possession* is pursuant to a Therapeutic Use Exemption granted to an *Rider* in accordance with these Anti-Doping Rules or other acceptable justification.

   *Comment: see Chapter IV on Therapeutic Use Exemptions.*

7. *Trafficking* or *Attempted Trafficking* in any *Prohibited Substance* or *Prohibited Method.*

8. Administration or *Attempted* administration to any *Rider In-Competition* of any *Prohibited Substance* or *Prohibited Method,* or administration or *Attempted* administration to any *Rider Out-of-Competition* of any *Prohibited Substance* or any *Prohibited Method* that is prohibited *Out-of-Competition,* or assisting, encouraging, aiding, abetting, covering up or any other type of complicity involving an anti-doping rule violation or any *Attempted* anti-doping rule violation. Administration of a *Prohibited Substance* or *Prohibited Method* consistent with the provisions of an applicable Therapeutic Use Exemption issued in accordance with the present Anti-Doping Rules shall not be considered an anti-doping rule violation.

   *Comment: see Chapter IV on Therapeutic Use Exemptions.*

## Proof of doping

### Burdens and standards of proof

**22.** The UCI and its National Federations shall have the burden of establishing that an anti-doping rule violation has occurred. The standard of proof shall be whether the UCI or its National Federation has established an anti-doping rule violation to the comfortable satisfaction of the hearing panel bearing in mind the seriousness of the allegation which is made. This standard of proof in all cases is greater than a mere balance of probability but less than proof beyond a reasonable doubt. Where these Anti-Doping Rules place the burden of proof upon the *License-Holder* alleged to have committed an anti-doping rule violation to rebut a presumption or establish specified facts or circumstances, the standard of proof shall be by a balance of probability, except as provided in articles 295 and 305 where the *License-Holder* must satisfy a higher burden of proof.

### Methods of establishing facts and presumptions

**23.** Facts related to anti-doping rule violations may be established by any reliable means, including admissions.

   *(text modified on 1.02.11).*

**24.** *WADA*-accredited laboratories or as otherwise approved by *WADA* are presumed to have conducted *Sample* analysis and custodial procedures in accordance with the *International Standard* for Laboratories. The *License-Holder* may rebut this presumption by establishing that a departure from the *International Standard* for Laboratories occurred which could reasonably have caused the *Adverse Analytical Finding.*

   If the *License-Holder* rebuts the preceding presumption by showing that a departure from the *International Standard* for Laboratories occurred which could reasonably have caused the *Adverse Analytical Finding,* then the UCI or the National Federation shall have the burden to establish that such departure did not cause the *Adverse Analytical Finding.*

**UCI CYCLING REGULATIONS**

**25.** Departures from any other *International Standard*, these Anti-Doping Rules, the *Technical Documents* set by the UCI or any other applicable anti-doping rule or policy or technical document which did not cause an *Adverse Analytical Finding* or the factual basis for any other anti-doping rule violation shall not invalidate such findings or results. If the *License-Holder* establishes that any such departure which could reasonably have caused the *Adverse Analytical Finding* or factual basis for any other anti-doping rule violation occurred, then the UCI or its National Federation shall have the burden to establish that such a departure did not cause the *Adverse Analytical Finding* or the factual basis for the anti-doping rule violation.

**26.** The facts established by a decision of a court or professional disciplinary tribunal of competent jurisdiction which is not the subject of a pending appeal shall be irrebuttable evidence against the *License-Holder* to whom the decision pertained of those facts unless the *License-Holder* establishes that the decision violated principles of natural justice.

**27.** The hearing panel in a hearing on an anti-doping rule violation may draw an inference adverse to the *License-Holder* who is asserted to have committed an anti-doping rule violation based on the *License- Holder's* refusal, after a request made in a reasonable time in advance of the hearing, to appear at the hearing (either in person or telephonically as directed by the tribunal) and to answer questions either from the hearing panel or from the *Anti-Doping Organization* asserting the anti-doping rule violation.

**28.** Any *Doping Control Officer, Medical Inspector*, commissaire or official shall draw up a detailed report of any anti-doping rule violation and of any incident, anomaly or irregularity concerning *Testing* which he may observe or which may be reported to him. He shall note the identity of any witnesses. Witness statements may be included in the report and countersigned by the witnesses. This report and all the supporting documentation must be sent without delay to the UCI.



## Chapter **THE PROHIBITED LIST**

**29.** These Anti-Doping Rules incorporate the *Prohibited List* which is published and revised by *WADA* as described in article 4.1 of the *Code*.

*Comment:* 1) the *Prohibited List* currently in force is published on WADA's website (www.wadama.org) and may also be found on UCI's website at www.uci.ch. It is the responsibility of all *License-Holders* to consult and familiarize themselves with the most recent version of the *Prohibited List*.
2) all substances and methods on the *Prohibited List* are prohibited *In-Competition*. *Out-of-Competition Use* (article 21.2) of a substance which is only prohibited *In-Competition* is not an anti-doping rule violation unless an *Adverse Analytical Finding* for the substance or its *Metabolites* or *Markers* is reported for a *Sample* collected *In-Competition* (article 21.2). This means that *Out-of-Competition Use* of a substance which is authorized *Out-of-Competition* leads to an anti-doping violation when the substance still is found in a *Sample* that is taken during a subsequent *Competition*. Riders must be aware that it takes time for a substance to clear their body.
3) most sections of the *Prohibited List* refer to categories of *Prohibited Substances* or *Prohibited Methods*, while only a limited number of these *Substances* or *Methods* are listed under that category; yet other *Substances* or *Methods* than those recited are prohibited as is indicated in the *Prohibited List* for the respective categories.
4) the *Prohibited List* relates to a sports regulation. The *Use* or *Possession* of, and *Traffic* in, a number of substances on the *List* is also prohibited or regulated in the national laws of many countries. Criminal sanctions may apply. A substance or method that is not prohibited under the *List* may be prohibited or regulated under national law.

**30.** Unless provided otherwise in the *Prohibited List* or a revision, the *Prohibited List* and revisions shall go into effect under these Anti-Doping Rules 3 (three) months after publication of the *Prohibited List* by *WADA* on *WADA's* website at www.wada-ama.org, without requiring any further action by the UCI.

**31.** *WADA's* determination of the *Prohibited Substances* and *Prohibited Methods* that are or will be included on the *Prohibited List* and the classification of substances into categories on the *Prohibited List* shall be final and not subject to challenge by a *License-Holder*.

### **Specified Substances**
**32.** For purposes of the application of Chapter VIII (*Provisional Suspension* and provisional measures) and Chapter X (Sanctions and Consequences), all *Prohibited Substances* shall be "*Specified Substances*" except (a) substances in the classes of anabolic agents and hormones; and (b) those stimulants and hormone antagonists and modulators so identified on the *Prohibited List*. *Prohibited Methods* shall not be *Specified Substances*.

In the event *WADA* expands the *Prohibited List* by adding a new class of *Prohibited Substances* in accordance with Article 4.1 of the *Code*, *WADA* shall determine whether any or all *Prohibited Substances* within the new class of *Prohibited Substances* shall be considered *Specified Substances* under this article.

# IV

## Chapter  THERAPEUTIC USE EXEMPTION (TUE)

**33.**  A Therapeutic Use Exemption (TUE) is a permission to *Use*, for therapeutic purposes, substances or methods on the *Prohibited List* the *Use* of which would otherwise be prohibited and that is granted in compliance with the conditions and procedures set out in the rules of this chapter IV. In order to excuse the presence, *Use, Possession* or administration of a *Prohibited Substance* or *Prohibited Method* that would otherwise amount to an anti-doping rule violation under article 21, such presence, *Use, Possession* or administration must be consistent with a TUE that is granted or recognized in accordance with this chapter IV.

**34.**  This chapter IV shall be implemented and interpreted in compliance with the version of the *International Standard* for Therapeutic Use Exemptions in force.

**35.**  *Riders* with a documented medical condition requiring the *Use* of a *Prohibited Substance* or a *Prohibited Method* must obtain a Therapeutic Use Exemption (TUE) prior to the *Use* or *Possession* or administration of the *Prohibited Substance* or *Prohibited Method*.

   *Comment:*   *a TUE must be held as long as the Rider uses the Prohibited Substance or Prohibited Method and the Rider must be available for testing. As the Rider must also be available for Testing during a period of Ineligibility, Provisional Suspension or Provisional Measures, he must hold a TUE during such period as long as he continues to use the Prohibited Substance or Prohibited Method.*

**36.**  *Riders* included in UCI's Registered *Testing Pool* must obtain a TUE from the UCI, regardless of whether the *Rider* previously has received a TUE from his National *Anti-Doping Organization*.

**37.**  *Riders* not included in UCI's *Registered Testing Pool* must obtain a TUE from their *National Anti-Doping Organization*.

   Where the UCI finds such TUE to be inconsistent with this chapter IV, such TUE shall no longer be valid under the present Anti-Doping Rules. The finding by the UCI shall not apply retroactively and shall not be open to appeal.

   The UCI shall inform the *Rider* of the finding, which shall take effect 14 (fourteen) days following notification of the finding to the *Rider*, unless the notification sets a shorter term. The *Rider* is not eligible to participate in *International Events* until such moment that he has a TUE that is found consistent with this chapter IV by the UCI.

   Where no national Therapeutic Use Exemption Committee is operational and in other circumstances accepted by the UCI, *Riders* may obtain a TUE from the UCI.

**38.**  The following articles of this chapter IV govern TUE's requested from the UCI. These articles shall also apply where UCI examines whether a TUE granted by a *National Anti-Doping Organization* is consistent with this chapter IV.

**39.** Decisions regarding the grant, withdrawal, denial and recognition of TUE's are taken by the Therapeutic Use Exemption Committee of the UCI.

### Therapeutic Use Exemption Committee (TUEC)

**40.** The UCI shall appoint a committee of at least 3 (three) physicians to consider requests for TUE's: the Therapeutic Use Exemption Committee (TUEC).

**41.** The members of the TUEC, or at least 3 (three) of them, shall be physicians with experience in the care and treatment of athletes and a sound knowledge of clinical, sports and exercise medicine.

**42.** A majority of the members of the TUEC should be free of conflicts of interest or political responsibility in the UCI or a National Federation. All members of the TUEC will sign a conflict of interest agreement.

**43.** The TUEC may seek whatever medical or scientific expertise it deems appropriate in reviewing the circumstances of any application for a TUE.

**44.** In applications involving *Riders* with disabilities, advice shall be sought from an expert possessing specific experience with the care and treatment of athletes with disabilities, if no member of the TUEC possesses such experience.

**45.** Upon the UCI's receipt of a TUE application, the Chair of the TUEC shall appoint one or more members of the TUEC (which may include the Chair) to consider such application and render a decision promptly.

### Criteria for granting a Therapeutic Use Exemption

**46.** A Therapeutic Use Exemption will be granted only in strict accordance with the following criteria:

1. The *Rider* should submit an application for a TUE on a form provided by the UCI no less than 21 (twenty-one) days before he needs the approval.

   Comment: *the Rider must obtain the TUE prior to the Use, Possession or administration of the Prohibited Substance or Prohibited Method. Without prejudice to the special rules for inhaled beta-2 agonists (article 79) and glucocorticosteroids (article 80), a TUE can be granted retroactively in exceptional circumstances only, as is laid down under paragraph 6 of this article.*

2. The *Rider* would experience a significant impairment to health if the *Prohibited Substance* or *Prohibited Method* were to be withheld in the course of treating an acute or chronic medical condition.
3. The therapeutic use of the *Prohibited Substance* or *Prohibited Method* would produce no additional enhancement of performance other than that which might be anticipated by a return to a state of normal health following the treatment of a legitimate medical condition. The *Use* of any *Prohibited Substance* or *Prohibited Method* to increase "low-normal" levels of any endogenous hormone is not considered an acceptable therapeutic intervention.
4. There is no reasonable therapeutic alternative to the *Use* of the otherwise *Prohibited Substance* or *Prohibited Method*.

5. The necessity for the use of the otherwise *Prohibited Substance* or *Prohibited Method* cannot be a consequence, wholly or in part, of prior non-therapeutic Use of any *Prohibited Substance* or *Prohibited Method*.
6. An application for a TUE will not be considered for retroactive approval except in cases where:
   a. Emergency treatment or treatment of an acute medical condition was necessary, or
   b. Due to exceptional circumstances, there was insufficient time or opportunity for a *Rider* to submit, or the TUEC to consider, the application.

**47.** A TUE shall be denied on the ground of the impossibility or difficulty to control the dose, frequency, route of administration or any other aspect of the *Use* of a *Prohibited Substance* or *Prohibited Method* that may produce enhancement of performance other than that allowed under article 46.3.

**48.** The TUEC may submit the granting of a TUE to any conditions that it may specify.

The TUE is not effective and shall not excuse the *Rider* if the conditions under which it was granted are not complied with.

### Therapeutic Use Exemption procedure

Comment: *1) The Abbreviated TUE system is abrogated as from 1st January 2009. Abbreviated TUE's granted prior to 1 January 2009 shall remain governed by the rules then in force. Such TUE's cannot be renewed as from 1st January 2009 and shall be valid no longer than until 31 December 2009 at the latest.*
*2) Special rules apply for inhaled beta-2 agonists (see article 79) and glucocorticosteroids (see article 80).*

**49.** A TUE will only be considered following the receipt of a legibly completed application form that complies with these Anti-Doping Rules and that must include all relevant information and documents.

Warning: *Any file that is not complete or not legible will not be considered as valid and will be returned to the sender.*

**50.** The TUE application form(s), as set out in the *International Standard* for Therapeutic Use Exemptions, can be modified by the UCI to include additional requests for information, but no sections or items shall be removed.

**51.** The TUE application form(s) shall be completed legibly, in English or French. Any information attached to the TUE application form shall be in English or French. If such information has been originally established in another language, the *Rider* shall attach the original document and a translation in English or French.

Warning: *Providing false or misleadingly incomplete information constitutes an anti-doping rule violation under article 21.5 (Tampering or Attempted Tampering with Doping Control).*

**52.** A *Rider* may not apply to more than one *Anti-Doping Organization* for a TUE. The application must list any previous and/or current requests for permission to use an otherwise *Prohibited Substance* or *Prohibited Method*, the body to whom that request was made, and the decision of that body.

**53.** The application must include a comprehensive medical history and the results of all examinations, laboratory investigations and imaging studies relevant to the application.

The arguments related to the diagnosis and treatment, as well as duration of validity, should follow the WADA document "Medical Information to Support the Decisions of TUEC's".

*Comment: both documents can be found on WADA's website under World Anti-Doping Code, International Standards, International Standard for Therapeutic Use Exemptions or obtained from UCI. Riders should take care to consult and use the most recent version of these documents.*

Any additional relevant investigations, examinations or imaging studies requested by the TUEC will be undertaken at the expense of the *Rider*.

*(text modified on 1.02.11).*

**54.** The application must include a statement by an appropriately qualified physician attesting to the necessity of the otherwise *Prohibited Substance* or *Prohibited Method* in the treatment of the *Rider* and describing why an alternative, permitted medication cannot, or could not, be used in the treatment of this condition.

The dose, frequency, route and duration of administration of the otherwise *Prohibited Substance* or *Prohibited Method* in question must be specified. In case of change, a new application should be submitted.

**55.** The decision of the TUEC will be conveyed to the Rider through *ADAMS* or by letter.

**56.** Where a TUE has been granted, the *Rider* and WADA will be promptly provided with a certificate of approval for therapeutic use which includes information pertaining to the duration of the exemption and any conditions associated with the TUE. *WADA* will also be provided with all supporting documentation.

**Confidentiality of information**

**57.** By applying for a TUE, the *Rider* provides consent for the transmission of all information pertaining to the application to members of the TUEC of the UCI and the TUEC of *WADA* and, as required, other independent medical or scientific experts, or to all necessary staff involved in the management, review or appeal of TUEs and for the decisions of the TUECs to be distributed to other relevant *Anti-Doping Organizations* under the provisions of the *Code*.

*(text modified on 1.10.11).*

**58.** Should the *Rider* wish to revoke the right of the TUEC of the UCI or the TUEC of *WADA* to obtain any health information on his behalf, the *Rider* must notify his medical practitioners in writing of the fact. As a consequence of such a decision, the *Rider* will not receive approval for a TUE or renewal of an existing TUE.

**59.** Should the assistance of external, independent experts be required, all details of the application will be circulated without identifying the *Rider* and the medical practitioners involved in the *Rider's* care.

**60.** The members of the TUEC and the administration of the UCI will conduct all of their activities in strict confidence.

Under the *International Standard* for Therapeutic Use Exemptions, all *Anti-Doping Organizations* having accepted the *Code* are bound to the same obligations concerning confidentiality of information pertaining to TUE applications.

However, the UCI shall not be liable for the use that other *Anti-Doping Organizations* make of such information, even if the information was provided by the UCI. The *Rider* has no claim against the UCI in this respect.

**Duration of TUE**

**61.** Each TUE will have a duration of 1 (one) year unless another duration is indicated in the certificate of approval for therapeutic use.

The TUE expires at the end of its duration.

The *Rider* shall be responsible for requesting a renewal of the TUE at such time that the TUEC can take a decision before the current TUE expires.

**Withdrawal of TUE**

**62.** The TUEC of the UCI may review and withdraw the TUE at any time during the duration of the TUE.

Without prejudice to article 48, the TUE will be withdrawn if the *Rider* does not promptly comply with any requirement or condition under which the TUE was granted.

**63.** The decision of the TUEC of the UCI withdrawing the TUE and the decision of *WADA* or the CAS reversing the granting of the TUE, shall take effect 14 (fourteen) days following notification of the decision to the *Rider*, unless the decision sets a shorter term.

**Results before withdrawal**

**64.** The withdrawal of a TUE and the decision reversing the granting of a TUE shall not apply retroactively. They shall not *disqualify* the *Rider's* results before the moment that the decision takes effect.

**Results after expiry or withdrawal**

**65.** The Anti-Doping Commission, when conducting the initial review of an *Adverse Analytical Finding*, will consider whether the finding is consistent with expiry or withdrawal of the TUE.

**Information**

**66.** The *Rider* and all relevant *Anti-Doping Organizations* shall be notified immediately of any decision withdrawing a TUE or reversing the granting of a TUE.

### Review by WADA and appeal to the CAS

#### Review by WADA at the request of the Rider

**67.** The *Rider* may request *WADA* to reverse the decision by which the TUEC of the UCI denies or withdraws a TUE.

**68.** The *Rider* shall provide to the TUEC of *WADA* all the information for a TUE as submitted initially to the UCI, accompanied by the application fee that *WADA* may request. The TUEC of *WADA* will have the ability to request from the *Rider* additional medical information as deemed necessary, the expenses of which shall be met by the *Rider*.

**69.** Until the review process has been completed, the decision of the UCI remains in effect.

**70.** If *WADA* reverses the decision of the UCI, the reversal shall not apply retroactively. The *Rider* shall not be entitled to compensation by the UCI, in particular for missed participations in *Events*.

**71.** The decision by *WADA* reversing the decision by the UCI may be appealed exclusively to the CAS by the UCI.

**72.** If *WADA* confirms the decision by the UCI, the *Rider* may appeal the decisions by UCI and *WADA* exclusively to the CAS.

**73.** The time limit for appeal with the CAS is 1 (one) month following receipt of the decision by *WADA*.

#### Review by WADA on its own initiation

**74.** *WADA* may, on its own initiation, review and reverse at any time the decision by which the TUEC of the UCI denies or withdraws a TUE.

Articles 68 to 73 shall apply.

**75.** *WADA* may, on its own initiation, review and reverse at any time the grant of a TUE by the UCI.

**76.** The decision by *WADA* reversing the grant of the TUE by the UCI may be appealed exclusively to the CAS by the *Rider* or the UCI.

**77.** The time limit for appeal with the CAS is 1 (one) month following receipt of the decision by *WADA*.

#### *Implicit denial*

**78.** When the TUEC of the UCI or *WADA* fail to take action on a properly submitted TUE application or request for review within a reasonable time, the TUEC's or *WADA's* failure to decide may be considered a denial for purposes of the appeal to CAS. For such appeal to be admissible, the *Rider* shall, not earlier than 30 days following receipt by the TUEC of UCI or *WADA* of all information requested for handling the TUE application or the review, inform UCI or *WADA* by registered letter of his intention to lodge an appeal under this article and set a deadline of minimum two weeks following receipt of this letter by UCI or *WADA* for the requested decision to be taken. Failure by the TUEC of

the UCI or by *WADA* to comply with the deadline set by the *Rider* shall not imply that the time it will have taken for the TUEC of the UCI or for *WADA* to take action was not reasonable.

#### *Use* of inhaled beta-2 agonists

**79.** The conditions and modalities for the authorized *Use* of inhaled beta-2 agonists are laid down each year in the *Prohibited List*.

*(text modified on 1.02.11).*

#### *Use* of glucorticosteroids

**80.** The conditions and modalities for the authorized *Use* of glucocorticosteroids are laid down each year in the *Prohibited List*.

*(text modified on 1.02.11).*

# V

## Chapter WHEREABOUTS INFORMATION

### Registered Testing Pool

**81.** The UCI Administration shall identify a UCI *Registered Testing Pool* of those *Riders* who are required to provide up-to-date whereabouts information to the UCI.

*Comment: only the Riders included in the Registered Testing Pool are required to provide whereabouts information; however any Rider may be tested Out-of-competition at any time and at any place, including when serving a period of Ineligibility, Provisional Suspension or provisional measures.*

Any *Rider* who has been included in the UCI *Registered Testing Pool* must also complete and register his completion of the true champion or cheat interactive education tool as laid down in article E6 of Section II "Education".

*(text modified on 1.01.10; 1.02.12).*

**82.** The UCI Administration shall define the criteria for *Riders* to be included in the *Registered Testing Pool* and may also include *Riders* individually. The Anti-Doping Commission may revise the criteria and *Registered Testing Pool* from time to time as appropriate.

UCI shall publish the criteria as well as a list of the *Riders* included in the *Registered Testing Pool* on its website.

*(text modified on 1.02.12).*

**83.** A *Rider* continues to be included in the *Registered Testing Pool* and to be required to provide up-to-date whereabouts information to the UCI until he has been informed by the UCI Administration that he has been removed from the *Registered Testing Pool.*

*(text modified on 1.02.12).*

**84.** A *Rider* who has given notice of retirement from cycling to the UCI and wants to return to *competition* at international level shall notify the UCI at least 6 (six) months in advance. The *Rider* shall be included in the *Registered Testing Pool* and may not resume competing at international level until after a period of four months for which he has provided whereabouts information and during which he has been available for unannounced *Out-of-Competition Testing.* For each Missed Test during the period that the *Rider* has to provide whereabouts information before resuming *competition,* this period will be extended with one month.

Notice of retirement is effective only when the *Rider* has returned his license to his National Federation for that purpose or as from the 1st of January of the year for which he has not applied for a new license. The *Rider* shall inform the UCI.

*Comment: see also article 325.*

**85.** If the *Rider* is included in both the UCI *Registered Testing Pool* and a national *Registered Testing Pool,* then the UCI and the *National Anti-Doping Organization(s)* concerned shall seek to agree on who will be responsible for receiving his whereabouts filings and advise the *Rider* accordingly. In the absence of any such agreement, *WADA* shall determine whether the UCI or the *National Anti-Doping Organisation* shall be responsible.

**86.** Where another *Anti-Doping Organization* than the UCI shall be responsible for receiving the *Rider's* whereabouts information, the *Rider* shall file his whereabouts filings only with that *Anti-Doping Organization* and according to the rules and instructions of that *Anti-Doping Organization.* The *Anti-Doping Organization* concerned shall have results management responsibility for any apparent Filing Failure.

*Comment: a Filing Failure is a failure to comply with whereabouts filing requirements: see article 89.*

**87.** Where another *Anti-Doping Organization* shall be responsible for receiving the *Rider's* whereabouts information, the *Rider* shall remain included in UCI's *Registered Testing Pool* until he has been informed by the UCI that he has been removed from that *Registered Testing Pool.*

**88.** Each *Rider* shall inform the UCI promptly if he has been included in the *Registered Testing Pool* of another *Anti-Doping Organization.*

### UCI whereabouts filing requirements

**89.** The UCI shall inform each *Rider* in the *Registered Testing Pool* via written notice that he has been included in the pool and must provide accurate whereabouts information in accordance with these Anti-Doping Rules and with the instructions that shall be given in or with the notice or in any subsequent notice.

Any failure by the *Rider* to comply with these Anti-Doping Rules or with such instructions amounts to a Filing Failure and therefore a Whereabouts Failure for purposes of article 21.4.

*(text modified on 1.10.11).*

**90.** The *Rider* will be presumed to have committed the Filing Failure negligently upon proof that he was notified of the requirement yet failed to comply with it. That presumption may only be rebutted by the *Rider* establishing that no negligent behaviour on his part caused or contributed to the failure.

**91.** Each *Rider* in the *Registered Testing Pool* shall make a quarterly whereabouts filing that provides accurate and complete information about the *Rider's* whereabouts during the forthcoming quarter, so that he can be located for *Testing* at any time during that quarter. Whereabouts filings shall comply with the instructions that shall be given to the *Rider* by the UCI.

**92.** The *Rider* shall also specify in his whereabouts filing, for each day in the forthcoming quarter, one specific 60-minute time slot between 6 a.m. and 11 p.m. where he will be available and accessible for *Testing* at a specified location. This does not limit in any way the *Rider's* obligation to be available for *Testing* at any time and place. Nor does it limit his obligation to provide the information as to his whereabouts outside of that 60-minute time slot.

**93.** It is the *Rider's* responsibility to ensure (including by updates, where necessary) that the whereabouts information provided in his whereabouts filings is accurate and sufficient in detail to enable any *Anti-Doping Organisation* to locate him for *Testing* on any given day in the quarter, including but not limited to during the 60-minute time slot specified for that day in his whereabouts filing. Where any change in circumstances means that the information previously provided by or on behalf of the *Rider* (whether in the initial whereabouts filing or in any subsequent update) is no longer accurate and complete the *Rider* must update his whereabouts filing so that the information on file is again accurate, complete and sufficient in detail. He must make such update as soon as possible, and in any event prior to the 60-minute time slot specified in his filing for that day.

If, as a result of a failure to comply with this article, an *Anti-Doping Organization's* attempt to test the *Rider* during the 60-minute time slot is unsuccessful, then the unsuccessful attempt shall be pursued as a Missed Test. In addition, if the circumstances so warrant, the failure may be pursued as evasion of *Sample* collection under article 21.3, and/or *Tampering* or *Attempted Tampering* with *Doping Control* under article 21.5.

*Comment: The Rider must provide sufficient information to enable the Doping Control Officer to find the location, to gain access to the location, and to find the Rider at the location. For example, declarations such as "training on the Gent-Wevelgem course" are insufficient and are likely to result in a Whereabouts Failure. Similarly, specifying a location that the DCO cannot access (e.g. a "restricted-access" building or area) is likely to result in an unsuccessful attempt to test the Rider and therefore a Whereabouts Failure.*
*An update of the 60-minute time slot shall be made as long as possible before the beginning of the time slot. In appropriate circumstances last-minute updates may be pursued as a possible anti-doping rule violation of evading Sample collection under article 21.3 and/or Tampering (or Attempted Tampering) with Doping Control under article 21.5.*
*For the avoidance of doubt, however, a Rider who updates his 60-minute time slot for a particular day prior to the original 60-minute slot must still submit to Testing during the original 60-minute time slot, if he is located for Testing during that original 60-minute time slot: each Rider must submit to testing whenever he is located and notified for Testing either inside or outside the 60-minute time slot.*

**94.** A *Rider* may choose to delegate the making of some or all of his whereabouts filings and/or any updates to a third party, provided that the *Rider* provides the UCI with a written authorization signed by both the *Rider* and the third party.

However the *Rider* remains ultimately responsible at all times for making accurate and complete whereabouts filings and for ensuring he is available for *Testing* at the whereabouts declared on his whereabouts filings, whether he makes each filing personally or delegates it to a third party. It

shall not be a defence to an allegation of a Filing Failure or a Missed Test that the *Rider* delegated such responsibility to a third party and that third party failed to comply with the applicable requirements. It shall not be a defence to an allegation of a Missed Test or an anti-doping rule violation under article 21.3 (evading *Sample* collection) or article 21.5 *(Tampering or Attempted Tampering)* that the UCI could have detected the inaccuracy or incompleteness of the whereabouts filings before conducting the *Test*.

**95.** Any *Rider* who provides knowingly erroneous information in his whereabouts filing, whether in relation to his location during the specified daily 60-minute time slot, or in relation to his whereabouts outside that time slot, or otherwise, thereby commits an anti-doping rule violation under article 21.3 (evading *Sample* collection) and/or article 21.5 *(Tampering or Attempted Tampering* with *Doping Control).*

**Missed Test**
**96.** A *Rider* in a *Registered Testing Pool* must specifically be present and available for *Testing* by any *Anti-Doping Organisation* having jurisdiction to test the *Rider Out-of-Competition*, on any given day in the relevant quarter for the 60-minute time slot specified for that day in his whereabouts filing, at the location that the *Rider* has specified for that time slot in such filing. Any failure to do so amounts to a Missed Test and therefore a Whereabouts Failure for purposes of article 21.4.

*Comment: If located for Testing, the Rider must remain with the Doping Control Officer until the Sample collection has been completed, even if this takes longer than the 60-minute time slot.*

**97.** If a *Rider* is not available for *Testing* during the 60-minute time slot at the location specified in his whereabouts filing, and has not updated in time his whereabouts filing prior to that 60-minute time slot to provide an alternative time slot/location for that day, that failure shall amount to a Missed Test and shall therefore constitute a Whereabouts Failure for purposes of article 21.4 even if he is located later that day and a *Sample* is successfully collected from him.

*Comment: This specific requirement is without prejudice to the Rider's basic obligation to provide information as to his whereabouts generally during the forthcoming quarter, and to submit to Testing at any time and any place during that quarter.*

**98.** The *Rider's* failure to be available for *Testing* at the specified location during the specified 60-minute time slot will be presumed to be due to the *Rider's* negligence. That presumption may only be rebutted by the *Rider* establishing that no negligent behaviour on his part caused or contributed to him (i) being unavailable for *Testing* at such location during such time slot; and (ii) failing to update his most recent whereabouts filing to give notice of a different location where he would instead be available for *Testing* during a specified 60-minute time slot on the relevant day.

**Whereabouts Failures constituting Anti-Doping Rule Violation**
**99.** A *Rider* in a *Registered Testing Pool* shall be deemed to have committed an anti-doping rule violation under article 21.4 if he commits a total of three Whereabouts Failures (which may be any combination of Filing Failures and/or Missed Tests adding up to three in total) within any 18 (eighteen) month period, irrespective of which *Anti-Doping Organization(s)* has/have declared the Whereabouts Failures in question.

Comment: *While a single Whereabouts Failure will not amount to an anti-doping rule violation under article 21.4, it may, where circumstances warrant, amount to an anti-doping rule violation under article 21.3 (evading Sample collection) and/or article 21.5 (Tampering or Attempted Tampering with Doping Control) without prejudice to the ability subsequently to rely on it as a Whereabouts Failure under article 21.4.*

**100.** A Whereabouts Failure declared by another *Anti-Doping Organization* shall be recognized by the UCI provided it has been declared in compliance with article 11 of the *International Standard* for *Testing*.

**101.** [article abrogated on 1.10.11].

**102.** A Filing Failure will be deemed to have occurred on the first day of the quarter for which the *Rider* fails to make the required filing, or, in the case of any subsequent Filing Failure in the same quarter, on the day that the deadline specified for rectifying the previous Filing Failure expires.

Comment: *when notifying a (first) Filing Failure the UCI shall specify a deadline for rectifying, where possible, that Filing Failure.*

**103.** Where a *Rider* retires from but then returns to sport, his period of retirement/non-availability for *Out-of-Competition Testing* shall be disregarded for purposes of calculating the 18-month period.

**104.** If the hearing panel decides that one (or two) alleged Whereabouts Failures have been established to the required standard, but that the other alleged Whereabouts Failure(s) has/have not, then no anti-doping rule violation under article 21.3 shall be found to have occurred. However, if the *Rider* then commits one (or two) further Whereabouts Failures within the relevant 18-month period, new proceedings may be brought based on a combination of the Whereabouts Failure(s) established to the satisfaction of the hearing panel in the previous proceedings and the Whereabouts Failure(s) subsequently committed by the *Rider*.

**Results management**

Comment: *where another Anti-Doping Organization shall be responsible for receiving the Rider's whereabouts filings, that Anti-Doping Organization shall have results management responsibility for any apparent Filing Failure (articles 85 and 86). Management responsibility for Missed Tests lies with the Anti-Doping Organization on whose behalf the test was attempted. Therefore the UCI shall have results management responsibility for Missed Tests where the test was attempted by or on behalf of the UCI. However other Anti-Doping Organizations may delegate results management responsibility to the UCI (see comment to article 116).*

**105.** UCI shall give notice to the *Rider* of any apparent Whereabouts Failure inviting a response within 14 (fourteen) days of receipt of the notice.

**106.** If no response is received from the *Rider* by the relevant deadline, or if the UCI maintains notwithstanding the *Rider's* response that there has been a Whereabouts Failure, UCI shall send notice to

the *Rider* that an alleged Whereabouts Failure is to be recorded against him. The UCI shall at the same time advise the *Rider* that he has the right to an administrative review of that decision.

**107.** Where it is requested by the *Rider*, such administrative review shall be conducted by a designee of the UCI who was not involved in the previous assessment of the alleged Whereabouts Failure. The review shall be based on written submissions only.

**108.** If the *Rider* does not request an administrative review of the alleged Whereabouts Failure by the relevant deadline, or if the administrative review leads to the conclusion that all of the applicable requirements have been met, then the UCI shall record an alleged Whereabouts Failure against the *Rider* and shall notify the Rider thereof.

**109.** Where an anti-doping rule violation under article 21.4 is brought forward the hearing panel shall not be bound by any determination made during the results management process, whether as to the adequacy of any explanation offered for a Whereabouts Failure or otherwise. Instead, the burden shall be on the UCI to establish all of the requisite elements of each alleged Whereabouts Failure. Both UCI and the *Rider* may raise arguments before the hearing panel that were not raised at the stage of the results management process.

**Disciplinary proceedings**

**110.** Where it is alleged that a *Rider* has committed 3 (three) Whereabouts Failures within any 18-month period and two or more of those Whereabouts Failures were alleged by an *Anti-Doping Organisation* that had the *Rider* in its *Registered Testing Pool* at the time of those failures, then that *Anti-Doping Organization* (whether the UCI or a *National Anti-Doping Organisation*) shall be the responsible *Anti-Doping Organisation* for purposes of bringing proceedings against the *Rider* under article 21.4. If not (for example, if the Whereabouts Failures were alleged by UCI and two National *Anti-Doping Organizations* respectively), then the responsible *Anti-Doping Organisation* for these purposes will be the *Anti-Doping Organization* whose *Registered Testing Pool* the *Rider* was in as of the date of the third Whereabouts Failure. If the *Rider* was in both UCI's and a national *Registered Testing Pool* as of that date, the responsible *Anti-Doping Organization* for these purposes shall be the UCI.

**111.** Where the UCI is the responsible *Anti-Doping Organization* and does not bring proceedings against a *Rider* under article 21.4 within 30 (thirty) days of *WADA* receiving notice of that *Rider's* third alleged Whereabouts Failure in any 18-month period, then it shall be deemed that the UCI has decided that no anti-doping rule violation was committed, for purposes of triggering the appeal rights set out at article 329.

**Coordination with *Anti-Doping Organizations* and disclosure of whereabouts information**

**112.** The UCI may collect whereabouts information also with the National Federations, *WADA* and other *Anti-Doping Organizations*.

**113.** The UCI will submit all whereabouts filings collected to *WADA*.

UCI will make whereabouts filings collected accessible to other *Anti-Doping Organizations* having authority to test the *Rider* as provided in article 9 for use in conducting such *Testing* under the conditions set out in article 11.7.6 of the *International Standard* for *Testing*.

*Comment:* any *Anti-Doping Organization* with *Out-of-Competition Testing* jurisdiction over a *Rider* in a *Registered Testing Pool* may access that *Rider's Whereabouts* filings, as filed with the UCI or a National *Anti-Doping Organization*, for use in conducting such *Testing*.

**114.** The UCI shall have the right to disclose and shall disclose to WADA and to the relevant *Anti-Doping Organizations*:

   a)   a finding by UCI that there is a Whereabouts Failure;
   b)   a finding by UCI that there is no Whereabouts Failure;
   c)   a decision by UCI to accept a Whereabouts Failure recorded by another *Anti-Doping Organization*;
   d)   a decision by UCI to disregard a Whereabouts Failure recorded by another *Anti-Doping Organization*;
   e)   a decision by UCI to bring forward an apparent Anti-Doping Rule Violation under article 21.4;
   f)   a decision by UCI not to bring forward an apparent Anti-Doping Rule Violation under article 21.4.

The UCI shall have the right to be informed of such findings and decisions made by other *Anti-Doping Organizations* regarding *Riders* in UCI's *Registered Testing Pool*.

**115.** The UCI shall have the right to cooperate and shall cooperate as reasonably requested with the relevant *Anti-Doping Organization* and/or *WADA* in its assessment or investigation of any Whereabouts Failures and in its pursuit of any proceedings or appeal brought in reliance on such Whereabouts Failures, including providing any further information requested and producing witnesses and/or documentation as required to evidence, in any disciplinary or related proceedings, any facts within its knowledge on which the charge is based.

### Delegation of responsibilities
**116.** The UCI may propose, and the *National Anti-Doping Organization* concerned may agree to the delegation of UCI's responsibilities regarding whereabouts information to a *National Anti-Doping Organization* having included the *Rider* in its national *Registered Testing Pool*, except for decisions regarding the inclusion in UCI's *Registered Testing Pool* and the bringing of disciplinary proceedings against the *Rider* under article 21.4. UCI shall inform the *Rider* of such delegation.

The UCI may delegate some or all of its responsibilities regarding Whereabouts Information to the *Rider's* National Federation. UCI shall inform the *Rider* of such delegation.

*WADA* may delegate some or all of UCI's responsibilities regarding Whereabouts Information to any other appropriate *Anti-Doping Organization* under the conditions set out in the *International Standard* for *Testing*.

*Comment:* likewise a National *Anti-Doping Organization* may delegate some or all of the responsibilities regarding whereabouts information to the UCI or the *Rider's* National Federation or other appropriate *Anti-Doping Organization* with authority over the *Rider* in question. Where no appropriate National *Anti-Doping Organization* exists, the National Olympic Committee shall assume the responsibilities of the National *Anti-Doping Organization* regarding Whereabouts Information.

### Confidentiality
**117.** The UCI shall maintain whereabouts information in strict confidence at all times and shall use it exclusively for purposes of planning, coordinating or conducting *Testing*. The UCI shall destroy the whereabouts information in accordance with relevant confidentiality requirements after it is not longer relevant.

*Comment:* Use of whereabouts information under this article shall include disclosure of information to other *Anti-Doping Organizations* as provided in these anti-doping rules.

**118.** Under the *Code, WADA* and all *Anti-Doping Organizations* having accepted the *Code* are bound to the same obligations concerning confidentiality of whereabouts information.

However, the UCI shall not be liable for the use that *WADA* or any *Anti-Doping Organization* makes of whereabouts information, even if the information was provided by the UCI. The *Rider* has no claim against the UCI in this respect.

### Obligations of National Federations
**119.** Each National Federation must use its best efforts to assist the UCI and any other responsible *Anti-Doping Organization* in collecting whereabouts information from *Riders* who hold a license from that Federation, including making special provision in its rules for that purpose.



# VI
## Chapter TESTING

Comment:  this chapter VI governs *Testing* initiated by the UCI. Riders may also be subject to *Testing* initiated by other Anti-Doping Organizations with jurisdiction to test under the World-Anti-Doping Code (see chapter I of the present Anti-Doping Rules). *Testing* by other Anti-Doping Organizations is governed by their own rules. The rules on *Testing* of all Anti-Doping Organizations are expected to comply with the International Standard for Testing and should not deviate substantially from the present chapter and the UCI Technical Documents. However, differences both in rules and on-site practices may exist.

**120.** *Samples* may be collected and analyzed under these Anti-Doping Rules:
1) To detect the *Presence* and/or *Use of a Prohibited Substance* or *Prohibited Method;* and;
2) For profiling relevant parameters in a *Rider's* urine, blood or other matrix, including DNA or genome profiling, for anti-doping purposes ("athlete passport"), including as a means for establishing the *Use of a Prohibited Substance* or *Prohibited Method;* and;
3) To detect substances as may be directed by *WADA* pursuant to the Monitoring Program described in article 4.5 of the *Code;* and;
4) For screening purposes.

No *Sample* collected under these Anti-Doping Rules may be used for any other purpose without the *Rider's* written consent.

### Technical documents
**121.** The Administration of the UCI shall issue *Technical Documents* for different aspects of *Testing* conducted under these Anti-Doping Rules.

*Technical Documents* shall be in conformity with these Anti-Doping Rules and in substantial conformity with the *International Standard* for *Testing.*

*Technical Documents* shall be binding upon their publication on UCI's website.

*(text modified on 1.10.11).*

**122.** In addition, the UCI and the *Doping Control Officer* responsible for the *Testing* may at any time impose measures or make modifications which are required or appropriate to ensure that *Testing* can take place or can take place properly.

### Doping Control Officer
**123.** A *Doping Control Officer* (DCO) shall be responsible for the on-site management of *Testing.*

Where the UCI or a National Federation appoints a commissaire as *Doping Control Officer,* the latter may bear the title of Anti-Doping Inspector.

**124.** [article abrogated on 1.02.12].

**125.** [article abrogated on 1.02.12].

**126.** The *Doping Control Officer* is appointed by the UCI. The appointment may be made orally.

However, the *Doping Control Officer* shall be appointed by the National Federation of the country where the *Testing* takes place in the following cases:
1. for *Testing* at *Events* on the B list according to article 164, c;
2. for *Testing* at *Events* at which the National Federation is authorized to test by the UCI according to article 4;
3. for *Out-of-Competition Testing* that the National Federation is authorized to conduct on *Riders* by the UCI.

*(text modified on 1.02.12).*

**127.** A *Medical Inspector* shall be appointed for a *Post-Finish Testing Session.* A *Medical Inspector* may be appointed for any other *Testing.* Where a *Medical Inspector* is appointed, the *Medical Inspector* shall be responsible for the sample taking as described in the *Technical Documents.*

**128.** The *Medical Inspector* shall be a nurse or a doctor who has been trained as a *Doping Control Officer* or with experience in *Sample* collection.

*(text modified on 1.02.12).*

**129.** The *Medical Inspector* shall be appointed by the organizer's National Federation. The race doctor shall not be appointed as *Medical Inspector* for *Testing* at the Event.

**130.** Where a *Medical Inspector* is appointed and the *Doping Control Officer* is no longer available, the *Medical Inspector* shall act as *Doping Control Officer.*

**131.** The *Doping Control Officer* and *Medical Inspector* may appoint other persons to assist in *Sample* collection as they seem fit, including but not limited to chaperones and a blood collection officer.

**132.** The *Doping Control Officer* and *Medical Inspector* may take the role of any other person appointed by them.

Comment:  the *Doping Control Officer* and Medical Inspector may act as a chaperone and/or may witness the delivery of a urine sample. A *Doping Control Officer* may act as blood collection officer only if he is qualified for taking blood samples.

**133.** The UCI and, where applicable, the National Federation may arrange to have *Testing* carried out by another *Anti-Doping Organization* or by a qualified institute or company. The tasks of the *Doping Control Officer, Medical Inspector,* blood collection officer, chaperone and person witnessing the delivery of the *Sample* shall be carried out by the persons or the single person designated for such a

purpose by the appointed organization, institute or company. However, at *Post-Finish Testing Sessions*, the person witnessing the delivery of the *Sample* shall be a doctor or a nurse.

### Testing

**134.** *Testing* may be organized *In-Competition* and *Out-of-Competition*, at any time and any place and without notice.

**135.** The UCI shall determine the place and time and the *Riders* to be tested or authorize the National Federation to do so. The *Doping Control Officer* may test other *Riders* that he finds at the place and time of the test that he was appointed for.

**136.** *Testing* may be carried out at any place where the privacy of the *Rider* is ensured and that where possible is used solely as a doping control station for the duration of the *Sample* collection session.

*Sample* taking shall be carried out in the best possible manner under the circumstances given and as discreetly as possible.

### Notification of Riders

**137.** *Testing* shall be *No Advance Notice* wherever possible.

**138.** *Riders* shall be called for *Testing* using a notification form.

> *Comment:* 1) the notification form mentions the *Rider's* rights and responsibilities that should be brought to his attention under the *International Standard for Testing. Riders* should read the contents of the form before signing it. By his signature on the form, the *Rider* confirms that he has taken note of the contents of the form.
> 2) where a *Post-Finish Testing Session* is organized *Riders* are obliged to act as provided in articles 177 and 180.

**139.** The *Rider* shall be notified in person. However, when *Testing* has to take place *In-Competition* but outside the frame of a *Post-Finish Testing Session* and whenever the *Rider's* manager or a representative of his club is found at the place where the notification was due to take place, the *Rider* may be validly notified via his team manager or club representative if such notification is necessary for useful *Testing* to take place. The signature of the team manager or club representative on the notification form shall bind the *Rider*.

**140.** The *Rider* or, in the case of article 139, his team manager or club representative shall sign the original notification form. If the *Rider* or his team manager or club representative refuses to sign that he has been notified or evades notification, the chaperone shall note this on the form.

**141.** During stage races and World Championships, the team manager or club representative must always be in a position to indicate where his *Riders* are in order that they may be contacted as quickly as possible.

Team managers or club representatives who give incorrect information, refuse to give information or obstruct *Testing* in any other way shall commit an anti-doping violation under article 21.5 (*Tampering* or *Attempted Tampering*).

**142.** The *Rider* notified of *No Advance Notice Testing* shall remain within sight of the chaperone at all times from the moment of in-person notification until the completion of the *Sample* collection procedure. If it was not possible for the chaperone to observe the *Rider* at all times, this shall be recorded by the chaperone and/or reported to the *Doping Control Officer*.

**143.** The time-limit within which the *Rider* is to appear for *Sample* taking shall be set by the *Doping Control Officer*, taking account of the circumstances. *Sample* collection shall start as soon as possible and, except in abnormal circumstances, not later than one hour of the *Rider* (or, in the case of article 139, his team manager or club representative) receiving notification. In exceptional circumstances which can be justified the *Doping Control Officer* may accept a request from a *Rider* to perform urgent preferential activities before proceeding to the doping control station. The request shall be rejected if it will not be possible for the *Rider* to be continuously observed.

### Attendants

**144.** The *Rider* may be accompanied by a person of his choice and an interpreter during the *Sample* collection session except when the *Rider* is passing a urine *Sample*.

**145.** A *Minor Rider* and the witnessing person are entitled to have an attendant observe the witnessing person when the *Minor Rider* is passing a urine *Sample*, but without the attendant directly observing the passing of the *Sample* unless requested to do so by the *Minor Rider*. Even if the *Minor Rider* declines an attendant the *Doping Control Officer*, chaperone or witnessing person may appoint a third party during notification of and/or collection of the *Sample* from the *Rider*.

**146.** Where applicable under the *Independent Observer Program, WADA* Independent Observers may attend the *Sample* taking session. *WADA* Independent Observers shall not directly observe the passing of the *Sample*.

**147.** The *Rider*, his attendant and the interpreter and any objects they bring with them may be searched.

### Time limit for Sample taking

**148.** When a *Rider* does not report to the doping control station within the time-limit, the *Doping Control Officer* shall use his judgment whether to attempt to contact the *Rider*.

**149.** If a *Rider* foresees that he might be prevented from reporting within the time-limit, he shall try, by all available means, to inform the *Doping Control Officer*.

**150.** At a minimum, the *Doping Control Officer* and, if present, the *Medical Inspector* shall wait 30 (thirty) minutes after the time-limit before departing.

**151.** If the *Rider* reports to the doping control station after the minimum waiting time and the *Doping Control Officer* and/or the *Medical Inspector* are still present, they or he shall if at all possible pro-

ceed with collecting a *Sample* and shall document the details of the delay in the *Rider* reporting to the doping control station.

> Comment: if the *Rider* reports to the doping control station after the minimum waiting time, the *Rider* shall have committed the anti-doping rule violation under article 21.3, unless he can prove a compelling justification. Neither the willingness to provide a *Sample* nor the circumstance that another *Testing* takes place shortly after shall excuse the anti-doping rule violation under article 21.3.

**152.** The *Sample* taking may not be delayed, for example to await the arrival of the *Rider's* attendant or interpreter.

**153.** The *Rider* shall only leave the doping control station if authorized by the *Doping Control Officer* and under continuous observation by a chaperone. In exceptional circumstances which can be justified the *Doping Control Officer* shall consider any reasonable request by the *Rider* to leave the doping control station, until the *Rider* is able to provide a urine *Sample*.

If the *Doping Control Officer* gives approval for the *Rider* to leave the doping control station, the *Doping Control Officer* shall agree with the *Rider* on the following conditions of leave:
a) the purpose of the *Rider* leaving the doping control station; and;
b) the time of return (or return upon completion of an agreed activity); and;
c) that the *Rider* must remain under observation at all times; and;
d) that the *Rider* shall not pass urine until he gets back to the doping control station.

The *Doping Control Officer* shall document this information and the actual time of the *Rider's* departure and return.

**154.** The *Doping Control Officer* shall continue the doping control session until the *Rider* delivers the *Samples* required under the *Technical Documents*.

**155.** Should the *Rider* leave the doping control station before the *Samples* required under the *Technical Documents*. are taken otherwise than as was agreed in conformity with article 153, he shall be considered to have refused the test and shall incur the sanctions set out in article 21.3.

**156.** Should a *Rider* leave the doping control station after the *Samples* are taken but before all the formalities are completed, the *Testing* shall be deemed valid.

**157.** Should the *Doping Control Officer* or the *Medical Inspector* discharge a *Rider* or terminate the *Testing* session before the *Rider* has been tested, the *Rider* concerned shall be considered as not to have been selected for *Sample* taking and shall not have committed an anti-doping violation for having left the doping control station.

**158.** The events covered by articles 148 to 157 shall be recorded.

---

### Anomalies

**159.** Any behavior by the *Rider* and/or persons associated with the *Rider* deviating from the rules of the present Chapter VI or the applicable *Technical Documents*, or any other anomalies with potential to compromise the *Sample* collection shall be recorded.
The *Doping Control Officer* or *Medical Inspector* shall inform the *Rider* or other *Person* of the possible consequences of the failure to comply if possible.

**160.** If there are doubts as to the origin or authenticity of the *Sample*, or if the *Sample* does not meet the requirements of the *Technical Documents*, the *Rider* shall be asked to provide an additional or further *Sample*. If the *Rider* refuses to provide an additional *Sample*, this shall be recorded by the *Doping Control Officer*. A refusal to provide an additional *Sample* shall be considered as a refusal to submit to *Sample* collection under article 21.3.

> Comment: *Samples* not meeting the requirements of the *Technical Documents* shall therefore not be invalid for analysis. The laboratory, in conjunction with UCI, shall determine whether such *Sample* shall be analyzed and also, where more than one *Sample* was delivered, which *Sample(s)* shall be analyzed.

### Documentation

**161.** The *Doping Control Officer* shall provide the *Rider* with the opportunity to document any concerns he may have about how the *Sample* collection session was conducted.

**162.** At the conclusion of the *Sample* collection session the *Rider* and the *Doping Control Officer* shall sign appropriate documentation to indicate their satisfaction that the documentation accurately reflects the details of the *Rider's Sample* collection session, including any concerns recorded by the *Rider*. The *Rider's* representative (if any) and the *Rider* shall both sign the documentation if the *Rider* is a *Minor*. Other persons present who had a formal role during the *Rider's Sample* collection session may sign the documentation as a witness of the proceedings.

The *Doping Control Officer* shall provide the *Rider* with a copy of the records of the *Sample* collection session that have been signed by the *Rider*.

**163.** By appending his signature on the *Testing* form, the *Rider* confirms that, subject to any concern recorded by the *Rider*:
1. the *Testing* was conducted in accordance with applicable standards and regulations;
2. any subsequent complaint is excluded;
3. he received a copy of the *Testing* form.

### Post-Finish Testing Session

> Comment: *Riders* may be tested *In-Competition* individually at any time and place including, for example before the start of the race or on a resting day in a stage race. *In-Competition Testing* that takes place immediately after the finish shall be organized in a *Post-Finish Testing Session* so as to test several *Riders* at the same time.

**164.** A *Post-Finish Testing Session* shall be organized at the following *Events*:
   a) World Championships, Continental Championships and Regional Games, as per the *Technical Documents*;
   b) World record and continental record attempts;
   c) Any other *Event* designated by the UCI; these *Events* shall be included on the A list or the B list, depending on whether the *Doping Control Officer* is appointed by the UCI (A list) or the National Federation of the organizer (B list), in accordance with article 126.

**165.** At stage races where *Testing* takes place, a *Post-Finish Testing Session* shall be organized following each stage unless determined otherwise by the UCI.

**166.** At six-day events, a *Post-Finish Testing Session* shall be organized on 2 (two) days unless determined otherwise by the UCI.

**National Federation**
**167.** The National Federation of the organizer of the *Event* shall be responsible for the practical aspects of the organization of the *Post-Finish Testing Session*, including the obligations on the organizer. It must insure that all *Sample* collection personnel other than those appointed by the UCI and all infrastructure and equipment are available so that *Testing* can be carried out in accordance with these Anti-Doping Rules and the *Technical Documents*.

**168.** The National Federation shall appoint a female nurse to witness the delivery of the *Sample* from women if the *Medical Inspector* is a man and a male nurse to attend the delivery of the *Sample* from men if the *Medical Inspector* is a woman.

**169.** If needs be for the test to take place and without prejudice to the responsibility of the National Federation, the *Doping Control Officer* may appoint a *Medical Inspector* and/or a nurse on the spot or the *Doping Control Officer* or *Medical Inspector* may conduct the *Post-Finish Testing* alone, provided he appoints, where applicable, a person of the same gender as the *Rider* to witness the delivery of the *Sample*.

**170.** Without prejudice to the application of article 12.1.008 of the Cycling Regulations to the organizer, in the event of negligence in the practical organization of the *Post-Finish Testing Session* the National Federation of the organizer shall be liable to a fine not exceeding 10'000 CHF. In *Events* which last more than one day, the fine may be multiplied by the number of days for which the negligence continues.

**171.** If, as a result of negligence during the practical organization of the *Post-Finish Testing Session*, the *Doping Control Officer* appointed by the UCI is unable to carry out his mission properly, the National Federation and the organizer shall be jointly and severally liable to refund his expenses.

**Doping control station**
**172.** Premises suitable for the taking of *Samples* and in substantial accordance with Appendices 4 and 5 must be provided in the immediate vicinity of the finish area. The location must be clearly signposted from the finish line.

**173.** Should the circumstances justify it, the UCI may grant an exemption to the requirement of immediate vicinity. The organizer or his National Federation must submit a fully documented request to the UCI no later than one month before the start of the *Event*.

**174.** At the request of the *Doping Control Officer*, the organizer shall appoint an official to protect the entrance of the doping control station and prevent access by persons not involved in *Testing*.

**Selection of *Riders* to be tested**
**175.** The UCI may designate the *Riders* to be tested in a particular *Event* and instruct the *Doping Control Officer* accordingly. Failing such instructions, the *Doping Control Officer* shall test the *Riders* as designated in Appendix 3.

**176.** The circumstances that another *Rider* was tested than those selected according to Appendix 3 or the instructions of the UCI, shall not invalidate the *Testing* of that *Rider*.

**Notification of *Riders***
**177.** Any *Rider* including any *Rider* who has abandoned the *Race*, shall be aware that he may have been selected to undergo *Testing* after the *Race* and is responsible for ensuring personally whether he is required to appear for *Sample* collection as specified in the following paragraph.

Should a *Rider* not have been notified by a chaperone within ten minutes after he crossed the finish line, the *Rider* shall locate and proceed to the place where the list of the *Riders* required to appear for *Sample* Collection is displayed or to the doping control station. The absence of notification by a chaperone shall not excuse the *Rider* for not reporting in time to the doping control station.

The *Rider* who has abandoned the race shall proceed immediately to the doping control station. The absence of notification by a chaperone shall not excuse the *Rider* for not reporting in time to the doping control station.

*(text modified on 1.10.11; 1.02.12).*

**178.** Wherever possible the *Rider* shall be notified in person by a chaperone.

The organizer is required to provide at least one chaperone for every rider selected to undergo *Testing*.

**179.** The chaperone shall remain close to the *Rider* and observe him at all times, and accompany him to the doping control station.

At all times the *Rider* shall remain within sight of the chaperone from the time of notification to the completion of the *Sample* collection procedure. The *Rider's Support Personnel* must not hinder the chaperone from continuously observing the *Rider*.

**180.** The organizer and the *Doping Control Officer* shall ensure also that a list of the *Riders* who are required to appear for *Sample* collection shall be displayed at the finish line and at the entrance of the doping control station immediately before the finish of the winner.

**UCI** CYCLING REGULATIONS

*Comment: Riders that haven't been notified by a chaperone within ten minutes after having crossed the finish line and can't find the list at the finish line, shall always proceed to the doping control station.*

*(text modified on 1.10.11; 1.02.12).*

**181.** *Riders* shall be identified on the list by their name or their race number or their place in the ranking.

**182.** No *Rider* may take the absence of his name, race number or placing from the displayed list as excuse if he is identified in another manner or if it is established that he had learnt in another way that he was required to appear for *Sample* collection.

*Comment: No additional form of notification (for example: audio announcement) has to be used. The absence of an additional form of notification may never be interpreted as an indication that no Testing will take place and is no excuse for failing to submit to Sample taking. When a Rider does not appear for Sample taking, there is no obligation for the Doping Control Officer, the organizer or anyone else to try to contact or notify the Rider.*

**Time-limit for attendance**

**183.** Each *Rider* to be tested must present himself at the doping control station as soon as possible and at the latest within 30 (thirty) minutes of finishing the *Race*. If the *Rider* takes part in an official ceremony or attends a press conference requiring his presence under a provision of the regulations, the deadline shall be 30 (thirty) minutes of the end of the ceremony or of the moment that his presence is no longer required at the press conference, whichever is the latest.

**184.** A *Rider* who has abandoned the *Race* must attend within 30 (thirty) minutes of the finishing time of the last classified *Rider*.

**185.** A *Rider* who has to take part in another *Race* on the same day may, within the time-limit set as above, ask permission from the *Doping Control Officer* to submit to *Sample* taking after the other *Race*. The *Doping Control Officer* shall decide whether the test should take place immediately or following the other *Race*.

**Report**

**186.** For each *Post-Finish Testing Session*, the *Doping Control Officer* shall draw up a report in which he shall attest that *Testing* complied with these Anti-Doping Rules and the *Technical Documents* or note the irregularities that he observed.

**Information of Anti-Doping Organizations**

**187.** The UCI will report, through *ADAMS* or otherwise, all *Testing* conducted under these Anti-Doping Rules to *WADA*, including the name of the *Rider*, the date and place of the test and whether the test was *In-Competition* or *Out-of-Competition*.
National Federations that conduct *Testing* under these Anti-Doping Rules shall report all *Testing* to the UCI immediately after *Testing*.

*WADA* shall make the information accessible, through *ADAMS* or otherwise, to the *Rider*, the *Rider's* National Federation, National Olympic Committee or National Paralympic Committee, *National Anti-Doping Organization* and the International Olympic Committee or International Paralympic Committee.

**188.** Where appropriate in order to ensure coordinated *Testing*, UCI may make the information also directly available to the *Rider's* National Olympic Committee or National Paralympic Committee, *National Anti-Doping Organization* and the International Olympic Committee or International Paralympic Committee and UCI may receive such information from same.

**Property of Samples**

**189.** The *Samples* collected under these Anti-Doping Rules shall be the property of the UCI upon collection.

Where applicable the UCI may transfer ownership of the *Samples* to the *Anti-Doping Organization* exercising results management authority in relation to the *Testing* and UCI may receive ownership of *Samples* from other *Anti-Doping Organizations*.

**Samples for screening**

**190.** *Riders* shall be also subject to *Sample* taking for screening purposes.

**191.** The UCI may use for screening purposes any relevant information collected, received or discovered, including blood *Samples* or other non-urine *Samples* collected pursuant to other regulations. The UCI is not obliged to justify the reason why the *Rider* was targeted and what information was used for screening or targeting.

**Costs of Testing**

**192.** The costs of *In-Competition Testing* initiated and directed by the UCI shall be borne by the organizer of the *Event*.

**193.** The costs of *Out-of-Competition Testing* directed by the UCI shall be borne by the UCI. The costs of *Out-of-Competition Testing* directed by a National Federation so authorized at its request, shall be borne by that National Federation.

**194.** Both the *Rider* and the *Rider's* National Federation shall be liable for the costs of the B *Sample* analysis.

**195.** Should a *Rider* be sanctioned following *Testing*, he shall bear the costs incurred for *Out-of-Competition Testing* and B *Sample* analysis.

**Analysis of Samples**

**196.** For purposes of article 21.1 *Samples* shall be sent for analysis only to *WADA*-accredited laboratories or as otherwise approved by *WADA*. The choice of the *WADA*-accredited laboratory (or other laboratory or method approved by *WADA*) used for the *Sample* analysis shall be determined exclusively by the UCI.

**197.** When specific circumstances so justify, the UCI may request that part of a *Sample* is analyzed in a second laboratory.

**198.** Laboratories shall analyze doping control *Samples* and report results in conformity with the *WADA* International Standard for Laboratories.

**199.** The laboratory shall report any analysis results to the UCI and *WADA* or, if the *Testing* concerns World Championships, to the UCI official doctor and *WADA*.

**200.** Any *Sample* may be reanalyzed for the purpose described in article 120 at any time exclusively at the direction of UCI or *WADA*.

**201.** This chapter VI and the *Technical Documents* shall, where applicable, be interpreted in compliance with the *International Standard* for *Testing* in force at the same time as the applicable clause of this chapter VI or the *Procedural Guideline*.

# VII


**Chapter** **RESULTS MANAGEMENT**

**202.** The UCI shall conduct results management where the UCI has jurisdiction for *Testing* or otherwise under these Anti-Doping Rules.

*Comment: Results Management regarding Whereabouts Failures is dealt with in articles 105 to 109.*

**203.** The UCI shall refer results management concerning a *License-Holder* who usually does not participate in *International Events*, to the *License-Holder's* National Federation, who shall conduct results management in substantial conformity with this chapter.

The National Federation shall keep the UCI informed on the status and findings of the results management process.

**Results management for *Adverse Analytical Findings***

**204.** Upon receipt of an A *Sample Adverse Analytical Finding*, the UCI shall conduct a review to determine whether: (a) the *Adverse Analytical Finding* is consistent with an applicable Therapeutic Use Exemption (TUE), or (b) there is any apparent departure from these Anti-Doping Rules, the *Technical Documents*, the *International Standard* for *Testing* or the *International Standard* for Laboratories that caused the *Adverse Analytical Finding*.

**205.** [article abrogated on 1.02.12].

**206.** If the initial review under article 204 does not reveal an applicable Therapeutic Use Exemption or apparent departure from these Anti-Doping Rules, the *Technical Documents*, the *International Standard* for *Testing* or the *International Standard* for Laboratories that caused the *Adverse Analytical Finding*, the UCI shall promptly notify the *Rider* of (a) the *Adverse Analytical Finding*; (b) the *Rider's* right to the analysis of the B *Sample* under the conditions of these Anti-Doping Rules; (c) the scheduled date, time and place for the B *Sample* analysis; (d) the opportunity for the *Rider* and/or the *Rider's* representative to attend the B *Sample* opening and analysis; and (e) the *Rider's* right to request copies of the A and B *Sample* laboratory documentation package which includes information as required by the *International Standard* for Laboratories.

When the UCI is satisfied that the *Rider* has been notified, a copy of the notification is sent to the *Rider's* National Federation and *National Anti-Doping Organization* and to *WADA*.

A copy may also be sent to the *Rider's* club or team.

**Analysis of B *Sample***

**207.** The UCI shall make such contacts as it deems appropriate in order to know as soon as possible whether the *Rider* requests the analysis of the B *Sample* or waives his right to have the B *Sample* analyzed. To that end the UCI may contact the *Rider's* National Federation, team and/or club.

**208.** If the *Rider* waives his right to have the B *Sample* analyzed, the UCI may nonetheless elect to proceed with the B *Sample* analysis.

**209.** The analysis of the B *Sample* shall be conducted by the laboratory that conducted the analysis of the A *Sample*.

However, if otherwise the B *Sample* could not be analyzed within reasonable time, the UCI may decide that the analysis of the B *Sample* shall be carried out by another laboratory which it shall designate.

**210.** The analysis of the B *Sample* may be carried out by 2 (two) laboratories in accordance with article 197. Should the analysis of the A *Sample* carried out in this fashion have shown that the *Adverse Analytical Finding* is verifiable in the second laboratory only, the analysis of the B *Sample* shall be valid if carried out in this laboratory.

**211.** The opening and analysis of the B *Sample* may be attended by the *Rider*, an expert designated by him or by his National Federation, a representative of the *Rider's* National Federation, a representative of the UCI and a translator.

**212.** The laboratory may restrict the attendance in order to avoid any disturbance of the analysis or for safety or security reasons.

The laboratory may remove, or have removed by proper authority, any *Rider* or representative(s) interfering with the analysis process. Any interference with the analysis process may be considered as an anti-doping rule violation under article 21.5.

**213.** The analysis of the B *Sample* shall take place in a period of 7 (seven) working days starting the first working day following notification by the laboratory of the A *Sample Adverse Analytical Finding* to the UCI. There shall be no right to an adjournment of the date. The B *Sample* analysis shall be valid, even if the notification under article 206 did not reach the *Rider* in time or the *Rider* was unable to attend or to be represented.

If the B analysis is not performed within this time frame this shall not be considered as a deviation from the *International Standard* for Laboratories susceptible to invalidate the analytical procedure and analytical results.

**214.** If the B *Sample* proves negative, the entire test shall be considered negative. This will not prevent analysis results being used as evidence for other anti-doping rule violations than violations under article 21.1.

**Results Management for *Atypical Findings***

**215.** If a laboratory reports an *Atypical Finding* the UCI shall conduct a review to determine whether: (a) the *Atypical Finding* is consistent with an applicable TUE; (b) there is any apparent departure from these Anti-Doping Rules, the *Technical Documents*, the *International Standard* for *Testing* or *International Standard* for Laboratories that caused the *Atypical Finding*.

**216.** If the initial review of an *Atypical Finding* under article 215 does not reveal an applicable TUE or departure from these Anti-Doping Rules, the *Technical Documents*, the *International Standard* for *Testing* or the *International Standard* for Laboratories that caused the *Atypical Finding*, the UCI shall conduct the follow-up investigation required by the *International Standards*. If, once that investigation is completed, it is concluded that the *Atypical Finding* should be considered an *Adverse Analytical Finding*, the UCI shall pursue the matter in accordance with article 206.

**217.** UCI will not provide notice of an *Atypical Finding* until it has completed its investigation and has decided whether it will bring the *Atypical Finding* forward as an *Adverse Analytical Finding* unless one of the following circumstances exists:
(a) If the UCI determines the B *Sample* should be analyzed prior to the conclusion of its follow-up investigation, it may conduct the B *Sample* analysis after notifying the Rider, with such notice to include a description of the *Atypical Finding* and the information described in article 206, (b)-(e).
(b) If the UCI receives a request, either from a *Major Event Organization* shortly before one of its International *Events* or from a sports organization responsible for meeting an imminent deadline for selecting team members for an *International Event*, to disclose whether any *Rider* identified on a list provided by the *Major Event Organization* or sports organization has a pending *Atypical Finding*, the UCI shall so identify any such *Rider* after first providing notice of the *Atypical Finding* to the *Rider*.

**218.** The costs of follow-up investigations are at the expense of the *Rider*. The *Rider* may be requested to advance costs. If the *Rider* refuses to do so, he is presumed to have accepted the *Atypical Finding* to be an *Adverse Analytical Finding* and the case shall proceed accordingly.

**219.** [article abrogated on 1.02.12].

**220.** [article abrogated on 1.02.12].

**221.** [article abrogated on 1.02.12].

**222.** [article abrogated on 1.02.12].

**Specific rules for World Championships, stage races and six-days races**

**223.** During World Championships, a stage race or a six-day race, upon receipt of an A *Sample Adverse Analytical Finding* from a test conducted at that stage race or a six-days race and completion of the review described in article 204, the UCI shall notify the *Rider* via the president of the commissaires panel, the *Doping Control Officer* or another representative of the UCI.

The president of the commissaires panel, the *Doping Control Officer* or the UCI representative shall hear the *Rider's* explanations.

*(text modified on 1.02.12).*

**224.** The request for the analysis of the B *Sample* shall be submitted in writing to the president of the commissaires panel, the *Doping Control Officer* or the UCI representative within 3 (three) hours of the notification specified in article 223.

The *Rider* shall be issued with a receipt stating the time that the request was submitted.

*(text modified on 1.02.12).*

**225.** No postponement of the analysis of the B *Sample* may be granted in order to permit attendance by the persons noted in articles 144 and 145 beyond 4 (four) days from the date of the request for the analysis.

**226.** The UCI shall submit the B *Sample* analysis report to the president of the commissaires panel, the *Doping Control Officer* or the UCI representative.

*(text modified on 1.02.12).*

**227.** If the B *Sample* analytical result confirms the A *Sample* analytical result, the UCI shall inform, where applicable, the president of the commissaires panel for the purposes of article 244.

**Conclusion of review**

**228.** When the Rider waives the analysis of the B *Sample* and no such analysis takes place or upon receipt of the results of the analysis of the B *Sample* or the results of the follow-up investigation of an *Atypical Finding*, the UCI shall conclude whether an anti-doping violation has apparently been committed.

**Results management where no *Adverse Analytical Finding* is involved**

**229.** The UCI shall examine concrete elements indicating that an anti-doping violation may have been committed, in particular any failure to comply with these Anti-Doping Rules and the *Technical Documents*.

**230.** The *Rider* or other party shall be informed of a possible failure to comply and has the opportunity to respond. A hearing is not required to be held.

**231.** The UCI may obtain information from all available sources. National Federations shall be obliged to conduct investigations as the UCI may deem appropriate and inform UCI of their results. All *License-Holders* are obliged to assist in such investigations and provide information requested.

**Conclusion of results management process**

**232.** If upon conclusion of the results management process, the UCI considers that no anti-doping rule violation or any other breach of these Anti-Doping Rules has taken place, then the case shall be taken no further.

This decision shall not be definitive and the UCI may reopen the case on its own initiation.

**233.** The *License-Holder, WADA* and the other *Anti-Doping Organizations* having a right of appeal under article 329 shall be informed of a decision not to go forward with an anti-doping rule violation. If *WADA* or such other *Anti-Doping Organization* so requests, the UCI may reopen the case and request the National Federation to instigate disciplinary proceedings in accordance with article 249, without prejudice to WADA's and such other *Anti-Doping Organization's* right of appeal to the Court of Arbitration for Sport.

**234.** If upon conclusion of the results management process, the UCI makes an assertion that an anti-doping rule violation has taken place, it shall request the National Federation of the *License-Holder* to instigate disciplinary proceedings.



# VIII

**Chapter** *PROVISIONAL SUSPENSION* AND PROVISIONAL MEASURES

### *Provisional Suspension*

**235.** If analysis of an *A Sample* has resulted in an *Adverse Analytical Finding* for a *Prohibited Substance* that is not a *Specified Substance* or for a *Prohibited Method*, and a review in accordance with article 204 does not reveal an applicable TUE or departure from the *International Standard* for *Testing* or the *International Standard* for Laboratories that caused the *Adverse Analytical Finding*, the *Rider* shall be *Provisionally Suspended* pending the hearing panel's determination of whether he has committed an anti-doping rule violation.

    *Comment: Provisional Suspension shall apply under these Anti-Doping Rules including for Adverse Analytical Findings resulting from Testing by other Anti-Doping Organizations and for the results management of which the UCI is not responsible.*

**236.** *Provisional Suspension* shall apply as from the day indicated in its notification to the *Rider*.

Notification may be made by any available means, including per fax or e-mail and via the *Rider's* club, team or National Federation.

**237.** The *Rider* may request that the *Provisional Suspension* shall be lifted.

The request shall be made to the Anti-Doping Commission in writing and state the reasons.

**238.** The case shall be examined and the decision shall be taken by one or more members of the Anti-Doping Commission.

The decision shall be based on written submissions only. No hearing shall be organized.

**239.** The *Provisional Suspension* shall not be lifted unless the *Rider* establishes that the apparent anti-doping rule violation has no reasonable prospect of being upheld or that he has a strong arguable case that he bears *No Fault* or *Negligence* for such violation.

**240.** If a *Provisional Suspension* is imposed based on an *Adverse Analytical Finding* in respect of an *A Sample*, and any conclusive analysis of the *B Sample* does not confirm the *A Sample* analysis, then the *Rider* shall not be subject to any further *Provisional Suspension* on account of a violation of article 21.1 (Presence of a *Prohibited Substance* or its *Metabolites* or *Markers*). In circumstances where the *Rider* (or the *Rider's* team) has been removed from a *Competition* based on a violation of article 21.1 and the subsequent B *Sample* analysis does not confirm the A *Sample* finding, if, without otherwise affecting the *Competition*, it is still possible for the *Rider* or *team* to be reinstated, the *Rider* or team may continue to take part in the *Competition*.

### Provisional measures

**241.** Where no *Provisional Suspension* applies, including in any period preceding a *Provisional Suspension*, one or more of the following provisional measures may be imposed.

**242.** 1. If after the review described in articles 204 to 231 the UCI asserts that an anti-doping violation under article 21.1 or article 21.2 was committed, the Anti-Doping Commission or one of its members may ban the *Rider* from participating in *Events* for such time that the violation, in the opinion of the Anti-Doping Commission or such member, is likely to affect the *Rider's* results.

2. Where the ban is intended to last more than one week, the *Rider* shall be given an opportunity to file written submissions before the ban goes into effect or on a timely basis thereafter.

**243.** If after the initial review described in article 204 and at the eve or during a particular *Event*, the UCI makes an assertion that an anti-doping violation may have been committed under articles 21.1 or 21.2 and determines that the asserted anti-doping violation, that occurred prior to that *Event*, may affect the *Rider's* results at the *Event*, the Anti-Doping Commission may request that the *Rider* is banned from the *Event*.

The request shall be made to the president of the commissaires panel for the *Event*. The president of the commissaires panel shall summon the *Rider* to be heard and decide whether the *Rider* shall be banned from the *Event*.

**244.** If, during an *Event* and where applicable after the review described in article 204 the UCI asserts that an anti-doping violation has been committed during the same *Event*, the UCI will inform the president of the commissaires panel for the *Event*. The president of the commissaires panel shall summon the *License-Holder* concerned to be heard. The president of the commissaires panel may *Disqualify* the *Rider* or ban the *License-Holder* from the *Event* subject to the due opinion of the President or another member of the Anti-Doping Commission.

If a *Rider* is *Disqualified* for an asserted violation under articles 21.1 or 21.2 that occurred during a team *race*, the *Rider's* team shall be relegated to the last place of the *race*. In stage *races* on the road and subject to the application of article 328 after the decision of the hearing body, the team will be given its actual time.

*(text modified on 1.02.12).*

**245.** The provisional measures under articles 242, 243 and 244 may also be imposed on *Rider's Support Personnel* against whom an anti-doping violation is asserted for any period prior to the decision of the hearing panel.

### Common rules for *Provisional Suspension* and provisional measures

**246.** The *Provisional Suspension*, the decisions of the Anti-Doping Commission regarding *Provisional Suspension* and the provisional measures shall not prejudice the decision whether an anti-doping violation has occurred and shall not give rise to any claim in the event that the *License-Holder* is acquitted.

**247.** *Provisional Suspension* regarding a *License-Holder* who may be referred or has been referred to his National Federation according to article 203, shall be governed by articles 235 to 240.

Provisional measures regarding such *License-Holder* shall be governed by the rules of the National Federation.

Under all circumstances such *License-Holder* shall be ineligible for participation in an *International Event* prior to the decision of the hearing panel.

**248.** A *License-Holder* under *Provisional Suspension* or a provisional measure is banned from participating in any *Race*. Violation of this ban shall be sanctioned as provided under article 12.1.035, first paragraph.



# IX
**Chapter** **RIGHT TO A FAIR HEARING**

**249.** When, following the results management process described in chapter VII, the UCI makes an assertion that a *License-Holder* committed an anti-doping rule violation, it shall notify the *License-Holder's* National Federation and request it to instigate disciplinary proceedings. It shall also send a copy of the test analysis report and/or other documentation. A copy of the request may be sent to the *License-Holder* and/or the *License-Holder's* club or team.

A copy of the request is sent to *WADA* and to the *License-Holder's* National Anti-Doping Organization.

**250.** Where at any time during the results management process or hearing process the *License-Holder* admits the anti-doping rule violation and agrees with the UCI on the sanctions, consequences and costs, such agreement shall replace the decision of the hearing panel and put an end to the proceedings before the hearing panel.

Comment:   as stipulated in articles 329.8 and 336, such agreement shall be considered as a decision that can be appealed to CAS by WADA and the License-Holder's National Anti-Doping Organization, but not by the License-Holder or the UCI.

### *License-Holder* called before his National Federation
**251.** The *License-Holder's* National Federation shall call the *License-Holder* before it to hear his grounds and explanations.

This summons must be sent within 2 (two) working days of the receipt of the request by the UCI under article 249.

**252.** The summons shall be sent by registered letter. It shall indicate the nature of the case against the *License-Holder*. The summons must be accompanied by a copy of the test analysis reports and documents received by the Federation from the UCI. If these enclosures are missing, the *License-Holder* must notify the National Federation without delay.

**253.** The summons must be sent at least 10 (ten) days before the hearing to which the *License-Holder* has been called. A copy of the summons shall be sent to the UCI at the same time.

The summons shall indicate the date, time and venue for the hearing.

**254.** A single postponement to the hearing may be granted of not more than 8 (eight) days, except where the party concerned establishes a case of force majeure.

**255.** The *License-Holder* may forgo the hearing in which event the case will be conducted in writing.

### Rights of the defense

**256.** The *License-Holder* shall be heard and the case investigated by the hearing panel having jurisdiction under the rules of the *License-Holder's* National Federation.

**257.** The hearing panel shall hear the case under these Anti-Doping Rules and no other rules.

Where National Federations refer cases to an external hearing panel such hearing panel accepts to apply these Anti-Doping Rules by accepting to hear the case. National Federations shall be responsible for external hearing panels to comply with these Anti-Doping Rules.

**258.** The procedure before the hearing panel shall be in accordance with the procedural rules of that hearing panel whilst taking account of the following articles.

**259.** The hearing panel shall be fair and impartial.

**260.** The *License-Holder* has the right to see the contents of the case files. Each party may obtain a copy at its own expense.

Furthermore the case files may be consulted during the hearing.

**261.** The parties must provide each other with all the statements and documents which they intend to submit at the earliest opportunity. They shall also send them to the UCI at the same time, on penalty of a fine of CHF 200 minimum and CHF 1,000 maximum.

**262.** The UCI may call for a copy of the documentation of the case in full, including the proceedings of the hearing and the documents submitted by the parties. If the hearing body or the National Federation fail to provide the UCI with the compete documentation within one week the National Federation shall be sanctioned with a fine of CHF 5,000 minimum and CHF 10,000 maximum.

**263.** The UCI may give its opinion in each case and demand that a sanction be imposed, either in writing or at the hearing.

**264.** The UCI may request that the hearing is not held before it has received the complete case file and given its opinion.

In this case if the hearing is held before the UCI has given its opinion, the National Federation shall be sanctioned with a fine of CHF 5,000 minimum and CHF 10,000 maximum.

The circumstance that the UCI did not give an opinion or waived its right to do so, shall not restrict UCI's rights of appeal.

**265.** At the request of one of the parties to the case or at their own request the following shall also be heard: the organizer's National Federation, the laboratory which carried out the analysis, the *Doping Control Officer*, the *Medical Inspector*, witnesses and expert witnesses.

The interested party shall be responsible for calling these persons to the proceedings and for their costs. It shall at the same time notify the other parties and the hearing panel.

**266.** The hearing shall be public unless the *License-Holder* requests otherwise.

The president of the hearing panel may also as of right prohibit public access to the room during all or part of the hearing in the interest of public order or when the protection of privacy or medical secrecy justifies it.

**267.** Each party shall have the right to be represented by a qualified lawyer or by a representative on presentation of authorization in writing. The parties may be aided by any other person of their choice.

**268.** Each party and any witnesses and expert witnesses called shall be heard subject to the hearing panel's discretion to accept testimony by telephone or written submission. The *License-Holder* shall have the right to speak last.

**269.** In the event that a party who has been convened should fail to appear, the case will be heard in that party's absence. The decision shall be deemed to have been taken after due hearing of the parties.

**270.** If the hearing panel determines that the *License-Holder* has insufficient knowledge of the language of the proceedings, the *License-Holder* has the right to an interpreter at the hearing. The hearing panel will determine the identity and responsibility for the cost of the interpreter.

**271.** Each party is responsible for the costs of interpreters for its witnesses and experts.

### Decision

**272.** The decision of the hearing panel shall note the identities of the parties called or heard and shall contain a brief summary of the procedure.

It shall bear the names of the persons who took the decision and must be signed by them.

**273.** The decision shall be dated and reasoned.

It shall, where appropriate, indicate the *Prohibited Substances* or *Prohibited Methods* that were found in the *Rider's Sample* or that the *Rider* has used.

It shall indicate the sanctions imposed on the *License-Holder* and explain the reasons for any period of *Ineligibility*.

It shall indicate the commencement date and duration of any period of *Ineligibility* and any credit for a period of *Provisional Suspension* or provisional measures. It shall also indicate the *Events* from which the *Rider* has been *disqualified*, the financial sanctions and the costs.

If the decision is not rendered in English or French it shall be translated in either of these languages. The translation shall be signed by the president of the hearing panel.

*(text modified on 1.10.11).*

### Costs

**274.** Subject to article 275 and in the absence of a specifically justified decision, each party shall bear the costs which it incurs.

**275.** If the *License-Holder* is found guilty of an anti-doping rule violation, he shall bear:
   1. The cost of the proceedings as determined by the hearing panel.
   2. The cost of the result management by the UCI; the amount of this cost shall be CHF 2,500, unless a higher amount is claimed by the UCI and determined by the hearing body.
   3. The cost of the B Sample analysis, where applicable.
   4. The costs incurred for *Out-of-Competition Testing*; the amount of this cost shall be CHF 1,500, unless a higher amount is claimed by the UCI and determined by the hearing body.
   5. The cost for the A and/or B *Sample* laboratory documentation package where requested by the rider.
   6. The cost for the documentation package of the blood samples analyzed for the Biological Passport where applicable

The *License-Holder* shall owe the costs under 2) to 6) also if they were not awarded in the decision. The National Federation shall be jointly and severally liable for its payment to the UCI.

*(text modified on 1.02.11).*

**276.** Should the *License-Holder* be acquitted the party nominated in the decision shall be liable for the costs under article 275.2.

### Notification of the decision

**277.** One full copy of the decision and, where applicable, of its translation in English or French, both signed at least by the president of the hearing panel, shall be sent to the UCI by registered post with proof of receipt within 8 (eight) working days of the decision. The UCI shall send the text of the decision to *WADA* and to the *License-Holder's National Anti-Doping Organization.*

Only the receipt of a decision and, where applicable, its translation in accordance with the conditions of this article shall make the term of appeal run for UCI and *WADA.*

The decision shall be notified to the *Licence-Holder* and any other party other than the UCI according to the procedural rules applicable to the hearing body.

*(text modified on 1.10.11).*

### Exclusion of an appeal at national level

**278.** The decision by the hearing panel of a *License-Holder's* National Federation shall not be subject to an appeal before another body (appeals board, tribunal, etc.) at National Federation level.
If such an appeal is entered, it must be declared inadmissible. Any other decision is void as of right. However, the UCI may ask the Court of Arbitration for Sport (CAS) to pronounce nullity where appropriate upon supplementary application in an appeal procedure against the decision of the competent body. This application may be made at any time during the procedure before the CAS.

### Duration of the proceedings

**279.** The National Federation shall keep the UCI fully informed as to the status of the case, on penalty of a fine of CHF 1,000 minimum and CHF 5,000 maximum.

**280.** The proceedings before the hearing panel of the *License-Holder's* National Federation must be completed within 1 (one) month from the time limit set for the dispatch of the summons.

The National Federation shall be penalized by the disciplinary commission, incurring a fine of CHF 5,000 for each week's delay without prejudice to the obligation to complete proceedings as fast as possible.

**281.** If the completion of the hearing is delayed beyond three months, the UCI may elect to bring the case directly to a single arbitrator from the Court of Arbitration for Sport (CAS), acting as a first instance tribunal. The case shall be handled in accordance with the Court of Arbitration for Sport appeal procedure without reference to any time limit for appeal. The *License-Holder's* National Federation shall be summoned to participate in the proceedings and shall bear all costs resulting for all parties from bringing the proceedings from the National Federation to the CAS.

**282.** If any new fact is revealed of a nature which might alter the decision issued by the hearing panel of the *License-Holder's* National Federation after the date of pronouncement, the interested party may request that the case be reopened before the National Federation, unless it is possible to raise the new issue in existing proceedings before the CAS.

The party submitting the new evidence must establish that it could not have known about it or that it was not available prior to the hearing where the decision was issued.

The request to reopen the case must be made within one month of the party's becoming aware of the evidence in question or it shall be debarred. The burden of proof regarding this date shall lie with the party submitting the new evidence.

### National level *License-Holders*

**283.** National Federations shall conduct hearings for national level *License-Holders* that were referred according to article 203 in substantial compliance with the procedural requirements of this chapter IX. articles 278 and 280 shall not apply.

**284.** The National Federation shall keep the UCI informed on the status and findings of the hearing procedure, including any internal appeal or review.

The National Federation shall send a copy of all decisions and any act of appeal to the UCI.

**285.** If the completion of the hearing process is unreasonably delayed, the UCI may elect to bring the case directly to a single arbitrator from the Court of Arbitration for Sport (CAS) if no decision has been taken and appeal directly to CAS if the delay is at the level of the internal appeal process of the National Federation.



**Chapter X   SANCTIONS AND CONSEQUENCES**

**286.** These Anti-Doping Rules concerning sanctions and consequences shall be construed and implemented in compliance with human rights and general principles of law, among which proportionality and individual case management.

**287.** If the sanction imposed by the hearing body exceeds the maximum set under these Anti-Doping Rules, it shall automatically be reduced to this maximum, without prejudice to the right of appeal. If the sanction imposed is under the minimum set under these Anti-Doping Rules, it shall automatically be replaced with this minimum, without prejudice to the right of appeal.

**Automatic *Disqualification* of individual results**

**288.** A violation of these Anti-Doping Rules in connection with an *In-Competition* test automatically leads to *Disqualification* of the individual result obtained in that *Competition*.

*Comment: Disqualification of the individual result will affect team results as specified in articles 327 and 328 and/or individual rankings, team rankings and rankings per nation as stipulated in UCI's cycling regulations.*

***Disqualification* of Results in *Event* during which an Anti-Doping Rule Violation occurs**

**289.** Except as provided in articles 290 and 291, an anti-doping rule violation occurring during or in connection with an *Event* leads to *Disqualification* of the *Rider's* individual results obtained in that *Event* according to the following rules:

1.  If the violation is a violation under
    a) article 21.5 (*Tampering* or *Attempted Tampering*), or
    b) article 21.6 (*Possession*), or
    c) article 21.7 (*Trafficking* or *Attempted Trafficking*), or
    d) article 21.8 (Administration or *Attempted* administration),
    e) article 21.8 (limited to any type of complicity with any of the above violations),

    all of the *Rider's* individual results are disqualified.

    *Comment: for example, during the Track World Championships (the Event) a rider participated in the individual pursuit (a Competition), the points race (a Competition) and the madison (a Competition). He tested negative after each competition, but was found in possession of a prohibited substance after his last race but before the end of the Championships. He will be disqualified from each Competition.*

2.  If the violation involves
    a) the presence, *Use* or *Attempted Use* of a *Prohibited Substance* or a *Prohibited Method* (articles 21.1 and 21.2), other than a *Specified Substance*; or
    b) evading *Sample* collection or refusing to submit to *Sample* collection (article 21.3); or

c) failing to submit to *Sample* collection (article 21.3), except when the *Rider* establishes that he bears No *Significant Fault or Negligence*;

d) article 21.8 (limited to any type of complicity with any of the above violations),

all of the *Rider's* results are *disqualified*, except for the results obtained (i) in *Competitions* prior to the *Competition* in connection with which the violation occurred and for which the *Rider* (or the other *Rider* in case of complicity) was tested with a negative result, and (ii) in *Competitions* prior to the *Competition*(s) under point i.

*Comment: for example, during the Track World Championships (the Event) a rider participated in the individual pursuit (a Competition), the points race (a Competition) and the madison (a Competition). He is tested after each competition. He is found positive after the individual pursuit. He will be disqualified from each Competition, regardless whether he tested positive or negative or was not tested at the two subsequent competitions. However if he tested negative after the individual pursuit and after the points race but was found positive after the madison he will not be disqualified from the individual pursuit and the points race. Likewise, if he was not tested after the individual pursuit, tested negative after the points race and was found positive after the madison, he will disqualified from the madison only.*

3. If the violation involves the presence, *Use* or *Attempted Use* of a *Specified Substance*, all of the *Rider's* results obtained in *Competitions* posterior to the *Competition* in connection with which the violation occurred are *disqualified*, except for those results which were not likely to have been affected by the violation.

4. If the violation is a failure to submit to *Sample* collection and if the *Rider* establishes that he bears *No Significant Fault or Negligence*, the *Rider's* results obtained in other *Competitions* shall not be *disqualified*.

**290.** If the anti-doping violation involves the presence, *Use* or *Attempted Use* of a *Prohibited Substance* or a *Prohibited Method* (articles 21.1 and 21.2) and the *Rider* establishes that he bears *No Fault or Negligence*, his individual results in the other *Competitions* shall not be *disqualified* except to the extent that they were likely to have been affected by the *Rider's* anti-doping violation.

**291.** 1. If the *Event* is a stage race, an anti-doping violation committed in connection with any stage, entails *Disqualification* from the *Event*, except when (i) the anti-doping violation involves the presence, *Use* or *Attempted Use* of a *Prohibited Substance* or a *Prohibited Method*, (ii) the *Rider* establishes that he bears *No Fault or Negligence* and (iii) his results in no other stage were likely to have been influenced by the *Rider's* anti-doping violation.

*Comment: in the latter case the Rider shall be disqualified from the stage in relation with which the sample was taken only. This disqualification will entail that the Rider shall be removed from the final general ranking but any other result that is not incompatible with the Rider being disqualified in a single stage, shall not be disqualified.*

2. If the anti-doping violation committed in a stage race involves the presence, *Use* or *Attempted Use* of a *Specified Substance* and only a reprimand is imposed in conformity with article 295, the *Rider* shall not be *disqualified* from the *Event* but 1% (one percent) of the time recorded by the *Rider* during the stage on which he tested positive shall be added to the final time on the individual classification. The number of points scored during that same stage shall be deducted from the final classification. Any prize won in connection with the stage in which the anti-doping violation occurred shall be forfeited.

**292.** In those cases that are not considered under articles 289 to 291, the *Disqualification* of the *Rider's* individual results obtained on the *Event* is optional.

### Ineligibility for Presence, Use or Attempted Use, or Possession of a Prohibited Substance or Prohibited Method

**293.** The period of *Ineligibility* imposed for a first anti-doping rule violation under article 21.1 (Presence of a *Prohibited Substance* or its *Metabolites* or *Markers*), article 21.2 (*Use* or *Attempted Use* of a *Prohibited Substance* or *Prohibited Method*) or article 21.6 (*Possession of a Prohibited Substance* or *Prohibited Method*) shall be

2 (two) years' *Ineligibility*

unless the conditions for eliminating or reducing the period of *Ineligibility* as provided in articles 295 to 304 or the conditions for increasing the period of *Ineligibility* as provided in article 305 are met.

### Ineligibility for other Anti-Doping Rule Violations

**294.** The period of *Ineligibility* for a first anti-doping rule violation other than as provided in article 293 shall be as follows:

1. For violations under article 21.3 (evading *Sample* collection, refusing or failing to submit to *Sample* collection) or article 21.5 (*Tampering* or *Attempted Tampering with Doping Control*), the *Ineligibility* period shall be two (2) years unless the conditions for eliminating or reducing the period of *Ineligibility* as provided in articles 296 to 304 or the conditions for increasing the period of *Ineligibility* as provided in article 305 are met.

2. For violations under article 21.7 (*Trafficking* or *Attempted Trafficking*) or article 21.8 (*Administration* or *Attempted Administration* of a *Prohibited Substance* or *Prohibited Method*), the period of *Ineligibility* imposed shall be a minimum of 4 (four) years up to lifetime *Ineligibility* unless the conditions for eliminating or reducing the period of *Ineligibility* as provided in articles 295 to 304 are met.
An anti-doping rule violation involving a *Minor* shall be considered a particularly serious violation, and, if committed by *Rider Support Personnel* for violations other than *Specified Substances* referenced in article 295, shall result in lifetime *Ineligibility* for such *Rider Support Personnel*. In addition, significant violations under articles 21.7 or 21.8 which also violate non-sporting laws and regulations, shall be reported to the competent administrative, professional or judicial authorities.

3. For violations under article 21.4, as defined in article 99, (Filing Failures and/or Missed Tests) the period of *Ineligibility* shall be at a minimum one (1) year and at a maximum two (2) years based on the *Rider's* degree of fault.

## Elimination or Reduction of the Period of *Ineligibility* for *Specified Substances* under Specific Circumstances

**295.** Where a *Rider* or *Rider Support Personnel* can establish how a *Specified Substance* entered his body or came into his possession and that such *Specified Substance* was not intended to enhance the *Rider's* sport performance or mask the use of a performance-enhancing substance, the period of *Ineligibility* for a first violation found in article 293 shall be replaced with the following:

at a minimum, a reprimand and no period of *Ineligibility* from future *Events*, and at a maximum, two (2) years of *Ineligibility*.

To justify any elimination or reduction, the *License-Holder* must produce corroborating evidence in addition to his word which establishes to the comfortable satisfaction of the hearing panel the absence of an intent to enhance sport performance or mask the use of a performance-enhancing substance. The *License-Holder's* degree of fault shall be the criterion considered in assessing any reduction of the period of *Ineligibility*.

## Elimination or Reduction of Period of *Ineligibility* based on Exceptional Circumstances

### No Fault or Negligence

**296.** If the *Rider* establishes in an individual case that he bears *No Fault or Negligence*, the otherwise applicable period of *Ineligibility* shall be eliminated. When a *Prohibited Substance* or its *Markers* or *Metabolites* is detected in a *Rider's Sample* as referred to in article 21.1 (presence of a *Prohibited Substance*), the *Rider* must also establish how the *Prohibited Substance* entered his system in order to have the period of *Ineligibility* eliminated. In the event this article is applied and the period of *Ineligibility* otherwise applicable is eliminated, the anti-doping rule violation shall not be considered a violation for the limited purpose of determining the period of *Ineligibility* for multiple violations under articles 306 to 312.

### No significant Fault or Negligence

**297.** If a *License-Holder* establishes in an individual case that he bears *No Significant Fault or Negligence*, then the period of *Ineligibility* may be reduced, but the reduced period of *Ineligibility* may not be less than one-half of the period of *Ineligibility* otherwise applicable. If the otherwise applicable period of *Ineligibility* is a lifetime, the reduced period under this section may be no less than 8 (eight) years. When a *Prohibited Substance* or its *Markers* or *Metabolites* is detected in a *Rider's Sample* as referred to in article 21.1 (presence of *Prohibited Substance*), the *Rider* must also establish how the *Prohibited Substance* entered his system in order to have the period of *Ineligibility* reduced.

### Substantial Assistance

**298.** The hearing body may suspend a part of the period of *Ineligibility* imposed in an individual case where the *License-Holder* has provided substantial assistance to an *Anti-Doping Organization*, criminal authority or professional disciplinary body which results in the *Anti-Doping Organization* discovering or establishing an anti-doping rule violation by another *Person* or which results in a criminal or disciplinary body discovering or establishing a criminal offense or the breach of professional rules by another *Person*.

**299.** For the purposes of article 298, a *Licence-Holder* providing substantial assistance must: (1) fully disclose in a signed written statement all information he possesses in relation to anti-doping rule violations, and (2) fully cooperate with the investigation and adjudication of any case related to that information, including, for example, presenting testimony at a hearing if requested to do so by an *Anti-Doping Organization* or hearing panel. Further, the information provided must be credible and must comprise an important part of any case which is initiated or, if no case is initiated, must have provided a sufficient basis on which a case could have been brought.

**300.** After a final CAS decision under article 346 or the expiration of time to appeal, only the Anti-Doping Commission may suspend a part of the applicable period of *Ineligibility* with the approval of *WADA*.

If the Anti-Doping Commission suspends any part of the period of *Ineligibility* under this article, it shall promptly provide a written justification for its decision to each *Anti-Doping Organization* having a right to appeal the decision.

*Comment:* the exclusive jurisdiction of the Anti-Doping Commission under this article shall also apply to a final decision at the national level in those cases that were referred to the National Federation under article 203.

**301.** The extent to which the otherwise applicable period of *Ineligibility* may be suspended shall be based on the seriousness of the anti-doping rule violation committed by the *License-Holder* and the significance of the substantial assistance provided by him to the effort to eliminate doping in sport. No more than three-quarters of the otherwise applicable period of *Ineligibility* may be suspended. If the otherwise applicable period of *Ineligibility* is a lifetime, the non-suspended period under this article must be no less than 8 years.

**302.** The Anti-Doping Commission has jurisdiction to subsequently reinstate any part of the suspended period of *Ineligibility* because the *License-Holder* has failed to provide the substantial assistance which was anticipated, regardless whether the suspension was decided by the hearing body or the Anti-Doping Commission. The hearing body has reinstatement jurisdiction only in those cases where the suspension was decided by that hearing body.

The *License-Holder* may appeal the reinstatement pursuant to article 329.11.

### Admission

**303.** Where a *License-Holder* voluntarily admits the commission of an anti-doping rule violation before having received notice of a *Sample* collection which could establish an anti-doping rule violation (or, in the case of an anti-doping rule violation other than under article 21.1 (Presence of a *Prohibited Substance*), before receiving first notice of the admitted violation pursuant to article 230) and that admission is the only reliable evidence of the violation at the time of admission, then the period of *Ineligibility* may be reduced, but not below one-half of the period of *Ineligibility* otherwise applicable.

### Reduction in Sanction under more than one provision

**304.** Before applying any reduction or suspension under articles 297 (*No significant Fault or Negligence*), 298 (substantial assistance) or 303 (Admission), the otherwise applicable period of *Ineligibility*

shall be determined in accordance with articles 293, 294, 295 and 305. If the *License-Holder* establishes entitlement to a reduction or suspension of the period of *Ineligibility* under two or more of articles 297, 298 or 303, then the period of *Ineligibility* may be reduced or suspended, but not below one-quarter of the otherwise applicable period of *Ineligibility*.

### Aggravating Circumstances

**305.** If in an individual case involving an anti-doping rule violation other than a violation under article 21.7 (*Trafficking* or *Attempted Trafficking*) or article 21.8 (Administration or *Attempted* Administration) it is established that aggravating circumstances are present which justify the imposition of a period of *Ineligibility* greater than the standard sanction, then the period of *Ineligibility* otherwise applicable shall be increased up to a maximum of four (4) years unless the *License-Holder* can prove to the comfortable satisfaction of the hearing panel that he did not knowingly commit the anti-doping rule violation.

A *License-Holder* can avoid the application of this article by admitting the anti-doping rule violation as asserted promptly after being confronted with the anti-doping rule violation by an *Anti-Doping Organization*.

### Multiple Violations

#### Second Anti-Doping Rule Violation

**306.** For a *License-Holder's* first anti-doping rule violation, the period of *Ineligibility* is set forth in articles 293 and 294 (subject to elimination, reduction or suspension under articles 295 to 304, or to an increase under article 305). For a second anti-doping rule violation the period of *Ineligibility* shall be within the range set forth in the table below.

#### Second Violation

| First Violation | RS | FFMT | NSF | St | AS | TRA |
|---|---|---|---|---|---|---|
| RS | 1-4 | 2-4 | 2-4 | 4-6 | 8-10 | 10-life |
| FFMT | 1-4 | 4-8 | 4-8 | 6-8 | 10-life | life |
| NSF | 1-4 | 4-8 | 4-8 | 6-8 | 10-life | life |
| St | 2-4 | 6-8 | 6-8 | 8-life | life | life |
| AS | 4-5 | 10-life | 10-life | life | life | life |
| TRA | 8-life | life | life | life | life | life |

Definitions for purposes of the second anti-doping rule violation table:

**RS** (Reduced sanction for *Specified Substance* under article 295): The anti-doping rule violation was or should be sanctioned by a reduced sanction under article 295 because it involved a *Specified Substance* and the other conditions under article 295 were met.

**FFMT** (Filing Failures and/or Missed Tests): The anti-doping rule violation was or should be sanctioned under article 294.3 (Filing Failures and/or Missed Tests).

**NSF** (Reduced sanction for *No Significant Fault or Negligence*): The anti-doping rule violation was or should be sanctioned by a reduced sanction under article 297 because *No Significant Fault or Negligence* under article 297 was proved by the *License-Holder*.

**St** (Standard sanction under articles 293 or 294.1): The anti-doping rule violation was or should be sanctioned by the standard sanction of two (2) years under article 293 or 294.1.

**AS** (Aggravated sanction): The anti-doping rule violation was or should be sanctioned by an aggravated sanction under article 305 because the conditions set forth under article 305 are established.

**TRA** (*Trafficking* or *Attempted Trafficking* and administration or *Attempted* administration): The anti-doping rule violation was or should be sanctioned by a sanction under article 294.2.

#### Application of articles 298 and 303 to Second Anti-Doping Rule Violation

**307.** Where a *License-Holder* who commits a second anti-doping rule violation establishes entitlement to suspension or reduction of a portion of the period of *Ineligibility* under article 298 (substantial assistance) or article 303 (Admission), the hearing panel shall first determine the otherwise applicable period of *Ineligibility* within the range established in the table in article 306, and then apply the appropriate reduction or suspension of the period of *Ineligibility*. The remaining period of *Ineligibility*, after applying any reduction or suspension under articles 298 and 303, must be at least one-fourth of the otherwise applicable period of *Ineligibility*.

#### Third Anti-Doping Rule Violation

**308.** A third anti-doping rule violation will always result in a lifetime period of *Ineligibility*, except if the third violation fulfils the condition for elimination or reduction of the period of *Ineligibility* under article 295 (*Specified Substance*) or is a violation under article 21.4 (Filing Failures and/or Missed Tests). In these particular cases, the period of *Ineligibility* shall be from eight (8) years to life ban.

#### Additional Rules for Certain Potential Multiple Violations

**309.** For purposes of imposing sanctions under articles 306 to 308, an anti-doping rule violation will only be considered as a second violation if it is established that the *License-Holder* committed the second anti-doping rule violation after he received notice pursuant to Chapter VII (Results Management), or after the UCI or the National Federation made reasonable efforts to give notice, of the first anti-doping rule violation. If the UCI or the National Federation cannot establish this, the violations shall be considered together as one single first violation, and the sanction imposed shall be based on the violation that carries the more severe sanction. However, the occurrence of multiple violations may be considered as a factor in determining Aggravating Circumstances (article 305).

**310.** If, after the resolution of a first anti-doping rule violation, facts are discovered involving an anti-doping rule violation by the *License-Holder* which occurred prior to notification regarding the first violation, then an additional sanction shall be imposed based on the sanction that could have been

imposed if the two violations would have been adjudicated at the same time. Results in all *Competitions* dating back to the earlier anti-doping rule violation will be *Disqualified* as provided in article 313. To avoid the possibility of a finding of Aggravating Circumstances (article 305) on account of the earlier-in-time but later-discovered violation, the *License-Holder* must voluntarily admit the earlier anti-doping rule violation on a timely basis after notice of the violation for which he is first charged. The same rule shall also apply when facts are discovered involving another prior violation after the resolution of a second anti-doping rule violation.

**311.** Where a *Rider*, based on the same *Testing*, is found to have committed an anti-doping rule violation involving both a *Specified Substance* and another *Prohibited Substance* or *Prohibited Method*, the *Rider* shall be considered to have committed a single anti-doping rule violation, but the sanction imposed shall be based on the *Prohibited Substance* or *Prohibited Method* that carries the most severe sanction. This will not preclude the presence of multiple *Prohibited Substances* and/or *Prohibited Methods* to be considered as a factor in determining Aggravating Circumstances (article 305).

**Multiple Anti-Doping Rule Violations during an eight-year period**

**312.** For purposes of articles 306 to 310, each anti-doping rule violation must take place within the same eight (8) year period in order to be considered multiple violations.

***Disqualification of Results in Competitions subsequent to Anti-Doping Rule Violation***

**313.** In addition to the automatic *Disqualification* of the results in the *Competition* pursuant to article 288 and except as provided in articles 289 to 292, all other competitive results obtained from the date a positive *Sample* was collected (whether *In-Competition* or *Out-of-Competition*) or other anti-doping rule violation occurred, through the commencement of any *Provisional Suspension* or *Ineligibility* period, shall, unless fairness requires otherwise, be *Disqualified*.

*Comment:* 1) *it may be considered as unfair to disqualify the results which were not likely to have been affected by the Rider's anti-doping rule violation.*
2) *an Anti-Doping Rule Violation under article 21.4 shall be deemed to have occurred on the date of the third Whereabouts Failure.*

**Commencement of *Ineligibility* Period**

**314.** Except as provided under articles 315 to 319, the period of *Ineligibility* shall start on the date of the hearing panel decision providing for *Ineligibility* or, if the hearing is waived, on the date *Ineligibility* is accepted or otherwise imposed.

**Delays not attributable to the *License-Holder***

**315.** *Where* there have been substantial delays in the hearing process or other aspects of *Doping Control* not attributable to the License-Holder, the hearing body imposing the sanction may start the period of Ineligibility at an earlier date commencing as early as the date of *Sample* collection or the date on which another anti-doping rule violation last occurred.

**Timely Admission**

**316.** Where the *License-Holder* promptly (which, in all events, for a *Rider* means before he competes again) admits the anti-doping rule violation after being confronted with the anti-doping rule violation, the period of *Ineligibility* may start as early as the date of *Sample* collection or the date on which another anti-doping rule violation last occurred. In each case, however, where this article is applied, the *License-Holder* shall serve at least one-half of the period of *Ineligibility* going forward from the date the *License-Holder* accepted the imposition of a sanction, the date of a hearing decision imposing a sanction, or the date the sanction is otherwise imposed.

This article shall not apply where the period of *Ineligibility* already has been reduced under article 303 (Admission).

**Credit for Provisional Suspension**

**317.** If a *Provisional Suspension* or a provisional measure pursuant to articles 235 to 245 is imposed and respected by the *License-Holder*, then the *License-Holder* shall receive a credit for such period of *Provisional Suspension* or provisional measure against any period of *Ineligibility* which may ultimately be imposed.

**318.** If a *License-Holder* voluntarily accepts a *Provisional Suspension* in writing from the UCI and thereafter refrains from competing or acting as *Rider Support Personnel*, the *License-Holder* shall receive a credit for such period of voluntary *Provisional Suspension* against any period of *Ineligibility* which may ultimately be imposed. A copy of the *Rider's* voluntary acceptance of a *Provisional Suspension* shall be provided promptly to each party entitled to receive notice of a potential anti-doping rule violation under article 206.

**319.** No credit against a period of *Ineligibility* shall be given for any time period before the effective date of the *Provisional Suspension* or voluntary *Provisional Suspension* regardless of whether the *License-Holder* elected not to compete or act as *Rider Support Personnel* or was suspended by his team except, where applicable, for the period of a provisional measure pursuant to articles 235 to 245.

*Comment:* in view of this article the License-Holder concerned has an interest in writing to the UCI that he accepts voluntarily a Provisional Suspension under article 318.

**Status during Ineligibility**

**Prohibition against Participation during Ineligibility**

**320.** No *License-Holder* who has been declared *Ineligible* may, during the period of *Ineligibility*, participate in any capacity in an *Event* or activity (other than authorized anti-doping education or rehabilitation programs) authorized, recognized or organized by UCI, a Continental Confederation, a National Federation, or any other *Signatory*, *Signatory's* member organization, or a club or other member organization of any Continental Confederation or National Federation of UCI or another *Signatory* or *Signatory's* member organization, or in *Competitions* authorized or organized by any professional league or any international or national level *Event* organization.

**321.** A *License-Holder* subject to a period of *Ineligibility* longer than four years may, after completing four years of the period of *Ineligibility*, participate in local sport events in a sport other than cycling, but only so long as the local sport event is not at a level that could otherwise qualify such *License-Holder* directly or indirectly to compete in (or accumulate points toward) a national championship or *International Event*.

**Testing**
**322.** A *Rider* subject to a period of *Ineligibility* shall remain subject to *Testing*.

*Comment: the Rider may also remain included in the Registered Testing Pool and obliged to provide whereabouts information in accordance with article 83.*

**Withholding of Financial Support during *Ineligibility***
**323.** For any anti-doping rule violation not involving a reduced sanction for *Specified Substances* as described in article 295, some or all sport-related financial support or other sport-related benefits received by such *License-Holder* will be withheld by UCI, the Continental Confederations and the National Federations.

**Reinstatement *Testing***
**324.** As a condition to regaining eligibility at the end of a specified period of *Ineligibility*, a *Rider* must, during any period of *Provisional Suspension*, provisional measures or *Ineligibility*, make himself available for *Out-of-Competition Testing* by the UCI and any other *Anti-Doping Organization* having *Testing* jurisdiction under the *Code*, and must if requested provide current and accurate whereabouts information as provided in article 83.

**325.** If a *Rider* subject to a period of *Ineligibility* retires from sport and later seeks reinstatement, the *Rider* shall not be eligible for reinstatement until he has notified the UCI and has been subject to *Out-of-Competition Testing* for a period of time equal to the longer of the period set forth in article 84 and the period of *Ineligibility* remaining as of the date the *Rider* had retired.

Notice of retirement is effective only when the *Rider* has returned his license to his National Federation for that purpose or as from the 1st of January of the year for which he has not applied for a new license. The *Rider* shall inform the UCI.

*Comment: further conditions for reinstatement may be imposed by other regulations, such as article 12.1.034.*

**Fines**
**326.** In addition to the sanctions provided for under articles 293 to 313 anti-doping violations shall be sanctioned with a fine as follows.

1. The fine is obligatory for a *License-Holder* exercising a professional activity in cycling and in any event for members of a team registered with the UCI.

a) Where a *period of Ineligibility* of two years or more is imposed on a member of a team registered with the UCI the amount of the fine shall be equal to the net annual income from cycling that the *License-Holder* normally was entitled to for the whole year in which the anti-doping violation occurred. The amount of this income shall be as assessed by the UCI, provid-ed that the net income shall be assessed at 70 (seventy) % of the corresponding gross income. The *License-Holder* concerned shall have the burden of proof to the contrary. For the purpose of the implementation of this article the UCI shall have the right to receive a copy of the complete contracts of the *License-Holder* from the *License-Holder* or any person or organization maintaining the contracts, for example the auditor appointed by the UCI and National Federation. If justified by the financial situation of the *License-Holder* concerned, the fine imposed under this paragraph may be reduced, but not by more than one-half.

*Comment: 1. income from cycling will include for example the income from image rights; 2. suspension of part of a period of Ineligibility of two years or more has no influence on the application of the clause above.*

b) Where a period of *Ineligibility* of two years or more is imposed on a *License-Holder* exercising a professional activity in cycling that is not a member of a team registered with the UCI the minimum fine shall be CHF 3,000 for elite men, CHF 1,500 for elite women and CHF 750 for under 23 Riders. These minima shall be doubled in the event of a violation under article 21.5 (*Tampering or Attempted Tampering*), article 21.7 (*Trafficking or Attempted Trafficking*), or 21.8 (*Administration or Attempted Administration*), in the event of an evasion or refusal under article 21.3 and in the event of a second or third violation. These minima are reduced by half for violations for which article 295 (*Specified Substances*) or article 297 (*No Significant Fault or Negligence*) is applied.
If the *License-Holder* concerned is not a *Rider* the minimum fine shall be CHF 5,000 for a first violation and CHF 10,000 in the event of a second or third violation.

Minima may be further reduced for *License-Holders* resident in Africa, Asia and South-America in line with incomes and cost of living.

In each case the maximum fine shall be the triple of the minimum fine stipulated above.

2. No fine shall be imposed for violations for which article 296 (*No Fault or Negligence*) is applied.
3. In other cases than those under paragraphs 1 and 2 the imposition of a fine is optional.
4. In observance of paragraphs 1 and 5 the amount of the fine shall be set in line with the gravity of the violation and the financial situation of the *License-Holder* concerned.
5. Except when paragraph 1a) is applied, no fine may exceed CHF 1,500,000.

*Comment: No fine may be considered a basis for reducing the period of Ineligibility or other sanction which would otherwise be applicable under these Anti-Doping Rules.*

*(text modified on 1.10.11).*

### Consequences to teams

**327.** Except as provided in article 328, if a *Rider* is found to have committed an anti-doping rule violation in connection with a team *Competition* in which he participated as a member of a team, the team shall be *disqualified* from that *Competition*.

If such *Rider* is *disqualified* from other *Competitions* of the same *Event* under articles 289.2a or 3 or article 290, any team, whether composed differently or not, of which such *Rider* was a member, shall be *disqualified* from the same *Competitions* as the *Rider*.

*Comment:   only team competitions from a sporting point of view are meant in this article such as a team pursuit or team time trial, and not any competition in which the Rider participates as a member of his UCI-registered team.*

**328.** In the case of a team time trial stage during a stage race, the team shall be relegated to the last place on the stage with its real time and with a 10 (ten) minutes penalty on the general classification of teams, except in the case of article 291.2 where the penalty on the general classification of teams shall be 1% of the real time of the team recorded during the stage. If more than one *Rider* on the team is found to have committed an anti-doping violation during the same team time trial stage, the team is *disqualified* from the stage race.

# XI
## Chapter APPEAL TO THE CAS

**329.** The following decisions may be appealed to the Court of Arbitration for Sport:
1. a decision of the hearing body of the National Federation under article 272;
2. a decision of the National Federation not to instigate disciplinary proceedings;
3. a decision of the UCI not to go forward with an apparent anti-doping violation;
4. a decision of the UCI not to bring forward an *Atypical Finding* as an *Adverse Analytical Finding*;
5. the final decision at the level of the National Federation regarding a *License-Holder* that was referred to his National Federation according to article 203;
6. a decision of the Anti-Doping Commission granting suspension of the period of *Ineligibility*;
7. a decision of UCI's disciplinary commission concerning a violation of the prohibition of participation during *Ineligibility* imposed under these Anti-Doping Rules;
8. an agreement as referred to in article 250;
9. a decision that a *Provisional Suspension* is imposed or shall not be lifted;
10. a decision that a *Rider* shall be banned from participating in *Events* under article 242 if the ban is for more than 1 (one) month;
11. a decision of the Anti-Doping Commission or the hearing body to reinstate a suspended period of *Ineligibility* according to article 302;
12. the decisions concerning Therapeutic Use Exemptions as specified under articles 71, 72, 74, 76 and 78.

No other form of appeal shall be permitted.

### Cases under article 329.1 to 329.7

**330.** In cases under article 329.1 to 329.7, the following parties shall have the right to appeal to the CAS:
a) the *License-Holder* who is the subject of the decision being appealed;
b) the other party, if any, to the case in which the decision was rendered;

*Comment:   such other party may be a body other than the UCI that prosecutes the case at the level of the National Federation.*

c) the UCI;
d) the *National Anti-Doping Organization* of the *License-Holder's* country of residence or countries where the *Licence-Holder* is a national or license holder;
e) the International Olympic Committee or International Paralympic Committee, where the decision may have an effect in relation to the Olympic Games or Paralympic Games, including decisions affecting eligibility for the Olympic Games or Paralympic Games;
f) WADA.

**331.** The appeal of the UCI shall be made against the *License-Holder* and against the National Federation that made the contested decision and/or the body that acted on its behalf. The National Federation or body concerned shall be liable for costs if the hearing panel which made the decision against which the appeal has been made has applied the regulations incorrectly.

**332.** An appeal by the *License-Holder* shall be made against his National Federation.

An appeal by the other party to the case shall be made against the *License-Holder* and the National Federation.

The National Federation must immediately send the UCI a copy of the statement of appeal and of any submissions or briefs made before the CAS as well as any exhibits, on penalty of a fine of CHF 1,000 minimum and CHF 5,000 maximum.

The UCI shall have the right to intervene and participate in the proceedings before the CAS and demand that a sanction is imposed or increased.

**333.** The statement of appeal by the *License-Holder* or the other party to the case must be submitted to the CAS within 1 (one) month of his receiving the full decision as specified in article 277. Failure to respect this time limit shall result in the appeal being disbarred.

*Comment: within one month shall mean from such-and-such day of the month until such-and-such day of the following month, regardless of the number of days in a calendar month. For example, if the decision was received on 15 January, the last day of the term of appeal is 15 February. If the decision was received on 15 February, the last day of the term of appeal is 15 March. However, if the last day of the term of appeal is a holyday or a non-business day in the country where the contested decision has been notified, the term shall expire at the end of the first subsequent business day (Rule 32 of the Code of Sports-related Arbitration).*

**334.** The statement of appeal by the UCI, the *National Anti-Doping Organization*, the International Olympic Committee, the International Paralympic Committee or *WADA* must be submitted to the CAS within 1 (one) month of receipt of the full case file from the hearing body of the National Federation in cases under article 329.1, 329.2 and 329.5 and from the UCI in cases under article 329.3, 329.4, 329.6 and 329.7. Failure to respect this time limit shall result in the appeal being disbarred. Should the appellant not request the file within 15 (fifteen) days of receiving the full decision as specified in article 277 or the decision by the UCI, the time limit for appeals shall be 1 (one) month from the reception of that decision.

In any event, *WADA* may lodge an appeal 21 (twenty-one) days after the last day on which any other party in the case could have appealed.

*Comment: within 15 days of receiving the decision shall mean on or before the 15th day following the day that the decision was received. The first day of the term is the day following the day that the decision was received.*

**335.** [article abrogated on 1.02.11].

---

**Cases under article 329.8**

**336.** In cases under article 329.8 the following parties shall have the right to appeal to the CAS:
   a) the *National Anti-Doping Organization* of the License-Holder's country of residence or countries where the Licence-Holder is a national or license holder;
   b) the International Olympic Committee or International Paralympic Committee, where the decision may have an effect in relation to the Olympic Games or Paralympic Games, including decisions affecting eligibility for the Olympic Games or Paralympic Games;
   c) *WADA*.

**337.** The statement of appeal must be submitted to the CAS within 1 (one) month of receipt of the full case file from the UCI. Failure to respect this time limit shall result in the appeal being disbarred. Should the appellant not request the file within 15 (fifteen) days of receiving the agreement, the time limit for appeals shall be 1 (one) month from the reception of that agreement. However, the term of appeal for *WADA* shall be in any event 21 (twenty-one) days after the last day on which any other party in the case could have appealed.

**Cases under article 329.9 and 329.10**

**338.** In cases under article 329.9 and 329.10 the *Rider* only shall have the right to appeal to the CAS.

The appeal shall be made against the UCI.

The time to file the appeal to the CAS shall be 8 (eight) days from receipt of the decision by the *Rider* or his National Federation or his club or team.

**Cases under article 329.11**

**339.** In cases under article 329.11 the *License-Holder* only shall have the right to appeal to the CAS.

The appeal shall be made against the UCI.

The time to file the appeal to the CAS shall be one month from receipt of the decision of the Anti-Doping Commission.

**Cases under article 329.12**

**340.** In cases under article 329.12 the *Rider* and the UCI shall have the right to appeal to CAS as provided for in articles 71, 72, 74, 76 and 78.

**Special rights of appeal of WADA**

**341.** Where in a case that has been referred to the National Federation under article 203 no other party has appealed a decision to an appeal or review body at the national level, *WADA* may appeal such decision directly to CAS without having to exhaust other remedies at the national level.

**342.** Where, in a particular case, the UCI or the National Federation would fail to render a decision with respect to whether an anti-doping rule violation was (apparently) committed within a reasonable deadline set by *WADA*, *WADA* may elect to appeal directly to CAS as if the UCI or the National Federation had rendered a decision finding no anti-doping rule violation.

**General clauses**

**343.** An appeal to the CAS shall not suspend the execution of the contested decision, without prejudice to the right to apply to the CAS for it to be suspended.

**344.** The CAS shall have full power to review the facts and the law. The CAS may increase the sanctions that were imposed on the appellant in the contested decision, either at the request of a party or *ex officio*.

**345.** The CAS shall decide the dispute according to these Anti-Doping Rules and for the rest according to Swiss law.

*Comment: application of Swiss law will ensure equal treatment in all cases*

**346.** The decision of the CAS shall be final and binding on the parties to the case and on all *License-Holders* and National Federations. It shall not be subject to appeal or any other recourse, except such recourse that cannot be validly excluded under applicable law.

**Right of appeal under other regulations**

**347.** The UCI and other *Anti-Doping Organizations* shall have a right of appeal to any review body or appeal body, including CAS, against decisions taken by or on behalf of another *Anti-Doping Organization* or a public authority concerning an anti-doping rule violation involving a *License-Holder* or other *Person* where such right of appeal is granted under the applicable rules of that *Anti-Doping Organization* or public authority or under the World Anti-Doping Code.

**348.** Where no right of appeal exists for the UCI against a decision of whichever body or authority, the UCI may initiate disciplinary proceedings under these Anti-Doping Rules based upon the facts established by that decision.

# XII


**Chapter CONFIDENTIALITY AND PUBLIC DISCLOSURE**

**Data**

**349.** When performing obligations under these Anti-Doping Rules, the UCI may collect, store, process or disclose personal information relating to *License-Holders* and other persons.

**Duty of confidentiality**

**350.** Persons carrying out a task in *Doping Control* are required to observe strict confidentiality regarding any information concerning individual cases which is not required to be reported under these Anti-Doping Rules.

Such breaches of confidentiality shall be penalized by a fine of between CHF 1,000 and CHF 10,000 as decided by the UCI Disciplinary Commission, which may also suspend the person in question from specified tasks for such time as it shall determine.

**Public disclosure**

**351.** UCI may publish reports showing the name of each *Rider* tested and the date of each *Testing*.

**352.** The identity of a *License-Holder* who may have committed an anti-doping rule violation may be publicly disclosed by the UCI after notice has been provided to the *License-Holder* under article 206 or, where no *Adverse Analytical Finding* is involved, under article 249.

**353.** Once a violation of these Anti-Doping Rules has been established in a decision referred to in articles 272 or 284 or in an agreement as referred to in article 250, the UCI shall report it publicly within 20 days, including the name of the *License-Holder*, the anti-doping violation committed, the *Prohibited Substance* or *Method* involved and the sanctions imposed.

**354.** Publication shall be made on UCI's Web site for at least one year and may also be made in the UCI Official News Bulletin and/or in the official bulletin of the National Federation of the person penalized.

**355.** In any case where it is determined, after a hearing or appeal, that the *License-Holder* did not commit an anti-doping rule violation, the decision may be disclosed publicly only with the consent of the *License-Holder* who is the subject of the decision and in such form as agreed with the *License-Holder*.

**Register**

**356.** The Anti-Doping Commission shall maintain a register of the penalties applied. This shall list the name of the *License-Holder*, his National Federation, his category (elite or other), the anti-doping rule violation committed, the date of *Testing*, whether the *Testing* was *Out-of-Competition* or *In-Competition* and, in this case, the name and date of the *Event*, the penalties imposed, the date of the decision regarding the penalties and the body which imposed them.



# XIII

## Chapter FINAL PROVISIONS

### Notice

**357.** Notice to a *License-Holder* may be accomplished by delivery of the notice to his National Federation or as provided by these Anti-Doping Rules. The National Federation shall be responsible for making immediate contact with the *License-Holder.*

### Third Sample

**358.** The UCI shall have the right to demand that a third *Sample* be taken at a *Sample* collection session. The UCI shall issue instructions to its end to the *Doping Control Officer.* The *Sample* taking procedures shall be applied mutatis mutandis. The taking of a third *Sample* shall be recorded.

Where appropriate, the further analysis of such *Samples* shall give rise to action for an anti-doping rule violation and sanctions.

Articles 21.3 (evading *Sample* collection, refusing or failing to submit to *Sample* collection) and 21.5 (*Tampering* or *Attempted Tampering*) shall apply regarding the third *Sample.*

### Medication

**359.** In *Events* designated by the UCI, team or club doctors will be obliged to list all medicines taken by each *Rider* and their dosages and any medical treatment that they may have undergone during the preceding 72 (seventy-two) hours. Failure to do so shall make the team ineligible to start the race.

### National Federations

**360.** When a National Federation receives from third parties information concerning a possible anti-doping violation, it shall immediately inform the UCI.

**361.** All National Federations shall include in their regulations the rules necessary to effectively implement these Anti-Doping Rules.

**362.** For the purpose of these Anti-Doping Rules, the organizer's National Federation shall take on the role of the *License-Holder's* National Federation as regards *License-Holders* who have obtained their license directly from the UCI.

**363.** Without prejudice to article 13 of the Constitution, National Federations shall be obligated to reimburse the UCI for all costs related to a doping case in which the National Federation was not cooperative or did not comply with these Anti-Doping Rules.

**364.** Each National Federation shall report to the UCI on or before 31st January results of all *Doping Controls* conducted on its *License-Holders* during the previous year sorted by *Rider* and identifying each date on which the *Rider* was tested, the entity conducting the *Testing,* and whether the *Testing* was *In-Competition* or *Out-of-Competition.*

The report shall also list for each *Rider* concerned all decisions taken in anti-doping at the national level indicating the category (elite or other), the anti-doping rule violation charged or committed, the date of *Testing,* whether the *Testing* was *Out-of-Competition* or *In-Competition* and, in this case, the name and date of the *Event,* the penalties imposed, the date of the decision and the body which imposed them.

**364bis.** 1. The team is responsible for all costs incurred by the UCI and its service providers in relation with the management of the anti-doping rule violations committed by its licence-holders.

2. The team responsible is:

   a. the team of which the licence-holder is a member at the time that the anti-doping rule violation is committed; this team remains responsible also when the licence-holder is no longer part of the team for whichever reason and until such time that the costs are paid in full;

   b. any other team of which the licence-holder is a member after the moment that the anti-doping rule violation is committed and until such time that the costs are paid in full.

   All teams concerned are responsible jointly and severally.

   The paying agent and each of the principal partners of the team(s) concerned shall be jointly and severally responsible for payment to the UCI.

3. The management costs include but are not limited to costs for:

   a. testing, results management, disciplinary proceedings before the hearing body and CAS, proceedings before state courts;

   b. staff and overheads of UCI; services of third parties involved in testing and results management; legal, scientific and other counsels; experts; witnesses; court fees, arbitration costs.

   The management costs also include the costs that are imposed upon the licence-holder by or in application of the present anti-doping rules and that remain unpaid by the licence-holder.

4. Pending proceedings the UCI may request from any team concerned that the bank guarantee for the next registration year is increased with such amount as the UCI may determine so as to cover the expected amount of the costs.

*(article introduced on 1.07.11).*

### Independent Observers

**365.** Organizers shall provide access to Independent Observers as directed by the UCI.

### Recognition of decisions by other organizations

**366.** 1. Subject to the right to appeal provided in chapter XI, the *Testing*, therapeutic use exemptions and hearing results or other final adjudications of any *Signatory* to the *Code* which are consistent with the *Code* and are within the *Signatory's* authority, shall be recognized and respected by the UCI and the National Federations.

2. The UCI may recognize the same actions of other bodies which have not accepted the *Code* if the applicable rules of those bodies are otherwise consistent with the *Code*. The National Federations shall respect such actions when recognized by the UCI.

3. Recognition by the UCI implies in particular that the recognized decision or action will have effect in all countries where there is a National Federation affiliated to the UCI, regardless of the territory for which the organization or body that has taken the decision or action has jurisdiction or the initial territorial range of application of such decision or action.

4. Jurisdiction for recognition under this article lies with UCI's Anti-Doping Commission.

*Comment: clause 3 merely clarifies the effects of a recognition by the UCI. These effects already existed under the previous version of these Anti-Doping rules.*

*(text modified on 1.10.11).*

**367.** When agreed or otherwise decided between the UCI and the competent authorities, the UCI and the National Federations may administrate results management, hearings and appeals for the application of anti-doping legislation.

### Statute of limitations

**368.** No action may be commenced under these Anti-Doping Rules against a *License-Holder* for a violation of an anti-doping rule contained in these Anti-Doping Rules unless such action is commenced within 8 (eight) years from the date the violation occurred.

Any request for investigation or for disciplinary action and any act of investigation or disciplinary action in relation with the violation shall be considered as commencement of the action for the purpose of this article.

### Interpretation of Anti-Doping Rules

**369.** These Anti-Doping Rules shall be interpreted as an independent and autonomous text and not by reference to existing law or statutes. However, these Anti-Doping Rules having been adopted pursuant to the applicable provisions of the *Code* they shall be interpreted in a manner that is consistent with applicable provisions of the *Code*. The comments annotating various provisions of the *Code* may, where applicable, assist in the understanding and interpretation of these Anti-Doping Rules.

**370.** The headings used for the various parts and articles of these Anti-Doping Rules are for convenience only and shall not be deemed part of the substance of these Anti-Doping Rules or to affect in any way the language of the provisions to which they refer.

**371.** The Introduction and the Appendix 1 "Definitions" shall be considered integral parts of these Anti-Doping Rules.

### Entry into force

**372.** This version of the Anti-Doping Rules of the UCI shall come into force on 1ˢᵗ January 2009.

**373.** This version of the Anti-Doping Rules shall not apply retrospectively to matters pending before the 1ˢᵗ January 2009; provided, however, that:

a) Any case pending prior to the 1ˢᵗ January 2009, or brought after the 1ˢᵗ January 2009 based on an anti-doping rule violation that occurred prior to the 1ˢᵗ January 2009, shall be governed by the predecessor to these Anti-Doping Rules in force at the time of the anti-doping rule violation, subject to any application of the principle of lex mitior by the hearing panel determining the case.

b) Where a period of *Ineligibility* imposed under the Anti-Doping Rules in force prior to the 1ˢᵗ January 2009 has not yet expired as of that date, the *License-Holder* who is *Ineligible* may apply to the UCI for a reduction in the period of *Ineligibility* in light of the amendments made to the Anti-Doping Rules as from the 1ˢᵗ January 2009. To be valid, such application must be made before the period of *Ineligibility* has expired.

c) Anti-doping rule violations committed under rules in force prior to the 1ˢᵗ January 2009 shall be taken into account as prior offences for purposes of determining sanctions under articles 306 to 312. Where such anti-doping rule violation involved a substance that would be treated as a *Specified Substance* under these Anti-Doping Rules, for which a period of *Ineligibility* of less than two years was imposed, such violation shall be considered a Reduced Sanction violation for purposes of article 306.

**374.** Amendments to these Anti-Doping Rules shall come into force on the date of their publication on UCI's Web site unless this publication specifies a different date for entry into force.

## SECTION II  EDUCATION

*(section introduced on 1.01.2010).*

**E1**  The UCI develops, maintains and distributes an anti-doping education programme. The basic principle of the UCI's anti-doping education is to inform *Riders* and the *Rider Support Personnel* of their requirements under the UCI Anti-Doping Rules. The aim of the education programme is to prevent the intentional or unintentional use by riders of *Prohibited Substances* and *Prohibited Methods*.

**E2**  At a minimum, the anti-doping education programme will include information on the following issues:

- Substances and methods on the *Prohibited List*
- Anti-Doping rule violations
- *Doping Control* procedures
- Therapeutic use exemptions
- Whereabouts requirements
- Consequences of doping, including sanctions, health and social consequences.

**E3**  The anti-doping programme will promote the spirit of doping-free cycling. It aims to have a positive and long term influence on the choices made by *Riders* and *Rider Support Personnel*. It emphasizes the importance of ethics and fair cycling.

**E4**  An important practical element of the programme is an interactive learning tool called true champion or cheat, available on line or on DVD.

**E5**  National Federations are expected to use their best endeavours to ensure *Riders* and *Rider Support Personnel* who have a license issued by their Federation complete true champion or cheat within 12 months of the receipt of their license from their Federation. National Federations are required to report to the UCI annually on the number of *License-Holders* from their Federation who have completed the programme.

**E6**  Any *Rider* who has been included in the UCI *Registered Testing Pool* as specified in Articles 81 and 82 of the Anti-Doping Regulations, must have completed and registered his completion of true champion or cheat within six months following the date on which he was first included in the *Registered Testing Pool*. Any *Rider* who has been included in the UCI *Registered Testing Pool* on or before 1st January 2010 must have completed and registered his completion on or before 30 June 2010.

If a *Rider* who is included in the UCI *Registered Testing Pool* has failed to complete true champion or cheat or failed to register his completion as requested under the previous paragraph, he will not be permitted to be registered on a UCI registered team as referred to in article 1.1.041 for the following year as long as the *Rider* has not complied with his obligations under this article.

---

### (Appendix 1)

## DEFINITIONS

### ADAMS
The Anti-Doping Administration and Management System maintained by *WADA*.
According to article 14.5 of the Code "To enable it to serve as a clearinghouse for Doping Control Testing data, *WADA* has developed a database management tool, ADAMS, that reflects emerging data privacy principles. In particular, *WADA* has developed ADAMS to be consistent with data privacy statutes and norms applicable to *WADA* and other organizations using ADAMS. Private information regarding an Athlete, Athlete Support Personnel, or others involved in anti-doping activities shall be maintained by *WADA*, which is supervised by Canadian privacy authorities, in strict confidence and in accordance with the International Standard for the protection of privacy. *WADA* shall, at least annually, publish statistical reports summarizing the information that it receives, ensuring at all times that the privacy of Athletes is fully respected and make itself available for discussions with national and regional data privacy authorities".

### Adverse Analytical Finding:
A report from a laboratory or other approved *Testing* entity that identifies in a *Sample* the presence of a *Prohibited Substance* or its *Metabolites* or *Markers* (including elevated quantities of endogenous substances) or evidence of the *Use* of a *Prohibited Method*.

### Anti-Doping Organization:
A *Signatory* of the *Code* that is responsible for adopting rules for initiating, implementing or enforcing any part of the *Doping Control* process. This includes, for example, the International Olympic Committee, the International Paralympic Committee, other *Major Event Organizations* that conduct *Testing* at their *Events*, *WADA*, International Federations, and *National Anti-Doping Organizations*.

### Attempt:
Purposely engaging in conduct that constitutes a substantial step in a course of conduct planned to culminate in the commission of an anti-doping rule violation. Provided, however, there shall be no anti-doping rule violation based solely on an *Attempt* to commit a violation if the *Person* renunciates the attempt prior to it being discovered by a third party not involved in the *Attempt*.

### Atypical Finding:
A report from a laboratory or other *WADA*-approved entity which requires further investigation as provided by the *International Standard* for Laboratories or related Technical Documents prior to the determination of an *Adverse Analytical Finding*.

### CAS:
Court of Arbitration for Sport.

### Code:
The World Anti-Doping *Code*. The *Code* is available on *WADA's* website at www.wada-ama.org or via UCI.

**Competition:**
A single *Race* organized separately (for example: a one day road race, each of the time trial and road race at the road World Championships) or a series of *Races* forming an organizational unit and producing a final winner and/or general classification (for example: a stage race, a track sprint race tournament, a cyclo-ball tournament) (Note: a World Cup series is not an *Event* or *Competition*).

**Disqualification:**
See article 12.1.022 of the UCI Cycling Regulations.

**Doping Control:**
All steps and processes from test distribution planning through to ultimate disposition of any appeal including all steps and processes in between such as provision of whereabouts information, sample collection and handling, laboratory analysis, TUE's, results management and hearings.

**Doping Control Officer:**
The official with overall responsibility for the on-site management of the *Testing* as described in these Anti-Doping Rules and in the *Technical Documents*.

**Event:**
A single *Competition* organized separately (for example: a one day road race, a stage race) or a series of *Competitions* conducted together as a single organization (for example: road World Championships, track World Championships, a track World Cup event); a reference to *Event* includes reference to *Competition* and *Race*, unless the context indicates otherwise.

**In-Competition:**
*In-Competition* refers to the period that starts one day before or, in the case of a major tour, three days before the day of the start of an *Event* and finishing at midnight of the day on which the *Event* finishes.

However, regarding the *Presence* or *Use* of a prohibited stimulant as defined in the *Prohibited List*, *In-Competition* refers to the period starting 8 (eight) hours before the start of a *Race* in which the *Rider* is competing or for which he has been confirmed as a starter and finishing at the end of the *Post-Competition Testing* session that is organized following the *Race*.

**Independent Observers Program:**
A team of observers, under the supervision of *WADA*, who observe and may provide guidance on the *Doping Control* process at certain *Events* and report on their observations.

**Ineligibility:**
Under these Anti-Doping Rules, *Ineligibility* is defined as a suspension as described in article 12.1.032 of the UCI Cycling Regulations.

*Ineligibility* also means that the *License-Holder* is barred, for the period of *Ineligibility*, from participating in any *Competition* or other activity organized or authorized by any *Signatory* or *Signatory's* member organization, and from any funding as provided in article 10.9 of the *Code*.

**International Event / Competition / Race:**
An *Event*, *Competition*, *Race* of the international calendar of the UCI.

**International Standard:**
A standard adopted by *WADA* in support of the *Code*. Compliance with an *International Standard* (as opposed to other alternative standard, practice or procedure) shall be sufficient to conclude that the procedures addressed by the *International Standard* were performed properly. *International Standard* shall include any *Technical Documents* issued pursuant to the *International Standard*.

**License-Holder:**
A *Person* who is holder of a license or who has applied for a license under the UCI Cycling Regulations. For the avoidance of doubt a *Licence-Holder* continues to be considered as such for the purpose of the present Anti-Doping Rules for all obligations that arose and for any violation that was committed and for all implications and consequences of any fact that occurred while holding a license as well as for all obligations that continue to exist during any period of *Ineligibility* including when the Person concerned actually no longer holds a licence at the time of such obligation, violation or fact.

*(text modified on 1.02.12).*

**Major Event Organizations:**
The continental associations of *National Olympic Committees* and other international multi-sport organizations that function as the ruling body for any continental, regional or other international event.

**Marker:**
A compound, group of compounds or biological parameter(s) that indicate(s) the *Use* of a *Prohibited Substance* or *Prohibited Method*.

**Medical Inspector:**
*Person* responsible for the *Sample* taking at a *Post-Finish Testing Session* as described in these Anti-Doping Rules and in the *Technical Documents*, who can be either a medical doctor or a nurse.

*(text modified on 1.02.12).*

**Metabolite:**
Any substance produced by a biotransformation process.

**Minor:**
A natural *Person* who has not reached the age of majority as established by the applicable laws of his country of residence.

**National Anti-Doping Organization:**
The entity(ies) designated by each country as possessing the primary authority and responsibility to adopt and implement anti-doping rules, direct the collection of *Samples*, the management of test

results, and the conduct of hearings, all at the national level. This includes an entity which may be designated by multiple countries to serve as regional *Anti-Doping Organization* for such countries. If this designation has not been made by the competent public authority(ies), the entity shall be the country's *National Olympic Committee* or its designee.

### National Event / Competition / Race:
An *Event, Competition, Race* of the national calendar of each of the member federations of the UCI.

### National Olympic Committee:
The organization recognized by the International Olympic Committee. The term *National Olympic Committee* shall also include the National Sport Confederation in those countries where the National Sport Confederation assumes typical *National Olympic Committee* responsibilities in the anti-doping area.

### No Advance Notice:
*Testing* which takes place with no advance warning to the *Rider* and where the *Rider* is continuously chaperoned from the moment of notification through *Sample* provision.

### No Fault or Negligence:
The *Rider's* establishing that he did not know or suspect, and could not reasonably have known or suspected even with the exercise of utmost caution, that he had *Used* or been administered the *Prohibited Substance* or *Prohibited Method.*

### No Significant Fault or Negligence:
The *License-Holder's* establishing that his fault or negligence, when viewed in the totality of the circumstances and taking into account the criteria for *No Fault* or *Negligence,* was not significant in relationship to the anti-doping rule violation.

### Out-of-Competition:
Any *Doping Control* or fact which is not *In-Competition.*

### Person:
A natural *Person* or an organization or other entity.

### Possession:
The actual, physical possession, or the constructive possession (which shall be found only if the *Person* has exclusive control over the *Prohibited Substance/Method* or the premises in which a *Prohibited Substance/Method* exists); provided, however, that if the *Person* does not have exclusive control over the *Prohibited Substance/Method* or the premises in which a *Prohibited Substance/ Method* exists, constructive possession shall only be found if the *Person* knew about the presence of the *Prohibited Substance/Method* and intended to exercise control over it. Provided, however, there shall be no anti-doping rule violation based solely on possession if, prior to receiving notification of any kind that the *Person* has committed an anti-doping rule violation, the *Person* has taken concrete action demonstrating that the *Person* never intended to have possession and has renounced possession by explicitly declaring it to an *Anti-Doping Organization.*

Notwithstanding anything to the contrary in this definition, the purchase (including by any electronic or other means) of a *Prohibited Substance* or *Prohibited Method* constitutes possession by the *Person* who makes the purchase.

*Possession of a Prohibited Method shall include possession of any device, material or substance serving for the Prohibited Method.*

[Code comment: *Under this definition, steroids found in an Athlete's car would constitute a violation unless the Athlete establishes that someone else used the car; in that event, the Anti-Doping Organization must establish that, even though the Athlete did not have exclusive control over the car, the Athlete knew about the steroids and intended to have control over the steroids. Similarly, in the example of steroids found in a home medicine cabinet under the joint control of an Athlete and spouse, the Anti-Doping Organization must establish that the Athlete knew the steroids were in the cabinet and that the Athlete intended to exercise control over the steroids.]*

### Post-Finish Testing:
*In-Competition Testing* session that is organized following a *Race* or *Competition* for the purpose of testing *Riders* that participated in the *Race* or *Competition.*

### Prohibited List:
The List published by *WADA* and identifying the *Prohibited Substances* or *Prohibited Methods.*

### Prohibited Method:
Any method so described on the *Prohibited List.*

### Prohibited Substance:
Any substance so described on the *Prohibited List.*

### Provisional Suspension
The *Rider* being barred temporarily from participating in any *Competition* prior to the final decision at a hearing conducted under Chapter IX or an agreement under article 250.

### Publicly Disclose or Publicly Report:
To disseminate or distribute information to the general public or persons beyond those persons entitled to earlier notification in accordance with these Anti-Doping Rules.

### Race:
A cycling contest that produces a winner or a ranking according to the rules (for example: a one day road race, a stage or a half stage in a stage race, the 16th final of a track sprint race tournament, a cycle-ball game). For the purpose of these Anti-Doping Rules a one-man competition such as a record attempt or a best performance attempt is considered as a *Race.*

*(text modified on 1.02.12).*

**Registered Testing Pool:**
The pool of top level *Riders* established separately by the UCI and each National Anti-Doping *Organization* who shall provide whereabouts information as stipulated in chapter V.

**Rider:**
A *License-Holder* who participates in an *Event* as a cyclist or who usually participates in *Events* as a cyclist.

**Rider's Support Personnel:**
A *License-Holder* who is not a *Rider*.

**Sample/Specimen:**
Any biological material collected for the purposes of *Doping Control.*

**Signatories:**
Those entities signing the *Code* and agreeing to comply with the *Code*, including the International Olympic Committee, the UCI, International Paralympic Committee, *National Olympic Committees,* National Paralympic Committees, *Major Event Organizations, National Anti-Doping Organizations,* and *WADA.*

**Specified Substance:**
*Prohibited Substance* as identified under article 32.

**Tampering:**
Altering for an improper purpose or in an improper way; bringing improper influence to bear; interfering improperly; obstructing, misleading or engaging in any fraudulent conduct to alter results or prevent normal procedures from occurring; or providing knowingly erroneous information to an *Anti-Doping Organization.*

**Target Testing:**
Selection of *Riders* for *Testing* where specific *Riders* or groups of *Riders* are selected on a non-random basis for *Testing* at a specified time.

**Technical Documents:**
Documents established by the UCI Administration and regulating technical and operational parts of *Testing* pursuant to article 121; reference to these Anti-Doping Rules shall include reference to the *Technical Documents* where applicable.

**Testing:**
The parts of the *Doping Control* process involving test distribution planning, *Sample* collection, *Sample* handling, and Sample transport to the laboratory.

**Trafficking:**
Selling, giving, transporting, sending, delivering or distributing a *Prohibited Substance* or Prohibited *Method* (either physically or by any electronic or other means) by a *Rider, Rider Support Personnel*

or any other *Person* subject to the jurisdiction of an *Anti-Doping Organization* to any third party; provided, however, this definition shall not include the actions of bona fide medical personnel involving a *Prohibited Substance* used for genuine and legal therapeutic purposes or other acceptable justification, and shall not include actions involving *Prohibited Substances* which are not prohibited in *Out-of-Competition Testing* unless the circumstances as a whole demonstrate such *Prohibited Substances* are not intended for genuine and legal therapeutic purposes.

**Use:**
The utilization, application, ingestion, injection or consumption by any means whatsoever of any *Prohibited Substance* or *Prohibited Method.*

**WADA:**
The World Anti-Doping Agency.

**UCI** CYCLING REGULATIONS

(Appendix 2)

**CODE OF SPORTS-RELATED ARBITRATION (CAS)**
(available on request)