## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| LANCE ARMSTRONG<br><br>　　　　　*Plaintiff*,<br><br>　*v.*<br><br>UNITED STATES ANTI-DOPING<br>AGENCY and TRAVIS TYGART, In His<br>Official Capacity as Chief Executive Officer<br>of the United States Anti-Doping Agency<br><br>　　　　　*Defendants*. | Civ. Action No.  1:12–cv–00606–SS |

## AMENDED COMPLAINT AND JURY DEMAND

Comes now Plaintiff, Lance Armstrong, by his undersigned counsel, and states and alleges as follows:

### Parties

1.      Plaintiff Lance Armstrong, 300 West 6th Street, Suite 2150 Austin, Texas, is a citizen of Travis County, Texas.  He resides in Austin, Texas.

2.      Defendant United States Anti-Doping Agency ("USADA") is a Colorado Corporation with its principal place of business at 5555 Tech Center Drive, Suite 200, Colorado Springs, Colorado 80919.  USADA is the national anti-doping organization for the United States and manages the United States' anti-doping testing program for National Governing Bodies for Olympic, Paralympic, and Pan-American Games Sports.

3.      Defendant Travis Tygart is a resident of the state of Colorado.  Tygart is named as a Defendant in his official capacity as the Chief Executive Officer of USADA.

### Nature of Action

4.      USADA has notified Mr. Armstrong that unless he initiates an arbitration proceeding with USADA under USADA's rules by 5:00 p.m. on Saturday, July, 14, 2012, USADA will strip Armstrong of his seven Tour de France titles and all other cycling victories and accomplishments and impose a lifetime ban on further competition, including banning Mr. Armstrong from competing in certain triathlon competitions in which he now earns a living.  Mr. Armstrong contends USADA does not have the right to charge and sanction him and strip him of his titles.  Armstrong also contends USADA does not have the right to force him to arbitrate those charges without a valid, enforceable legal agreement to do so.  Mr. Armstrong contends USADA's activity also violates his constitutional rights and tortiously interferes with his contract with Union Cycliste Internationale ("UCI"), the governing body with which he has an agreement.  Mr. Armstrong is asking this Court for temporary, preliminary and permanent relief from USADA's actions against him, declaratory relief, and damages against USADA with respect to his claim for tortious interference with contract.

### Jurisdiction and Venue

5.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it is a matter that arises under the Constitution and laws of the United States.

6.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because it is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.  The damage already caused and the value of the continuing threat to Mr. Armstrong's property, reputation, and livelihood, as

well as substantial costs Mr. Armstrong would incur in the arbitration proceeding as designed by Defendants, exceeds the requirement of $75,000.  This court has subject matter jurisdiction over the state law claims asserted by Mr. Armstrong based on principles of ancillary and pendent jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy under Article III of the United States Constitution.

7.      This Court has personal jurisdiction over defendants because Defendants are doing business in the Western District of Texas, and the acts and conduct at issue in this case were directed at Mr. Armstrong in this district and were conducted in part in this district.  Defendants' officials and agents have also repeatedly subjected Mr. Armstrong to no-notice out-of-competition drug testing in the Western District of Texas.  He has been subject to target testing by Defendants for several years.  Defendants regularly extend their testing and sanctioning activity to other athletes and events in the Western District of Texas as part of their ordinary business practices.  Defendants have purposefully availed themselves of this forum such that Defendants should reasonably anticipate proceedings against them here, and the exercise of jurisdiction over Defendants is reasonable and comports with traditional notions of fair play and substantial justice.

8.      Venue lies in this district under 28 U.S.C. § 1391 because a substantial part of the dispute concerns Defendants' efforts to (i) target Mr. Armstrong in this district; (ii) to interfere with Mr. Armstrong's contracts that provide him benefits in this district; (iii) to impose a lifetime ban on Mr. Armstrong competing in professional or elite competitive sports in this district, in Texas generally, or anywhere else in the world; and,

(v) to force Mr. Armstrong to bring his claims against USADA in an arbitration which would be filed within this district.

9.      The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501, *et seq.*, is inapplicable to this action and does not otherwise preempt the Court's authority to review Defendants' conduct.

### Mr. Armstrong's Career and Current Employment

10.     Mr. Armstrong is a professional triathlete and a retired professional road-racing cyclist.  Mr. Armstrong has entered into contracts with the World Triathlon Corporation ("WTC"), by which WTC agrees to pay Mr. Armstrong and his foundation for Mr. Armstrong's participation in its events.

### International Governing Bodies for Sports

11.     The Olympic Games and the individual sports that comprise them are governed by the International Olympic Committee ("IOC"), which coordinates and oversees two categories of sports organizations.

12.     The sport-specific International Sports Federations ("IFs") regulate each of the Olympic sports on a world-wide basis.  UCI is the designated IF for cycling. It is responsible for overseeing international cycling competitions, including results management, athlete eligibility and anti-doping measures.  Its license-holders are bound by the UCI Anti-Doping Rules ("UCI ADR").

13.     Country-specific National Olympic Committees ("NOCs") oversee each country's participation in the Olympics.  The United States Olympic Committee ("USOC")—a federally-chartered, nonprofit corporation—is the United States' NOC. Below the USOC are separate National Governing Bodies ("NGBs") for each Olympic sport.  The United States' NGB for cycling is USA Cycling.

**Anti-Doping Organizations for Sport**

14.      Until 1999, the individual IFs, NOCs, and NGBs were responsible for creating and implementing anti-doping regimes within their respective jurisdictions.  In 1999, the World Anti-Doping Agency ("WADA") was created, with the goal of harmonizing anti-doping rules, and the implementation of those rules, across all sports and nations involved in the Olympic Games.  This new anti-doping regime called for the creation of national anti-doping organizations ("NADOs") for each country, to conduct drug testing and results management.

15.      USADA was created at the behest of the United States Government in 2000, and in 2001 Congress recognized USADA as the official NADO for the United States.  In 2003, WADA unveiled its first set of anti-doping rules, the World Anti-Doping Code ("WADA Code").  The first iteration of the WADA Code went into effect at the 2004 Summer Olympic Games.  USADA is a signatory to the WADA Code, thereby committing to implement and enforce the WADA Code with respect to its jurisdiction.

**Comprehensive Drug Testing of Mr. Armstrong**

16.      Throughout his twenty-plus year professional career, Mr. Armstrong has been subjected to 500 to 600 drug tests without a single positive test.  Mr. Armstrong's drug testing has included urine testing and blood testing.  These tests have been conducted by a variety of anti-doping agencies, including USADA.  These agencies have tested for substances professional athletes are banned from using, including erythropoetin ("EPO"), anabolic steroids, and testosterone.

## Defendants' Current Charges against Mr. Armstrong

17.     Defendants now seek to ban Mr. Armstrong from competitive sports for the rest of his life and to strip him of his seven *Tour de France* titles based, not on positive drug tests, but instead on what is referred to as a "non-analytical positive"—*i.e.* allegations not supported by a positive drug test.  On June 12, 2012 Mr. Armstrong received notice of a request sent by Defendants to the USADA Anti-Doping Review Board to authorize formal action against Mr. Armstrong and five other individuals for alleged anti-doping violations over a 14-year period from 1998 through the present, as well as allegations about events prior to 1996, more than sixteen years ago.  Defendants' allegations lacked specificity of precise dates or years.  Defendants claim that violations occurred over the course of an extraordinarily broad, sixteen-year period that stretches from the present to before 1996.  Alleged violations involve four different teams; however, Defendants charged only one rider: Mr. Armstrong.

18.     USADA's Review Board issued a conclusory approval of the charges on June 27, 2012, and Defendants' charging letter was issued on June 28, 2012.

19.     Defendants' charging letter of June 28, 2012 advised Mr. Armstrong that he must elect either to accept Defendants' sanctions, or be forced to agree to proceed to arbitration with USADA.  Those sanctions include a lifetime ban on his participation in elite international and domestic competitive sports and the stripping of his cycling achievements, as well as all awards and prizes associated therewith.  If Mr. Armstrong does not agree to arbitration, then Defendants will automatically and unilaterally impose these sanctions.

20.     Defendants sent a copy of the June 12, 2012 notice of charges to the WTC, and, as they intended, Mr. Armstrong was suspended from competing in WTC events, including a June 24, 2012 triathlon in France for which Mr. Armstrong was training. Also, as Defendants were aware and intended, Mr. Armstrong will be banned from further WTC competitions if USADA's sanctions are imposed.

### Mr. Armstrong Has No Valid, Legal or Enforceable Arbitration Agreement With USADA and Jurisdiction Rests With UCI

21.     Defendants sent the charging letter in this case on June 12, 2012, over a year after Mr. Armstrong's retirement from competitive cycling in February 2011.

22.     Prior to his retirement, Mr. Armstrong was eligible to compete in sanctioned cycling events through yearly international licenses he obtained from UCI. Mr. Armstrong obtained a UCI international license every year he competed in the *Tour de France* or any other international cycling events that required such a license.  The International License Applications with UCI that Mr. Armstrong signed constituted a contract.  USADA is neither a signatory nor a party to these contracts.

23.     Defendants purport to charge, and exercise jurisdiction over, Mr. Armstrong pursuant to the UCI Anti-Doping Rules ("UCI ADR") in effect during the period between 1999 and 2012.

24.     Under the UCI ADR, however, Defendants have no jurisdiction to assert the charges brought against Mr. Armstrong, and Defendants have no agreement to arbitrate these disciplinary proceedings with Mr. Armstrong.

25.     Under UCI ADR, because Mr. Armstrong retired from cycling before Defendants initiated the charges against him, the organization that had jurisdiction over

him during the time of the alleged violations has jurisdiction to determine whether to proceed against Mr. Armstrong.  That organization is UCI, not USADA.

26.     Although Defendants purport to bring charges against Mr. Armstrong for the period between 1996 and 2005, Mr. Armstrong's license agreements with UCI prior to 2004 made no reference to USADA and contained no agreement conferring any authority on USADA.  Similarly, prior to August 13, 2004, UCI's ADR conferred no authority on USADA.

27.     After August 13, 2004, UCI continued to retain jurisdiction over Doping Control (including investigations, charges, and hearings) relating to testing at international events and testing performed by UCI outside of competition. The charges brought against Mr. Armstrong involve a 2001 test conducted at an international event, as well as testing done by UCI in 2009 and 2010.  UCI has not brought charges against Mr. Armstrong relating to those tests, and indeed has determined that those tests did not contain any evidence of purported doping.

28.     Defendants also lack jurisdiction to assert the charges against Mr. Armstrong because the charges were "discovered" within the meaning of the UCI ADR by UCI, not Defendants, by virtue of an e-mail from Floyd Landis (a UCI "License-Holder") sent to USA Cycling (a "member Federation" of UCI).

29.     Finally, UCI never delegated its jurisdiction to USADA.  UCI cannot, under the UCI ADR, delegate its authority until UCI has independently concluded that it is likely that a violation of the UCI ADR has occurred.  In this case, none of the requirements for a delegation of authority has been satisfied.  UCI has not determined for itself, based on an independent review of the evidence, whether an anti-doping rule

violation has taken place; asserted that an anti-doping rule violation has taken place; expressly requested that USA Cycling (much less USADA) initiate disciplinary proceedings against Mr. Armstrong; or given notice to Mr. Armstrong of such a request, as required by the rules.  There has been, therefore, a failure of an essential condition precedent to delegation.

### USADA's Charges Were Brought In Violation of Its Own Rules

30.     Even assuming Defendants had jurisdiction to proceed, this Court can and should provide relief because the charges against Mr. Armstrong were brought in violation of USADA's own rules, the *Protocol for Olympic and Paralympic Movement Testing* (the "Protocol").

a.     First, the charges contravene USADA's statute of limitations. Because the charges were issued on June 28, 2012, the eight-year limitations period extends to June 28, 2004.  Yet, Defendants charge conduct allegedly occurring long before the limitations period.  It complains of doping "from before 1998" or "through 1996," and a cover up "[b]eginning in 1999."

b.     In addition, on information and belief, Defendants have provided improper inducements to witnesses, in violation of the governing rules. The WADA Code requires that any reduction of an athlete's period of ineligibility must take place only *after* charges have been brought and the period of ineligibility has been determined, and after affording UCI its notice and appeal rights.  Apart from violating the WADA Code, inducements to witnesses by Defendants raise serious concerns under federal criminal law of violations of the federal bribery statute, which criminalizes the exchange or offer of "anything of value" for sworn testimony given to an officer authorized by federal law

to receive it.  The hearings in which these athletes would testify occur before officers authorized by the laws of the United States to hear evidence.

        c.      Finally, Defendants violated the rules by circumventing the process of its own Review Board that is required to act as a check upon abusive charging decisions. Under the USADA Protocol, the Review Board is to serve as a grand-jury like screening mechanism to prevent the agency from asserting meritless or improvident charges by providing for evaluation of the evidence by neutral experts, with an opportunity for the athlete to receive the evidence when the Board receives it respond. As to Mr. Armstrong, however, the Review Board was composed of members hand-picked by Defendant Tygart, was not provided with the evidence allegedly supporting the charges to review, engaged in ex parte communications with Defendants, and failed to issue a considered evaluation of the evidence.  In addition, Mr. Armstrong was not given adequate notice of the charges through the charging letter, was not provided with the evidence upon which the charges were based, and was not given an adequate opportunity to respond.  Finally, Mr. Armstrong's objection to jurisdiction and response to the charges were not given meaningful consideration by the review Board.

### USADA Brought Its Charges Against Mr. Armstrong Under Color Of The State And Its Conduct, As Applied to Mr. Armstrong, Is Unconstitutional

     31.     The federal government was instrumental in creating USADA in October 2000.  USADA receives approximately two-thirds of its funding directly from the federal government.

     32.     Defendants exercise powers traditionally exclusively reserved to the State. In July 2008, two-thirds of the United States Senate ratified the International Convention Against Doping in Sport ("ICADIS"), an Article II international treaty, and delegated

responsibility to USADA for the United States' compliance with that treaty.  In short, Congress relies on USADA to fulfill its affirmative obligations under an Article II treaty.

33.    Because USADA is recognized by Congress as a national organization to carry out an anti-doping drug testing program for Olympic and Paralympic sports, is acting as a regulator under an express grant of power from Congress, enforces the United States' obligations under an international treaty, and is predominantly funded by the United States, USADA performs public functions and is therefore a state actor.

34.    Furthermore, in bringing charges against Mr. Armstrong, Defendants have been willful participants in joint activity with the State or its agents.  Here, Defendants' investigators have worked for two years in concert with multiple agencies of the United States to investigate and bring criminal and anti-doping charges against Mr. Armstrong.

35.    Defendants' charges against Mr. Armstrong were brought based on the work of a  joint investigation of alleged doping in cycling by USADA, the Federal Bureau of Investigation ("FBI"), the DOJ's Office of Criminal Investigation, the Food and Drug Administration ("FDA"), and the United States Postal Service Office of Inspector General.  All five agencies worked hand-in-hand during the investigation.

36.    A private party that works alongside a government agency in an investigative capacity is a state actor.  Defendants took advantage of this cooperative relationship to use the substantial resources of the federal government, including subpoenas, threats of criminal prosecution and use of a federal grand jury, in furtherance of the investigation.

37.    Defendants interviewed witnesses jointly with the DOJ and other federal agencies, shared information and resources, and acted in concert. For example, in

November 2010, representatives of USADA (including CEO Travis Tygart), DOJ, and

FDA traveled together to France to meet with European authorities at the offices of

INTERPOL.  In short, USADA acted as an instrumentality of the federal government

conducting a joint federal investigation along with several other government agencies

with a common purpose of both the government and USADA—to bring charges against

Mr. Armstrong.  Defendants used USADA's ability to sanction cyclists to assist the

criminal investigation.

38.     In February 2012, DOJ announced that it had ended its investigation of

Mr. Armstrong and would not bring criminal charges.

39.     Four months later, Defendants announced its current charges against Mr.

Armstrong.  Upon information and belief, Defendants are using the evidence they

gathered along with the FBI, FDA, DOJ and their investigators and prosecutors in the

course of a grand jury investigation against Mr. Armstrong.

**USADA'S Procedures in this Matter Do Not Comport With Due Process**

40.     Defendants' arbitration process, which was designed primarily for

handling cases involving positive test results, does not afford requisite due process for a

situation like this one, in which there is no positive test result, and where Defendants

have worked in concert with the United States government to investigate the athlete.

41.     In this unique case, Defendants seek to leverage the government's

unparalleled financial and investigative resources to charge Mr. Armstrong and

potentially strip him of his livelihood and the considerable awards he has earned.  It

would deprive Mr. Armstrong of these vital liberty and property rights without the basic

procedural protections to which any defendant is entitled in a court proceeding—or even

in a traditional arbitration conducted according to the rules of the American Arbitration Association.

42.     Mr. Armstrong has had no right to a charging document that fairly informs him of the claims against which he must defend.  Defendants' charging document does not offer sufficient notice to enable Mr. Armstrong to defend himself.  Indeed, the document does not even inform Mr. Armstrong of when any particular violation allegedly occurred, making it impossible for him even to know what version of the rules might apply.

43.     Mr. Armstrong would also have no guarantee of a hearing by the tribunal with final say over Defendants' charges.  As discussed above, the result of any USADA hearing is appealable to CAS, which supposedly conducts a *de novo* review.  But once the matter proceeds to CAS, that arbitration panel need not hold a hearing at all:  "After consulting the parties, the Panel ***may***, if it deems itself to be sufficiently well informed, ***decide not to hold a hearing***." *(emphasis supplied)*.

44.     Mr. Armstrong would also have no right to cross-examine witnesses and confront his accusers.  Defendants' have, in past proceedings, permitted a witness to refuse to answer questions on cross-examination from an athlete's attorney, and yet denied respondent's motion to strike his testimony.  The panel can also simply accept testimony by affidavit, preventing Mr. Armstrong from confronting his accusers.

45.     In addition, Mr. Armstrong would have no right to an impartial arbitration panel.  The pool of available arbitrators includes only CAS Arbitrators who are also citizens of the United States.  That pool of arbitrators is chosen by sports governing bodies, without any official participation by athletes.  Arbitrators are appointed for

renewable four year terms and CAS may elect to deny a renewal. The USADA arbitrators are paid for by the USOC. As a result, arbitrators are incentivized to side with USADA. Of the thirty eligible arbitrators, only four have ever voted in favor of an athlete in a proceeding in which the athlete won, and athletes have won a total of only three USADA proceedings, since USADA's creation in 2000.

46.     In a USADA arbitration, Mr. Armstrong would also have no right to exculpatory evidence, even though Defendants obviously have such evidence and even though DOJ would have been required to produce it under *Brady v. Maryland*, 373 U.S. 83 (1963), if it had pursued criminal charges.

47.     Similarly, Mr. Armstrong would have no right to disclosure of cooperation agreements or inducements provided by Defendants to their cooperating witnesses, even though USADA has made such agreements and provided such inducements (in violation of the WADA Code) and even though DOJ would have been required to produce this information under *Giglio v. United States*, 405 U.S. 150 (1972), if it had pursued criminal charges.

48.     Likewise, Defendants do not afford Mr. Armstrong the right to obtain investigative witness statements, even though there must be such statements and even though DOJ would have been required to produce them under the Jencks Act, 18 U.S.C. § 3500 (2006), if it had pursued criminal charges. Absent such statements, Mr. Armstrong's counsel will lack the ability, fundamental to any trial lawyer, to effectively cross-examine his accusers.

49.     There is also no right to obtain full disclosure of laboratory analyses, and no right to an impartial assessment of whether laboratory testing procedures are accurate.

14

The WADA code includes a presumption that laboratory testing procedures are accurate. Even if a laboratory testing procedure is found to be improper, the arbitration panel can consider it if the arbitrator is comfortably satisfied that the improper procedure did not cause the adverse finding.

50.     Finally, Mr. Armstrong has no right to review by a United States court of his claims under USADA's procedures.  CAS is the exclusive appellate tribunal for any USADA arbitration, and the only appeal from a CAS decision is to the courts of Switzerland.  Thus, Defendants, acting under color of state law, assert the right to bring an action against Mr. Armstrong, a United States athlete, who lives in the United States and is accused of taking actions within the United States, without the decision being subject to review by a United States Court.  This would be so even if the proceeding violates Mr. Armstrong's rights under the United States Constitution.

51.     Defendants' June 28 charge now seeks to require Mr. Armstrong to make a Hobson's Choice: agree (even though there exists no agreement between Armstrong and USADA) to participate in an arbitration hearing concerning charges spanning at least 16 years over which USADA has no jurisdiction, and in a forum lacking critical due process guarantees that is certain to result in an adverse decision, and thereby forfeit his claim that the tribunal has no jurisdiction, and allow the result to be appealed to another infirm forum over which USADA will argue United States courts lack jurisdiction, or forgo any type of hearing at all and accept severe sanctions.  Either choice is certain to result in Mr. Armstrong incurring a lifetime suspension from international and elite domestic competition, the stripping of his seven *Tour de France* titles, and irreparable reputational damage.

52.     It is in the public interest that USADA be required to follow the rules governing its jurisdiction and conduct, and that athletes receive a "fair resolution of anti-doping matters."  The public should be able to trust in the legitimacy of the anti-doping system, and has an interest in ensuring that the system for adjudicating allegations of athletic doping is fair and meets procedural due process requirements.  Additionally, it is in the public interest that government actors abide by procedural due process protections for those accused of wrong-doing and threatened, as a result, with the loss of their livelihood.  Moreover, granting the relief requested by Armstrong will result in no harm to the public interest.

## COUNT I

### (Declaratory Judgment - Defendants USADA and Tygart)

53.     Mr. Armstrong repeats and re-alleges the allegations of paragraphs 1 to 52, as set forth above, and incorporate them by reference, as though set forth herein.

54.     Plaintiff brings this suit for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202.

55.     In particular, Mr. Armstrong asks this Court to enter Judgment in favor of Plaintiff and against Defendants USADA and Tygart and declare:

a.     Mr. Armstrong has no valid, legal or enforceable arbitration agreement with USADA that authorizes USADA to compel or assert the right to arbitration with respect to the USADA charges against Mr. Armstrong in the June 12, 2012 and June 28, 2012 letters in that:

i.     USADA is not a signatory to Armstrong's agreement with the UCI, which is the operative agreement in this case.  The obligations between Armstrong

16

and UCI are wholly independent of USADA and it is UCI which has original jurisdiction over the claims asserted by USADA.

      ii.      There has been a failure of an essential condition precedent to the institution of the proposed procedures by USADA.  Specifically, disposition by UCI as provided in its ADR procedures is an essential precondition to any proceeding or charge by USADA.

      iii.      The alleged arbitration agreement is unconscionable.

      iv.      The USADA arbitration will not provide remedies equal to those available in court in that Armstrong will be deprived of substantive rights available in Court.

      v.      Armstrong and USADA did not have a meeting of the minds on the alleged arbitration agreement.  To the contrary, Armstrong's agreement is with UCI, not USADA.

      vi.      By limiting the choice of arbitrators and training its own arbitrators, USADA has retained essentially the exclusive right to select the potential arbitrators in this matter.

      vii.      There is inadequate consideration for the alleged arbitration agreement.

b.      Defendants lack jurisdiction to bring the charges asserted against Mr. Armstrong in the June 12, 2012 and asserted against Mr. Armstrong in the June 12, 2012 and June 28, 2012 letter.

c.      Defendants have violated USADA's own rules and bring charges improperly against Mr. Armstrong;

d.    The charges asserted against Mr. Armstrong are barred by the applicable statute of limitations.

e.    Defendants are state actors and asserted charges against Mr. Armstrong in violation of the Due Process Clause of the United States Constitution, and common law principles of due process.

f.    Defendants are state actors and the arbitration and other processes to which Defendants assert the right to subject Mr. Armstrong are in violation of the Due Process Clause of the United States Constitution, and common law principles of due process.

## COUNT II

(Tortious Interference With Contract – Defendant USADA)

56.    Mr. Armstrong repeats and re-alleges the allegations of paragraphs 1 to 52, as set forth above, and incorporates them by reference, as though set forth herein.

57.    At all times relevant to this Complaint, Mr. Armstrong had a contractual and business relationship with UCI that governs the matters over which Defendants now purport to charge Mr. Armstrong, including but not limited to through Mr. Armstrong's International License Application with UCI.

58.    Mr. Armstrong's contractual and business relationship with UCI included, but is not limited to, UCI's control over results management, UCI's exclusive jurisdiction over alleged doping violations by Mr. Armstrong prior to 2005; its exclusive jurisdiction over the drug tests upon which USADA relies including tests in 2001 and 2009–10; its authority to delegate disciplinary responsibility to USA Cycling; its duty to review proposed disciplinary proceedings against its license-holders; its obligation to review the

18

evidence and determine whether it constitutes reliable means of proving an anti-doping violation before any anti-doping charge is brought against Mr. Armstrong; UCI's exclusive jurisdiction and obligation to determine whether to authorize any disciplinary proceedings against Mr. Armstrong; and UCI's obligation to abide by the statute of limitations applicable to any alleged charge against Mr. Armstrong.

59.     USADA has proceeded with its charges in contravention of the UCI rules, thereby interfering with UCI's performance of its obligations, including, *inter alia*, its commitment to abide by the eight-year statute of limitations

60.     The charges against Mr. Armstrong and actions leading to them have interfered and will continue to interfere with Mr. Armstrong's contractual and business relations with UCI.

61.     As a result of USADA's interference, USADA has caused UCI to be in breach of its obligations to Mr. Armstrong.

62.     USADA had actual knowledge of Mr. Armstrong's contract and business relationship with UCI.

63.     USADA's interference with Mr. Armstrong's business and contractual relationship with UCI was willful and intentional.  USADA desired to cause the consequences of its interference with the business and contractual relationship with UCI and believed that the consequences were substantially certain to result from it.

64.     USADA's willful and intentional acts have proximately caused and are continuing to cause damage to Mr. Armstrong.

65.     USADA's actions have caused, and unless enjoined will continue to cause irreparable harm to Mr. Armstrong for which there is no adequate remedy at law.

## COUNT III

(Fifth Amendment Procedural Due Process – Defendants USADA and Tygart)

66.     Mr. Armstrong repeats and re-alleges the allegations of paragraphs 1 to 52, as set forth above, and incorporates them by reference, as though set forth herein.

67.     Defendants act under color of the State in that, among other things, the United States government was instrumental in the creation of USADA, relies on USADA to carry out its obligations under an international treaty, USADA acts as a regulator under an express grant of power from Congress, the federal government provides a substantial portion of USADA's funding, and USADA otherwise fulfills functions ordinarily reserved exclusively to the State.

69.     Defendants further act under color of state law in that, among other things, the charges brought against Mr. Armstrong by Defendants are based on evidence gathered as part of a joint investigation with the United States government in which Defendants were willful participants in joint coordinated activity with the State and its agents designed to develop and support the charges Defendants now seek to assert against Mr. Armstrong.  The United States government provides significant encouragement to Defendants, and the Defendants' functions are entwined with the State policies and activities.

70.     Defendants may not deprive Mr. Armstrong of liberty or property without abiding by the Due Process Clause of the Fifth Amendment to the United States Constitution.

71.     Defendants' actions threaten proximate harm to Mr. Armstrong's valuable property interests, including but not limited to his participation in his profession of competitive athletic competition and loss of cycling achievements and titles.

72.     Defendants' conduct already has led to Mr. Armstrong's suspension from all triathlon competition as a result of Defendants' decision to share copies of their unauthorized allegations with the World Triathlon Corporation, the International Triathlon Union, and USA Triathlon.  Defendants have undertaken to ban Mr. Armstrong from competition for life, disqualify his competitive results, seize his medals and prizes, and impose upon him costs and fines, without according Due Process to Mr. Armstrong.

73.     Defendants have violated, and unless enjoined, will continue to be in violation of Mr. Armstrong's Due Process rights for the reasons set forth above, including but not limited to the infirmities of USADA's arbitration procedures, the lack of a charging document that fairly informs Mr. Armstrong of the charges against which he must defend, the absence of a right to cross-examine and confront his accusers, the failure to produce exculpatory evidence, the failure to disclose cooperation agreements or inducements provided by Defendants to witnesses, the failure to provide investigative witness statements, the failure to provide full disclosure of laboratory analysis, the lack of impartial assessment of the accuracy of laboratory testing procedures, and the absence of a right to a hearing upon appeal to CAS.

74.     The violations of Constitutional due process standards applicable here are continuing and have caused and  unless enjoined, will continue to cause irreparable harm to Mr. Armstrong for which there is no adequate remedy at law.

## COUNT IV

(Common Law Due Process – Defendants USADA and Tygart)

75.    Mr. Armstrong repeats and re-alleges the allegations of paragraphs 1 to 52, as set forth above, and incorporates them by reference, as though set forth herein.

76.    Defendants' actions threaten proximate harm to Mr. Armstrong's valuable property interests, including but not limited to his participation in his profession of competitive athletic competition and loss of cycling achievements and titles.

77.    Prior to his retirement from competitive cycling, Mr. Armstrong was required to become a license-holder of UCI, the international governing body for cycling, in order to compete and to earn a livelihood.  As a condition of his license, Mr. Armstrong was required to agree to comply with, and to be bound by, UCI's anti-doping regulations.

78.    Defendants purport to derive authority to bring disciplinary proceedings against Mr. Armstrong from UCI's rules.  In bringing charges against Mr. Armstrong, Defendants have violated, and will continue to be in violation of UCI's rules for the reasons set forth above, including but not limited to lack of jurisdiction under UCI's rules to assert the charges brought against Mr. Armstrong, lack of jurisdiction over UCI test results in 2001 and 2009–2010, lack of jurisdiction over alleged violations prior to August 2005 that do not involve a positive test; UCI has not independently reviewed the evidence, determined that there is reliable evidence upon which the matter could proceed, or determined that Mr. Armstrong is in likely violation of any anti-doping regulations within its jurisdiction, and has not delegated any disciplinary proceedings to USADA in connection with any such alleged violations.

79.     Defendants' conspiracy charges against Mr. Armstrong and the bringing of a consolidated action against six respondents, including other respondents as to whom USADA lacks jurisdiction, are also unauthorized under UCI's rules, and violate common law principles of due process.

80.     In bringing charges against Mr. Armstrong, Defendants have violated, and will continue to be in violation of USADA's rules, including, but not limited to, the statute of limitations, the Review Board process, procurement of unreliable evidence from witnesses by improper means, and agreements as to disciplinary actions relating to witnesses.

81.     Defendants' actions and continuing course of conduct as to Mr. Armstrong violate common law principles of due process.

82.     The violations of common law due process standards applicable here have caused and, unless enjoined, will continue to cause irreparable harm to Mr. Armstrong for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Armstrong seeks the following relief in this action

a.      Temporary, preliminary and permanent injunctive relief against Defendants USADA and Tygart staying the asserted requirement that Mr. Armstrong elect, by July 14, 2012, or any other date, arbitration of the June 12, 2012 and June 28, 2012  charges, or accept the sanctions specified in those documents;

b.      Temporary, preliminary and permanent injunctive relief enjoining Defendants USADA and Tygart from imposing any sanction, or imposing any costs or fines on Mr. Armstrong, or taking any action with respect to disqualification of

competitive results, awards, titles, medals, or prizes held by Mr. Armstrong, based on the allegations in the June 12, 2012 and June 28, 2012 letters;

      c.      Temporary, preliminary and permanent injunctive relief enjoining Defendants USADA and Tygart from all other actions in furtherance of pursuing doping charges, imposing sanctions, or taking any action with respect to disqualification of competitive results, awards, titles, medals, or prizes held by Mr. Armstrong based on the allegations from the June 12, 2012 and June 28, 2012 letters;

      d.      A declaratory judgment against Defendants USADA and Tygart in favor of Mr. Armstrong that Defendants lacks jurisdiction to bring the charges asserted against Mr. Armstrong in the June 12, 2012 and June 28, 2012 letters;

      e.      A declaratory judgment against USADA and Tygart in favor of Mr. Armstrong on all respects requested in Paragraph 55 (a)-(f) above;

      f.      As to Count III, damages against Defendant USADA in favor of Mr. Armstrong in an amount to be proven at trial;

      g.      As to all Counts, costs associated with this action; and

      h.      As to all Counts, such other and further relief to which Mr. Armstrong may be entitled.

## **JURY DEMAND**

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Lance Armstrong demands a trial by jury in this action of all issues so triable.

DATED:  July 10, 2012

Respectfully submitted,

    /s/ Timothy J. Herman
Timothy J. Herman (Bar No. 09513700)
Sean E. Breen (Bar No. 00783715)
HOWRY BREEN & HERMAN LLP
1900 Pearl Street
Austin, Texas  78705
Phone:  (512) 474-7300
Fax:  (512) 474-8557
therman@howrybreen.com

Mark S. Levinstein (*pro hac vice* pending)
Marcie R. Ziegler (*pro hac vice* pending)
Ana C. Reyes (*pro hac vice* pending)
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, DC  20005
Phone:  (202) 434-5000
Fax:  (202) 434-5029
mlevinstein@wc.com

Robert D. Luskin (*pro hac vice* pending)
Patrick J. Slevin (*pro hac vice* pending)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
Phone:  (202) 457-6000
Fax:  (202) 457-6315
rluskin@pattonboggs.com

*Attorneys for Plaintiff Lance Armstrong*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10 th day of July, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and that I have served a true and correct copy of the foregoing document on counsel listed below via email:

William Bock, III
General Counsel
United States Anti-Doping Agency
555 Tech Center Drive, Suite 200
Colorado Springs CO  80919
wbock@usada.orgwbock@usada.org