**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

LANCE ARMSTRONG,

      *Plaintiff,*

*v.*

UNITED STATES ANTI-DOPING
AGENCY and TRAVIS TYGART, In His
Official Capacity as Chief Executive Officer
of the United States Anti-Doping Agency,

      *Defendants.*

Civ. Action No. 1:12-cv-00606-SS

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS OR STAY
UNDER THE FEDERAL ARBITRATION ACT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

TABLE OF ABBREVIATED TERMS ................................................................................. v

I.     INTRODUCTION ...................................................................................................... 1

II.    THE COURT LACKS SUBJECT MATTER JURISDICTION
       OVER PLAINTIFF'S CLAIMS. ................................................................................ 2

       A.     Standard of Review ........................................................................................ 2

       B.     Factual Background Relating to Lack of Subject Matter Jurisdiction ................... 3

              1.     Doping control framework for Olympic movement
                     sports in the United States ..................................................................... 3

              2.     Application of the USADA Protocol to Armstrong ..................................... 5

              3.     USADA's presentation of charges .......................................................... 7

              4.     The long-standing role of arbitration in Olympic sport
                     eligibility disputes ................................................................................ 8

       C.     The Court Lacks Subject Matter Jurisdiction Because the Sports Act
              Preempts Plaintiff's Claims. ............................................................................ 9

       D.     Alternatively, the Court Lacks Subject Matter Jurisdiction Because
              Plaintiff Has Failed to Exhaust Administrative Remedies. ................................ 11

       E.     Armstrong's Myriad Complaints About the Arbitral Process
              Must be Arbitrated.  In the Alternative, They Fail On Their Merits. ................... 13

III.   ALTERNATIVELY, USADA IS ENTITLED TO A DISMISSAL OR
       STAY OF PROCEEDINGS IN THIS COURT PURSUANT TO
       SECTION 3 OF THE FEDERAL ARBITRATION ACT ................................................ 15

IV.    CONCLUSION AND PRAYER .................................................................................. 17

## **TABLE OF AUTHORITIES**

**Cases**

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ........................................... 17

*Barnes v. Int'l Amateur Athletic Fed'n*, 862 F. Supp. 1537 (S.D. W.Va. 1993) .......... 9, 10, 11, 12

*Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys.*,
   No. 08-4578, 2009 WL 86704 (E.D. La., Jan. 12, 2009) .................................................. 17

*Brinston vs. Koppers Indus.*, 538 F. Supp. 2d 969 (W.D. Tex. 2008) ............................................ 2

*Cantrell v. United States Soccer Fed'n*, 924 P.2d 789 (Okla. Ct. App. 1996) ........................ 9, 10

*Coenen v. R.W. Pressprich & Co., Inc.*, 453 F.2d 1209 (2d Cir. 1972)........................................ 15

*Devereaux v. Amateur Softball Ass'n of Am.*, 768 F. Supp. 618 (S.D. Ohio 1991)..................... 11

*DK Joint Venture 1 v. Weyand*, 649 F.3d 310 (5th Cir. 2011)........................................................ 17

*Dolan v. U.S. Equestrian Team, Inc.*, 608 A.2d 434, (N.J. Super. Ct., App. Div. 1992) ............ 12

*Garrett v. Circuit City Stores, Inc.*, 449 F. 3d 672 (5th Cir. 2006)............................................... 13

*Graham v. U.S. Anti-Doping Agency*,  No. 5:10–CV–194–F,
   2011 WL 1261321 (E.D.N.C. 2011)...................................................................... 11 n. 40

*Halliburton Energy Servs.*, Inc. *v. BJ Servs. Co.*, No. 2:08-cv-475-TJW,
   2010 WL 2991031 (E.D. Tex. July 28, 2010) .................................................................. 16

*Jacobs v. USA Track and Field*, 374 F. 3d 85 (2d Cir. 2004)....................................................... 16

*JD Wind 1, LLC vs. Smitherman*, No. A-09-CA-917-SS,
   2010 WL 3703119 (W.D. Tex. Sept. 14, 2010)................................................................. 3

*Michels v. USOC*, 741 F.2d 155 (7th Cir. 1984).......................................................................... 9

*Montez vs. Dep't of Navy*, 392 F.3d 147 (5th Cir. 2004) ................................................................. 3

*Netumar Lines v. General Cocoa Co.*, No. 96 Civ. 036,
   1997 WL 401668 (S.D.N.Y. July 16, 1997) .................................................................... 16

*PaineWebber, Inc. v. Hartmann,* 921 F.2d 507 (3d Cir. 1990) ..................................................... 16

*Plucknett v. The Athletics Congress*, No. 6820545 (N.D. Cal. 1982)........................................... 13

*Punzalan v. FDIC*, 633 F. Supp. 2d 406 (W.D. Tex. 2009) ........................................................ 11

iii

*Reynolds v. Athletics Cong. of the USA, Inc.*, No. C-2-91-0003,
    1991 WL 179760 (S.D. Ohio Mar. 19, 1991) .................................................. 11

*Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580 (7th Cir. 2001) ............................................. 10

*Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236 (S.D.N.Y.),
    *aff'd*, 80 Fed. Appx. 722 (2d Cir. 2003) ........................................ 15

*Walton-Floyd v. USOC*, 965 S.W.2d 35 (Tex. App.—Houston [1st Dist.] 1998, no pet.) .......... 10

**Statutes**

36 U.S.C. § 220501(b)(1) ............................................................................................. 4

36 U.S.C. § 220503, *et seq* ........................................................................................ 3

36 U.S.C. § 220503(8) ............................................................................................... 12

36 U.S.C. § 220505(c)(5) ........................................................................................... 12

36 U.S.C. § 220509(a) ............................................................................................... 12

36 U.S.C. § 220522(a)(4) ........................................................................................... 12

36 U.S.C. § 220522(a)(13) .......................................................................................... 12

36 U.S.C. § 220523(a) ............................................................................................... 10

## TABLE OF ABBREVIATED TERMS

| | |
|---|---|
| AAA | American Arbitration Association |
| ADRB | Anti-Doping Review Board |
| CAS | Court of Arbitration for Sport |
| IOC | International Olympic Committee |
| NGB | National Governing Body |
| RTP | Registered Testing Pool |
| UCI | International Cycling Union or Union Cycliste Internationale |
| USADA | United States Anti-Doping Agency |
| USOC | United States Olympic Committee |
| WADA | World Anti-Doping Agency |

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Section 3 of the Federal Arbitration Act, Defendants United States Anti-Doping Agency ("USADA") and Travis Tygart, in his official capacity as the Chief Executive Officer of USADA, respectfully submit this Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Motion to Dismiss or Stay Under the Federal Arbitration Act.

## I.    INTRODUCTION

Under the Ted Stevens Olympic and Amateur Sports Act ("Sports Act"), 36 U.S.C. § 220501, *et seq*, Congress has established arbitration as the exclusive forum for disputes relating to athlete eligibility in sports that are part of the Olympic movement, including cycling and triathlon.  As an elite athlete member of USA Cycling and USA Triathlon, Lance Armstrong is subject to this mandatory dispute resolution framework.  His claims, which attempt to bypass and enjoin the mandatory arbitration process, are preempted by the Sports Act.  By bringing suit before completing the available arbitral process, he has also failed to exhaust the administrative remedies afforded him by the Act.  The court lacks subject matter jurisdiction for both reasons.

With respect to USADA's alternative motion to dismiss or stay under Section 3 of the Federal Arbitration Act ("FAA"), undisputed facts show Armstrong agreed on multiple occasions to be bound by anti-doping rules applicable to competitors in cycling and triathlon in the United States.  He further agreed that any necessary hearing regarding a violation of these rules would be an arbitration under the USADA Protocol for Olympic and Paralympic Movement Testing ("USADA Protocol" or "Protocol") and pursuant to the American Arbitration Association ("AAA") Supplementary Procedures for the Arbitration of Olympic Sport Doping Disputes ("AAA Supplementary Procedures").

With no apparent regard for his prior commitments to be bound by the sport rules, and indeed silent as to many of the applicable rules[1], Armstrong asks this Court to enjoin the USADA adjudication process and prevent the enforcement of the anti-doping rules to which he agreed.  He would have this Court ignore both the applicability of the Sports Act and settled case law which confirm that (i) courts lack jurisdiction over controversies such as this, concerning athletic eligibility, and (ii) Armstrong's only recourse is binding arbitration.

The rules applicable to Armstrong are the same rules applicable to every other U.S. cyclist in the USADA registered testing pool (the "USADA RTP") and are identical in material respects to the rules applicable to the nearly 3,000 U.S. athletes from more than 40 Olympic movement sports[2] in the USADA RTP.  He attacks the legal process establishing USADA's jurisdiction over the members of U.S. sport national governing bodies ("NGBs"), a process repeatedly upheld by courts and supported by the USOC, NGBs and athletes for more than a decade.  USADA respectfully requests that the Court reject Armstrong's effort to create a new set of rules applicable only to him.[3]

## II.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS.

### A.   Standard of Review

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the district court to hear a case.  *Brinston vs. Koppers Indus.*, 538 F.

---

[1] Armstrong repeatedly refers to the UCI Anti-Doping Rules in his Amended Complaint as if those are the only rules which USADA is claiming he violated and the only rules by which USADA asserts jurisdiction.  The USADA's June 28, 2012, charging letter includes violations under rules of the United States Olympic Committee ("USOC"), USA Cycling, USADA and the World Anti-Doping Code.  As explained in this Motion, those rules—ignored in the Amended Complaint—also support USADA's jurisdiction over Armstrong.

[2] "Olympic movement sports" refers to those sports on the program of the Olympic Games.

[3] The Amended Complaint contains many inaccuracies and incomplete statements.  Exhibit 1 is a chart highlighting those inaccuracies.

Supp. 2d 969, 976 (W.D. Tex. 2008). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.* Therefore, Mr. Armstrong carries the burden to prove subject matter jurisdiction.

In evaluating a challenge to subject matter jurisdiction, "the Court is free to weigh the evidence and resolve factual disputes so it may be satisfied jurisdiction is proper." *JD Wind 1, LLC vs. Smitherman*, No. A-09-CA-917-SS, 2010 WL 3703119, at *4 (W.D. Tex. Sept. 14, 2010), *citing Montez vs. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). For this inquiry, "the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "Dismissal is warranted if Plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction." *Id.*

**B.    Factual Background Relating to Lack of Subject Matter Jurisdiction[4]**

**1.    Doping control framework for Olympic movement sports in the United States**

The USOC, USA Cycling and USADA, along with other entities, share responsibility for doping control in the sport of cycling in the United States.

The USOC is a federally chartered nonprofit corporation created by Congress, *see* 36 U.S.C. § 220502 (1998), and recognized by the International Olympic Committee ("IOC") as the national Olympic committee for the United States. The Sports Act confirms the USOC's exclusive jurisdiction, directly or through its constituent national governing bodies, to coordinate and oversee amateur athletic activity in the United States. *See* 36 U.S.C. § 220503, *et seq.* The Sports Act defines "amateur athlete" broadly as "an athlete who meets the eligibility standards

---

[4] Attached are affidavits confirming these facts. *See* Ex. 2 (Dershowitz Affidavit); Ex. 3 (Tygart Affidavit); Ex. 4 (Tomlonovic Affidavit); Ex. 5 (Farrell Affidavit). Each PDF contains "bookmarks" that point to the particular documents referenced in the PDFs.

established by the national governing body or paralympic sports organization for the sport in which the athlete competes."  36 U.S.C. § 220501(b)(1).

Thus, despite the common understanding of the term "professional athlete," Kobe Bryant and LeBron James, who are presently competing for USA Basketball and consequently in the USADA RTP, are also "amateur" athletes within the meaning of the Sports Act.  Similarly, although he has earned more prize money and endorsement income than nearly any other competitor in sport, Lance Armstrong has been considered an "amateur athlete" within the meaning of the Sports Act nearly his entire career.

USA Cycling is a member of the USOC and is the national governing body for cycling in the United States.[5]  USA Cycling is also the United States member of the International Cycling Union or Union Cycliste Internationale ("UCI"), the sport's international governing body.[6]

USADA was formed in 2000 as an independent, private, not-for-profit corporation on the recommendation of the USOC.[7]  USADA assumed the anti-doping responsibilities previously shared by the USOC and its more than forty NGBs in the United States.[8]  The procedures applicable to drug testing, results management and adjudication of doping matters are set forth in the USADA Protocol and AAA Supplementary Procedures.[9]  When USADA was formed, the USOC adopted a bylaw requiring USA Cycling and other NGBs to "comply with the procedures pertaining to drug testing and adjudication of related doping offenses of the independent anti-

---

[5] Ex. 2 (Dershowitz Aff.) ¶ 4.

[6] Ex. 4 (Tomlonovic Aff.) at exhibit Y.

[7] Ex. 3 (Tygart Aff.) ¶¶ 4-5; Ex. 2 (Dershowitz Aff.) ¶ 7.

[8] Ex. 3 (Tygart Aff.) ¶ 4.

[9] Ex. 3 (Tygart Aff.) ¶ 8 & at exhibit C.

doping organization designated by the USOC [*i.e.*, USADA] to conduct drug testing."[10]   The USOC also required that each NGB "shall not have any anti-doping rule which is inconsistent with . . .the USADA Protocol," and that every athlete member of an NGB, by virtue of his or her membership in the NGB or inclusion in the USADA RTP, "agrees to be bound by the . . . the USADA Protocol."[11]

In compliance with the USOC's requirements, USA Cycling adopted regulations incorporating the USADA Protocol for all USA Cycling members.  These regulations further state, "All testing and results will be the responsibility of [USADA]" and "[a]ny investigation, prosecution, and hearings shall be the responsibility of [USADA]."[12]   USA Cycling's bylaws specify that every member athlete "shall be required to obtain a USA Cycling license in order to participate and shall be subject to USA Cycling regulations."[13]

### 2.      Application of the USADA Protocol to Armstrong

By virtue of his membership in USA Cycling, his obtaining an annual license through USA Cycling, and his inclusion in the USADA RTP, Armstrong agreed to be bound by the USADA Protocol.[14]   Armstrong and his counsel acknowledged this very fact in a prior arbitration proceeding.[15]

---

[10] Ex. 2 (Dershowitz Aff.) ¶ 10.

[11] Ex. 2 (Dershowitz Aff.) ¶¶ 11-12 & ex. F, G.

[12] Ex. 4 (Tomlonovic Affidavit)  ¶ 41 & ex. Q.

[13] Ex. 4 (Tomlonovic Affidavit)  ¶ 42 & ex. Y.¶

[14] Ex. 4 (Tomlonovic Affidavit)  ¶¶ 39-42; Ex. 2 (Dershowitz Aff.) ¶¶ 11-12 & ex. F.

[15] Ex. 3 (Tygart Aff.) ¶¶ 10-11.

In 2005, Armstrong was a claimant in a commercial arbitration against a company called SCA Promotions.[16]  To bolster his claim in the arbitration that he had never doped, Armstrong and his counsel requested and received an affidavit from USADA's then General Counsel, Travis Tygart.[17]  This affidavit, which Armstrong submitted to the arbitrators, states:

> All athletes in U.S. Olympic sports, including athlete members of U.S. national governing bodies such as USA Cycling, are subject to the programs of USADA. . . .To be recognized as a national federation by the UCI and the USOC, USA Cycling is legally required to follow the protocols of USADA. . .
>
> By being a licensed member of USA Cycling, like all licensed members, Mr. Lance Armstrong ("Mr. Armstrong") has an obligation to participate in the drug testing programs of USADA.  Further, since Mr. Armstrong competes internationally and is an elite U.S. cyclist, he is in the USA Cycling/USADA OOC drug testing pool. . .
>
> If USADA charges an athlete [with a doping violation], the athlete can contest the charge through arbitration before a panel of American Arbitration Association ("AAA") and the Court of Arbitration for Sport ("CAS") arbitrators.
>
> USADA also has the ability to proceed against an athlete for committing a doping violation not involving a positive test. . .[18]

Thus, Armstrong clearly understood he was subject to the USADA Protocol, including its results management and adjudication rules.[19]

Armstrong also has been included in the USADA RTP for most of the last twelve years.[20] He submits "whereabouts filings" with USADA every quarter and regularly receives

---

[16] Ex. 3 (Tygart Aff.) ¶ 10.

[17] Ex. 3 (Tygart Aff.) ¶ 10 & ex. E.  Mr. Tygart's willingness to provide an affidavit helpful to Armstrong's efforts in the SCA arbitration negates the repeated assertions in his exhibits that USADA somehow has a long-standing "vendetta" against him.

[18] Ex. 3 (Tygart Aff.) at ¶ 10 & ex. E.

[19] *See* Ex. 3 (Tygart Aff.) at ¶ 12.

[20] Ex. 4 (Tomlonovic Affidavit)  ¶¶ 10-34.

communications from USADA informing him the Protocol applies to him.[21]  Likewise, the rules

of the NGBs which he voluntarily joined subjected him to USADA's anti-doping rules and

arbitration process.[22]

### 3.        USADA's presentation of charges

By letter dated June 12, 2012, USADA notified Armstrong that, based on the evidence

described in the letter, it was initiating the process set forth in the Protocol for the specified anti-

doping rule violations.[23]   The letter stated the matter would be forwarded to the Anti-Doping

Review Board ("ADRB") for its consideration as provided in the USADA Protocol.[24]

Armstrong was invited to make written submittals to the ADRB on or before June 22, 2012,

which Armstrong did.[25]   The ADRB reviewed the written submittals and made its

recommendation to USADA.[26]

Upon receipt of the ADRB's recommendation, USADA sent Armstrong a letter dated

June 28, 2012.[27]   The letter informed Armstrong that USADA was charging him with specified

anti-doping rule violations, USADA would seek specified sanctions against him, and described

his procedural rights under the Protocol.[28]    As provided by the Protocol, the letter stated

Armstrong would have ten days, or until July 9, 2012, to respond to USADA's charges by either

---

[21] Ex. 4 (Tomlonovic Affidavit)  ¶¶ 18-19, 25, 30, 35.

[22] Ex. 4 (Tomlonovic Affidavit)  ¶¶ 39-44.  Armstrong's Amended Complaint focuses solely on the UCI Anti Doping Rules and ignores the USA Cycling, USOC and USADA rules to which he is also subject.

[23] Ex. 3 (Tygart Aff.) ¶ 31 & ex. I.

[24] *Id.*

[25] Ex. 3 (Tygart Aff.) ¶ 31.

[26] *Id.*

[27] Ex. 3 (Tygart Aff.) ¶ 32 & ex. J.

[28] *Id.*

accepting the sanctions or requesting an arbitration hearing before the AAA pursuant to the Protocol.[29]  Before the conclusion of the initial ten day period, Armstrong requested and was granted an additional five days, until July 14, 2012, within which to choose to proceed to arbitration.[30]  On July 9, 2012, Armstrong filed this lawsuit, and the parties subsequently agreed to extend the July 14, 2012 deadline by up to thirty days.[31]  The present deadline for Armstrong to choose arbitration expires on August 13, 2012.

## 4.     The long-standing role of arbitration in Olympic sport eligibility disputes

It has long been a principle of international Olympic sport that athlete eligibility disputes are resolved exclusively by arbitration.[32]  In the United States, this is embodied in the Sports Act which provides for AAA arbitration of disputes relating to athlete eligibility.[33]  When athletes become members of an NGB, such as USA Cycling or USA Triathlon, they agree to submit their eligibility disputes, including disputes concerning anti-doping rule violations, to arbitration.[34] The Olympic Charter also requires arbitration for all athlete eligibility disputes.[35]

The final arbitral body for disputes in Olympic movement sports, including cycling, is the Court of Arbitration for Sport ("CAS")  which is seated in Lausanne, Switzerland.  CAS handles all appeals of eligibility questions involving the Olympic Games, as well as a vast variety of

---

[29] *Id.*

[30] Ex. 3 (Tygart Aff.) ¶ 32.

[31] *Id.*

[32] Ex. 2 (Dershowitz Aff.) ¶ 17.

[33] Ex. 2 (Dershowitz Aff.) ¶ 16.

[34] Ex. 2 (Dershowitz Aff.) ¶¶ 11, 12, & 16.

[35] Ex. 2 (Dershowitz Aff.) ¶ 17.

other sports and commercial disputes.  An appeal of a CAS award is to the Swiss Federal Tribunal, the appellate court which functions as Switzerland's Supreme Court.[36]

### C.   The Court Lacks Subject Matter Jurisdiction Because the Sports Act Preempts Plaintiff's Claims.

Congress "made clear choices" to keep disputes involving the eligibility of amateur athletes "out of the federal courts" and within the alternative structure established by the Sports Act and USOC.  *Barnes v. Int'l Amateur Athletic Fed'n*, 862 F. Supp. 1537, 1544 (S.D. W.Va. 1993); *Cantrell v. United States Soccer Fed'n*, 924 P.2d 789, 792 (Okla. Ct. App. 1996) ("Congress, as a general matter, intended to leave questions of eligibility of those involved in amateur athletics to be resolved in accordance with the Act.").[37]  As Judge Posner explained in his oft-cited quote, "[a]ny doubt on this score can be dispelled by the reflection that there can be few less suitable bodies than the federal courts for determining the eligibility, or the procedures for determining eligibility, of athletes to participate in the Olympic Games."  *Michels v. USOC*, 741 F.2d 155, 159 (7th Cir. 1984) (Posner, J., concurring).  Congress specifically rejected proposed legislative provisions that would have created authority for the judicial system to become embroiled in issues related to amateur athletes, and Congress explicitly gave the USOC and NGBs exclusive jurisdiction over eligibility for competitions.  *Id.* at 158-59.[38]

Through the Sports Act, Congress vested the USOC and its NGBs with the authority to coordinate and regulate amateur athletics and sports organizations in the United States.  *Barnes*,

---

[36] Ex. 3 (Tygart Aff.) ¶ 30.

[37] The Sports Act was originally enacted as the Amateur Sports Act in 1950 at 36 U.S.C. 371, *et seq.*  It was amended and renumbered in October 1998.   The cases cited in this brief refer to provisions that are common to both versions of the Act.

[38]  In enacting the Sports Act, Congress decided against including a provision that would have provided special jurisdiction in district courts for certain injunctive proceedings and a provision that would have provided district courts with jurisdiction to enforce decisions of arbitrators.  *See Barnes*, 862 F. Supp. at 1544.

862 F. Supp. at 1543-44.  Pursuant to 36 U.S.C. § 220523(a), with respect to American cycling athletes, USA Cycling (as the NGB for cycling) "exercise[s] jurisdiction over international amateur athletic activities . . . and establishes procedures for determining eligibility standards for participation in competition."  Thus, under the Sports Act, the USOC and USA Cycling exercise exclusive jurisdiction, without court intervention, with regard to all matters related to Plaintiff's eligibility to compete in cycling.  *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 596 (7th Cir. 2001) ("the USOC has exclusive jurisdiction, under the Amateur Sports Act, to determine all matters pertaining to eligibility of athletes"), *cert. denied*, 534 U.S. 828 (2001).

In *Slaney*, world renowned track and field athlete Mary Decker Slaney brought a lawsuit against the USOC, claiming she had been damaged by the "unlawful manner in which the USOC conducts its doping program."  *Id.* at 596.  Examining each of Slaney's claims, the court held that "Slaney cannot escape the fact that her state-law claims, whether framed as breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation, are actually challenges to the method by which the USOC determines eligibility of athletes."  *Id.* at 596.  Relying on the broad rule that "the USOC has exclusive jurisdiction, under the Amateur Sports Act, to determine all matters pertaining to eligibility of athletes," the Seventh Circuit affirmed the dismissal of Slaney's claims.  *Id.* at 596; *see also Barnes*, 862 F. Supp. at 1543-1544 (dismissing athlete's claim against his NGB for damages arising from his two-year suspension for doping because claim "was expressly subject to resolution in accordance with the mandates of … the Act," in accordance with "congressional intent to establish a centralized, monolithic structure for coordinating amateur athletics").[39]

---

[39] State appellate courts likewise have held that the Act preempts an athlete's eligibility claims.  *Walton-Floyd v. USOC*, 965 S.W.2d 35, 40 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("To hold a common law duty exists outside the scope of the Act, thereby enabling an individual athlete to bring suit, threatens to override legislative intent and opens the door to inconsistent interpretations of the Act."); *Cantrell v. United States Soccer*

Congress did not intend for disputes regarding amateur athletic eligibility to be resolved in the courts, but instead provided that such claims were to be addressed in arbitration.[40]  As a result, this Court lacks subject matter jurisdiction over the Amended Complaint.

>   **D.     Alternatively, the Court Lacks Subject Matter Jurisdiction Because Plaintiff Has Failed to Exhaust Administrative Remedies.**

Because Plaintiff has failed to exhaust the available administrative remedies under the Sports Act and USADA Protocol to address the alleged anti-doping rule violations, the Amended Complaint must be dismissed for lack of subject matter jurisdiction.  *See, e.g.*, *Punzalan v. FDIC*, 633 F. Supp. 2d 406, 415 (W.D. Tex. 2009) ("[T]he Court likewise lacks subject-matter jurisdiction over those claims due to Plaintiffs' failure to administratively exhaust them").

Courts interpreting the Sports Act have held consistently a plaintiff must exhaust administrative remedies before pursuing any court action against a NGB.  *See Barnes*, 862 F. Supp. at 1544-46 (athlete's complaint against NGB dismissed for lack of subject matter jurisdiction for failure to exhaust administrative remedies under the Act); *Devereaux v. Amateur Softball Ass'n of Am.*, 768 F. Supp. 618, 623 (S.D. Ohio 1991) ("where administrative remedies are provided by federal law, a litigant must first exhaust those remedies before the dispute may be properly brought before the federal courts."); *see also Reynolds v. Athletics Cong. of the USA, Inc.*, No. C-2-91-0003, 1991 WL 179760, at *7 (S.D. Ohio Mar. 19, 1991) (suit challenging

---

*Fed.*, 924 P.2d 789, 792 (Okla. App. 1996) ("We find Congress, as a general matter, intended to leave questions of eligibility of those involved in amateur athletics to be resolved in accordance with the Act.").

[40] While *Slaney* and *Barnes* were decided prior to USADA's formation, their reasoning applies with equal force to preclude a court challenge to the USADA arbitration process which is authorized in the USOC's Bylaws and fulfills the Sports Act's requirement for binding arbitration to resolve eligibility disputes in the doping context. Whether the USOC or its NGBs handle doping cases, as in *Slaney*, or they delegate anti-doping functions to USADA, courts cannot provide a judicial forum for athletes to avoid the mandatory dispute resolution process established by the Sports Act.  *See Graham v. U.S. Anti-Doping Agency*,  No. 5:10–CV–194–F, 2011 WL 1261321, at *4-5 (E.D.N.C. 2011) (granting motion to dismiss pursuant Rule 12(b)(1) because the Sports Act precluded Plaintiff's constitutional and common law claims against USADA).

doping adjudication could not go forward because athlete had failed to exhaust administrative remedies), *vacated based on lack of subject matter jurisdiction for failure to exhaust*, 935 F.2d 270 (6th Cir. 1991); *Dolan v. U.S. Equestrian Team, Inc.*, 608 A.2d 434, 436-37 (N.J. Super. Ct., App. Div. 1992) (where USOC and NGB had adopted arbitration provisions consistent with the Sports Act, "there is nothing unfair about requiring plaintiff to exhaust her administrative remedies").

Consistent with the absence of a private cause of action, the Sports Act imposes on the USOC and its NGBs a requirement that they establish administrative procedures for, among other matters, the resolution of eligibility disputes between members and their NGBs. *See* 36 U.S.C. §§ 220503(8), 220505(c)(5), 220509(a), 220522(a)(4), 220522(a)(13). In the case of eligibility disputes over doping offenses, the USOC has enacted Bylaw 8.7(j), which requires that all NGBs "comply with the anti-doping policies of the [USOC] and with the policies and procedures of the independent anti-doping organization designated by the [USOC] to conduct drug testing and adjudicate anti-doping rule violations." In turn, USA Cycling and USA Triathlon have complied with the USOC Bylaw and National Anti-Doping Policies by adopting regulations incorporating the USADA Protocol for all members and requiring all American cycling and triathlon athletes to respect and comply with the USADA Protocol. See discussion above, section II.B(1).

Instead of availing himself of the required administrative remedy of an arbitration under the USADA Protocol (including the right to a *de novo* hearing before CAS), Armstrong filed this suit to avoid the arbitral forum. Armstrong's failure to exhaust his available administrative remedies leaves this Court without jurisdiction. *Barnes*, 862 F. Supp. at 1546 (failure to exhaust administrative remedies "renders the court without subject matter jurisdiction over [the]

claims"); *Reynolds*, 1991 WL 179760, at *5 (plaintiff is "relegated to the  . . .dispute resolution mechanisms, including arbitration, provided for under the Act and the USOC Constitution") (quoting *Plucknett v. The Athletics Congress*, No. 6820545 (N.D. Cal. 1982)).

###### E.   Armstrong's Myriad Complaints About the Arbitral Process Must be Arbitrated.  In the Alternative, They Fail On Their Merits.

In his Amended Complaint, Armstrong contends he should not be required to arbitrate under the USADA Protocol because arbitration does not afford him the same procedural rights available in criminal or civil judicial proceedings.  This "mistrust of the arbitral process" has been "undermined by [the Supreme Court's] recent arbitration decisions."  *Garrett v. Circuit City Stores, Inc*., 449 F. 3d 672, 680 (5th Cir. 2006), *citing Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 34 n.5 (1991).

In *Gilmer*, the court rejected the same "host of challenges" raised in this case:

> Gilmer also raises a host of challenges to the adequacy of arbitration procedures. Initially, we note that in our recent arbitration cases we have already rejected most of these arguments as insufficient to preclude arbitration of statutory claims. Such generalized attacks on arbitration "rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complaints," and as such, they are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes."

500 U.S. at 30, *quoting Rodriguez de Quijas v. Shearson/American Express, Inc*., 490 U.S. 477, 481 (1989).  With respect to the plaintiff's complaints about purported inadequacies of the arbitral forum in *Gilmer*, the Supreme Court felt it necessary to "address these arguments only briefly."  *Gilmer*, 500 U.S. at 30.  USADA will do the same here.

###### a.   Alleged bias of arbitrator pool as a whole

As did the plaintiff in *Gilmer*, Armstrong "speculates that the arbitration panels will be biased."  *Id*.  "However, 'we decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and

impartial arbitrators.'"  *Id.*, *quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473

U.S. 614, 634 (1985); s*ee also Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n.4 (2d

Cir. 1980) ("a district court cannot entertain an attack upon the qualifications or partiality of

arbitrators until after the conclusion of the arbitration and the rendition of an award.").

**b.     Limitations on discovery**

Armstrong asserts due process is lacking because discovery in arbitration may be more

limited than in federal courts.  "Although those procedures [in arbitration] might not be as

extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and

opportunity for review of the courtroom for the simplicity, informality, and expedition of

arbitration.'"  *Gilmer*, 500 U.S. at 31, *quoting Mitsubishi*, *supra*, at 628.

**c.     Limited judicial review and no review by a U.S. court**

Armstrong complains the USADA Protocol does not allow full judicial review, and the

available review is by a Swiss court.  But limited judicial review, and review by courts outside

the United States, are critical components of international arbitration.   "Courts repeatedly

admonish that 'severely limited' judicial review is an essential, and inherent, feature of

contractually agreed binding arbitration, necessary to avoid undermining the 'twin goals of

arbitration . . . settling disputes efficiently and avoiding long and expensive litigation.'"  *Lummus

Global Amazonas, S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.*, 256 F. Supp. 2d 594, 605 (S.D.

Tex. 2002) *modified on denial of reconsideration on other grounds*, *quoting Matter of the

Arbitration Between Trans Chemical Limited and China Nat'l Machinery Import and Export

Corp.*, 978 F. Supp. 266, 303 (S.D. Tex. 1997), *aff'd*, 161 F. 3d 314 (5th Cir. 1998).  "Concerns

of international comity [and] respect for the capacities of foreign and transnational tribunals . . .

require that we enforce the parties' [arbitration] agreement, *even assuming that a contrary result*

14

*would be forthcoming in a domestic context*."  *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.

3d 898, 906 (5th Cir. 2005), *quoting Mitsubishi, supra*, at 629 (emphasis in original).[41]

## III.   ALTERNATIVELY, USADA IS ENTITLED TO A DISMISSAL OR STAY OF PROCEEDINGS IN THIS COURT PURSUANT TO SECTION 3 OF THE FEDERAL ARBITRATION ACT.

Under Section 3 of the FAA, a trial court must grant a stay pending arbitration if the

issues in a complaint are within the reach of an arbitration agreement.  *Midwest Mechanical*

*Contractors, Inc. v. Commonwealth Const.* Co., 801 F.2d 748, 751 (5th Cir. 1986).  Accordingly,

if (or to the extent) the Court declines to grant USADA's motion pursuant to Rule 12(b)(1),

USADA moves the Court for an order staying or dismissing this lawsuit pending arbitration.

In resolving arbitrability disputes under the FAA, the Court may summarily determine

whether a valid agreement to arbitrate exists.  *See Hancock v. Am. Tel. & Tel. Co., Inc.*, 804 F.

Supp. 2d 1196, 1207 n.24 (W.D. Okla. 2011) (applying "a summary-judgment-like standard" to

resolve the question whether an arbitration agreement existed).  Here, it is undisputed Plaintiff

was a licensed member of USA Cycling and USA Triathlon, and included in USADA's

registered testing pool during the times he was alleged to have doped; as a result, he was bound

by USA Cycling's regulations which incorporated the USADA Protocol and AAA

Supplementary Procedures.  *See, e.g.*, *Coenen v. R.W. Pressprich & Co., Inc.*, 453 F.2d 1209,

1211-12 (2d Cir. 1972) (by signing application for membership in which party agreed to abide by

constitution and rules of stock exchange, party bound to arbitrate pursuant to exchange rules);

*Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y.) (bylaws of

association "express the terms of a contract which define. . .the duties assumed by those who

---

[41] Armstrong claims that the arbitration agreement is "unconscionable."  Amended Compl. ¶ 55(a)(iii). Armstrong does not articulate any facts in support of that conclusory allegation.  Furthermore, a state law claim of unconscionability could not circumvent the federally mandated dispute resolution scheme under the Sports Act.

have become members"), *aff'd*, 80 Fed. Appx. 722 (2d Cir. 2003); *Netumar Lines v. General Cocoa Co.*, No. 96 Civ. 0136, 1997 WL 401668, at *2 (S.D.N.Y. July 16, 1997) (members of voluntary association bound by terms of association rules, including arbitration requirement). *see also Jacobs v. USA Track and Field*, 374 F. 3d 85, 87 (2d Cir. 2004) (noting that, "[a]s a member of USATF, petitioner has expressly agreed to abide by its rules and regulations").

Under the FAA, a district court has jurisdiction to engage only in a limited review to ensure that the dispute is arbitrable—"*i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002), *citing AT&T Technologies, Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  Even this limited review, however, is removed from the Court's jurisdiction where the parties' agreement clearly and unmistakably provides that the question of arbitrability is to be arbitrated.  *AT&T Techs., supra*, 475 U.S. at 649.

Here, the applicable AAA rule, incorporated into the USADA Protocol, provides, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[42]  Numerous courts reviewing this precise provision uniformly hold it constitutes a clear and unmistakable agreement that all questions of arbitrability shall be decided in arbitration rather than court.  *See, e.g., Halliburton Energy Servs*., Inc. *v. BJ Servs. Co*., No. 2:08-cv-475-TJW, 2010 WL 2991031, at *3 (E.D. Tex. July 28, 2010) ("By applying the AAA rules to the arbitration, the Court agrees with numerous other courts and finds that the [arbitration agreement] applies the rules to all

---

[42] Ex. 3 (Tygart Aff.) ¶ 8 & ex. C at Annex D (AAA Supplementary Procedures, R-7).

aspects of the arbitration, including the threshold issue of jurisdiction. Thus, the arbitrator, instead of this Court, is vested with the jurisdictional issue of arbitrability."); *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys.*, No. 08-4578, 2009 WL 86704, *5 (E.D. La., Jan. 12, 2009) ("All of the federal courts to have considered the issue have held that when a contract contains or incorporates this type of language, it clearly and unmistakably vests the arbitrator, and not the district court, with authority to decide which issues are subject to arbitration.") *cf. DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 n.7 (5th Cir. 2011) (noting that "sister circuits have held that an arbitration agreement that refers to the AAA's rules clearly and unmistakably demonstrates that the parties intended to give arbitrator the power to determine whether an issue or dispute is arbitrable" but failing to reach the issue because defendants were not themselves parties to the arbitration agreement) (citing cases).

Since all of Armstrong's challenges to arbitrability (*e.g.*, conflicting or overlapping authority for results management under the UCI rules and the USADA Protocol, statutes of limitation, unconscionability and due process challenges) are matters for the arbitrators to decide in the first instance, dismissal is appropriate. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (emphasis in original).

## IV.   CONCLUSION AND PRAYER

WHEREFORE PREMISES CONSIDERED, Defendants pray that the Court (i) grant their Motion to Dismiss for Lack of Subject Matter Jurisdiction; (ii) in the alternative, grant their Motion to Dismiss or Stay Under the Federal Arbitration Act; and (iii) grant Defendants such other and further relief to which they may be justly entitled.

Date: July 19, 2012


Respectfully submitted,


  /s/ John J. McKetta, III                         /s/ William Bock, III
John J. McKetta, III (State Bar No. 13711500)    William Bock, III (*pro hac vice* pending)
Matthew C. Powers (State Bar No. 24046650)       KROGER, GARDIS & REGAS
GRAVES, DOUGHERTY, HEARON &                       111 Monument Circle, Suite 900
MOODY, P.C.                                       Indianapolis, IN 46204-5125
401 Congress Avenue, Suite 2200                   Phone: (317) 692-9000
P.O. Box 98                                       Fax: (317) 264-6824
Austin, TX 78767-0098                             wb@kgrlaw.com
Phone: 512-480-5616
Fax:    512-480-5816                                /s/ Brent Rychener
mmcketta@gdhm.com                                 Richard R. Young (*pro hac vice* pending)
mpowers@gdhmcom                                   Brent E. Rychener (*pro hac vice* pending)
                                                  BRYAN CAVE HRO
                                                  90 South Cascade Avenue, Suite #1300
                                                  Colorado Springs, Colorado 80903
                                                  Phone:  719-473-3800
                                                  Fax:  719-633-1518
                                                  richard.young@bryancave.com
                                                  brent.rychener@bryancave.com

                                                  **COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2012, I electronically filed **DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS OR STAY UNDER THE FEDERAL ARBITRATION ACT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Timothy J. Herman
Sean E. Breen
HOWRY BREEN & HERMAN, LLP
1900 Pearl Street
Austin, Texas 75705
therman@howrybreen.com


I hereby further certify that I have sent this filing to the following non CM/ECF participants by U.S. mail and email:

Mark S. Levinstein
Marcie R. Ziegler
Ana C. Reyes
WILLIAMS & CONNOLLY LLP
725 12th St., NW
Washington, DC 20005
mlevinstein@wc.com

Robert D. Luskin
Patrick J. Slevin
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
rluskin@pattonboggs.com

                                                  /s/ Matthew C. Powers
                                                  Matthew C. Powers