IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LANCE ARMSTRONG,

     *Plaintiff,*

v.

UNITED STATES ANTI-DOPING
AGENCY and TRAVIS TYGART, In His
Official Capacity as Chief Executive Officer
of the United States Anti-Doping Agency,

     *Defendants.*

Civ. Action No. 1:12-cv-00606-SS

## AFFIDAVIT OF MOLLY TOMLONOVIC

I, Molly Tomlonovic, under penalty of perjury, declare and state:

1.     I am the Doping Control Manager for the United States Anti-Doping Agency

("USADA").  I have been employed by USADA since October 15, 2007.  I have been USADA's

Doping Control Manager since the Fall of 2008.

2.     The statements contained in this affidavit are based on my personal knowledge or

my review of the corporate records of USADA.

3.     As USADA's Doping Control Manager my responsibilities include managing and

administering the USADA registered testing pool ("USADA RTP"), interfacing with sports

national governing bodies (NGBs) regarding athlete members of their organization whom they

wish to be included in the USADA RTP, and administering the USADA whereabouts program

whereby USADA communicates with the athletes in the USADA RTP and keeps track of their location for out of competition testing purposes.

4.      The USADA RTP is a pool of elite athletes under the testing jurisdiction of USADA from whom USADA receives whereabouts information in order to permit USADA to conduct out of competition testing on the athlete.  There are currently more than 3,000 athletes from more than 40 sports in the USADA RTP.

5.      Athletes in the USADA RTP receive specialized communication from USADA regarding their obligations under sport drug testing rules including the USADA Protocol for Olympic and Paralympic Movement Testing (the "USADA Protocol").

6.      Athletes in the USADA RTP must quarterly make a whereabouts filing with USADA in which they identify where they intend to be for each day throughout the upcoming quarter and USADA RTP athletes must update their whereabouts filings immediately when any information on their quarterly filing changes.  Updates of any athlete's whereabouts are sometimes referred to as a "Change of Plan."

7.      Athletes are entered in the USADA RTP when they meet eligibility criteria for the USADA RTP which includes that they must be a member of a license holder of a NGB.

8.      As a result of my job responsibilities I am aware that USA Cycling is the NGB for the sport of cycling in the United States.

9.      As a result of my job responsibilities I am aware that USA Triathlon is the NGB for the sport of triathlon in the United States.

10.     I have reviewed USADA records and can confirm that Lance Armstrong is currently a member of the USADA RTP and that he has been a member of the USADA RTP during three different periods of time since 2001.

11.     Lance Armstrong was a member of the USADA RTP for the first time from June 2001 until USADA received a written notice of retirement from him in August 2005.

12.     I have reviewed USADA's records concerning information sent to Mr. Armstrong and other USADA RTP members during the time period from June 2001 until August 2005 when Mr. Armstrong was a member of the USADA RTP for the first time.

13.     During Mr. Armstrong's first period of time in the USADA RTP from June 2001 until August 2005 Mr. Armstrong received numerous communications from USADA which referenced Mr. Armstrong's obligations under the USADA Protocol for Olympic Movement Testing (the "USADA Protocol").

14.     For instance, in February 2002 Mr. Armstrong received from USADA a copy of the USADA Protocol, effective as revised December 2, 2001.

15.     In November 2002 Mr. Armstrong received from USADA a copy of the USADA Protocol, effective as revised October 7, 2002.

16.     In November 2004, Mr. Mr. Armstrong received from USADA a copy of the 2004 USADA Protocol (effective as revised, August 13, 2004, and which included the mandatory provisions of the World Anti-Doping Code ("Code") at Annex A).  A copy of the 2004 USADA Protocol sent to Mr. Armstrong is attached to this Affidavit as Exhibit **A**.

17.     In the November 2002 mailing to him Mr. Armstrong received a copy of the USADA Athlete Handbook, which includes information on the USADA results management process.  Therein Mr. Armstrong was advised that USADA has a results management process potentially involving an American Arbitration Association hearing and that doping offences could be based on other evidence than a positive test result.  A copy of the 2002 Athlete Handbook sent to Mr. Armstrong is attached to this Affidavit as Exhibit **B**.

18.     During Mr. Armstrong's first period in the USADA RTP he received regular mailings from USADA, including notices of his responsibility to update his whereabouts filings every quarter.

19.     During Mr. Armstrong's first period in the USADA RTP he made quarterly whereabouts filings with USADA and regularly updated his whereabouts filings with USADA as his plans changed throughout the quarter.

20.     On August 2, 2005, Lance Armstrong sent a letter to Travis Tygart of USADA, which stated:  "Dear Travis, I am writing to inform USADA that as of July 24, 2005, I have retired from competitive cycling.  Thank you for your cooperation and assistance.  Best Regards, Lance Armstrong."  Mr. Armstrong's letter indicates a copy was sent to his legal counsel Mark Levinstein.  A copy of Mr. Armstrong's August 2, 2005 letter is attached hereto as Exhibit **C**.

21.     Pursuant to Mr. Armstrong's letter USADA removed Mr. Armstrong from the USADA RTP for the first time.

22.     On July 30, 2008, Mr. Armstrong sent a letter to Mr. Tygart stating, "Dear Travis, As you may have seen, I will be competing in the Leadville 100 on August 8th.  Events like this

4

may require me to be part of the USADA out-of-competition testing program.  Would you please let me know what I need to do in order to re-enter the program as soon as possible.  Thank you." A copy of Mr. Armstrong's July 30, 2008, letter to Mr. Tygart is attached to this Affidavit as Exhibit **D**.

23.     As a result of Mr. Armstrong's request, he was entered into the USADA RTP for a second time, effective August 1, 2008.

24.     Mr. Armstrong's second period in the USADA RTP extended from August 1, 2008, through February 16, 2011.

25.     During Mr. Armstrong's second period in the USADA RTP he continued to receive communications from USADA advising him of his responsibility to make quarterly whereabouts filings with USADA.

26.     Also, during Mr. Armstrong's second period in the USADA RTP a new provision of the USOC National Anti-Doping Policies was implemented which required all athletes in the USADA RTP to take an annual online tutorial providing an overview of the drug testing and anti-doping responsibilities of USADA RTP members.

27.     The online tutorial is interactive and includes questions at the end of each section which USADA RTP members must successfully compete in order to move on to the next section.  Successful completion of the online education is a condition that must be fulfilled prior to completing the first whereabouts filing in each year.

28.     During his second period in the USADA RTP Mr. Armstrong took and

successfully passed the USADA online education module on November 24-26, 2008, December

31, 2009 and December 31, 2010.

29.     The USADA online tutorial begins with the following:

This online education tutorial is intended to provide a brief introduction to athlete
responsibilities under the World Anti-Doping Code, the WADA International
Standard for Testing, the USOC National Anti-Doping Policies, the USADA
Protocol and certain other anti-doping rules applicable to athletes under the
jurisdiction of WADA, USADA, the various International Federations and the
USOC and its member organizations.  This education module is not a
comprehensive compilation of all rules applicable to athletes and athletes are
responsible to read, understand and fully comply with all anti-doping rules
applicable to them, including the rules of their International Federation(s). . .

A copy of a screen shot of the foregoing is attached hereto as Exhibit **E**.

30.     During Mr. Armstrong's second period in the USADA RTP he made quarterly

whereabouts filings with USADA and regularly updated his whereabouts filings with USADA as

his plans changed throughout each quarter.

31.     On February 16, 2011, Mr. Armstrong sent a letter to Sean Petty of USA Cycling

which was subsequently forwarded to USADA by USA Cycling.  In that letter Mr. Armstrong

wrote: "Mr. Sean Petty:  I am writing to notify you of my official retirement from competitive

cycling, announced on Wednesday, February 16, 2011.  In accordance with my retirement,

please notify USADA to withdraw me from the testing regimen.  In addition, I kindly request to

retain a USA Cycling domestic racing license only.  Please contact my manager Mark Higgins

via email at . . ."  A copy of Mr. Armstrong's February 16, 2011, letter to Mr. Petty is attached

to this Affidavit as Exhibit **F**.

32.     Following receipt of Mr. Armstrong's written request to Mr. Petty to be withdrawn from the USADA testing program USADA withdrew Mr. Armstrong from the USADA RTP, thereby concluding Mr. Armstrong's second period in the USADA RTP.

33.     Mr. Armstrong's third period in the USADA RTP began in March 2012 when Mr. Armstrong was re-entered into the USADA RTP at the request of USA Triathlon due to his membership with USA Triathlon and his status as a highly ranked U.S. professional triathlete.

34.     During his third period in the USADA RTP Mr. Armstrong took and successfully passed the USADA online education module on and March 28, 2012.

35.     Since Mr. Armstrong entered the USADA RTP USADA has received twenty-five (25) quarterly whereabouts filings and more than 450 Change of Plan updates from Mr. Armstrong.

36.     Only athlete members and license holders of NGBs subject to USADA's jurisdiction are entered into the USADA RTP.

37.     Attached hereto as Exhibit **G** is a communication from USA Cycling's legal counsel to the Union Cyclist Internationale (UCI) on which the USADA General Counsel was copied confirming that USA Cycling issued Lance Armstrong licenses for the years 1998 – 2005 and 2008 – 2011.

38.     I have also reviewed the USA Cycling website concerning Mr. Armstrong's license status with USA Cycling.  Attached hereto as Exhibit **H** is a print out from the USA Cycling website listing Mr. Armstrong's USAC # and an incomplete list of Mr. Armstrong's race results for domestic races in which Mr. Armstrong competed in 2002, 2005, 2008 and 2009.

Also attached hereto as Exhibit **I** is a biography of Mr. Armstrong from the USA Cycling website.

39.     Attached hereto as Exhibits **J**, **K**, **L**, **M**, **N** ,**O** and **P** are International license application forms prepared by USA Cycling for submission by U.S. cyclists wishing to apply for a cycling license in 2003, 2004, 2005, 2008, 2009, 2010 and 2011.

40.     It is my understanding that Exhibits **J** through **P** accurately reflect the form of the license application that Mr. Armstrong would have completed (or had completed on his behalf) to obtain a cycling license in the years indicated.

41.     Attached hereto as Exhibits **Q**, **R**, **S**, **T**, **U**, **V**, **W** ,and **X** are excerpts from the official rule books of USA Cycling from 2001, 2002, 2003, 2004, 2005, 2008, 2009 and 2010.

42.     Attached hereto as Exhibit **Y** is an excerpt of the Amended and Restated Bylaws of USA Cycling, Inc.

43.     Attached hereto as Exhibit **Z** is a 2012 USA Triathlon Elite License Application form that must be completed by an individual such as Mr. Armstrong who applies for a USA Triathlon Elite License.

44.     Attached hereto as Exhibit **AA**, is an excerpt from the official rule book of USA Triathlon from 2012.

Dated this **19**th day of **July, 2012**.

Molly Tomlonovic

STATE OF COLORADO             )

                                             ) ss.

COUNTY OF EL PASO           )

Subscribed and sworn to before me by _Molly Tomlonovic_ on this _7/19_ day of 2012.

Witness my hand and official seal.

My commission expires: _8-12-12_           _[signature]_

                                              Notary Public

                         Address: _5555 Tech Center Drive, #200_

                                 _Colorado Springs, CO 80919_

JOHNCIE B. WINGARD
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 08/12/12

# EXHIBIT A
## to the
## AFFIDAVIT OF MOLLY TOMLONOVIC



United States Anti-Doping Agency

# PROTOCOL FOR OLYMPIC MOVEMENT TESTING

USADA

Effective as Revised August 13, 2004

## TABLE OF CONTENTS

|  | **Page** |
|---|---|
| USADA Protocol | 1 |
| **Annex A**<br>World Anti-Doping Code Articles | 13 |
| **Annex B**<br>Athlete Location Forms | 31 |
| **Annex C**<br>"A" Laboratory Documentation Package | 35 |
| **Annex D**<br>"B" Laboratory Documentation Package | 37 |
| **Annex E**<br>American Arbitration Association Supplementary<br>Procedures for Arbitration | 39 |
| **Annex F**<br>Time Line. This timeline is for general guidance<br>only and does not create any obligation, requirement<br>or right under the USADA Protocol. | 59 |
| **Annex G**<br>Language to be set forth in USADA correspondence<br>offering an athlete the opportunity to waive analysis<br>of the athlete's B specimen | 61 |
| **Annex H**<br>Retirement Rules | 63 |

i

# UNITED STATES ANTI-DOPING AGENCY
## PROTOCOL FOR OLYMPIC MOVEMENT TESTING
### (effective as revised August 13, 2004)

1.  **USADA's Relationship with the United States Olympic Committee ("USOC")**

    USADA is an independent legal entity not subject to the control of the USOC. The USOC has contracted with USADA to conduct drug testing, manage test results and adjudicate disputes for participants in the Olympic movement within the United States and to provide educational information to those participants. For purposes of transmittal of information by USADA, the USOC is USADA's client. However, the USOC has authorized USADA to transmit information simultaneously to the relevant National Governing Body ("NGB"), International Federation ("IF") the World Anti-Doping Agency ("WADA") and involved athlete or other person.

2.  **Athletes Subject to Testing by USADA**

    The USOC, NGBs and the World Anti-Doping Code (the "WADA Code") have authorized USADA to test the following athletes:

    a.  Any athlete who is a member of a NGB;

    b.  Any athlete participating at a competition sanctioned by the USOC or a NGB;

    c.  Any foreign athlete who is present in the United States; or

    d.  Any other athlete who has given his/her consent to testing by USADA or who has submitted an out-of-competition testing location form to USADA or an IF within the previous twelve months and has not given his or her NGB and USADA written notice of retirement;

    e.  Any athlete who has been named by the USOC or an NGB to an international team or who is included in the USADA Registered Testing Pool or is competing in a qualifying event to represent the USOC or NGB in international competition;

---

## USADA MISSION

USADA is dedicated to preserving the well-being of Olympic sport, the integrity of competition, and ensuring the health of athletes.

### HOW TO CONTACT USADA

United States Anti-Doping Agency (USADA)
2550 Tenderfoot Hill St., Suite 200
Colorado Springs, CO 80906

*Phone:* (719) 785-2000
*Fax:* (719) 785-2001
*Toll-Free Phone:* (866) 601-2632
*E-mail:* usada@usantidoping.org
*Web site:* www.usantidoping.org

### USADA DRUG REFERENCE LINE

For information and clarification on the status of specific U.S. pharmaceutical products and over-the-counter medicinal products, please contact USADA's Drug Reference Line at

*Toll-Free Phone:* (800) 233-0393 (inside the U.S.)
*Phone:* (719) 785-2020 (outside the U.S.)
*E-mail:* drugreference@usantidoping.org

### PLAY CLEAN LINE

The Play Clean line at 877-PLAY CLEAN [877-752-9253] is a direct link for individuals who are interested in drug-free competition. Please call USADA when you believe the integrity of your sport is being compromised by doping.

The USOC Anti-Doping Policies can be found in the education section of the official Web site of the USOC (http://www.usolympicteam.com).

USADA and the USADA logo are registered trademarks of the U.S. Anti-Doping Agency. All Rights Reserved.
(c) 2004 USADA. All Rights Reserved.

1

f. Any United States athlete or foreign athlete present in the United States who is serving a period of ineligibility on account of an anti-doping rule violation and who has not given prior written notice of retirement from all sanctioned competition to the applicable NGB and USADA, or the applicable foreign anti-doping agency or foreign sport association.

USADA will not allow the testing process to be used to harass any athlete. In selecting athletes for testing, USADA will focus primarily on athletes who are participating, or have the potential to participate, in international competition.

3. **Choice of Rules**

In conducting drug testing and results management under this Protocol for Olympic Movement Testing (the "Protocol"), USADA will be bound by the following rules:

a. Those Articles of the WADA Code which must be incorporated into the rules of every Anti-Doping Organization and are set forth in Annex A. Annex A is incorporated by reference into this Protocol.

b. The selection and collection procedures set forth in paragraphs 4, 5 & 6 herein shall apply to all testing conducted by USADA unless different procedures are agreed to between USADA and the party requesting the test for a particular event.

c. All tests performed by USADA shall be analyzed in WADA accredited laboratories or as otherwise approved by WADA. In analyzing samples for USADA, those laboratories shall follow the established WADA International Standard for Laboratory Analysis.

d. Samples tested by USADA shall be analyzed for the substances and methods included on the WADA Prohibited List or in the WADA Monitoring Program.

2

e. USADA shall be responsible for results management of the following: 1) tests initiated by USADA, unless otherwise referred by USADA to a foreign sports organization having jurisdiction over the athlete or other person, 2) all other tests for which the applicable IF rules require the initial adjudication to be done by a domestic body, and 3) other potential violations of Annex A. IF or USOC Anti-Doping Policies ("USOC ADP") involving any athlete described in paragraph 2, their support personnel and other NGB members, unless otherwise referred by USADA to a foreign sports organization having jurisdiction over the athlete or other person. Where, pursuant to an agreement, USADA executes tests initiated by an IF, regional or continental sports organization or other Olympic movement sporting body, other than the USOC or a NGB, then results management shall be governed by the rules of that sporting body.

f. Any IF or NGB procedural rule inconsistent with this Protocol shall be superseded by this Protocol.

g. The USOC has adopted the USOC ADP which affect athletes' or other persons' eligibility for USOC teams and benefits.

4. **Selection of Athletes to be Tested In-Competition**

USADA shall have the authority to determine which athletes will be selected for testing in all competitions tested by USADA. In making this determination, USADA will follow NGB or IF selection procedures when available and will include at a minimum the selection formulas or requests for target selection of particular athletes which are proposed by the USOC or a particular NGB or IF. Notwithstanding the foregoing sentence, USADA retains the right to test any athlete subject to testing as provided in paragraph 2 that it chooses with or without cause or explanation.

5. **Selection of Athletes to be Tested Out-of-Competition**

USADA shall have the authority to determine which athletes will be selected for out-of-competition testing by USADA. In making this determination, USADA will carefully consider selection formulas or requests for target selection of particular athletes which are proposed by the USOC or a particular NGB. USADA retains the right to test any athlete subject to testing as provided in paragraph 2 that it chooses with or without cause or explanation. USADA will not allow the testing process to be used to harass any athlete.

3

Each NGB will provide USADA with an updated list of athletes at least quarterly, unless otherwise agreed by USADA, to be included in the USADA Registered Testing Pool. With respect to each athlete on such list and such additional athletes as may be designated by USADA for inclusion in the USADA Registered Testing Pool, the NGB will provide USADA with the initial information as set forth on the athlete location form attached as Annex B. Thereafter it shall be the responsibility of each individual athlete to forward to USADA his or her athlete location forms and to provide USADA with updated information specifying his or her whereabouts.

USADA shall maintain on its website, a list of all athletes or other persons in the USADA Registered Testing Pool and all athletes tested by USADA. The list shall include the number of times each athlete has been tested by USADA.

6. **Sample Collection**

Sample collection by USADA, and third parties authorized by USADA to collect samples for USADA including other national anti-doping agencies pursuant to bilateral or multilateral agreements, will conform to the standards set forth in the International Standard for Testing.

7. **Laboratory Analysis**

All samples collected by USADA shall be analyzed only in WADA-accredited laboratories or as otherwise approved by WADA.

a. Sample analytical results should normally be reported by the Laboratory to USADA within ten (10) working days of the laboratory's receipt of the sample. In no event shall the reporting period exceed three months.

b. The laboratory may retest previously reported samples under the following conditions:

   i. The retesting is either directed or authorized by USADA pursuant to guidelines developed by USADA for the retesting of samples.

4

ii. Until such time as WADA has developed International Standards applicable to retesting of samples, the laboratory shall have the burden of establishing that any adverse analytical finding was not the result of changes to the sample during storage and that the chain of custody for the sample from the original analysis through retesting remained intact.

Upon receipt of a laboratory analytical report from the retesting of a sample, USADA shall follow the regular procedures applicable to USADA's receipt of all other analytical reports.

8. **Notification**

USADA will provide the following notification with respect to each specimen collected or attempted to be collected by USADA:

a. Upon receipt of a negative laboratory report, USADA will promptly forward that result to the athlete at the address on the Athlete Location Form on file or if no form is on file to the address on the Doping Control Notification/Signature Form, the USOC and the applicable NGB.

b. Upon receipt of a positive laboratory A report or a report indicating an elevated testosterone to epitestosterone ratio or epitestosterone concentration, USADA will promptly notify the USOC, the applicable NGB, and the athlete at the address on the Athlete Location Form on file, or if no form is on file to the address on the Doping Control Notification/Signature Form and shall advise the athlete of the date on which the laboratory will conduct the B sample analysis. The athlete may attend the B sample analysis accompanied by a representative, or may have a representative appear on his or her behalf, at the expense of the athlete. Prior to the B sample opening, USADA shall provide to the athlete the A sample laboratory documentation as set forth on Annex C, a copy of the Protocol and a copy of the World Code. A sample shall not be considered positive until after the B sample analysis confirms the A sample analysis or the athlete has expressly waived the B sample analysis. In any correspondence offering the athlete the opportunity to waive testing the B Sample, USADA shall include the language set forth in Annex G.

5

c. Upon receipt of the laboratory's B sample report, USADA shall promptly notify the athlete, the USOC, and the applicable NGB. USADA shall then provide to the athlete the B sample documentation package set forth on Annex D. The laboratory shall not be required to produce any documentation in addition to Annexes C and D unless ordered to do so by an arbitrator(s) during adjudication, in which case it shall be produced at the athlete's expense unless ordered otherwise by an arbitrator(s).

d. In special circumstances where USADA is conducting testing for an IF, regional or continental sports organization or other Olympic movement sporting body, other than the USOC or an NGB, the notification described in this section shall be made as provided in the agreement between USADA and that sporting body or as required by WADA.

e. If USADA determines that an athlete or other person may have committed an anti-doping rule violation as described in Annex A other than a positive test or other violation of IF rules or the USOC ADP, then at such time as USADA initiates the Anti-Doping Review Board process, USADA shall provide notice of such potential violation to the athlete or other person, the USOC and the applicable NGB.

f. Notice to an athlete or other person, for all purposes of this Protocol except for notice of negative laboratory reports, shall be effective when delivered by overnight courier to the athlete's or other person's most recent address on file with USADA. If USADA is not able to deliver the notice at such address, then USADA shall contact the NGB and send notice by overnight courier to the athlete's or other person's most recent address on file with the NGB if that is a different address than the most recent address on file with USADA. If the athlete's or other person's most recent address on file with USADA and the NGB is the same, or if USADA is unable to obtain delivery at the athlete's or other person's most recent address on file with the NGB, then notice to the athlete or other person shall be effective upon the courier's last attempt to deliver.

g. At such time as WADA has implemented the Doping Control Information Clearinghouse described in Article 14.5 of the World Anti-Doping Code, USADA will report to WADA the athlete whereabouts and testing information described in Articles 14.3 and 14.5 of the WADA Code.

9. Results Management / Anti-Doping Review Board

When USADA receives a laboratory report confirming an adverse analytical finding, or when USADA has otherwise determined that an anti-doping rule violation may have occurred, such as admitted doping, refusal to test, trafficking or other violation of Annex A, IF rules or the USOC ADP, then USADA shall address that case through the following results management procedures:

a. The USADA Anti-Doping Review Board ("Review Board") shall be comprised of experts independent of USADA with medical, technical and legal knowledge of anti-doping matters. The Review Board members shall be appointed for two-year terms by the USADA Board of Directors. The Review Board shall review all sample test results reported by the laboratory as analytically positive or elevated in accordance with section 9(c)(i) below. Such review shall be undertaken by between three and five Review Board members appointed in each case by USADA's Chief Executive Officer and composed of at least one technical, one medical and one legal expert.

b. The Review Board shall also review all potential anti-doping rule violations, including violations of Annex A, IF rules or the USOC ADP, not based on adverse analytical findings, which are brought forward by USADA. Review of potential violations other than adverse analytical findings shall be undertaken by three Review Board members appointed in each case by USADA's Chief Executive Officer.

c. Upon USADA's receipt of a laboratory B sample report confirming an adverse analytical finding (or test result of the A sample when analysis of the B sample has been expressly waived by the athlete or other person), or when USADA determines that a potential violation of other applicable anti-doping rules has occurred, the following steps shall be taken:

i. USADA's Chief Executive Officer shall appoint a Review Board as provided in Section 9(a) or 9(b) above.

ii. The Review Board shall be provided the laboratory documentation and any additional information which USADA deems appropriate. Copies of this information shall be provided simultaneously to the athlete or other person and the athlete or other person shall be entitled to file a response with the Review Board. The athlete's or other person's name will not be provided to the Review Board by USADA and will be redacted from any documents submitted to the Review Board by USADA.

iii. The athlete or other person shall be promptly notified that within ten (10) days of the date of notice he or she may submit to the Review Board, through USADA, any written materials for the Review Board's consideration. The athlete or other person shall also be provided the name, telephone number, email address and website URL of the Athlete Ombudsman.

iv. The Review Board shall be entitled to request additional information from either USADA or the athlete or other person.

v. Notwithstanding the forgoing, the process before the Review Board shall not be considered a "hearing." The Review Board shall only consider written submittals. Submittals to the Review Board shall not be used in any further hearing or proceeding without the consent of the party making the submittal. No evidence concerning the proceeding before the Review Board, including but not limited to the composition of the Review Board, what evidence may or may not have not been considered by it, its deliberative process or its recommendations shall be admissible in any further hearing or proceeding.

vi. The Review Board shall consider the written information submitted to it and shall, by majority vote, make a signed, written recommendation to USADA with a copy to the athlete or other person whether or not there is sufficient evidence of doping to proceed with the adjudication process.

vii. USADA shall also forward the Review Board's recommendation to the USOC, the applicable NGB and IF and WADA.

10. **Results Management / Adjudication**

a. Following receipt of the Review Board recommendation, USADA shall notify the athlete or other person in writing whether USADA considers the matter closed or alternatively what specific charges or alleged violations will be adjudicated and what sanction, consistent with Annex A, IF rules or the USOC ADP, USADA is seeking to have imposed. The notice shall also include a copy of the Protocol and the American Arbitration Association Supplementary Procedures for Adjudication of Doping Disputes (the "Supplementary Procedures") attached as Annex E. Within ten (10) days following the date of such notice, the athlete or other person must notify USADA in writing if he or she desires a hearing to contest the sanction sought by USADA. The athlete or other person shall be entitled to a five (5) day extension if requested within such ten (10) day period. If the sanction is not contested in writing within such ten (10) or fifteen (15) day period, then the sanction shall be communicated by USADA to the athlete or other person, USOC, the applicable NGB and IF and WADA and thereafter imposed by the NGB. Such sanction shall not be reopened or be subject to appeal unless the athlete or other person can demonstrate by a preponderance of the evidence in a subsequent appeal to CAS that he or she did not receive either actual or constructive notice of the opportunity to contest the sanction. The athlete or other person may also elect to avoid the necessity for hearing by accepting the sanction proposed by USADA. If the sanction is contested by the athlete or other person, then a hearing shall be conducted pursuant to the procedure set forth below.

b.  The hearing will take place in the United States before the American Arbitration Association ("AAA") using the Supplementary Procedures. The parties will be USADA and the athlete or other person. USADA shall also invite the applicable IF and WADA to participate either as a party or as an observer. The athlete or other person shall have the sole right to request that the hearing be open to the public subject to such limitations as may be imposed by the arbitrator(s). For their information only, notice of the hearing date shall also be sent to the USOC, the Athlete Ombudsman and the applicable NGB. If the athlete or other person requests, the Athlete Ombudsman shall be invited as an observer.

c.  The final decision by the AAA/CAS arbitrator(s) may be appealed to the Court of Arbitration for Sport ("CAS") as set forth in Article 13 of Annex A. The appeal procedure set forth in Article 13 of Annex A shall apply to all appeals not just appeals by International-Level athletes or other persons. A CAS appeal shall be filed with the CAS Administrator, the CAS hearing will automatically take place in the U.S. and CAS shall conduct a de novo review of the matter on appeal which, among other things, shall specifically include the power to increase, decrease or void the sanctions imposed by the previous AAA/CAS Panel. Otherwise the regular CAS appellate rules apply. The decision of CAS shall be final and binding on all parties and shall not be subject to further review or appeal.

d.  In all hearings conducted pursuant to the Protocol, the requirements set forth in the WADA Code shall apply. If no WADA Code requirement is applicable, then, subject to paragraph 3(l), the IF anti-doping rules, the USOC ADP and the Protocol shall apply.

e.  All administrative costs of USADA relating to the testing and management of athletes' samples will be borne by USADA. Administrative costs of the USADA adjudication process (AAA filing fee, AAA administrative costs, AAA arbitrator fees and costs) will be borne by the USOC.

f.  If the athlete or other person files an appeal with CAS, the CAS appeal fee will be paid by the athlete or other person and refunded to the athlete by the USOC should the athlete prevail on appeal.

10

g.  The results of all hearings, including written decisions, shall be communicated by USADA to the athlete or other person, the USOC, the applicable NGB and IF and WADA. The NGB and/or the USOC shall impose any sanction resulting from the adjudication process. The NGB and/or the USOC shall not impose any sanctions until after the athlete or other person has had the opportunity for a hearing pursuant to section 10(b).

11. **Ownership and Use of Samples**

All samples collected by USADA shall be the property of USADA, but shall only be used for purposes outlined in this Protocol. Samples collected after August 13, 2004 shall not be used for research without the Athlete's written consent. Samples collected prior to August 13, 2004 shall not be used for research unless all markings on the sample which identify the sample as coming from a particular athlete are obliterated.

12. **Confidentiality**

USADA shall not publicly disclose or comment on any athlete's positive test result or any information related to any alleged doping violation (including violations not involving adverse analytical finding) until after the athlete or other person 1) has been found to have committed an anti-doping rule violation in a hearing conducted under either article 10(b) above, or 2) has failed to request a hearing within the time set forth in 10(a), or 3) has agreed in writing to the sanction sought by USADA. However, USADA may provide notification to the USOC, NGB, IF and WADA (or other sporting body ordering the test) as provided for in this Protocol. USADA does not control how information provided by USADA to the USOC, NGBs, IFs and WADA is disseminated but will include statements to each organization requesting that any organization receiving such information keep it confidential until disclosed by USADA. USADA may comment publicly on any aspect of the results management/adjudication process or the applicable rules without making specific reference to any athlete or other person alleged to have committed an anti-doping rule violation. USADA may also release aggregate statistics of testing and adjudication results.

11

USADA shall publicly report the disposition of anti-doping matters no later than five (5) business days after: 1) it has been determined in a hearing in accordance with the Protocol that an anti-doping rule violation has occurred, 2) such hearing has been waived, 3) the assertion of an anti-doping rule violation has not been timely challenged, or 4) the athlete or other person has agreed in writing to the sanction sought by USADA. In all cases, the disposition shall be reported to the USOC, NGB, IF, WADA and, if applicable, the other sporting body referring the matter to USADA.

13. **Expedited Procedures**
USADA may shorten any time period set forth in these procedures where doing so is reasonably necessary to resolve an athlete's or other person's eligibility before a protected competition. The shortened time periods shall continue to protect the right of the athlete or other person to a fair hearing and shall not prohibit the athlete's or other person's right to request three (3) arbitrators or choose a neutral arbitrator.

14. **Retirement**
The notice regarding retirement attached as Annex H shall be posted on the USADA website and included in the initial packet of information provided to athletes in the Registered Testing Pool. Such notice will automatically be included by USADA with any notice to an athlete of a second missed test.

15. **Effective Date**
The revisions to this Protocol incorporated herein shall go into effect on August 13, 2004. Revisions to the Protocol as previously published shall not apply retrospectively to matters pending before August 13, 2004.

## ANNEX A

### Articles from the World Anti-Doping Code that are Incorporated Verbatim into the USOC Anti-Doping Policies and the USADA Protocol for Olympic Movement Testing

**ARTICLE 1: DEFINITION OF DOPING**

Doping is defined as the occurrence of one or more of the anti-doping rule violations set forth in Article 2.1 through Article 2.8 of the *Code*.

**ARTICLE 2: ANTI-DOPING RULE VIOLATIONS**

The following constitute anti-doping rule violations:

2.1   The presence of a Prohibited Substance or its *Metabolites* or *Markers* in an *Athlete's* bodily *Specimen*.

2.1.1   It is each *Athlete's* personal duty to ensure that no *Prohibited Substance* enters his or her body. *Athletes* are responsible for any *Prohibited Substance* or its *Metabolites* or *Markers* found to be present in their bodily *Specimens*. Accordingly, it is not necessary that intent, fault, negligence or knowing *Use* on the *Athlete's* part be demonstrated in order to establish an anti-doping violation under Article 2.1.

2.1.2   Excepting those substances for which a quantitative reporting threshold is specifically identified in the *Prohibited List*, the detected presence of any quantity of a *Prohibited Substance* or its *Metabolites or Markers* in an *Athlete's Sample* shall constitute an anti-doping rule violation.

2.1.3   As an exception to the general rule of Article 2.1, the *Prohibited List* may establish special criteria for the evaluation of *Prohibited Substances* that can also be produced endogenously.

2.2 *Use or Attempted Use of a Prohibited Substance or a Prohibited Method.*

2.2.1 The success or failure of the *Use* of a *Prohibited Substance or Prohibited Method* is not material. It is sufficient that the *Prohibited Substance or Prohibited Method* was *Used* or *Attempted to be Used* for an anti-doping rule violation to be committed.

2.3 Refusing, or failing without compelling justification, to submit to *Sample* collection after notification as authorized in applicable anti-doping rules or otherwise evading *Sample* collection.

2.4 Violation of applicable requirements regarding *Athlete* availability for *Out-of-Competition Testing* including failure to provide required where abouts information and missed tests which are declared based on reasonable rules.

2.5 *Tampering, or Attempting to tamper, with any part of Doping Control.*

2.6 *Possession of Prohibited Substances and Methods:*

2.6.1 *Possession by an Athlete at any time or place of a substance that is prohibited in Out-of-Competition Testing or a Prohibited Method unless the Athlete establishes that the Possession is pursuant to a therapeutic use exemption granted in accordance with Article 4.4 (Therapeutic Use) or other acceptable justification.*

2.6.2 *Possession of a substance that is prohibited in Out-of-Competition Testing or a Prohibited Method by Athlete Support Personnel in connection with Athlete, Competition or training, unless the Athlete Support Personnel establishes that the Possession is pursuant to a therapeutic use exemption granted to an Athlete in accordance with Article 4.4 (Therapeutic Use) or other acceptable justification.*

2.7 *Trafficking in any Prohibited Substance or Prohibited Method.*

14

2.8 Administration or *Attempted* administration of a *Prohibited Substance or Prohibited Method* to any *Athlete*, or assisting, encouraging, aiding, abetting, covering up or any other type of complicity involving an anti-doping rule violation or any *Attempted* violation.

## ARTICLE 3: PROOF OF DOPING

3.1 Burdens and Standards of Proof.
The *Anti-Doping Organization* shall have the burden of establishing that an anti-doping rule violation has occurred. The standard of proof shall be whether the *Anti-Doping Organization* has established an anti-doping rule violation to the comfortable satisfaction of the hearing body bearing in mind the seriousness of the allegation which is made. This standard of proof in all cases is greater than a mere balance of probability but less than proof beyond a reasonable doubt. Where the *Code* places the burden of proof upon the *Athlete* or other *Person* alleged to have committed an anti-doping rule violation to rebut a presumption or establish specified facts or circumstances, the standard of proof shall be by a balance of probability.

3.2 Methods of Establishing Facts and Presumptions.
Facts related to anti-doping rule violations may be established by any reliable means, including admissions. The following rules of proof shall be applicable in doping cases:

3.2.1 *WADA*-accredited laboratories are presumed to have conducted *Sample* analysis and custodial procedures in accordance with the *International Standard* for laboratory analysis. The *Athlete* may rebut this presumption by establishing that a departure from the International Standard occurred.
If the *Athlete* rebuts the preceding presumption by showing that a departure from the *International Standard* occurred, then the *Anti-Doping Organization* shall have the burden to establish that such departure did not cause the *Adverse Analytical Finding*.

15

3.2.2   Departures from the *International Standard for Testing* which did not cause an *Adverse Analytical Finding* or other anti-doping rule violation shall not invalidate such results. If the *Athlete* establishes that departures from the *International Standard* occurred during *Testing* then the *Anti-Doping Organization* shall have the burden to establish that such departures did not cause the *Adverse Analytical Finding* or the factual basis for the anti-doping rule violation.

## ARTICLE 9: AUTOMATIC DISQUALIFICATION OF INDIVIDUAL RESULTS

An anti-doping rule violation in connection with an *In-Competition* test automatically leads to *Disqualification* of the individual result obtained in that *Competition* with all resulting consequences, including forfeiture of any medals, points and prizes.

## ARTICLE 10: SANCTIONS ON INDIVIDUALS

10.1   *Disqualification* of Results in *Event* During which an Anti-Doping Rule Violation Occurs

An anti-doping rule violation occurring during or in connection with an *Event* may, upon the decision of the ruling body of the *Event*, lead to *Disqualification* of all of the *Athlete's* individual results obtained in that *Event* with all consequences, including forfeiture of all medals, points and prizes, except as provided in Article 10.1.1.

10.1.1   If the *Athlete* establishes that he or she bears *No Fault or Negligence* for the violation, the *Athlete's* individual results in the other *Competitions* shall not be *Disqualified* unless the *Athlete's* results in *Competitions* other than the *Competition* in which the anti-doping rule violation occurred were likely to have been affected by the *Athlete's* anti-doping rule violation.

16

10.2   Imposition of *Ineligibility* for *Prohibited Substances* and *Prohibited Methods*
Except for the specified substances identified in Article 10.3, the period of *Ineligibility* imposed for a violation of Articles 2.1 (presence of *Prohibited Substance* or its *Metabolites* or *Markers*), 2.2 (*Use* or *Attempted Use of Prohibited Substance or Prohibited Method*) and 2.6 (*Possession of Prohibited Substances and Methods*) shall be:

o   First violation: Two (2) years' *Ineligibility*.
o   Second violation: Lifetime *Ineligibility*.

However, the *Athlete* or other *Person* shall have the opportunity in each case, before a period of *Ineligibility* is imposed, to establish the basis for eliminating or reducing this sanction as provided in Article 10.5.

10.3   Specified Substances
The *Prohibited List* may identify specified substances which are particularly susceptible to unintentional anti-doping rules violations because of their general availability in medicinal products or which are less likely to be successfully abused as doping agents. Where an *Athlete* can establish that the *Use* of such a specified substance was not intended to enhance sport performance, the period of *Ineligibility* found in Article 10.2 shall be replaced with the following:

o   *First violation:* At a minimum, a warning and reprimand and no period of *Ineligibility* from future *Events*, and at a maximum, one (1) years *Ineligibility*.
o   *Second violation:* Two (2) years' *Ineligibility*.
o   *Third violation: Lifetime Ineligibility*.

However, the *Athlete* or other *Person* shall have the opportunity in each case, before a period of *Ineligibility* is imposed, to establish the basis for eliminating or reducing (in the case of a second or third violation) this sanction as provided in Article 10.5.

10.4   *Ineligibility* for Other Anti-Doping Rule Violations
The period of *Ineligibility* for other anti-doping rule violations shall be:

10.4.1   For violations of Article 2.3 (refusing or failing to submit to Sample collection) or Article 2.5 (*Tampering with Doping Control*), the *Ineligibility* periods set forth in Article 10.2 shall apply.

17

10.4.2 For violations of Articles 2.7 (Trafficking) or 2.8 (administration of Prohibited Substance or Prohibited Method), the period of Ineligibility imposed shall be a minimum of four (4) years up to lifetime Ineligibility. An anti-doping rule violation involving a Minor shall be considered a particularly serious violation, and, if committed by Athlete Support Personnel for violations other than specified substances referenced in Article 10.3, shall result in lifetime Ineligibility for such Athlete Support Personnel. In addition, violations of such Articles which also violate non-sporting laws and regulations, may be reported to the competent administrative, professional or judicial authorities.

10.4.3 For violations of Article 2.4 (whereabouts violation or missed test), the period of Ineligibility shall be at a minimum 3 months and at a maximum 2 years in accordance with the rules established by the Anti-Doping Organization whose test was missed or whereabouts requirement was violated. The period of Ineligibility for subsequent violations of Article 2.4 shall be as established in the rules of the Anti-Doping Organization whose test was missed or whereabouts requirement was violated.

10.5 Elimination or Reduction of Period of Ineligibility Based on Exceptional Circumstances.

10.5.1 No Fault or Negligence
If the Athlete establishes in an individual case involving an anti-doping rule violation under Article 2.1 (presence of Prohibited Substance or its Metabolites or Markers) or Use of a Prohibited Substance or Prohibited Method under Article 2.2 that he or she bears No Fault or Negligence for the violation, the otherwise applicable period of Ineligibility shall be eliminated. When a Prohibited Substance or its Markers or Metabolites is detected in an Athlete's Specimen in violation of Article 2.1 (presence of Prohibited Substance), the Athlete must also establish how the Prohibited Substance entered his or her system in order to have the period of Ineligibility eliminated. In the Event this Article is applied and the

period of Ineligibility otherwise applicable is eliminated, the anti-doping rule violation shall not be considered a violation for the limited purpose of determining the period of Ineligibility for multiple violations under Articles 10.2, 10.3 and 10.6.

10.5.2 No Significant Fault or Negligence
This Article 10.5.2 applies only to anti-doping rule violations involving Article 2.1 (presence of Prohibited Substance or its Metabolites or Markers), Use of a Prohibited Substance or Prohibited Method under Article 2.2, failing to submit to Sample collection under Article 2.3, or administration of a Prohibited Substance or Prohibited Method under Article 2.8. If an Athlete establishes in an individual case involving such violations that he or she bears No Significant Fault or Negligence, then the period of Ineligibility may be reduced, but the reduced period of Ineligibility may not be less than one-half of the minimum period of Ineligibility otherwise applicable. If the otherwise applicable period of Ineligibility is a lifetime, the reduced period under this section may be no less than 8 years. When a Prohibited Substance or its Markers or Metabolites is detected in an Athlete's Specimen in violation of Article 2.1 (presence of Prohibited Substance), the Athlete must also establish how the Prohibited Substance entered his or her system in order to have the period of Ineligibility reduced.

10.5.3 Athlete's Substantial Assistance in Discovering or Establishing Anti-Doping Rule Violations by Athlete Support Personnel and Others.
An Anti-Doping Organization may also reduce the period of Ineligibility in an individual case where the Athlete has provided substantial assistance to the Anti-Doping Organization which results in the Anti-Doping Organization discovering or establishing an anti-doping rule violation by another Person involving Possession under Article 2.6.2 (Possession by Athlete Support Personnel), Article 2.7 (Trafficking), or Article 2.8 (administration to an Athlete). The reduced period of Ineligibility may not, however, be less than one-half of the minimum period of Ineligibility otherwise applicable. If

the otherwise applicable period of *Ineligibility* is a lifetime, the reduced period under this section may be no less than 8 years.

10.6    Rules for Certain Potential Multiple Violations

10.6.1   For purposes of imposing sanctions under Articles 10.2, 10.3 and 10.4, a second anti-doping rule violation may be considered for purposes of imposing sanctions only if the *Anti-Doping Organization* can establish that the *Athlete* or other *Person* committed the second anti-doping rule violation after the *Athlete* or other *Person* received notice, or after the *Anti-Doping Organization* made a reasonable *Attempt* to give notice, of the first anti-doping rule violation; if the *Anti-Doping Organization* cannot establish this, the violations shall be considered as one single first violation, and the sanction imposed shall be based on the violation that carries the more severe sanction.

10.6.2   Where an *Athlete*, based on the same *Doping Control*, is found to have committed an anti-doping rule violation involving both a specified substance under Article 10.3 and another *Prohibited Substance* or *Prohibited Method*, the *Athlete* shall be considered to have committed a single anti-doping rule violation, but the sanction imposed shall be based on the *Prohibited Substance* or *Prohibited Method* that carries the most severe sanction.

10.6.3   Where an *Athlete* is found to have committed two separate anti-doping rule violations, one involving a specified substance governed by the sanctions set forth in Article 10.3 (Specified Substances) and the other involving a *Prohibited Substance* or *Prohibited Method* governed by the sanctions set forth in Article 10.2 or a violation governed by the sanctions in Article 10.4.1, the period of *Ineligibility* imposed for the second offense shall be at a minimum two years' *Ineligibility* and at a maximum three years' *Ineligibility*. Any *Athlete* found to have committed a third anti-doping rule violation involving any combination of specified substances under Article 10.3 and any other anti-doping rule violation under 10.2 or 10.4.1 shall receive a sanction of lifetime *Ineligibility*.

20

10.7    Disqualification of Results in Competitions Subsequent to *Sample* Collection

In addition to the automatic *Disqualification* of the results in the *Competition* which produced the positive *Sample* under Article 9 (Automatic *Disqualification* of Individual Results), all other competitive results obtained from the date a positive *Sample* was collected (whether *In-Competition* or *Out-of-Competition*), or other doping violation occurred, through the commencement of any *Provisional Suspension* or *Ineligibility* period, shall, unless fairness requires otherwise, be *Disqualified* with all of the resulting consequences including forfeiture of any medals, points and prizes.

10.8    Commencement of *Ineligibility* Period

The period of *Ineligibility* shall start on the date of the hearing decision providing for *Ineligibility* or, if the hearing is waived, on the date *Ineligibility* is accepted or otherwise imposed. Any period of *Provisional Suspension* (whether imposed or voluntarily accepted) shall be credited against the total period of *Ineligibility* to be served. Where required by fairness, such as delays in the hearing process or other aspects of *Doping Control* not attributable to the *Athlete*, the body imposing the sanction may start the period of *Ineligibility* at an earlier date commencing as early as the date of *Sample* collection.

10.9    Status During *Ineligibility*

No *Person* who has been declared *Ineligible* may, during the period of *Ineligibility*, participate in any capacity in a *Competition* or activity (other than authorized anti-doping education or rehabilitation programs) authorized or organized by any *Signatory* or *Signatory's* member organization. In addition, for any anti-doping rule violation not involving specified substances described in Article 10.3, some or all sport-related financial support or other sport-related benefits received by such *Person* will be withheld by *Signatories*, *Signatories'* member organizations and governments. A *Person* subject to a period of *Ineligibility* longer than four years may, after completing four years of the period of *Ineligibility*, participate in local sport *Events* in a sport other than the sport in which the *Person* committed the anti-doping rule violation, but only so long as the local sport event is not at a level that could otherwise qualify such *Person* directly or indirectly to compete in (or accumulate points toward) a national championship or *International Event*.

21

10.10   Reinstatement Testing

As a condition to regaining eligibility at the end of a specified period of Ineligibility, an Athlete must, during any period of Provisional Suspension or Ineligibility, make him or herself available for Out-of-Competition Testing by any Anti-Doping Organization having testing jurisdiction, and must, if requested, provide current and accurate whereabouts information. If an Athlete subject to a period of Ineligibility retires from sport and is removed from Out-of-Competition Testing pools and later seeks reinstatement, the Athlete shall not be eligible for reinstatement until the Athlete has notified relevant Anti-Doping Organizations and has been subject to Out-of-Competition Testing for a period of time equal to the period of Ineligibility remaining as of the date the Athlete had retired.

ARTICLE 11 CONSEQUENCES TO TEAMS

Where more than one team member in a Team Sport has been notified of a possible anti-doping rule violation under Article 7 in connection with an Event, the Team shall be subject to Target Testing for the Event. If more than one team member in a Team Sport is found to have committed an anti-doping rule violation during the Event, the team may be subject to Disqualification or other disciplinary action. In sports which are not Team Sports but where awards are given to teams, Disqualification or other disciplinary action against the team when one or more team members have committed an anti-doping rule violation shall be as provided in the applicable rules of the International Federation.

ARTICLE 13 APPEALS

13.1   Decisions Subject to Appeal

Decisions made under the Code or rules adopted pursuant to the Code may be appealed as set forth below in Articles 13.2 through 13.4. Such decisions shall remain in effect while under appeal unless the appellate body orders otherwise. Before an appeal is commenced, any post-decision review provided in the Anti-Doping Organization's rules must be exhausted, provided that such review respects the principles set forth in Article 13.2.2 below.

22

13.2   Appeals from Decisions Regarding Anti-Doping Rule Violations, Consequences, and Provisional Suspensions

A decision that an anti-doping rule violation was committed, a decision imposing Consequences for an anti-doping rule violation, a decision that no anti-doping rule violation was committed, a decision that an Anti-Doping Organization lacks jurisdiction to rule on an alleged anti-doping rule violation or its Consequences, and a decision to impose a Provisional Suspension as a result of a Provisional Hearing or in violation of Article 7.5 may be appealed exclusively as provided in this Article 13.2.

13.2.1   Appeals Involving International-Level Athletes

In cases arising from competition in an International Event or in cases involving International-Level Athletes, the decision may be appealed exclusively to the Court of Arbitration for Sport ("CAS") in accordance with the provisions applicable before such court.

13.2.3   Persons Entitled to Appeal

In cases under Article 13.2.1, the following parties shall have the right to appeal to CAS: (a) the Athlete or other Person who is the subject of the decision being appealed; (b) the other party to the case in which the decision was rendered; (c) the relevant International Federation and any other Anti-Doping Organization under whose rules a sanction could have been imposed; (d) the International Olympic Committee or International Paralympic Committee, as applicable, where the decision may have an effect in relation to the Olympic Games or Paralympic Games, including decisions affecting eligibility for the Olympic Games or Paralympic Games; and (e) WADA. In cases under Article 13.2.2, the parties having the right to appeal to the national-level reviewing body shall be as provided in the National Anti-Doping Organization's rules but, at a minimum, shall include: (a) the Athlete or other Person who is the subject of the decision being appealed; (b) the other party to the case in which the decision was rendered; (c) the relevant International Federation; and (d) WADA. For cases under Article 13.2.2, WADA and the International Federation shall also have the right to appeal to CAS with respect to the decision of the national-level reviewing body. Notwithstanding any other provision herein, the only Person that may appeal from a Provisional Suspension is the Athlete or other Person upon whom the Provisional Suspension is imposed.

23

13.3 Appeals from Decisions Granting or Denying a Therapeutic Use Exemption
Decisions by *WADA* reversing the grant or denial of a therapeutic use exemption may be appealed exclusively to CAS by the *Athlete* or the *Anti-Doping Organization* whose decision was reversed. Decisions by *Anti-Doping Organizations* other than *WADA* denying therapeutic use exemptions, which are not reversed by *WADA*, may be appealed by *International-Level Athletes* to CAS and by other *Athletes* to the national level reviewing body described in Article 13.2.2. If the national level reviewing body reverses the decision to deny a therapeutic use exemption, that decision may be appealed to CAS by *WADA*.

13.4 Appeals from Decisions Imposing Consequences under Part Three of the *Code*
With respect to consequences imposed under Part Three (Roles and Responsibilities) of the *Code*, the entity upon which consequences are imposed under Part Three of the *Code* shall have the right to appeal exclusively to CAS in accordance with the provisions applicable before such court.

13.5 Appeals from Decisions Suspending or Revoking Laboratory Accreditation
Decisions by *WADA* to suspend or revoke a laboratory's *WADA* accreditation may be appealed only by that laboratory with the appeal being exclusively to CAS.

## ARTICLE 17 STATUTE OF LIMITATIONS

No action may be commenced against an *Athlete* or other *Person* for a violation of an anti-doping rule contained in the *Code* unless such action is commenced within eight years from the date the violation occurred.

24

## DEFINITIONS

*Adverse Analytical Finding:* A report from a laboratory or other approved *Testing* entity that identifies in a *Specimen* the presence of a *Prohibited Substance* or its *Metabolites* or *Markers* (including elevated quantities of endogenous substances) or evidence of the *Use* of a *Prohibited Method.*

*Anti-Doping Organization:* A *Signatory* that is responsible for adopting rules for initiating, implementing or enforcing any part of the *Doping Control* process. This includes, for example, the International Olympic Committee, the International Paralympic Committee, other Major Event Organizations that conduct *Testing* at their *Events*, *WADA*, International Federations, and *National Anti-Doping Organizations.*

*Athlete:* For purposes of *Doping Control*, any *Person* who participates in sport at the international level (as defined by each International Federation) or national level (as defined by each *National Anti-Doping Organization*) and any additional *Person* who participates in sport at a lower level if designated by the *Person's National Anti-Doping Organization.* For purposes of anti-doping information and education, any *Person* who participates in sport under the authority of any *Signatory*, government, or other sports organization accepting the *Code.*

*Athlete Support Personnel:* Any coach, trainer, manager, agent, team staff, official, medical or para-medical *Personnel* working with or treating *Athletes* participating in or preparing for sports competition.

*Attempt:* Purposely engaging in conduct that constitutes a substantial step in a course of conduct planned to culminate in the commission of an anti-doping rule violation. Provided, however, there shall be no anti-doping rule violation based solely on an *Attempt* to commit a violation if the *Person* renunciates the attempt prior to it being discovered by a third party not involved in the *Attempt.*

*Code:* The World Anti-Doping Code.

*Competition:* A single race, match, game or singular athletic contest. For example, the finals of the Olympic 100-meter dash. For stage races and other athletic contests where prizes are awarded on a daily or other interim basis the distinction between a *Competition* and an *Event* will be as provided in the rules of the applicable International Federation.

25

**Consequences of Anti-Doping Rules Violations:** An *Athlete's* or other *Person's* violation of an anti-doping rule may result in one or more of the following: (a) *Disqualification* means the *Athlete's* results in a particular *Competition* or *Event* are invalidated, with all resulting consequences including forfeiture of any medals, points and prizes; (b) *Ineligibility* means the *Athlete* or other *Person* is barred for a specified period of time from participating in any *Competition* or other activity or funding as provided in Article 10.9; and (c) *Provisional Suspension* means the *Athlete* or other *Person* is barred temporarily from participating in any *Competition* prior to the final decision at a hearing conducted under Article 8 (Right to a Fair Hearing).

**Disqualification:** See *Consequences of Anti-Doping Rules Violations* above.

**Doping Control:** The process including test distribution planning, *Sample* collection and handling, laboratory analysis, results management, hearings and appeals.

**Event:** A series of individual *Competitions* conducted together under one ruling body (e.g., the Olympic Games, FINA World Championships, or Pan American Games).

**In-Competition:** For purposes of differentiating between *In-Competition* and *Out-of-Competition Testing*, unless provided otherwise in the rules of an *International Federation* or other relevant *Anti-Doping Organization*, an *In-Competition* test is a test where an *Athlete* is selected for testing in connection with a specific *Competition*.

**Independent Observer Program:** A team of observers, under the supervision of *WADA*, who observe the *Doping Control* process at certain *Events* and report on observations. If *WADA* is testing *In-Competition* at an *Event*, the observers shall be supervised by an independent organization.

**Ineligibility:** See *Consequences of Anti-Doping Rules Violations* above.

**International Event:** An *Event* where the International Olympic Committee, the International Paralympic Committee, an *International Federation*, a *Major Event Organization*, or another international sport organization is the ruling body for the *Event* or appoints the technical officials for the *Event*.

**International-Level Athlete:** *Athletes* designated by one or more International Federations as being within the *Registered Testing Pool* for an International Federation.

**International Standard:** A standard adopted by *WADA* in support of the *Code*. Compliance with an *International Standard* (as opposed to another alternative standard, practice or procedure) shall be sufficient to conclude that the procedures addressed by the *International Standard* were performed properly.

**Major Event Organizations:** This term refers to the continental associations of *National Olympic Committees* and other international multi-sport organizations that function as the ruling body for any continental, regional or other *International Event*.

**Marker:** A compound, group of compounds or biological parameters that indicates the *Use* of a *Prohibited Substance* or *Prohibited Method*.

**Metabolite:** Any substance produced by a biotransformation process.

**Minor:** A natural *Person* who has not reached the age of majority as established by the applicable laws of his or her country of residence.

**National Anti-Doping Organization:** The entity(ies) designated by each country as possessing the primary authority and responsibility to adopt and implement anti-doping rules, direct the collection of *Samples*, the management of test results, and the conduct of hearings, all at the national level. If this designation has not been made by the competent public authority(ies), the entity shall be the country's *National Olympic Committee* or its designee. [In the United States, this entity is USADA.]

**National Event:** A sport *Event* involving international or national-level *Athletes* that is not an *International Event*.

**National Olympic Committee:** The organization recognized by the International Olympic Committee. The term National Olympic Committee shall also include the National Sport Confederation in those countries where the National Sport Confederation assumes typical National Olympic Committee responsibilities in the anti-doping area. [In the United States, this entity is the United States Olympic Committee.]

**No Advance Notice:** A *Doping Control* which takes place with no advance warning to the *Athlete* and where the *Athlete* is continuously chaperoned from the moment of notification through *Sample* provision.

**No Fault or Negligence:** The Athlete's establishing that he or she did not know or suspect, and could not reasonably have known or suspected even with the exercise of utmost caution, that he or she had Used or been administered the Prohibited Substance or Prohibited Method.

**No Significant Fault or Negligence:** The Athlete's establishing that his or her fault or negligence, when viewed in the totality of the circumstances and taking into account the criteria for No Fault or Negligence, was not significant in relationship to the anti-doping rule violation.

**Out-of-Competition:** Any Doping Control which is not In-Competition.

**Participant:** Any Athlete or Athlete Support Personnel.

**Person:** A natural Person or an organization or other entity.

**Possession:** The actual, physical possession, or the constructive Possession (which shall be found only if the Person has exclusive control over the Prohibited Substance/Method or the premises in which a Prohibited Substance/Method exists); provided, however, that if the Person does not have exclusive control over the Prohibited Substance/Method or the premises in which a Prohibited Substance/Method exists, constructive possession shall only be found if the Person knew about the presence of the Prohibited Substance/Method and intended to exercise control over it. Provided, however, there shall be no anti-doping rule violation based solely on possession if, prior to receiving notification of any kind that the Person has committed an anti-doping rule violation, the Person has taken concrete action demonstrating that the Person no longer intends to have Possession and has renounced the Person's previous Possession.

**Prohibited List:** The List identifying the Prohibited Substances and Prohibited Methods.

**Prohibited Method:** Any method so described on the Prohibited List.

**Prohibited Substance:** Any substance so described on the Prohibited List.

**Provisional Hearing:** For purposes of Article 7.5, an expedited abbreviated hearing occurring prior to a hearing under Article 8 (Right to a Fair Hearing) that provides the Athlete with notice and an opportunity to be heard in either written or oral form.

**Provisional Suspension:** See Consequences above.

**Publicly Disclose or Publicly Report:** To disseminate or distribute information to the general public or Persons beyond those Persons entitled to earlier notification in accordance with Article 14.

**Registered Testing Pool:** The pool of top level Athletes established separately by each International Federation and National Anti-Doping Organization who are subject to both In-Competition and Out-of-Competition Testing as part of that International Federation's or Organization's test distribution plan.

**Sample Specimen:** Any biological material collected for the purposes of Doping Control.

**Signatories:** Those entities signing the Code and agreeing to comply with the Code, including the International Olympic Committee, International Federations, International Paralympic Committee, National Olympic Committees, National Paralympic Committees, Major Event Organizations, National Anti-Doping Organizations, and WADA.

**Tampering:** Altering for an improper purpose or in an improper way; bringing improper influence to bear; interfering improperly to alter results or prevent normal procedures from occurring.

**Target Testing:** Selection of Athletes for Testing where specific Athletes or groups of Athletes are selected on a non-random basis for Testing at a specified time.

**Team Sport:** A sport in which the substitution of players is permitted during a Competition.

**Testing:** The parts of the Doping Control process involving test distribution planning, Sample collection, Sample handling, and Sample transport to the laboratory.

**Trafficking:** To sell, give, administer, transport, send, deliver or distribute a Prohibited Substance or Prohibited Method to an Athlete either directly or through one or more third parties, but excluding the sale or distribution (by medical personnel or by Persons other than an Athlete's Support Personnel) of a Prohibited Substance for genuine and legal therapeutic purposes.

**Use:** The application, ingestion, injection or consumption by any means whatsoever of any Prohibited Substance or Prohibited Method.

**WADA:** The World Anti-Doping Agency.

Annex B



# USADA

## ATHLETE LOCATION FORM
### QUARTERLY UPDATE: October - December
### DUE AT USADA: September 7, 2004
### FAX 719-785-2099 OR 719-785-2091

If you have an email address on file with USADA you can submit this form online at: www.usantidoping.org
Please type or print legibly. Do not use pencil.

**Athlete Information** — THIS INFORMATION IS REQUIRED FOR YOUR FORM TO BE CONSIDERED COMPLETE.

**Residence** — Providing secondary contact information is in your benefit and can help minimize the likelihood of you being declared "unavailable"

NAME:

GENDER: ☐ MALE   ☐ FEMALE

DATE OF BIRTH:  ___ / ___ / ___

PHYSICAL ADDRESS: (where you will reside this quarter. No P.O. Boxes)

MAILING ADDRESS: (if different from physical address)

EMAIL ADDRESS:

PRIMARY CONTACT PERSON:

SPORT:                    DISCIPLINE:

PARALYMPIC: ☐ YES   PARALYMPIC CLASSIFICATION

## Regular Quarterly Schedule (See instructions for minors on last page or how to complete this section)
This form is designed for use by a large number of athletes. We realize some schedules are more complex than others and encourage you to attach additional information on separate sheets if necessary. This is your chance to be as specific as possible, and where you can be contacted for OOC testing.

### Primary Training Location
FACILITY NAME:
FACILITY ADDRESS:

SECONDARY TRAINING LOCATION

**PRIMARY TRAINING LOCATION SCHEDULE** (Please indicate specific times i.e. 9:00 a.m. - 2:00 p.m.)

| Day  | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|------|--------|--------|---------|-----------|----------|--------|----------|
| A.M. |        |        |         |           |          |        |          |
| P.M. |        |        |         |           |          |        |          |

### Secondary Training/Alternate Location
FACILITY NAME:
FACILITY ADDRESS:

**SECONDARY TRAINING/ALTERNATE LOCATION SCHEDULE** (Please indicate specific times i.e. 9:00 a.m. - 2:00 p.m.)

| Day  | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|------|--------|--------|---------|-----------|----------|--------|----------|
| A.M. |        |        |         |           |          |        |          |
| P.M. |        |        |         |           |          |        |          |

### Other Regular Activities (for additional Other Regular Activities, please attach a separate sheet of paper)
Please provide address for activities for which you check "Yes" to being tested. Please provide specific times (i.e. 9:00 a.m. - 2:00 p.m.).

ACTIVITY 1:
ADDRESS:

ACTIVITY 2:
ADDRESS:

MAY WE TEST DURING THIS ACTIVITY?
☐ YES   ☐ NO

| DAY | SUN | MON | TUE | WED | THU | FRI | SAT |
|-----|-----|-----|-----|-----|-----|-----|-----|
| ACTIVITY TIMES |  |  |  |  |  |  |  |

MAY WE TEST DURING THIS ACTIVITY?
☐ YES   ☐ NO

| DAY | SUN | MON | TUE | WED | THU | FRI | SAT |
|-----|-----|-----|-----|-----|-----|-----|-----|
| ACTIVITY TIMES |  |  |  |  |  |  |  |

31

30

**Athlete Location Form (ALF) — page 33**

OCTOBER–DECEMBER 2004

Exceptions to Quarterly Schedule (See instructions for more detail on how to complete this section.)

NAME: _____

TEMPORARY ADDRESSES (Please attach additional sheets as necessary – be sure to write your name on any additional sheets submitted.)

Temporary Residence Address / Temporary Training Address (if applicable)

COMPETITION SCHEDULE

| Competition Location | Country | Competition Dates | Travel Days |
|---|---|---|---|

Special Exceptions:

ATHLETE SIGNATURE: _____

SIGNATURE IS REQUIRED FOR FORM TO BE CONSIDERED COMPLETE

I acknowledge that this form, and the information submitted, may be shared with the World Anti-Doping Agency for the conduct that this information is to be used for doping control purposes only.

---



**ATHLETE LOCATION FORM (ALF)**
**INSTRUCTIONS – PLEASE REVIEW**
*"Remember to update USADA with changes to your schedule throughout the quarter!"*

If you have an email address we on file with USADA you can submit your ALF online at: www.usantidoping.org

*Providing detailed contact information is to your benefit and can help minimize the frequency of athlete being declared "unavailable". The bullets below are intended to define what information is being requested in specific fields of the ALF and why it is being requested. Please note that you should always feel free to attach additional sheets of information as necessary. Remember to put your name and sport on any additional sheets submitted.*

**Athlete Information** — **THIS INFORMATION IS REQUIRED FOR YOUR FORM TO BE CONSIDERED COMPLETE.**

- PHYSICAL ADDRESS – This is the location at which you will be staying for the majority of the quarter. A PO Box is not acceptable as a physical address.
- MAILING ADDRESS – Only required if you do not want mail sent to your physical address. This is the address to which USADA will send all future mailings until a new mailing address is provided.
- TELEPHONE/CELL PHONE NUMBERS – Doping Control Officers will use these numbers to get a hold of you for DCC testing. If you are not found at one of the locations provided by you in subsequent sections of this form.
- PRIMARY CONTACT PERSON/PHONE NUMBER – This is someone who will know your whereabouts if a DCO is having trouble locating you for DCC testing.

**Regular Quarterly Schedule** — PROVIDE YOUR REGULAR QUARTERLY SCHEDULE. EXCEPTIONS TO THIS CAN BE RECORDED IN SUBSEQUENT SECTIONS AND/OR UPDATES THROUGHOUT THE QUARTER.

We realize some schedules are more complex than others. You are strongly encouraged to attach additional information on separate sheets if necessary. Do your best to provide as much information as possible. This is your chance to control when and where you can be contacted for DCC testing.

- PRIMARY TRAINING – Please indicate the address of the facility and your regular training schedule (days and times) to the best of your ability.
- SECONDARY TRAINING – If you use an alternate training location as a regular basis, provide the facility's address and your training schedule (days and times) for this facility in this section.
- OTHER REGULAR ACTIVITIES – Use these sections to provide USADA with additional contact information, indicate any activities (work, school, church, etc.) that are part of your regular routine. Be sure to include in the direction provided whether or not you are permitted by a DCO to contact you for testing during this activity.

**Exceptions to Quarterly Schedule** — PROVIDE EXCEPTIONS TO YOUR REGULAR QUARTERLY SCHEDULE
If you need additional room to list temporary addresses and/or upcoming competitions, please attach additional information as necessary.

- TEMPORARY ADDRESSES – Use this section to list additional locations where you will be living and/or training throughout the quarter. *Vacations should be listed here as well. You can also submit this information on an update at the appropriate time in the quarter. Be sure to include the dates that you will be at each location.
- COMPETITION SCHEDULE – List the events at which you will be competing in the upcoming quarter. Be sure to include the dates of each competition AND the dates of travel to and from competition.
- TRAVEL DAYS – List specific dates of travel as they relate to Temporary Addresses and Competitions (e.g. 7/10/4, 7/20/4 and 7/60/4).
- SPECIAL EXCEPTIONS – Please list regular activities that are not previously identified on this form and that will alter the schedule provided by your Regular Quarterly Schedule and/or Exceptions to Quarterly Schedule. Include a conference or seminar for work; Graduation; Wedding or other special location; or other activity that would change your schedule for a SINGLE DAY making it difficult to locate you at one of the locations identified elsewhere on this form. This should be combined for EXCEPTIONS only, and is not for regularly scheduled days off from training or other regularly scheduled activities.
- ATHLETE SIGNATURE – Your form must be signed and dated to be considered complete.

RETURN YOUR COMPLETED FORM TO USADA BY MAIL OR FAX TO:
USADA – DCC Testing Program
2550 Tenderfoot Hill Street, Suite 200
Colorado Springs, CO 80906
FAX: (719) 785-2009 or (719) 785-2001 TOLL FREE PHONE: (for questions) 1-866-601-2632

page 32

## ANNEX C

The following documents will accompany the initial notification to the athlete or other person of a positive "A" sample analysis:

1.  A standard notice setting forth the review procedures, athlete's or other person's rights, and contact information for the USOC Athlete Ombudsman (including name, telephone number, e-mail address and website URL)

2.  Notification of the prohibited substance at issue which could result in a doping violation. In those cases where an administrative threshold concentration is employed, that threshold will be noted. When possible, the degree to which the athlete's or other person's sample exceeds the threshold will be reported.

3.  An abbreviated analytical report to the "A" confirmation analysis. The abbreviated data should include applicable analytical confirmation technique (e.g., gas chromatography/mass spectrometric) graphical data for negative control urine, a positive control urine (including quantitative data where relevant), and the athlete's or other person's sample. The purpose of this data is to allow the athlete or other person or their representative to determine a course of action. It is understood that due to time constraints involved, there is typically less time to review and organize this data prior to transmittal than with the documentation package to accompany the "B" sample which will also address documents related to the "A" analysis.

4.  For EPO cases, provide the Basic Area Percentage (BAP) of r-EPO, stated as a percentage term.

5.  A cover page summarizing, in plain English, the following data contained in the laboratory documentation package: (i) the test collection date; (ii) the name of the substance reported positive or elevated; and (iii) quantification information as follows: (a) for substances where WADA has established a reporting threshold, an estimate of the concentration relative to the threshold; (b) for T/E ratios, the approximate screen concentrations of T and E [note that T/E ratios are reported based on a comparison of the relative signals of T and E not a comparison of absolute quantities of T and E]; (c) for non-threshold substances, a statement whether the concentration is relatively "high," "medium" or "low" with a reference range provided for the positive or elevated substance in question. Note that for non-threshold substances the presence of any quantity of the prohibited substance is an anti-doping rule violation.

35

34

**ANNEX D**

The following documentation will be supplied as the standard documentation package:

Table of contents

List of laboratory staff involved in the test, including signatures and/or initials and
     position title(s)

Sample identification information

Organization requesting the test

Date of sample collection and site identification

USADA sample identification number

Laboratory sample identification number

Urine integrity test results (if completed)

Chain of custody documentation for sample container

Doping Control Notification form (Laboratory copy)

Transportation chain of custody (e.g., courier documentation, laboratory
     receipt of container)

"A" sample container chain(s) of custody

Documentation of any deviations from the written screening procedures, if any

"A" Sample Screening Results

Relevant aliquot chain(s) of custody

Screening procedure data, including chromatograms (or other relevant data), for Negative
control urine

Positive control urine (with concentration indicated, if relevant)

Sample urine aliquot(s)

Analytical run instrument validation data (e.g.; tune data)

Documentation of any deviations from the written screening procedures, if any

"A" Sample Confirmation Results

Summary of the analytical principles of the confirmation method

Aliquot chain of custody

Sequence verification data

Confirmation procedure data, including chromatograms (or other relevant data), for
Negative control urine

Positive control urine (with concentration indicated, if relevant)

Standard(s)/calibrator(s) (if relevant)

Sample urine aliquot(s)

Analytical run instrument validation data (e.g.; tune data)

"A" sample report (including numerical data for threshold substances*)
     pH, Specific Gravity, and other urine integrity test results (if applicable,
     including abnormal appearance of sample) performed in laboratory.

36

37

ANNEX E

Documentation of any deviations from the written screening procedures, if any
"B" Sample Confirmation Results
"B" sample container chain(s) of custody
Summary of the analytical principles of the confirmation method (if different than "A")
Aliquot chain of custody
Sequence verification data
Confirmation procedure data, including chromatograms (or other relevant data), for
Negative control urine
Positive control urine (with concentration indicated, if relevant)
Standard(s)/calibrator(s) (if relevant)
Sample urine aliquot(s)
Analytical run instrument validation data (e.g., tune data)
"B" sample report (including numerical data for threshold substances*)
Documentation of any deviations from the written screening procedures, if any
Reports and Correspondence
All facsimiles or letters related to analysis and reporting of sample results

*For threshold substances, an estimate of the ratio or concentration or an estimate of
the concentration relative to the threshold (i.e. 20 times the threshold concentration) is
deemed acceptable.

# American Arbitration Association Supplementary Procedures for the Arbitration of Olympic Sport Doping Disputes

Table of Contents
R-1.   Applicability
R-2.   AAA and Delegation of Duties
R-3.   National Panel of Arbitrators
R-4.   Initiation under an Arbitration Provision in a Contract
R-5.   Initiation under a Submission
R-6.   Changes of Claim
R-7.   Applicable Procedures
R-8.   Jurisdiction
R-9.   Mediation
R-10.  Administrative Conference
R-11.  Fixing of Locale
R-12.  Qualifications of an Arbitrator
R-13.  Appointment from Panel
R-14.  Direct Appointment by a Party
R-15.  Appointment of Neutral Arbitrator by Party-Appointed Arbitrators or Parties
R-16.  Nationality of Arbitrator
R-17.  Number of Arbitrators
R-18.  Notice to Arbitrator of Appointment
R-19.  Disclosure and Challenge Procedure
R-20.  Communication with Arbitrator
R-21.  Vacancies
R-22.  Preliminary Hearing
R-23.  Exchange of Information
R-24.  Date, Time, and Place of Hearing
R-25.  Attendance at Hearings
R-26.  Representation
R-27.  Oaths
R-28.  Stenographic Record
R-29.  Interpreters
R-30.  Postponements
R-31.  Arbitration in the Absence of a Party or Representative

## American Arbitration Association Supplementary Procedures for the Arbitration of Olympic Sport Doping Disputes [1]

### R-1. Applicability

The Commercial Arbitration Rules of the AAA, as modified by these Supplementary Procedures for the Arbitration of Olympic Sport Doping Disputes (Supplementary Procedures) shall apply to arbitrations, which arise out of the USADA Protocol. To the extent that there is any variance between the Commercial Arbitration Rules and the Supplementary Procedures, the Supplementary Procedures shall control.

### R-2. AAA and Delegation of Duties

Doping cases shall be administered by the AAA through the AAA Vice President then serving as the Secretary for the North American/Central American/Caribbean Islands Decentralized Office of The Court of Arbitration for Sport or his/her designee (Administrator).

### R-3. National Pool of Arbitrators

*The Pool of Arbitrators for doping cases shall consist of the North American Court of Arbitration for Sport (CAS) Arbitrators who shall also be AAA Arbitrators (the Arbitrator Pool). Any reference to arbitrator in these rules shall also refer to an arbitration panel consisting of three arbitrators, if applicable. All arbitrators in the Arbitrator Pool shall be offered training by the AAA.*

[1] The provisions in italics are modifications specifically adopted for proceedings under the United States Anti-Doping Agency (USADA) Protocol for Olympic Movement Testing (USADA Protocol) and supersede the provisions set forth in the Commercial Arbitration Rules of the American Arbitration Association (AAA) (which are otherwise set forth in regular non-italic type).

41

Table of Contents (continued)
R-32.   Conduct of Proceedings
R-33.   Evidence
R-34.   Evidence by Affidavit and Posthearing Filing of Documents or Other Evidence
R-35.   Inspection or Investigation
R-36.   Interim Measures
R-37.   Closing of Hearing
R-38.   Reopening of Hearing
R-39.   Waiver of Rules
R-40.   Extensions of Time
R-41.   Serving of Notice
R-42.   Majority Decision
R-43.   Time of Award
R-44.   Form of Award
R-45.   Scope of Award
R-46.   Award upon Settlement
R-47.   Delivery of Award to Parties
R-48.   Modification of Award
R-49.   Release of Documents for Judicial Proceedings
R-49A.  Appeal Rights
R-50.   Applications to Court and Exclusion of Liability
R-51.   Administrative Fees
R-52.   Expenses
R-53.   Neutral Arbitrator's Compensation
R-54.   Deposits
R-55.   Interpretation and Application of Rules
R-56.   Suspension for Nonpayment

40

## R-4. Initiation by USADA

*Arbitration proceedings shall be initiated by USADA by sending a notice to the athlete or other person charged with a doping offense and the Administrator, which sets forth the sanction, consistent with the applicable International Federation rules, the mandatory Articles from the World Anti-Doping Code (Annex A of the USADA Protocol) and the United States Olympic Committee ("USOC") National Anti-Doping Policies, which USADA is seeking to have imposed and other possible sanctions, which could be imposed under the applicable International Federation rules the mandatory Articles from the World Anti-Doping Code (Annex A of the USADA Protocol) and the USOC National Anti-Doping Policies. The notice shall also advise the athlete of the name, telephone number and website of the Athlete Ombudsman and shall include a copy of the USADA Protocol and these Supplemental Procedures. The parties to the proceeding shall be USADA and the athlete or other person charged with a doping offense. The applicable International Federation shall also be invited to join in the proceeding as a party or as an observer. The athlete shall have the right to invite the Athlete Ombudsman as an observer, but under no circumstances may any party or arbitrator compel the Athlete Ombudsman to testify as a witness. If the parties agree or the athlete or other person charged with a doping offense requests and the arbitrator agrees, the hearing shall be open to the public.*

## R-5. Initiation under a Submission

Parties to any existing dispute may commence an arbitration under these rules by filing at any office of the AAA two copies of a written submission to arbitrate under these rules, signed by the parties. It shall contain a statement of the nature of the dispute, the names and addresses of all parties, any claims and counterclaims, the amount involved, if any, the remedy sought, and the hearing locale requested, together with the appropriate filing fee as provided in the schedule included with these rules. Unless the parties state otherwise in the submission, all claims and counterclaims will be deemed to be denied by the other party.

## R-6. Changes of Claim

After filing of a claim, if any party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7. Applicable Procedures

*All cases shall be administered in accordance with Sections R-1 through R-56 of these rules.*

The applicable procedure shall be the regular procedure (as opposed to the Expedited or Complex procedures) set forth in the AAA Commercial Arbitration Rules. At the request of any party, any time period set forth in these procedures may be shortened by the arbitrator(s) where doing so is reasonably necessary to resolve any athlete's eligibility before a protected competition, while continuing to protect the right of an athlete or other person charged with a doping offense to a fair hearing. The shortened time periods shall not prohibit the athlete's or other person's right to request three (3) arbitrators or choose a neutral arbitrator.

If a request to expedite the adjudication process is made prior to the arbitration panel being appointed, the AAA shall randomly select 1 arbitrator from the Arbitrator Pool, who shall determine whether the adjudication process shall be expedited and the schedule pursuant to which the process shall proceed. This randomly selected arbitrator shall not sit on the panel.

If a request to expedite the adjudication process is made after the arbitration panel is appointed, the arbitration panel shall determine whether the arbitration process shall be expedited and the schedule pursuant to which the process shall proceed.

The AAA shall immediately notify the Athlete Ombudsman and the USOC General Counsel's office of any arbitration that may be or has been initiated under these expedited procedures.

## R-8. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

**R-9. Mediation**

The reference to mediation has been deleted.

**R-10. Administrative Conference**

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings and any other administrative matters. *There is no administrative fee for this service.*

**R-11. Fixing of Locale**

*The locale of the arbitration shall be in the United States at a location determined by the Administrator using criteria established by the AAA but making every effort to give preference to the choice of the athlete or other person charged with a doping offense.*

**R-12. Qualifications of an Arbitrator**

(a) *Any neutral arbitrator appointed pursuant to Section R-13, R-14, R-15, or selected by mutual choice of the parties or their appointees, shall be subject to disqualification for the reasons specified in Section R-19. If the parties specifically so agree in writing, the arbitrator shall not be subject to disqualification for those reasons.*

(b) *Party-appointed arbitrators are expected to be neutral and may be disqualified for the reasons set forth in R-19.*

**R-13. Appointment of the Arbitration Panel**

*The arbitrator(s) shall be appointed in the following manner:*

(a) *Immediately after the initiation of a proceeding by USADA (as set forth in R-4), the AAA shall send simultaneously to each party to the dispute an identical list of all names of persons in the Arbitrator Pool.*

44

(b) *The proceeding shall be heard by 1 arbitrator from the list of persons in the Arbitrator Pool (as set forth in R-3), unless within 5 days following the initiation of the proceeding by USADA, a party elects instead to have the matter heard by a panel of 3 arbitrators from the Arbitrator Pool (Arbitration Panel). Such election shall be in writing and served on the Administrator and the other parties to the proceeding.*

(c) *If the proceeding is to be heard by 1 arbitrator, that arbitrator shall be appointed as follows:*

(i) *Within 10 days following receipt of the Arbitrator Pool list provided by the Administrator under R-13(a), the parties shall notify the Administrator of the name of the person who is mutually agreeable to the parties to serve as the arbitrator.*

(ii) *If the parties are unable to agree upon an arbitrator by the time set forth in paragraph (c)(i) of this rule, each party to the dispute shall have 5 additional days in which to strike up to one third of the Arbitrator Pool, rank the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.*

(d) *If the proceeding is to be heard by a panel of three arbitrators, those arbitrators shall be appointed as follows:*

(i) *Within 5 days following receipt of the Arbitrator Pool list provided by the Administrator under R-13(a) or from receipt of notice of the request to have a three (3) arbitrator panel, whichever is later, USADA, or USADA and the International Federation, if a party, shall designate 1 arbitrator from the Arbitrator Pool. The athlete or other person charged with a doping offense shall have an additional 5 days following receipt of the arbitrator choice from USADA, or from USADA and the International Federation, if a party, to designate 1 arbitrator from the Arbitrator Pool.*

45

(ii) *The 2 arbitrators chosen by the parties shall choose the third arbitrator from among the remaining members of the Arbitrator Pool. The AAA shall furnish to the party-appointed arbitrators the Arbitrator Pool list. If the 2 arbitrators chosen by the parties are unable, within 7 days following their selection, to choose the third arbitrator, then the party-appointed arbitrators shall so notify the AAA which shall notify the parties. Within 5 days of receipt of notice from the AAA that the party-selected arbitrators are unable to reach or have not reached agreement, the parties shall then strike up to one third of the Arbitrator Pool and rank the remaining members in order of preference. From among the persons who have not been stricken by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of 1 arbitrator to serve. The third arbitrator shall serve as Chair of the Arbitration Panel.*

## R-14. Direct Appointment by a Party

*The reference to Direct Appointment by a Party has been deleted.*

## R-15. Appointment of Neutral Arbitrator by Party-Appointed Arbitrators or Parties

*The reference to Appointment of Neutral Arbitrator by Party-Appointed Arbitrators or Parties has been deleted.*

## R-16. Nationality of Arbitrator

Where the parties are nationals or residents of different countries, the AAA, at the request of any party or on its own initiative, may appoint as a national arbitrator a national of a country other than that of any of the parties. The request must be made prior to the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

## R-17. Number of Arbitrators

*The number of arbitrators shall be 1 unless any party requests three.*

## R-18. Notice to Arbitrator of Appointment

*Notice of the appointment of the neutral arbitrator, whether appointed mutually by the parties or by the AAA, shall be sent to the arbitrator by the AAA, together with a copy of these rules, and the signed acceptance of the arbitrator shall be filed with the AAA prior to the opening of the first hearing.*

## R-19. Disclosure and Challenge Procedure

(a) Any person appointed as a neutral arbitrator shall disclose to the AAA any circumstance likely to affect impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives.

(b) Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

(c) Upon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.

## R-20. Communication with Arbitrator

(a) *No party and no one acting on behalf of any party shall communicate unilaterally concerning the arbitration with a neutral arbitrator or a candidate for neutral arbitrator. Unless the parties agree otherwise or the arbitrator so directs, any communication from the parties to a neutral arbitrator shall be sent to the AAA for transmittal to the arbitrator. No party and no one acting on behalf of any party shall communicate with any arbitrator concerning the selection of the third arbitrator.*

(b) Once the panel has been constituted, no party and no one acting on behalf of any party shall communicate unilaterally concerning the arbitration with any arbitrator.

## R-21. Vacancies

(a) If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

(b) In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

(c) In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

**R-22. Preliminary Hearing**

(a) At the request of any party or at the discretion of the arbitrator or the AAA, the arbitrator may schedule as soon as practicable a preliminary hearing with the parties and/or their representatives. The preliminary hearing may be conducted by telephone at the arbitrator's discretion. *There is no administrative fee for the first preliminary hearing.*

(b) During the preliminary hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

**R-23. Exchange of Information**

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

(b) *Unless otherwise agreed by the parties or ordered by the arbitrator,* at least 5 business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

**R-24. Date, Time, and Place of Hearing**

*Except as may be mutually agreed by the parties or upon the request of a single party for good cause as may be determined by the arbitrator, the hearing, including any briefing ordered by the arbitrator, shall be completed within three months of the appointment of the arbitrator.* On good cause shown by any party, the hearing process shall be expedited as may be necessary in order the resolve the determination of an athlete's eligibility prior to any protected competition or team selection for a protected competition.

**R-25. Attendance at Hearings**

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary or the hearing is open to the public as prescribed in R-4 (*The athlete or other person charged with a doping offense shall have the right to invite the Athlete Ombudsman as an observer regardless*). Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power

48

to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person other than a party and its representatives. *If the parties agree, or the athlete or other person charged with a doping offense requests and the arbitrator agrees, hearings may also be conducted telephonically.*

**R-26. Representation**

Any party may be represented by counsel or other authorized representative. A party intending to be so represented shall notify the other party and the AAA of the name and address of the representative at least three days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

**R-27. Oaths**

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

**R-28. Stenographic Record**

*Any party desiring a stenographic record of all or a portion of the hearing shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least 3 days in advance of the start of the hearing or as required by the arbitrator. The requesting party or parties shall pay the cost of the transcript they request, whether full or partial.* If a party seeks a copy of a transcript, full or partial, requested by another party, then the other party shall pay half the costs of the transcript to the requesting party. If the entire transcript is requested by the parties jointly, or if all or a portion of the transcript is determined by the arbitrator to be the official record of the proceeding or necessary to the arbitrator's decision, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator with the costs of the transcription divided equally between the parties. The arbitrator may award the costs of transcription for a transcript requested by the arbitrator as expenses of the arbitration pursuant to R-45 and R-52.

49

**R-29. Interpreters**

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

**R-30. Postponements**

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative. *A party or parties causing a postponement of a hearing will be charged a postponement fee, as set forth in the administrative fee schedule.*

**R-31. Arbitration in the Absence of a Party or Representative**

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

**R-32. Conduct of Proceedings**

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) The parties may agree to waive oral hearings in any case.

50

**R-33. Evidence**

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

(e) *Hearings conducted pursuant to these rules shall incorporate mandatory Articles from the World Anti-Doping Code (Annex A of the USADA Protocol). If the World Anti-Doping Code is silent on an issue, then the USADA Protocol, the USOC National Anti-Doping Policies, and the International Federation's anti-doping rules shall apply as determined by the arbitrator.*

**R-34. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence**

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

(b) If the parties agree, *if any party requests and the arbitrator agrees, or if the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing,* the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

51

**R-35. Inspection or Investigation**

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

**R-36. Interim Measures**

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

**R-37. Closing of Hearing**

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-34 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

**R-38. Reopening of Hearing**

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 10 days from the closing of the reopened hearing within which to make an award. *The 30 day period for re-opening a hearing [under rule 38 of the Commercial Arbitration Rules] shall be reduced to 10 days.*

**R-39. Waiver of Rules**

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

**R-40. Extensions of Time**

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

**R-41. Serving of Notice**

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (Email), or other methods of communication.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**R-42. Majority Decision**

When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement, a majority of the arbitrators must make all decisions.

**R-43. Time of Award**

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 10 days from the date of closing the hearing, or,

if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. *The 30 day period given to the arbitrator under rule 43 of the Commercial Arbitration Rules for rendering an award shall be reduced to 10 days.*

**R-44. Form of Award**

Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law. *In all cases, the arbitrator shall render a reasoned award.*

**R-45. Scope of Award**

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in R-51, R-52, and R-53. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include: (a) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and (b) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

(e) *All fees and expenses payable to the AAA, the arbitrator, or for witnesses or proof produced at the direct request of the arbitrator shall be paid solely by the USOC to the AAA.*

**R-46. Award upon Settlement**

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award."

**R-47. Delivery of Award to Parties**

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

*The AAA shall also provide a copy (preferably in electronic form) of the award to the appropriate National Governing body, the USOC General Counsel's office and the Athlete Ombudsman.*

**R-48. Modification of Award**

Within 5 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 5 days to respond to the request. The arbitrator shall dispose of the request within 5 days after transmittal by AAA to the arbitrator of the request and any response thereto. *The time periods provided for seeking modification of the award under rule 48 of the Commercial Arbitration Rules shall be reduced to 5 days.*

**R-49. Release of Documents for Judicial Proceedings**

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration. *The AAA shall also furnish copies of documents required in connection with CAS proceedings.*

**R-49A. Appeal Rights**

*The arbitration award may be appealed to CAS as provided in Annex A of the USADA Protocol, which incorporates the mandatory Articles on Appeals from the World Anti-Doping Code. Notice of appeal shall be filed with the Administrator within the time period provided in the CAS appellate rules. Appeals to CAS filed under these rules shall be heard in the United States. The decisions of CAS shall be final and binding on all parties and shall not be subject to any further review or appeal except as permitted by the Swiss Federal Judicial Organization Act or the Swiss Statute on Private International Law.*

**R-50. Applications to Court and Exclusion of Liability**

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Neither the AAA nor any arbitrator shall be liable to any party for any act or omission in connection with any arbitration conducted under these rules.

**R-51. Administrative Fees**

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees and service charges to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable.

The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award.

The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

**R-52. Expenses**

The expenses of witnesses for *any party* shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne *as detailed in R-45*.

**R-53. Neutral Arbitrator's Compensation**

(a) Arbitrators shall be compensated at a rate consistent with the *current CAS rates*.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

**R-54. Deposits**

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

**R-55. Interpretation and Application of Rules**

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

**R-56. Suspension for Nonpayment**

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

56

57

ANNEX F

Time Line

## Approximate Timelines and Notices Under USADA Protocol
(This timeline is for general guidance only and does not create any obligation, requirement or right under the USADA Protocol)



| STEP IN PROCESS | | NOTICE GOES TO |
|---|---|---|
| Urine provided by Athlete | | |
| - 2 weeks - | | |
| Negative A laboratory report | | Athlete, NGB & USOC[1] |
| Positive (or elevated) A lab report | | Athlete, NGB & USOC |
| - 2 weeks - | | |
| B lab report (positive or negative) Notice of other potential doping violations | | Athlete, NGB & USOC |
| - 3 weeks - | | |
| Review Panel Recommendation | | Athlete, NGB, USOC, IF & WADA |
| - 10 days - | | |
| Notice that the athlete has accepted a sanction proposed by USADA | | Athlete, NGB, USOC, IF & WADA - Public announcement of sanction |
| Notice of hearing | | Athlete, IF, NGB, USOC & WADA, but not as parties) |
| - 3 months - | | |
| AAA/CAS Decision | | Athlete, IF, NGB, USOC & WADA - Public announcement of sanction |
| - 20 days - | | |
| Appeal by Athlete, USADA, WADA or IF of AAA decision to CAS | | Athlete, IF, NGB, USOC & WADA |
| - 3 months - | | |
| Decision by CAS on appeal | | CAS decision is a public document |

[1] Notice from USADA will include the date and location of the sample collection, the athlete's sample number and name and the laboratory test result. The WADA accredited laboratories are required to give notice to WADA and relevant IF directly any time there is a positive A or B test. However, that notice does not include the athlete's name (sample sent to the labs are identified only by number – not by name). Most NGBs will, upon request, routinely forward the athlete's name to the IF and update the IF on the status of proceedings.

59

58

**ANNEX G**

**Language to be set forth in USADA correspondence offering an athlete the opportunity to waive analysis of the athlete's B specimen**

- The prohibited substance (or method) [identify substance or method] was reported by the laboratory as being present in the A specimen of your sample.

- The USADA Protocol requires that for a sample to be considered positive, the prohibited substance or method must be found by the laboratory in both the A specimen and B specimen of the athlete's sample.

- You and/or your representative have the right to be present, at your expense, to observe the B specimen opening and analysis.

- By waiving the testing of the B specimen, you accept the laboratory results, including the finding of [the substance or method identified] in your sample. Under applicable anti-doping rules, the finding of a prohibited substance or method in an athlete's sample constitutes a doping violation.

- The sanctions which may be imposed on you if a doping violation is found include [describe potential sanctions].

- You may wish to contact John Ruger, the USOC Athlete Ombudsman, who is completely independent of USADA, or your own personal attorney, for assistance or further information. Mr. Ruger may be reached at One Olympic Plaza, Colorado Springs, CO 80909; by telephone at (888)-ATHLETE; by fax at (303) 444-6626; or by email at john.ruger@usoc.org.

- A copy of the USADA Protocol with attachments is enclosed with this letter.

61

60

ANNEX H

## Retirement Rules

In accordance with the USOC ADP, any athlete or other person enrolled in the USADA Out of Competition ("OOC") testing program who wishes to be removed from the program on account of retirement, must promptly notify in writing, USADA and the applicable National Governing Body ("NGB"). **Additionally, it is important for you to check with your particular International Federation ("IF") to ensure compliance with any required IF retirement procedures or policies.**

If you retire, you will be removed immediately from the USADA OOC testing program. In accordance with the USOC ADP, if you ever want to come out of retirement and return to eligible status, you must enroll in the USADA OOC testing program for at least six (6) months in advance of regaining eligible status. Furthermore, pursuant to the USOC policies, all athletes or other persons who are candidates for membership on the U.S. Olympic, Paralympic or Pan American teams must be enrolled in the USADA OOC testing program for a period up to twelve (12) months before the commencement of the competition. Additionally, it is important for you to confirm whether your particular IF has additional requirements in order for you to regain eligibility after retirement.

NOTES

65

NOTES

64

NOTES

67

NOTES

66



**UNITED STATES ANTI-DOPING AGENCY**

2550 Tenderfoot Hill Street, Suite 200

Colorado Springs, CO 80906

Phone: 1-719-785-2000

Fax: 1-719-785-2001

Toll-Free Phone: 1-866-601-2632

E-mail: usada@usantidoping.org

Web site: www.usantidoping.org

**USADA DRUG REFERENCE LINE**

1-800-233-0393 (within the U.S.)

1-719-785-2020 (outside the U.S.)

E-mail: drugreference@usantidoping.org.

UNITED STATES ANTI-DOPING AGENCY

**USADA**
U.S. Anti-Doping Agency
Integrity. Health. Sport.

# We're Moving!

The U.S. Anti-Doping Agency will be moving its office.
Effective September 1, 2005, the new address will be:

1330 Quail Lake Loop, Suite 260
Colorado Springs, Colorado 80906-4651 USA

The office phone and fax numbers will remain the same.

Phone: +1(719) 785-2000
Toll-free: (866) 601-2632 (in the U.S.)
Fax: +1(719) 785-2001

Drug Reference Line™:
Toll-free: (800) 233-0393 (in the U.S.)
+1(719) 785-2020 (outside the U.S.)

# EXHIBIT AA
## to the
## AFFIDAVIT OF MOLLY TOMLONOVIC

Case 1:12-cv-00606-SS   Document 33-6   Filed 07/19/12   Page 50 of 54

# USA TRIATHLON COMPETITIVE RULES

USA Triathlon has issued a set of rules to maintain consistency and order from race to race across the country. The rules include sections on membership, and rules of conduct for swimming, cycling, running, and transition. Also included are special sections on protests, hearings and appeals, and rules modifications for physically challenged athletes.

No part of these rules may be copied or reproduced without the express written consent of USA Triathlon. For permission, contact Charlie Crawford via email or at (334) 332-9092.

The Competitive Rules are intended to provide for the orderly and consistent administration of events sanctioned by USA Triathlon and are not designed to establish standards of care for the safety of participants or other persons. Every participant, official, volunteer and spectator should consider all safety issues and make related decisions prudently without reliance upon the Competitive Rules.

USA Triathlon makes no express or implied warranty, guarantee, or representation regarding the degree of safety, which may or may not result from compliance with the Competitive Rules.  Examinations or inspections of equipment at sanctioned events are undertaken solely to monitor compliance with the Competitive Rules and do not guarantee or ensure safety from personal injury or property damage.  The safety of race equipment is the sole responsibility of each and every participant.

*Italicized sections of these Competitive Rules shall apply to those athletes holding an elite license at any event with a minimum cash prize purse of $5,000.00. An event with a minimum $5,000.00 prize purse must limit the elite division to athletes holding a USAT elite license or an elite license from an ITU member federation.  All prize money is reserved for the elite division.*

Article I: Scope Purpose and Construction
Article II: Membership
Article III: General Rules of Conduct and Penalties
Article IV: Swimming Conduct
Article V: Cycling Conduct
Article VI: Running Conduct
Article VII: Transition Area Conduct
Article VIII: Doping Control Rules
Article IX: Race Officiating
Article X: Protests
Article XI: Hearings and Appeals
Rules Modifications for Paratriathletes
USA Triathlon Supplemental Youth Rules
Most Common Rules Violations
Approved Speedsuits/Skinsuits

Case 1:12-cv-00606-SS   Document 33-6   Filed 07/19/12   Page 51 of 54

2013 Wetsuit Rule FAQ

# ARTICLE I: SCOPE, PURPOSE AND CONSTRUCTION

**1.1 Scope.** These Competitive Rules ("Rules") are adopted by USA Triathlon and govern the administration of all races and events sanctioned by USA Triathlon. These Rules are binding on all members of USA Triathlon and all persons who enter or participate in any event sanctioned by USA Triathlon.

**1.2 Purpose.** These Rules are designed to set forth a standard set of parameters within which athletes can participate in triathlons and compete in a positive atmosphere of equal opportunity. These Rules are intended:
a. to promote and maintain sportsmanship, equal opportunity and fair play;
b. to encourage and reward individual performance and initiative;
c. to protect the health, safety, and well being of participants;
d. to promote the integrity of sport and triathlon as a positive cultural force in modern day society; and
e. to foster the foregoing ideals through the establishment and enforcement of punitive rules.

**1.3 Construction.** These Rules shall be interpreted and construed in a manner consistent with their purpose. Whenever the context so indicates, the masculine or feminine gender, and the singular or plural number, shall be construed to include the other.

**1.4 Rules Exceptions and Additions.** For any particular event, a race director may request from USA Triathlon a specific exception or addition to these Rules. Any such request should be made with the consideration of the participant's safety as the highest priority. All requests for Rule changes must be made in writing. All exceptions or additions to these Rules must be expressly approved in writing by the Executive Director of USA Triathlon and must be announced to all participants prior to the event.

# ARTICLE II: MEMBERSHIP

**2.1 Membership/Permit Requirements.** All participants in events sanctioned by USA Triathlon must be members of USA Triathlon and be able to present a valid annual membership card or must purchase a USA Triathlon single event permit. Any athlete who intentionally participates in an event despite lack of membership or ineligibility for the

relevant membership class shall be suspended or barred from membership in USA Triathlon and barred from participation in any sanctioned event for a period of up to one year.

**2.2 Membership Eligibility.** Membership in USA Triathlon is available to all persons in good standing with USA Triathlon who submit a completed application, pay the required membership fee, and comply with all the requirements determined by USA Triathlon to be applicable to the specific category of membership desired. No person shall be denied membership on the basis of race, color, religion, sex, national origin, or disability.

**2.3 Athletes' Membership Rights.** All athletes shall be entitled to due process with respect to any action revoking or suspending the athlete's membership in USA Triathlon. Due process shall include:
a. reasonable notice (usually in writing) of the charges or allegations made against the athlete;
b. a reasonable time within which to prepare a defense and to answer the charges or allegations;
c. the opportunity to respond to the charges and the ability to have the assistance of legal counsel in the preparation of any defense;
d. a hearing before an impartial and disinterested decision-making body; and,
e. the ability to appeal an adverse decision and notice of the proper procedure for making such an appeal.
No person shall be suspended from USA Triathlon or declared ineligible to participate in USA Triathlon sanctioned events without fair notice of the allegations against such person and the opportunity for a hearing.

**2.4 Membership Categories.** Annual membership in USA Triathlon will be available in the following categories and subject to the following requirements:
a. (1) *Elite. elite annual membership will be available to certain qualified, highly competitive, and experienced athletes. An elite annual member is eligible to receive prize money directly. Any person wishing to apply for an elite annual membership should contact USA Triathlon (http://www.usatriathlon.org) for consideration.*
(2) Elite Collegiate: *Athlete who qualifies according to the criteria listed above, and does not accept prize money.*
*Elite athletes holding an elite license from their National Federation or having raced as an elite athlete in international events are prohibited from competing within age group categories as an age group athlete or for age group awards in events where there is an elite division or awards. Prior to entering any USAT event, elite athletes must disclose their elite status and that failure to disclose such is cause for Disqualification and up to a one year suspension from USAT sanctioned events.*
b. Age Group. The following divisions shall be available within the age group category of membership: (i) regular membership; (ii) youth membership (17 years of age and younger as defined in Section 3.2a).

**7.3 Bicycle Placement.** All participants must return their bicycles to an upright position in the properly designated bicycle corral after completion of the cycling course and before beginning the next segment of the event. Any violation of this Section shall result in a variable time penalty.

**7.4 Obstruction and Interference.** No participant shall impede the forward progress of another participant or interfere with another participant's equipment while in the transition area. Any violation of this Section shall result in a variable time penalty, unless such obstruction or interference renders another participant unable to complete the event, in which case the penalty shall be disqualification.

**7.5 Glass Containers.** Any participant who brings any glass container into the transition area shall be disqualified.

## ARTICLE VIII: DOPING CONTROL RULES

**8.1 Policy.** USA Triathlon condemns the use of substances or methods on the International Triathlon Union (ITU) list of classes of prohibited substances and methods. Additionally, USA Triathlon condemns the use of substances or methods aimed at artificially enhancing athletic performance. The use of prohibited substances or methods or the use of substances or methods aimed at artificially enhancing performance, frequently referred to as "doping," contravene the ethics of both sport and medical science, threaten the integrity and dignity of Olympic sport, erode public confidence in the Olympic Movement and jeopardize the well being of athletes. Additionally, the use of substances on the ITU prohibited substance list or the practice of artificially enhancing performance is inimical to the concept of sportsmanship and frustrates the desire to conduct fair athletic competitions. As a member National Governing Body of the United States Olympic Committee ("USOC") and as a member Federation of the International Triathlon Union ("ITU"), USA Triathlon adheres to the anti-doping rules of the USOC and the ITU. In addition, USAT complies with USOC Bylaws Chapter XXIII, Section 2(G), which provides that, as a condition of membership in the USOC, each National Governing Body complies with the procedures pertaining to drug testing and adjudication of related doping offenses of the independent anti-doping organization designated by the USOC to conduct drug testing. The USOC has designated the United States Anti-Doping Agency ("USADA") as that organization.

**8.2 Incorporation of Rules.** It is the responsibility of each member of USA Triathlon to comply with the applicable anti-doping rules, regulations and policies of the ITU, the USOC, the IOC and the USADA, that are hereby incorporated in full by USA Triathlon. It is also

the responsibility of each member of USA Triathlon to submit, without reservation or condition, to in-competition and out-of-competition doping controls conducted by either the ITU or the USADA. Out-of-competition (short notice) testing of athletes may take place at USA Triathlon elite-level camps, training sessions at USOC facilities or at other designated sites. Out of competition testing (no advance notice) testing of athletes may take place at any time for those athletes designated by USA Triathlon for inclusion in USA Triathlon's Out-of-Competition testing pool. Additional information regarding the anti-doping rules of the ITU, the USOC and the USADA, may be found at www.triathlon.org and www.usantidoping.org. Athletes may also contact the USADA Drug Reference Line at (800) 233-0393 for information on medications and other substances.

**8.3 Adoption of USADA Protocol.** Pursuant to USOC Bylaws Chapter XXIII, Section 2(G), the conducting of doping controls of members and the management of positive, elevated test results and/or other doping violations for USA Triathlon members (post October 2, 2000) is the responsibility of the USADA. Any inconsistent provisions with USADA's full responsibility of anti-doping matters including the testing, adjudication/results management or sanctioning of doping violations, elsewhere in USA Triathlon Competitive Rules are hereby superceded. USA Triathlon will, without further process, enforce and publish any sanction communicated to USA Triathlon by the USADA resulting from adjudication of a doping violation under the USADA Protocol.

## ARTICLE IX: RACE OFFICIATING

**9.1 Race Officials.** The race officials at all events shall consist of a Head Referee, Marshals, Judges, and a Head Timer. The race officials shall conduct each event in accordance with these Competitive Rules and shall uphold and enforce these Rules and any other regulations or policies of USA Triathlon in an impartial manner.

**9.2 Head Referee.** Beginning with the start of the event and until all scores are finalized, the decisions of the Head Referee are final and binding with respect to all competition matters pertaining to the event, with the exception of decisions by the Protest Committee.

**9.3 Powers of the Head Referee.** The Head Referee shall be empowered:
a. To interpret and enforce these Competitive Rules and any other regulations or policies of USA Triathlon;
b. To supervise and control the general conduct of all participants, to require that a participant withdraw from an event, and to intercede during a competition at any stage to ensure that the Competitive Rules are observed;
c. To invoke and impose penalties for violations of