UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Lance Armstrong,<br><br>*Plaintiff*,<br><br>v.<br><br>United States Anti-Doping Agency, *et al.*,<br><br>*Defendants*. | Civ. Action No.1:12-cv-00606-SS |

### AFFIDAVIT OF TIMOTHY J. HERMAN, ESQ.

I, Timothy J. Herman, Esq., hereby declare and state as follows:

1. I am admitted to practice law before the Western District of Texas and represent the Plaintiff, Lance Armstrong, in the above captioned matter. Unless otherwise noted, I make this Affidavit based on my personal knowledge as counsel to Plaintiff, derived from my understanding and review of information, documents, and materials that are the subject of this proceeding.

2. The version of the June 12, 2012 charging letter from the United States Anti-Doping Agency ("USADA") to Mr. Armstrong that is attached as Exhibit I to the Affidavit of Travis T. Tygart (which is Exhibit 3 to USADA's motion to dismiss) does not include the exhibits that accompanied that letter when it was originally sent by USADA. The original exhibits to the June 12th letter included the following sets of "Applicable Rules": (1) fourteen versions of the Union Cycliste Internationale's anti-doping rules, from 1999 to the present; (2) the 2003 and 2009 editions of the World Anti-Doping Code; and (3) the current version of the USADA Protocol. Because these rules consist of hundreds of pages, I have not attached copies of all of them to this affidavit. Instead, I have attached, as Exhibits 1–5, copies of five versions

of the UCI's anti-doping rules that predate August 13, 2004, all of which were attached to the June 12th charging letter from USADA.  I would gladly provide the remaining versions to the Court upon its request.

3. The June 12, 2012 charging letter did not attach, or purport to rely on, any rules or documents from USA Cycling or the United States Olympic Committee.

4. Attached as Exhibit 6 is a true and correct copy of an e-mail chain that includes allegations by Floyd Landis that relate to Mr. Armstrong, a copy of which was produced by USADA to the USADA Review Board, and then later by the Review Board to the Respondents, including Mr. Armstrong's counsel, in June 2012.

5. Mr. Armstrong responded to USADA's June 12, 2012 letter in advance of a decision by USADA's Review Board as to whether the matter could proceed to a USADA disciplinary hearing.  In that letter, while expressly reserving his rights, Mr. Armstrong challenged USADA's jurisdiction to proceed.  Attached as Exhibit 7 is a true and correct copy of that letter, which was sent by Robert Luskin, Esq., another attorney who represents Mr. Armstrong, to the USADA Review Board on June 22, 2012.

6. Attached as Exhibit 8 is a true and correct copy of a letter from Pat McQuaid, President of UCI, to Travis Tygart, CEO of USADA, dated June 18, 2012, a copy of which was produced by USADA in this litigation on July 26, 2012 in response to discovery requests from Mr. Armstrong.

7. Attached as Exhibit 9 is a true and correct copy of a letter from Mr. Tygart to Mr. McQuaid, dated July 6, 2012, a copy of which was produced by USADA in this litigation on July 26, 2012 in response to discovery requests from Mr. Armstrong.

8. Attached as Exhibit 10 is a true and correct copy of a letter from William Bock, III, the General Counsel of USADA, to Messrs. Francesca Rossi and Julien Sieveking, of UCI and WADA respectively, dated July 10, 2012, a copy of which was produced by USADA in this litigation on July 26, 2012 in response to discovery requests from Mr. Armstrong.

9. Attached as Exhibit 11 is true and correct copy of a letter from Mr. McQuaid to Mr. Tygart, dated July 13, 2012, a copy of which was produced by USADA in this litigation on July 26, 2012 in response to discovery requests from Mr. Armstrong.

10. Attached as Exhibit 12 is true and correct copy of a letter from Mr. McQuaid to Mr. Bock, dated July 13, 2012, a copy of which was produced by USADA in this litigation on July 26, 2012 in response to discovery requests from Mr. Armstrong.

11. Attached as Exhibit 13 is a letter from Mr. Bock to Mr. McQuaid dated July 26, 2012, a copy of which was produced by USADA in this litigation on July 26, 2012 in response to discovery requests from Mr. Armstrong.

12. Attached as Exhibit 14 is a letter from Mr. McQuaid to Mr. Bock dated August 3, 2012, a copy of which was sent to counsel for Mr. Armstrong by Mr. McQuaid on August 3, 2012.

13. Attached as Exhibits 15-18 are true and correct copies of opinions from the Court of Arbitration for Sport in the following cases: (1) *CAS 98/192 UCI/S., Danmarks Cykle Union (DCU) and Danmarks Idraets-Forbund (DIF) (21 Oct. 1998)*; (2) *CAS 2000/C/255 Comitato Olimpico Nazionale Italiano (CONI) (16 Jun. 2000)*; (3) *CAS 97/169 M./Italian Cycling Federation (ICF) (15 May 1997)*; and (4) *CAS 94/128 UCI/CONI (5 Jan. 1995)*.[1]

---

[1] Exhibit 18 has been translated from French to English by a translator retained by Plaintiff. Attached as Exhibit 19 is a Certificate of Accuracy from the translator.

3

14. Attached as Exhibit 20 is a true and correct copy of an excerpt from the UCI Cycling Regulations, "Preliminary Provisions" section, dated September 9, 2010, which was retrieved from the UCI's website.

15. Attached as Exhibit 21 is a true and correct copy of an excerpt from the Bylaws of the United States Olympic Committee, effective as of September 24, 2011.

16. USADA contends that Mr. Armstrong's due process claim fails on the merits. *See* Mot. at 13. As noted in our opposition brief, however, the Court's jurisdiction does not turn on whether Mr. Armstrong will prevail on the merits of his claim. Accordingly, Mr. Armstrong will not address merits issues here, other than to note that USADA's contentions are contrary to the reasonable inferences to be drawn from the Complaint, and additional discovery would be required before Mr. Armstrong could respond meaningfully to a properly submitted and briefed motion for summary judgment.

17. USADA attaches, as Exhibit 1 to its Motion to Dismiss, an "Appendix of Unsupported or Incomplete Factual Statements in the Amended Complaint," which cherry picks certain allegations in the Amended Complaint and purports to "correct" them. USADA's Motion to Dismiss is brought under 12(b)(1); therefore, this document is irrelevant and does not merit a response from Mr. Armstrong.

18. USADA's actions, among other things, have caused Mr. Armstrong to be suspended from competing in professional Ironman triathlon events organized by the independent World Triathlon Corporation; threaten to deprive Mr. Armstrong of his property rights in his cycling achievements, including his seven *Tour de France* titles; and threaten to deprive Mr. Armstrong of his Constitutional and common law due process rights. Therefore,

USADA's actions have inflicted and are threatening to inflict irreparable harm on Mr. Armstrong.

### USA Cycling / UCI / Relevant Rules

19.     The accuracy of the information contained in paragraphs 20-31 below has been confirmed by counsel for USA Cycling.  Due to the unavailability of certain representatives of the organization, however, we were unable to obtain a signed affidavit from a USA Cycling representative prior to filing.  True and correct copies of the exhibits referenced in paragraphs 20-31 are attached as exhibits to this affidavit.

20.     UCI is the international federation for cycling.  A true and correct copy of the current version of the UCI Constitution is attached as Exhibit 22.   The purposes of UCI, as set out in its Constitution, include "to direct, develop, regulate, control and discipline cycling under all forms worldwide."  UCI Constitution, Art. I.2.a, at 1.  UCI is responsible for overseeing international cycling competitions, including testing athletes for prohibited substances at international events that it sanctions.  Both USADA and UCI are signatories to the WADA Code. *See* WADA Website (http://www.wada-ama.org/en/World-Anti-Doping-Program/Sports-and-Anti-Doping-Organizations/The-Code/Code-Acceptance/).

21.     The members of UCI are the national cycling federations around the world, including USA Cycling, which is recognized by UCI as the National Federation for cycling in the United States.  USA Cycling also is recognized by the USOC as the National Governing Body for cycling in the United States.

22.     UCI has a comprehensive set of anti-doping rules—the UCI ADR—by which its license-holders are bound.  The current version of the UCI ADR is attached as Exhibit 23.

23. Under the UCI ADR, UCI has exclusive jurisdiction over testing at those international events where it conducts testing (if UCI does not test at a particular international event, the National Federation in that country may test), and Doping Control for such matters is governed exclusively by the UCI ADR. *See* Ex. 23 (current UCI ADR) at Arts. 2, 4, 202. As defined by the ADR, "*Doping Control*" encompasses:

> All steps and processes from test distribution planning through to ultimate disposition of any appeal including all steps and processes in between such as provision of whereabouts information, sample collection and handling, laboratory analysis, TUE's, results management and hearings.

Ex. 23, Appendix 1, at p. 75.

24. Under the UCI ADR, UCI also conducts out-of-competition testing of its license-holders, and Doping Control for such testing is governed exclusively by the UCI ADR. *Id.*, Arts. 8, 202.

25. As a national federation for cycling, USA Cycling is bound by, and obligated to follow, UCI's Constitution, rules, and regulations (including the UCI ADR) where applicable. *See* Ex. 24 (current USA Cycling Bylaws) § K.4; Ex. 22 (current UCI Constitution), Art. II.6.1, at 2; Ex. 25 (excerpt from current Olympic Charter), Art. 29; Ex. 26 (excerpt from current USA Cycling Rule Book), at Rule 1B. Likewise, under the UCI Constitution, USA Cycling "shall have the Constitution, Regulations, and decisions of the UCI complied with by all persons concerned." *See* Ex. 22 (current UCI Constitution), Art. II.6.1, at 2.

26. Mr. Armstrong applied for and was issued several annual cycling licenses in classes that permitted him to race internationally in UCI sanctioned races.

27. Blank copies of those international cycling license applications that Mr. Armstrong would have signed for the years 2003 and thereafter are attached to the Affidavit of Shawn O. Farrell (Exhibit 5 to USADA's Motion to Dismiss) as Exhibits A-G. Mr. Armstrong

6

would have signed license applications for years prior to 2003, but it is my understanding that USA Cycling either does not have them or could not locate them. Further, it is my understanding that USA Cycling was not able to locate actual signed copies of Mr. Armstrong's international license applications in its expedited search of its records for all the applicable years. The international license applications that Mr. Armstrong would have signed prior to 2004 did not refer to USADA.[2]

28.     The Tour of Switzerland and the *Tour de France* are professional cycling events sanctioned by UCI and are part of the "UCI WorldTour." *See* Ex. 27 (excerpts of UCI Cycling Regulations, Part 2: Road Races), at 2.1.001, 2.1.005, 2.15.  UCI has exclusive authority over testing at these events when it chooses to engage in such testing.  *See* Ex. 23 (current UCI ADR), Arts. 2, 4, 202.

29.     The professional cycling teams on which Mr. Armstrong competed (*e.g.*, the United States Postal Service Team and the RadioShack team) were professional cycling teams that were licensed to compete in UCI World Tour events, including the Tour of Switzerland and *Tour de France*, as UCI ProTeams, the highest level team designation available under UCI's rules. *See, e.g.*, Ex. 28 (printout from www.uciprotour.com listing RadioShack team as a UCI ProTeam); Ex. 27 (excerpts from UCI Cycling Regulations, Part 2: Road Races), at 2.15, § 4; Ex. 26 (excerpts from current UCI Rule Book) at Rule 1A24.  UCI ProTeams are managed directly by the UCI.  The events that Mr. Armstrong's UCI ProTeams competed in, including the Tour of Switzerland and *Tour de France*, are not amateur athletic competitions or part of the Olympic,

---

[2]  In the Affidavit of Shawn O. Farrell, Mr. Farrell mistakenly states that language referencing USADA was included in the 2003 and 2004 international license applications.  *See* Affidavit of Shawn O. Farrell, ¶ 10.  That was incorrect.  In fact, the language quoted in paragraph 10 of Mr. Farrell's affidavit first appeared in the 2004 application.  The international license application in 2003 did not refer to USADA.  *See* Ex. B to Farrell Aff.

Paralympic, or Pan-American Games, or any world championship. USA Cycling does not designate which cyclists will compete for those UCI ProTeams or in the events in which they participate. Entrants in these races compete for professional teams, and not for their respective nations pursuant to the rules of such races. In addition, USA Cycling does not organize or sponsor cyclists to represent the United States in those professional cycling events, and USA Cycling does not conduct any selection process or tryout procedure for those competitions.

30. The "Medical Control" policy referenced in paragraph 13 of the Farrell Affidavit is an appendix to the USA Cycling Rule Book, which is separate from the USA Cycling Bylaws or Articles of Incorporation.

31. Floyd Landis was a UCI license-holder for a number of years, including 2010.

### **WTC**

32. The information contained in paragraph 33 below is based on, among other things, conversations between Mr. Armstrong's counsel and representatives of WTC. While WTC has confirmed the accuracy of this information, it was unwilling to submit an affidavit in this matter based on concerns about "how it would be perceived by USADA and others," and WTC's "need to be perceived as and act as a neutral third party."

33. Upon information and belief, WTC is the owner and organizer of Ironman and Ironman 70.3 branded triathlon events in which, up until he was suspended as a result of the charges initiated by USADA, Mr. Armstrong competed. The professional division of Ironman and Ironman 70.3 triathlons in which Mr. Armstrong competed are professional, rather than

amateur, triathlon events. WTC's Ironman and Ironman 70.3 triathlons are not part of the Olympic, Paralympic, or Pan-American Games, or any world championship associated with or sanctioned by the international triathlon federation. Other than licensing or registering the athletes, national federations do not select or designate which triathletes from their countries will compete in the Ironman and Ironman 70.3 triathlons the WTC conducts. USA Triathlon does not organize or sponsor triathletes to represent the United States in WTC Ironman or Ironman 70.3 events and USA Triathlon does not conduct any selection process or tryout procedure for those or any other WTC competitions. WTC sets the criteria for who will be allowed to compete in WTC events.

\* \* \* \* \*

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on August 3, 2012.

_____
Timothy J. Herman, Esq.

State of Texas          §

County of Travis        §

SWORN AND SUBSCRIBED TO before me by Timothy J. Herman, Esq. on August 3, 2012.



_____
Notary Public in and for the State of Texas

RONI LEA WILSON
MY COMMISSION EXPIRES
August 14, 2014

Seal: