

*Preserving the integrity of competition. **Inspiring** true sport. **Protecting** the rights of athletes.*

*VIA HAND DELIVERY*

August 17, 2012

The Honorable Sam Sparks, Judge
U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION
200 West 8th Street
Austin, Texas 78701

**Re:**   *Lance Armstrong v. United States Anti-Doping Agency ("USADA"), et al.*
        *Case No. 1:12-cv-00606-SS*

Dear Judge Sparks:

Thank you for conducting a hearing on Friday, August 10, 2012, on the Motion to Dismiss filed by Travis Tygart and the United States Anti-Doping Agency (collectively "USADA") and for your invitation to submit a letter setting forth any additional information which USADA wishes you to consider in connection with USADA's motion.

We believe that USADA's basic positions are clear from our briefs and arguments made last Friday. Accordingly, we will confine our comments below to matters discussed by the Court or by Mr. Herman in open court on Friday, August 10, 2012.

### As a Member of USA Cycling, Armstrong is Bound by the USADA Protocol.

The hearing confirmed that several critical facts are undisputed. As the Court knows, Mr. Armstrong was required to maintain membership in USA Cycling in order to participate in national and international competition – as a result, he agreed to comply with USA Cycling's rules. (USADA also established at the hearing that Mr. Armstrong's written contract was with USA Cycling, not UCI.) Mr. Herman conceded, "Armstrong is a member of USA Cycling. He has to be to get his international license, okay."[1]

We then look to USA Cycling's rules, which explicitly incorporate the USADA Protocol, and state the Protocol "shall prevail over any USA Cycling Regulation to the contrary."[2] The

---

[1] Transcript ("Tr."), p. 55, lines 20-23; *see* Tr., p. 43, lines 18-22 (Mr. Herman acknowledges that if USA Cycling did not license Armstrong he could not compete).

[2] 2001 USCF Rulebook, Policy II – Medical Control, Section 1, p. 166, Exhibit Q to the Affidavit of Molly Tomlonovic, Exhibit 4 to Defendants' Motion to Dismiss (Document 33-7, p. 70); USA Cycling 2010 Rulebook, Appendix 2, USA Cycling Policies, Policy II – Medical Control, Section 1, p. 249, Exhibit X to the Affidavit of Molly Tomlonovic, Exhibit 4 to



*Preserving the integrity of competition. Inspiring true sport. Protecting the rights of athletes.*

Protocol, in turn, gives USADA authority to adjudicate anti-doping rule violations by "[a]ny Athlete who is a member or license holder of a NGB," and further provides, "Any [International Federation] or NGB procedural rule inconsistent with this Protocol shall be superseded by this Protocol."[3] So, when Mr. Herman argued, "USADA must follow its own rules," these are the applicable rules USADA was required to follow and did follow.

In addition, the USA Cycling rule and USADA Protocol both comply with the USOC's rule that all NGB members "agree to be bound by the USOC National Anti-Doping Policies ("USOC NADP") and the USADA Protocol," and that "NGBs shall not have any anti-doping rule which is inconsistent with these Policies or the USADA Protocol."[4]

Based on these undisputed facts confirmed at the hearing, Mr. Armstrong is bound by the USADA Protocol; all other issues raised by Mr. Armstrong relate to the scope of the arbitration agreement and should be addressed by the arbitrators in the first instance.[5]

Ultimately, Mr. Herman argued that Mr. Armstrong should not be required to arbitrate under the USADA Protocol, as he had agreed, because he claimed "it's a rigged deal." Yet, the multiple levels of appeal afforded by the Protocol make it impossible to conclude that requiring Mr. Armstrong to arbitrate would be a violation of due process under the law. (Mr. Herman also failed to explain how USADA's process could be considered "rigged" when it leads to precisely the same end – a *de novo* hearing before the Court of Arbitration for Sport ("CAS") – as the UCI rules which Mr. Armstrong urges the Court to apply.) Mr. Herman's claim of a rigged process

---

Defendants' Motion to Dismiss (Document 33-7, p. 125). Each USA Cycling Rule book between 2001 and 2011 contained the exact same language.

[3] 2009 USADA Protocol for Olympic and Paralympic Movement Testing ("USADA Protocol"), Section 3(d), p. 3, Exhibit C to the Affidavit of Travis T. Tygart, Exhibit 3 to Defendants' Motion to Dismiss (Document 33-4, p. 56).

[4] USOC 2004 NADP Section 13, p. 6, Exhibit G to the Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants' Motion to Dismiss (Document 33-2, p. 73); USOC 2009 NADP Section 12, p. 4, Exhibit F to the Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants' Motion to Dismiss (Document 33-2, p. 63).

[5] *See* USADA Protocol, Annex D, American Arbitration Association Supplementary Procedures for the Arbitration of Olympic Sport Doping Disputes, R-7, Exhibit C to the Affidavit of Travis T. Tygart, Exhibit 3 to Defendants' Motion to Dismiss (Document 33-4, p. 87); *see also Louis Dreyfus Corp. v. 27,946 Long Tons of Corn*, 830 F.2d 1321, 1329 (5th Cir. 1987) (deferral to arbitration required "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue") (quoting *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)).



*Preserving* the integrity of competition. *Inspiring* true sport. *Protecting* the rights of athletes.

was unsupported by evidence and inconsistent with the arbitration rules which have been repeatedly endorsed as fair by the USOC and the USOC Athlete's Advisory Council.[6]

### The Sports Act Preempts Mr. Armstrong's Claims Because the USOC has Exercised its Authority Under the Act to Require Mandatory Arbitration of Doping Cases.

The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220551 *et seq*., (the "Sports Act"), provides an independent basis for USADA's authority to adjudicate the doping charges against Mr. Armstrong in mandatory arbitration proceedings.

The rules of the USOC provide, consistent with the Sports Act, that this dispute, as in the case of all doping disputes, is to be resolved through AAA arbitration in accordance with the terms of the USADA Protocol.[7]

The Sports Act gives the USOC sufficient authority over NGBs to require them to impose the arbitration procedures of the USADA Protocol on all NGB members. Section 220503(8) of the Act expressly states that a "purpose" of the USOC is to provide dispute resolution procedures for all amateur athletes and not just disputes concerning "protected competition" and Section 220522(a)(4) establishes mandatory arbitration under AAA rules for any dispute involving "amateur athletic competition" (again, not limited to "protected" competition). Section 220504(a) of the Act authorizes the USOC to put mandatory criteria in the USOC Bylaws which NBGs must follow. USOC Bylaw 8.7(j) provides that NGBs must comply with the anti-doping policies of both the USOC and USADA, and USOC National Anti-Doping Policies Article 11 provides that NGBs must make the USADA Protocol applicable to all members and license holders. USOC National Anti-Doping Policies Article 12 forbids any anti-doping rule

---

[6] *See* Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants' Motion to Dismiss (Document 33-2, pp. 1-7) (¶ 11 (USOC worked with AAC and NGB Council to approve USOC National Anti-Doping Policies) ¶¶ 15, 19 (AAA Supplementary Procedures were approved by the AAC and NGB Council). Mr. Herman sought to raise concern through referencing the arbitration involving sprinter Justin Gatlin in which an arbitrator filed a dissenting opinion. The Court appropriately recognized it was not relevant to mine a single dissent for evidence applicable to this case. Tr., p. 74, lines 4-6. In any case, Mr. Herman got his description of that case wrong. The arbitrator in question, while dissenting from the particular sanction imposed by the majority, actually concurred in finding a doping violation, which involved use of a steroid rather than ADD medication as claimed by Mr. Herman. Tr. P. 46, line 1

[7] USOC NADP 2009, Section 7, pp. 2-3, Exhibit F to the Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants Motion to Dismiss (Document 33-2, pp. 61-62); USOC NADP 2004, Section 8, p. 4, Exhibit G to the Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants Motion to Dismiss (Document 33-2, p.71).



*Preserving the integrity of competition. Inspiring true sport. Protecting the rights of athletes.*

inconsistent with the USADA Protocol.[8]  By adopting these mandatory requirements, the USOC "demanded" that all doping matters be resolved in arbitration within the framework of Section 220522(a)(4) of the Act.[9]

Even if Mr. Armstrong's eligibility were not subject to mandatory arbitration under the express terms of the Sports Act (and we think it is, as explained below), the USOC and its NGBs are well within their authority over amateur athletes provided in the Act to require (as the USOC has done in its Bylaws and USA Cycling has provided in its rules) that all eligibility cases concerning alleged doping by NGB members be conducted under the USADA procedures, with mandatory arbitration as the final means of domestic dispute resolution and with the potential for appeal to the CAS.   The Sports Act clearly gives the USOC and NGBs latitude to require all NGB members to submit all eligibility disputes to arbitration to avoid the prospect of the athlete coming back years later and seeking a redo of his or her case on the ground that he or she cannot be denied the opportunity to compete in the world championships or Olympics without a AAA arbitration.

In any case, even if the Sports Act could somehow be construed as requiring the USOC to limit AAA arbitrations to situations in which participation in the Olympics, Pan Am Games, world championships or other protected competitions was implicated, Armstrong has not demonstrated that the USADA proceeding does not involve questions of eligibility pertaining to such competitions.  The evidence before the Court was that Mr. Armstrong participated in the Olympic Games as a member of the U.S. Olympic team in 1992, 1996 and 2000, which covered a period of time in which his doping was alleged to have occurred.[10]  Thus, the outcome in this case could retrospectively affect Mr. Armstrong's eligibility for the 2000 Olympic Games in which he won a bronze medal.  Accordingly, even under the Plaintiff's cramped view of the Sports Act there is clear authority to refer Mr. Armstrong's case to AAA arbitration.

Similarly, Mr. Armstrong did not demonstrate that he was not a potential candidate for Olympic or world championship participation in the period after 2000.  Nor did he demonstrate that there is no prospect that he could be a candidate for Olympic or world championship participation in the future.  Indeed, the record indicates that Mr. Armstrong was (and possibly still is) training for

---

[8] USOC 2004 NADP Section 13, p. 6, Exhibit G to the Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants' Motion to Dismiss (Document 33-2, p. 73); USOC 2009 NADP Section 12, p. 4, Exhibit F to the Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants' Motion to Dismiss (Document 33-2, p. 63).

[9] The AAA rules used in arbitrations under the USADA Protocol were approved by the AAC and NGB Council as provided for in the Sports Act.  *See* Affidavit of Rana K. Dershowitz, Exhibit 2 to the Defendants' Motion to Dismiss (Document 33-2, p. 6) (¶ 19).

[10] Biography of Armstrong from USA Cycling website, Exhibit I to the Affidavit of Molly Tomlonovic, Exhibit 4 to Defendants' Motion to Dismiss (Document 33-7, p. 35).



*Preserving the integrity of competition. Inspiring true sport. Protecting the rights of athletes.*

the Iron Man World Championships for which he hoped to qualify in 2012.[11]  There has been no indication therefore that his eligibility should not be covered by the mandatory arbitration provisions of the Sports Act.

Moreover, contrary to Mr. Herman's suggestion, all of the doping charges against Mr. Armstrong relate to his "eligibility" under the Act.  If USADA establishes an anti-doping rule violation in an arbitral award, the impact on Mr. Armstrong's future eligibility to compete and the disqualification of prior results (whether at the national or international level) both automatically follow under the World Anti-Doping Code (the "Code").  Specifically, the Code provides that "all other competitive results obtained from the date [an] … anti-doping rule violation occurred, through the commencement of any *Provisional Suspension* or *Ineligibility* period, shall, unless fairness requires otherwise, be *Disqualified* with all of the resulting *Consequences* including the forfeiture of any medals, points and prizes."[12]  This provision of the Code is incorporated verbatim, as required by the Code, in the USOC National Anti-Doping Policies, the USADA Protocol and UCI Rules.[13]

Based on the mandatory provisions of the Code then, there is no way to separate "prospective" ineligibility from "retroactive" disqualification of prior results.  The entire adjudication process under the USADA Protocol relates to Mr. Armstrong's "eligibility."  It goes without saying, of course, that the determination of the appropriate period of ineligibility and the date of any rule violation(s) for the purpose of disqualifying prior results are matters for the arbitrators to decide.

### UCI's Assertion of Jurisdiction does Nothing to Create Subject Matter Jurisdiction in this Court.

Mr. Herman repeatedly asserted UCI has exclusive jurisdiction based on its own rules and letters; at the same time, he ignored the plain language of USA Cycling's rules, the USADA Protocol and the USOC National Anti-Doping Policies, which each give USADA jurisdiction and expressly state the USADA Protocol supersedes any contrary rule.  Since Mr. Armstrong

---

[11] Complaint and Jury Demand, ¶¶ (Document 1, p. 10); *see also* Amended Complaint and Jury Demand, ¶¶ 4, 10 and 20 (Document 18, pp. 2, 4 and 7).

[12] World Anti-Doping Code Art. 10.8, p. 71, Exhibit B to the Affidavit of Travis T. Tygart, Exhibit 3 to the Defendants' Motion to Dismiss (Document 33-3, p. 87).

[13] USOC 2009 NADP, Section 1, p. 1, Exhibit F to the Affidavit of Rana K. Dershowitz, Exhibit 2 to Defendants' Motion to Dismiss (Document 33-2, p. 60); USADA Protocol, Annex A, p.41, Exhibit C to the Affidavit of Travis T. Tygart, Exhibit 3 to the Defendants' Motion to Dismiss (Document 33-4, p. 75);   UCI Cycling Regulations, Chapter X, Sanctions and Consequences, Section 313, p. 59, Exhibit 41 to the Affidavit of Timothy J. Herman in Support of Plaintiff Lance Armstrong's Motion for Temporary Restraining Order and Preliminary Injunction (Document 7-8, p. 33).



*Preserving* the integrity of competition. *Inspiring* true sport. *Protecting* the rights of athletes.

agreed to be bound by the USADA Protocol, and the USADA Protocol provides that the arbitrators decide all matters relating to their jurisdiction, Mr. Armstrong is required to present his "UCI has jurisdiction" argument to the arbitrators.

Even if the parties had not agreed, through Rule R-7 of the USADA Protocol, that all issues relating to the scope of arbitration shall be addressed by the arbitrators, the Court would still lack subject matter jurisdiction.  Where, as here, both USADA and UCI claim their rules trump, the World Anti-Doping Code guides the analysis.  As explained during the hearing, USADA has charged Mr. Armstrong with trafficking and other "non-analytical" anti-doping rule violations; it has not charged Mr. Armstrong under Article 2.1 of the Code which relates to the presence of a prohibited substance in an athlete's sample. As the undersigned made clear at the hearing, USADA's charging letter references samples only as potential corroborating evidence; USADA does not even possess documentation of the referenced samples at this time.

Under these circumstances, Article 15.3 of the Code gives authority for "results management" to the anti-doping organization which "discovered the violation," regardless of when or where the violation occurred.[14]  Under Article 15.3, with respect to the charges against Mr. Armstrong, it is irrelevant whether the non-analytical violations occurred in connection with an international event controlled by UCI or any other entity – results management responsibility rests with USADA as the organization that discovered the violations.  In other words, this is not a case where jurisdiction "follows the sample" as Mr. Herman urged.  Nor were there any periods of time when Mr. Armstrong was outside USADA's jurisdiction.  Under the rules USADA could charge him with use, possession, trafficking and administration of prohibited substances during UCI events and had full authority to pursue results management of all such rule violations as long as USADA discovered the violations.  Furthermore, the World Anti-Doping Agency, the organization charged with monitoring international compliance with the Code, has determined USADA has results management authority in this case because USADA discovered the alleged anti-doping rule violations.[15]  At a minimum, there is no way to say with "positive assurance" that the Code and Protocol are not susceptible of any interpretation that gives USADA authority to proceed.[16]

---

[14] World Anti-Doping Code Art. 15.3, p. 92 Exhibit B to the Affidavit of Travis T. Tygart, Exhibit 3 to the Defendants' Motion to Dismiss (Document 33-4, p. 8).

[15] August 7, 2012, Letter from David Howman, WADA Director General, to Pat McQuaid, President, UCI, Exhibit CC to the Second Affidavit of Molly Tomlonovic, Defendants' Reply Brief (Document 50, pp. 46-50).

[16] *See Louis Dreyfus Corp.*, 830 F. 2d at 1329.



*Preserving* the integrity of competition. *Inspiring* true sport. *Protecting* the rights of athletes.

### The Anti-Doping Charges Against the Other Five Individuals have no Bearing on Subject Matter Jurisdiction in this Case.

The cases against the other five non-U.S. individuals present different circumstances than the doping charges against Mr. Armstrong and do not affect the subject matter jurisdiction analysis in this case. Nevertheless, the Court expressed concern about USADA's bringing charges against the other individuals, so an additional response may be useful.

The other five individuals are not athletes, but rather were support personnel (i.e., a team manager, doctor and trainer) for Mr. Armstrong's cycling teams. As non-athletes, they were never subject to testing and never provided samples. So, again, Mr. Herman's admonition to "follow the samples" simply does not apply.

During its investigation, USADA discovered non-analytical anti-doping rule violations (e.g., trafficking, attempted trafficking, possession, administration, aiding and abetting) committed by these individuals relating to their support roles for Mr. Armstrong's cycling teams. Given USADA's obligation to enforce the Code, it could not simply ignore these violations just because they were committed by non-U.S. citizens. These individuals, unlike Mr. Armstrong, had not been licensed by USA Cycling or any other U.S. NGB, so USADA relied upon Article 15.3 of the Code (which gives results management authority to the anti-doping organization that discovered the non-analytical violations) and relevant UCI rules to proceed with adjudication of the anti-doping rule violations committed by these individuals. If UCI disagrees with USADA's assertion of jurisdiction, it has the right to participate as a party in the AAA arbitration and/or appeal any decision to CAS.

For the sake of efficiency, and based on the closely-intertwined factual circumstances, USADA named these individuals in the same notice and charging letters as Mr. Armstrong. Three of the individuals have requested AAA arbitration proceedings and will submit their jurisdictional arguments to the arbitrators. Furthermore, with respect to USADA's request to consolidate the charges in a single arbitration proceeding, it will be up to the arbitrators to determine whether the proceedings against Mr. Armstrong and the other individuals will go forward on a consolidated, coordinated, or separate basis.[17]

---

[17] Consolidation is a procedural question to be addressed by the arbitrators. *See Blimpie International, Inc. v. Blimpie of the Keys*, 371 F.Supp. 2d 469, 473-74 (S.D.N.Y. 2005) ("the question of consolidation does not affect analysis of the validity or scope of this arbitration provision … it is a question properly addressed by the arbitrator"). Likewise, other questions regarding USADA's charges and the evidence that can be introduced at the hearing are arbitrator questions. For instance, Mr. Armstrong's counsel improperly attempts to raise references to a conspiracy in USADA's letters to a jurisdictional level – it is not a jurisdictional issue, rather it is an evidentiary matter to be addressed by the arbitrators. Moreover, the existence of a conspiracy is clearly relevant under the rules. *See, e.g.*, Code Art. 10.6, Comment ("Examples of aggravating circumstances which may justify the imposition of a period of ineligibility greater



*Preserving* the integrity of competition. *Inspiring* true sport. *Protecting* the rights of athletes.

## USADA's Notice Letter Complied with the Protocol and Provides No Basis for Judicial Intervention in the Mandatory Arbitration Process.

At the hearing, the Court questioned the non-specific nature of USADA's notice letter and whether it allowed Mr. Armstrong a meaningful opportunity to respond before the Anti-Doping Review Board ("ADRB") made its recommendation to USADA.

Despite Mr. Herman's contention the Court has jurisdiction to "make USADA follow its rules," there is no basis for judicial intervention here. The Protocol simply requires USADA to "provide notice of such potential [anti-doping rule] violation to the Athlete or Other Person, the USOC, the applicable NGB, IF and WADA."[18] The June 12, 2012 notice letter did so.

It is also important to consider the context of the notice letter. As explicitly stated in the Protocol, the ADRB process is not a hearing and has no carry-over effect in the AAA arbitration process.[19] Because there is no hearing before the ADRB, the ADRB has no means to judge the credibility of witnesses – that judgment is reserved for the arbitrators. Where, as here, the charges are based on witness evidence rather than laboratory analysis of samples, the only role played by the ADRB is to determine whether the summary of testimony provided by USADA establishes a *prima facie* case of anti-doping rule violations. Thus, even if USADA had provided in its letter witness names and the dates of specific rule violations it would not have changed the fact that the ADRB process is confined to written submissions and therefore not a process in which witness statements could be challenged.

Moreover, the Protocol provides several layers of due process to Mr. Armstrong. For purposes of the arbitration proceedings, Rules R-4 and R-18 of the AAA Supplementary Procedures establish requirements for notice of the charged offense(s), a preliminary hearing, production of documents and information, and the identification of witnesses. The rules also permit an appeal to the CAS where a *de novo* hearing may be obtained. There is no legal basis to presume, in advance of the arbitration proceedings, that these rules will not be applied by the arbitrators to comport with fundamental principles of due process.

---

than the standard sanction are the Athlete or Other Person committed the anti-doping rule violation as a part of a doping plan or scheme, either individually or involving <u>a conspiracy or common enterprise to commit anti-doping rule violations</u>[.]" World Anti-Doping Code Art. 10.6, p. 65, Exhibit B to the Affidavit of Travis T. Tygart, Exhibit 3 to the Defendants' Motion to Dismiss (Document 33-3, p. 87). (Document 33-3, p. 80).

[18] USADA Protocol, Section 9(f), p. 7, Exhibit C to the Affidavit of Travis T. Tygart, Exhibit 3 to the Defendants' Motion to Dismiss (Document 33-4, p. 58).

[19] USADA Protocol, Section 11(c)(vi), p. 10, Exhibit C to the Affidavit of Travis T. Tygart, Exhibit 3 to the Defendants' Motion to Dismiss (Document 33-4, p. 60).



*Preserving the integrity of competition. Inspiring true sport. Protecting the rights of athletes.*

We believe that the foregoing demonstrates that this Court lacks subject matter or other jurisdiction because Mr. Armstrong has failed to exhaust his administrative remedies and because the Sports Act pre-empts his claims in favor of arbitration; in the alternative, the Court lacks jurisdiction, and the case should be stayed or dismissed, under Section 3 of the FAA.

Respectfully submitted,

UNITED STATES ANTI-DOPING AGENCY

William Bock, III
General Counsel

WB/ljm

cc: All Counsel of Record



*Preserving* the integrity of competition. *Inspiring* true sport. *Protecting* the rights of athletes.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served upon the following counsel of record by way of operation of the Court's electronic filing system this **17th day** of **August**, **2012**:

| | |
|---|---|
| Timothy J. Herman<br>Sean E. Breen<br>HOWRY BREEN & HERMAN, LLP<br>1900 Pearl St.<br>Austin, TX 78705-5408<br>therman@howrybreen.com<br>sbreen@howrybreen.com | Mark S. Levinstein<br>Ana C. Reyes<br>Marcie R. Ziegler<br>WILLIAMS & CONNOLLY LLP<br>725 12th St., NW<br>Washington, DC 20005<br>mlevinstein@wc.com<br>areyes@wc.com<br>mziegler@wc.com |
| | Robert D. Luskin<br>Patrick J. Slevin<br>PATTON BOGGS LLP<br>2550 M Street, NW<br>Washington, DC 20037<br>Rluskin@pattonboggs.com<br>Pslevin@pattonboggs.com |

                                            s/ *William Bock, III*
                                            William Bock, III

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204
wbock@kgrlaw.com